ACCEPTED
15-25-00031-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/21/2025 12:39 AM
CHRISTOPHER A. PRINE
CLERK

No. _____

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
3/21/2025 12:39:30 AM
CHRISTOPHER A. PRINE
Clerk

# IN THE FIFTEENTH COURT OF APPEALS
## AUSTIN, TEXAS

*In re* **Nonparty Patient No. 1, Nonparty Patient No. 2, Nonparty Patient No. 3, Nonparty Patient No. 4, Nonparty Patient No. 5, Nonparty Patient No. 6, Nonparty Patient No. 7, Nonparty Patient No. 8, Nonparty Patient No. 9, Nonparty Patient No. 10, and Nonparty Patient No. 11,**

*Relators*

On Petition for Writ of Mandamus
From the 493rd Judicial District Court, Collin County, Texas
Cause No. 493-07676-2024, The Honorable Christine A. Nowak presiding

## MANDAMUS RECORD

Jervonne D. Newsome
Thanh D. Nguyen
Jonathan Hung
WINSTON & STRAWN LLP
2121 N. Pearl St., Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500

William M. Logan
Evan D. Lewis
Olivia A. Wogon
WINSTON & STRAWN LLP
800 Capitol St., Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

ATTORNEYS FOR RELATORS

# TABLE OF CONTENTS

| Description | Page |
|---|---|
| Docket Sheet – 1st 100 Entries | M.R. 1 |
| Docket Sheet – Remaining Entries | M.R. 14 |
| State's Original Petition | M.R. 24 |
| State's Subpoena – Children's | M.R. 60 |
| State's Subpoena – UT Southwestern | M.R. 68 |
| Nonparty Patients' Petition for Motion for Protection (Dallas County) | M.R. 76 |
| Nonparty Patient's Amended Petition for Motion for Protection (Dallas County) | M.R. 157 |
| Notice of Hearing on Nonparty Patients' Amended Petition (Dallas County) | M.R. 239 |
| Hearing Transcript – Collin County Hearing on February 26, 2025 | M.R. 242 |
| Nonparty Patients' Motion to Stay Production from the Hospital Systems (Collin County) | M.R. 344 |
| Order Requiring Hospitals to Produce Merits-Related Documents (Collin County) | M.R. 415 |
| Order Requiring Hospitals to Produce Venue-Related Documents (Collin County) | M.R. 417 |
| Amended Notice of Hearing for Nonparty Patients' Amended Petition (Dallas County) | M.R. 418 |
| State's Plea to the Jurisdiction and Plea in Abatement (Dallas County) | M.R. 421 |
| Nonparty Patients' Brief – Interlocutory Appeal and Automatic Stay (Dallas County) | M.R. 438 |
| State's Notice of Appeal (Dallas County) | M.R. 445 |
| Order Staying Production from Hospital Systems (Dallas County) | M.R. 449 |
| Email Chain – Collin County Court Request to Set Hearing | M.R. 451 |
| Oral Order Modifying Production Obligations (Collin County) | M.R. 460 |
| Nonparty Patients' Motion to Stay in 15th Court of Appeals | M.R. 462 |
| 15th Court of Appeals' Order Denying Nonparty Patients' Motion | M.R. 522 |

# COLLIN COUNTY



# JUDICIAL ONLINE SEARCH

← Back to Results

## Case History

| | |
|---|---|
| **Case Number** | 493-07676-2024 |
| **Type** | All Other Civil Cases |
| **Style** | The State of Texas vs. May C Lau, M.D. |

**M.R. 1**

| Judicial Officer | Nowak, Christine in 493rd District Court |
|---|---|
| File Date | 10/18/2024 |
| Status | Pending |

## Parties

| Type | Name | Year of Birth | Attorney (Bar #) | Address |
|---|---|---|---|---|
| Plaintiff | The State of Texas | | Jonathan Stone (24071779) | Consumer Protection Division, Office of the Attorney General, P.O. Box 12548, Austin, TX 78711 |
| Defendant | Lau, May C, M.D. | | Alexander M. Wolf (24095027) | Steptoe LLP, 717 Texas Avenue, Suite 2800, Houston, TX 77002 |

## Case Events

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|---|---|---|---|---|---|
| 10/17/2024 | | Plaintiff's Original Petition (OCA) $350.00 | | | Plaintiff's Verified Original Petition and Request for an |

**M.R. 2**

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|------|------|-------|------------------|-------|----------|
| 10/17/2024 | | Application for TRO (In Existing Case) $80.00 | | | Application for Temporary and Permanent In …More |
| 10/18/2024 | | | | | Plaintiff's Verified Original Petition and Request for an Application for Temporary and Permanent In …More |
| 10/18/2024 | | Request for Citation $8.00 | | | |
| 10/18/2024 | | Citation | | | |
| 10/28/2024 | | Affidavit | | | Affidavit of Due Diligence - May C. Lau, M.D. |
| 10/28/2024 | | Affidavit | | | Affidavit of Due Diligence - May C. Lau, M.D. |
| 10/31/2024 | | Affidavit | | | Affidavit of Due Diligence - May C. Lou, M.D. |
| 11/5/2024 | | Affidavit | | | Affidavit of Due Diligence - May C. Lau, M.D. - 10/28/2024 |
| 11/5/2024 | | Affidavit | | | Affidavit of Due Diligence - May C. Lau, M.D. - 10/30/2024 |
| 11/5/2024 | | Affidavit | | | Affidavit of Due Diligence - May C. Lau, M.D. - 10/24/2024; 10/25/2024; 10/26/2024; 10/29/2024; 11/0 …More |

**M.R. 3**

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|---|---|---|---|---|---|
| 11/7/2024 | | Affidavit | | | Affidavit of Due Diligence - May C. Lau, M.D. - unsuccessful - 10/23/2024 - 10/31/2024 |
| 11/12/2024 | | Motion for Substituted Service | | | The State Of Texas's Motion for Substituted Service |
| 11/15/2024 | | Order for Substituted Service | | | Order on The State of Texas's Motion for Substituted Service |
| 11/19/2024 | | Service Return | | | Affidavit of Substituted Service - Citation - Posted 11/18/2024 - May C. Lau, M.D. |
| 11/19/2024 | | Correspondence | | | Affidavit of Service - Certified Mail 11/18/2024 - Citation - May C. Lau, M.D. |
| 11/19/2024 | | Correspondence | | | Affidavit of Digital Service - Citation 11/18/2024 - May C. Lau, M.D. |
| 12/6/2024 | | Motion to Transfer - Civil | | | Defendant's Motion to Transfer Venue |
| 12/9/2024 | | Original Answer | | | Defendant's Original Answer Subject to Motion to Transfer Venue |
| 12/11/2024 | | Notice of Appearance | | | Notice of Appearance of David Shatto as Counsel for Plaintiff |

**M.R. 4**

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|------|------|-------|------------------|-------|----------|
| 12/12/2024 | | Amended | | | Amended Notice of Appearance of David Shatto as Counsel for Plaintiff |
| 12/30/2024 | | Notice of Hearing | | | |
| 1/6/2025 | | Plaintiff's | | | Texas's Opposed Request for an Expedited Discovery Scheduling Order |
| 1/6/2025 | | Motion | | | Texas's Opposed Motion for Entry of a Protective Order |
| 1/7/2025 | | Notice of Hearing | | | |
| 1/7/2025 | | Notice of Hearing | | | |
| 1/10/2025 | | Defendant's | | | Defendant May C. Lau, M.D.'s Opposition to Texas's Opposed Motion for Entry of a Protective Order an ...More |
| 1/10/2025 | | Defendant's | | | Defendant May C. Lau, M.D.'s Opposition to Texas's Opposed Request for Expedited Discovery Schedulin ...More |
| 1/13/2025 | 8:00 AM | Protective Order - Discovery | | | |
| 1/13/2025 | | Rule 11 Agreement | | | |

M.R. 5

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|------|------|-------|------------------|-------|----------|
| 1/13/2025 | | Judge's Docket Entry | | | Case called for hearing in Cooper/Lau for hearing on (1) Motions for Expedited Discovery, and (2) Mo ...More |
| 1/13/2025 | | Order | | | Protective Order |
| 1/13/2025 | | Temporary Order | | | Temporary Sealing Order |
| 1/13/2025 | | Temporary Order | | | DUPLICATE |
| 1/14/2025 | | Subpoena Return - Not DC Issued | | | Affidavit of Service - Subpoena Duces Tecum - UT Southwestern Medical Center |
| 1/14/2025 | | Subpoena Return - Not DC Issued | | | Affidavit of Service - Subpoena Duces Tecum - Children's Health System of Texas |
| 1/17/2025 | | Motion | | | Defendant's Unopposed Motion for Permanent Rule 76a Sealing Order |
| 1/17/2025 | | Motion to Dismiss | | | Defendant's Rule 91a Motion to Dismiss |
| 1/24/2025 | | Subpoena Return - Not DC Issued | | | Affidavit of Service- Children's Health System Of Texas- Subpoena |
| 1/24/2025 | | Subpoena Return - Not DC Issued | | | Affidavit of Service - UT Southwestern Medical Center - |

**M.R. 6**

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|------|------|-------|------------------|-------|----------|
| 1/27/2025 | | Affidavit | | | Subpoena |
| 1/27/2025 | | Response | | | Declaration of Johnathan Stone |
| 1/29/2025 | | Notice of Appearance | | | Texas's Response to Defendant's Motion to Transfer Venue |
| 1/29/2025 | | Notice of Appearance | | | Defendant's Notice of Attorney Appearance, W. Henry Legg |
| 1/29/2025 | | Notice of Appearance | | | Defendant's Notice of Attorney Appearance, Evelyn M. Hudson |
| 1/30/2025 | | Notice | | | Public Notice of Motion to Seal Court Records |
| 1/31/2025 | | Notice of Hearing | | | Notice of Hearing |
| 2/3/2025 | | Motion | | | Motion of Resident Counsel in Support of Admission Pro Hac Vice of Julie Wilson Lascano |
| 2/3/2025 | | Motion | | | Verified Motion for Admission Pro Hac Vice of Julie Wilson Lascano |
| 2/4/2025 | | Notice | | | Notice of Filing Verified Copy of Public Notice of Defendant's Unopposed Motion for Permanent Sealin ...More |
| 2/5/2025 | | Subpoena Return - Not DC Issued | | | Affidavit of Service- Children's Health System of Texas |

**M.R. 7**

**M.R. 8**

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|------|------|-------|------------------|-------|----------|
| 2/5/2025 | | Subpoena Return - Not DC Issued | | | Affidavit of Service- Children's Health System of Texas |
| 2/7/2025 | | Order Granted | | | Order Granting Pro Hac Vice Admission of Julie Wilson Lascano |
| 2/10/2025 | | Subpoena Return - Not DC Issued | | | Affidavit of Service- UT Southwestern Medical Center |
| 2/10/2025 | | Subpoena Return - Not DC Issued | | | Affidavit of Service- UT Southwestern Medical Center |
| 2/14/2025 | | Objection | | | Non-Party Children's Health's Objections to Subpoenas for Production of Documents, and Motion for Pr …More |
| 2/18/2025 | | Subpoena Return - Not DC Issued | | | Subpoena Return - UT Southwestern Medical Center |
| 2/18/2025 | | Subpoena Return - Not DC Issued | | | Affidavit of Service- UT Southwestern Medical Center |
| 2/19/2025 | | Response | | | Defendant's Reply in Support of Motion to Transfer Venue |
| 2/20/2025 | | Motion | | | Plaintiff The State of Texas' Motion to Compel Defendant's Discovery Responses |
| 2/21/2025 | | Notice of Hearing | | | |

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|------|------|-------|------------------|-------|----------|
| 2/21/2025 | | Response | | | The State's Response to Defendant's Motion To Dismiss Under Texas Rule of Civil Procedure 91A |
| 2/24/2025 | | Notice of Appearance | | | |
| 2/24/2025 | | Motion | | | The Nonparty Patients' Motion for Protection from the State's First Request for Production, First Se ...More |
| 2/24/2025 | | Amended Petition | | | Plaintiff's First Amended Petition and Request for Injunctive Relief |
| 2/24/2025 | | Objection | | | Defendant's Opposition to the State of Texas' Motion to Compel Defendant's Discovery Responses |
| 2/25/2025 | | Notice of Hearing | | | Notice of Hearing on the Nonparty Patients' Motion for Protective from The State's First Requests fo ...More |
| 2/26/2025 | 9:00 AM | Transfer Hearing | | | |
| 2/26/2025 | 11:30 AM | Temporary Injunction | Cancelled: Per Judge | | |

**M.R. 9**

M.R. 10

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|---|---|---|---|---|---|
| 2/26/2025 | 8:30 AM | Motion to Compel | | | |
| 2/26/2025 | 9:00 AM | Motion to Seal Records | | | |
| 2/26/2025 | 8:30 AM | Motion Hearing | | | Motion for Protection |
| 2/26/2025 | | Order | | | Permanent Sealing Order |
| 2/26/2025 | | Judge's Docket Entry | | | Case called for hearing on (1) Motion to Transfer Venue, (2) Motion to Seal, and (3) Motion to Compe ...More |
| 2/26/2025 | | Defendant's | | | Defendant's Supplement to Her Motion to Transfer Venue |
| 2/26/2025 | | Amended Answer | | | Defendant's First Amended Answer Subject to Motion to Transfer Venue |
| 2/26/2025 | | Response | | | Defendant's Reply in Support of Rule 91a Motion to Dismiss |
| 2/27/2025 | | Notice | | | Non-Party Children's Health's Notice of Filing Affidavit |
| 2/27/2025 | | Motion | | | The State's Motion to Seal Court Records |

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|---|---|---|---|---|---|
| 2/27/2025 | | Correspondence | | | Civil Investigative Demand/Subpoena |
| 2/27/2025 | | Supplemental | | | Defendant's Supplemental Opposition to the State of Texas' Motion to Compel Defendant's Discovery Re ...More |
| 2/27/2025 | | Motion | | | The Nonparty Patients' Verified Expedited Motion to Stay Productions from the Hospital Systems |
| 2/27/2025 | | Correspondence | | | |
| 2/28/2025 | 8:30 AM | Motion to Dismiss | | | |
| 2/28/2025 | 8:30 AM | Protective Order - Discovery | | | |
| 2/28/2025 | | Judge's Docket Entry | | | Case called for hearing on (1) Motion to Dismiss, (2) Continued discussions regarding discovery issu ...More |
| 2/28/2025 | | Order Denied | | | |
| 2/28/2025 | | Order | | | |
| 2/28/2025 | | Order | | | |

**M.R. 11**

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|------|------|-------|------------------|-------|----------|
| 2/28/2025 | | Order | | | |
| 2/28/2025 | | Order | | | |
| 3/3/2025 | | Supplemental | | | Nonparty Patients' Supplement to the Verified Expedited Motion to Stay Productions from the Hospital ....More |
| 3/3/2025 | | Brief | | | State's Emergency Brief in Support of Oral Motion for Protection |
| 3/3/2025 | | Notice of Hearing | | | Notice of Emergency Hearing |
| 3/3/2025 | | Letter | | | Re: Correspondence to the Court |
| 3/3/2025 | | Motion | | | The States Motion to Temporarily Seal Court Records |
| 3/3/2025 | | Response | | | The Nonparty Patients' Response to State's Emergency Brief In Support of Oral Motion for Protection |
| 3/3/2025 | | Notice of Appearance | | | Notice of Appearance of Counsel for Nonparty the University of Texas Southwestern Medical Center |
| 3/3/2025 | | Notice of Appearance | | | Notice of Appearance |

**M.R. 12**

## Date | Time | Event | Cancelled Reason | Judge | Comments

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|---|---|---|---|---|---|
| 3/4/2025 | 2:00 PM | Motion Hearing | | | |
| 3/4/2025 | | Supplemental | | | Supplement to the Nonparty Patients' Response to State's Emergency Brief in Support of Oral Motion f ...More |
| 3/4/2025 | | Letter | | | Re: Letter to Court |

Rows per page: 100 ▼    1-100 of 138    |< < > >|

## Financial Summary

| Party Type | Charges | Payments | Balance |
|---|---|---|---|
| Defendant | $23.80 | $23.80 | $0.00 |
| Intervenor | $80.00 | $80.00 | $0.00 |
| Plaintiff | $1.20 | $1.20 | $0.00 |

**M.R. 13**

Privacy & Accessibility Policy | Judicial Online Search Build: 20250301.1
Copyright © 2025 Collin County Texas • All Rights Reserved • 972.548.4100 (McKinney) • 972.424.1460 (Metro)

# COLLIN COUNTY



# JUDICIAL ONLINE SEARCH

← Back to Results

## Case History

| | |
|---|---|
| **Case Number** | 493-07676-2024 |
| **Type** | All Other Civil Cases |
| **Style** | The State of Texas vs. May C Lau, M.D. |

**M.R. 14**

**Judicial Officer**  Nowak, Christine in 493rd District Court

**File Date**  10/18/2024

**Status**  Pending

## Parties

| Type | Name | Year of Birth | Attorney (Bar #) | Address |
|------|------|---------------|------------------|---------|
| Plaintiff | The State of Texas | | Jonathan Stone (24071779) | Consumer Protection Division, Office of the Attorney General, P.O. Box 12548, Austin, TX 78711 |
| Defendant | Lau, May C, M.D. | | Alexander M. Wolf (24095027) | Steptoe LLP, 717 Texas Avenue, Suite 2800, Houston, TX 77002 |

## Case Events

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|------|------|-------|------------------|-------|----------|
| 3/4/2025 | | Intervention $80.00 | | | Texas Attorney General's Petition in Intervention |

**M.R. 15**

**M.R. 16**

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|------|------|-------|------------------|-------|----------|
| 3/4/2025 | | Motion | | | Intervenor Texas Attorney General's Verified Motion to Show Authority |
| 3/5/2025 | | Order | | | Temporary Sealing Order |
| 3/5/2025 | | Motion | | | The State's Motion to Seal Court Records |
| 3/5/2025 | | Supplemental | | | Second Supplement to the Nonparty Patients' Response to the State's Emergency Brief in Support of Or …More |
| 3/5/2025 | | Motion | | | Nonparty The University of Texas Southwestern Medical Center's Motion for Protective Order |
| 3/6/2025 | | Notice of Hearing | | | Notice of Hearing on The State's Motion To Seal Court Records |
| 3/7/2025 | | Judge's Docket Entry | | | Case called for hearing on 3/7 in related case 493-08026-2024 on Cooper Request for Judicial Notice …More |
| 3/7/2025 | | Notice of Hearing | | | Non-Party Movant Children's Health Notice of Hearing |
| 3/7/2025 | | Amended | | | Non-Party Movant Children's Health's Amended Notice of Hearing |

**M.R. 17**

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|---|---|---|---|---|---|
| 3/7/2025 | | Notice of Hearing | | | |
| 3/7/2025 | | Order | | | Order Directing Compliance with February 28 Order Directing Production of Venue Discovery |
| 3/10/2025 | | Notice of Hearing | | | |
| 3/10/2025 | | Notice of Hearing | | | NonParty the University of Texas Southwestern Medical Center's Notice of Hearing |
| 3/10/2025 | | Notice of Hearing | | | Public Notice of Hearing to Seal Court Records |
| 3/11/2025 | | Notice | | | The States Notice of Filing Verified Copy of Public Notice of Hearing on The States' Motion To Seal ...More |
| 3/12/2025 | | Correspondence | | | Nonparty Patient's Request for Inspection in Camera and Privilege Log |
| 3/13/2025 | | Response | | | State's Response to Nonparty's Request for Inspection in Camera and Privilege Log |
| 3/13/2025 | | Response | | | Nonparty Patients' Reply to the State's Objections to the Nonparty Patients' Privilege Log |

**M.R. 18**

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|---|---|---|---|---|---|
| 3/14/2025 | | Notice | | | Nonparty the University of Texas Southwestern Medical Center's Notice of Production of Venue Discove ...More |
| 3/14/2025 | | Defendant's | | | Defendant May C. Lau, M.D.'s Request for Inspection in Camera and Privilege Log |
| 3/17/2025 | | Notice of Appearance | | | |
| 3/17/2025 | | Response | | | Nonparty The University of Texas Southwestern Medical Center's and David M. Walsh IV's Response to t ...More |
| 3/19/2025 | | Judge's Docket Entry | | | The Court has reviewed (1) the Nonparty Patients Request for Inspection In Camera and Privilege Log ...More |
| 3/19/2025 | | Notice | | | NonParty the University of Texas Southwestern Medical Center's Notice of Production for Court-Ordere ...More |
| 3/19/2025 | | Response | | | The State's Response to UT Southwestern Medical Center's |

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|---|---|---|---|---|---|
| 3/19/2025 | | Motion | | | Motion for a Protective Order and Request f ...More |
| 3/19/2025 | | | | | Defendant May C. Lau, M.D.'s Joinder to Defendant Brett Cooper, M.D.'s Motion to Strike Texas Attorn ...More |
| 3/19/2025 | | Notice | | | State's Advisory to the Court Regarding Appellate Proceedings |
| 3/20/2025 | 1:15 PM | Motion Hearing | | | State's Motion for Protection |
| 3/20/2025 | 1:15 PM | Motion Hearing | | | State's Rule 12 Motion |
| 3/20/2025 | 1:15 PM | Motion Hearing | | | UTSW Motion for Protection |
| 3/20/2025 | 1:15 PM | Motion Hearing | | | Nonparty Patients Expedited Motion for Partial Stay of Production |
| 3/20/2025 | 1:15 PM | Motion Hearing | | | Nonparty Patients Motion for Protection re Party Discovery |
| 3/20/2025 | 1:15 PM | Motion Hearing | | | Children's Motion for a Protective Order re Requests other than Medical Records |
| 3/20/2025 | | Response | | | The State's Response to Children's Medical Center's Motion for a |

**M.R. 19**

| Date | Time | Event | Cancelled Reason | Judge | Comments |
|---|---|---|---|---|---|
| 3/20/2025 | | Response | | | Protective Order |
| 3/26/2025 | 8:30 AM | Motion to Seal Records | | | The NonParty Patients' Response to the State's Advisory Regarding Appellate Proceedings |
| 4/16/2025 | 9:00 AM | Motion Hearing | | | Motion to Transfer Venue |

Rows per page: 100 ▼    101-138 of 138    |< < > >|

## Financial Summary

| Party Type | Charges | Payments | Balance |
|---|---|---|---|
| Defendant | $23.80 | $23.80 | $0.00 |
| Intervenor | $80.00 | $80.00 | $0.00 |
| Plaintiff | $1.20 | $1.20 | $0.00 |

**M.R. 20**

Privacy & Accessibility Policy | Judicial Online Search Build: 20250301.1

Copyright © 2025 Collin County Texas • All Rights Reserved • 972.548.4100 (McKinney) • 972.424.1460 (Metro)

**M.R. 21**

**M.R. 22**

**M. R. 23**

10/17/2024 10:44 AM KJS
Filed: ~~10/16/2024 8:47 AM~~
Michael Gould
District Clerk
Collin County, Texas
By Jessica Peltier Deputy
Envelope ID: 93309242

CAUSE NO. 493-07676-2024 _____

| | | |
|---|---|---|
| THE STATE OF TEXAS, *Plaintiff,* | § § § § | IN THE DISTRICT COURT OF |
| v. | § § § | COLLIN COUNTY, TEXAS |
| MAY C. LAU, M.D., *Defendant.* | § § § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND REQUEST
## FOR AN APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

1.      The debate in Texas on the legality of dangerous and experimental medical procedures seeking to transition or affirm a child's belief that their gender identity is inconsistent with their biological sex is over.

2.      Texas law prohibits surgeries, puberty blockers, and cross-sex hormones for the purposes of transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex. Tex. Health & Safety Code § 161.702.

3.      The Supreme Court of Texas held that the law was constitutional. *State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

4.      Today, enforcement begins against those who have violated the law by providing, prescribing, administering, or dispensing cross-sex hormones to minors for the purposes of transitioning their biological sex or affirming the child's belief that their gender identity is inconsistent with their biological sex.

5.      Plaintiff, STATE OF TEXAS, by and through the Attorney General of Texas, KEN PAXTON, complains of Defendant, MAY C. LAU, M.D. and will show Lau has engaged in deceptive trade practices, including by misleading pharmacies, insurance providers, and/or

1

## M.R. 24

patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

6. Lau is a scofflaw who is putting the health and safety of minors at risk by prescribing testosterone, a controlled substance, to biological female minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See* Tex. Occ. Code § 164.052(a)(24) (each violation separately violates the Texas Medical Practice Act); *see also* Tex. Occ. Code § 164.0552 (each violation serves as an independent ground for revocation of Lau's medical license).

7. Lau is also violating Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

8. Lau must be held accountable for her use, on at least 21 minor patients, of these illegal, dangerous, and experimental medical procedures for the purposes of transitioning their biological sex or affirming their belief that their gender identities are inconsistent with their biological sex.

## I. PARTIES

9. Defendant is MAY C. LAU, M.D. (NPI# 1750351375), an employee of the University of Texas Southwestern Medical Center ("UT Southwestern") in Dallas, Texas. She

holds hospital privileges at Childrens Medical Center Dallas and Children's Medical Center Plano. Lau may be served with process at UT Southwestern, 5323 Harry Hines Blvd. Dallas, TX 75390.

## II. DISCOVERY CONTROL PLAN

10. Discovery in this case should be conducted under Level 3 pursuant to Tex. R. Civ. P. 190.4. This case is not subject to the restrictions of expedited discovery under Tex. R. Civ. P. 169 because Texas seeks nonmonetary injunctive relief.

11. Additionally, Texas claims entitlement to monetary relief in an amount greater than **$1,000,000,** including civil penalties, reasonable attorney's fees, litigation expenses, restitution, and costs.

## III. JURISDICTION AND VENUE

12. Texas Occ. Code § 161.706(b) provides that venue is proper in "the county where the violation occurred or is about to occur."

13. Venue of this suit lies in Collin County, Texas pursuant to Texas Bus. & Com. Code § 17.47(b), because transactions forming the basis of this suit occurred in Collin County, Texas and Lau's unlawful conduct occurred in Collin County, Texas.

## IV. PUBLIC INTEREST

14. Lau violated Tex. Health & Safety Code § 161.702, Tex. Bus. & Com. Code § 17.46(a) and is engaged in unlawful practices, as set forth in this petition.

15. Texas has reason to believe that Lau is engaging in, has engaged in or is about to engage in, the unlawful acts or practices set forth below. Texas has further reason to believe Lau has caused injury, loss, and damage to Texas by endangering the health of its citizens. Therefore,

the Consumer Protection Division of the Office of the Attorney General of the State of Texas is of the opinion that these proceedings are in the public interest.

## V. TRADE AND COMMERCE

16. At all times described below, Lau engaged in conduct, the purported practice of medicine, which constitutes "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6).

## VI. NO NOTICE BEFORE SUIT

17. The Consumer Protection Division has reason to believe that Lau "is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful … and that proceedings would be in the public interest…." Tex. Bus. & Com. Code § 17.47(a).

18. The Consumer Protection Division did not contact Lau before filing suit to notify her "in general of the alleged unlawful conduct" because it is the opinion of the Consumer Protection Division that Lau likely "would destroy" or alter "relevant records if prior contact were made." *Id.*

## VII. APPLICABLE LAW

19. Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

20. Texas Bus. & Com. Code § 17.47 authorizes the Consumer Protection Division to bring an action for temporary and permanent injunction whenever it has reason to believe that any person is engaged in, in has engaged in, or is about to engage in any act or practice declared unlawful under Chapter 17 of the Business and Commerce Code.

M.R. 27

## VIII. FACTUAL BACKGROUND

A. *Texas Prohibits the Provision of Puberty Blockers and Cross-Sex Hormones to Minors for the Treatment of Gender Dysphoria.*

21. On May 17, 2023, the Legislature added Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children (SB 14)." Act of May 17, 2023, 88th Leg., R.S., ch. 335; *Loe*, 692 S.W.3d at 223.

22. Senate Bill 14 prohibits physician and health care providers from performing certain procedures or treatments when performed to (1) "transition[] a child's biological sex as determined by the sex organs, chromosomes, and endogenous profiles of the child"; or (2) "affirm[] the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." Tex. Health & Safety Code § 161.702.

23. The effective date for SB14 was September 1, 2023.

24. Senate Bill 14 added Tex. Health & Safety Code § 161.702(3), which prohibits physicians from knowingly prescribing the following to transition a child's biological sex or affirm a child's perception of their sex if it is different from their biological sex: "(A) puberty suppression or blocking prescription drugs to stop or delay normal puberty; (B) supraphysiologic doses of testosterone to females; or (C) supraphysiologic doses of estrogen to males."

25. Physicians were permitted to prescribe to patients already subject to a continuing course of treatment that began prior to June 1, 2023, and who attended at least 12 mental health counseling or psychotherapy sessions over a period of at least six months prior to starting treatment, provided that the prescriptions were for the purpose of "wean[ing] off the prescription drug over a period of time and in a manner that is safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b)-(c).

5

26. Senate Bill 14 also added Tex. Occ. Code § 164.052(a)(24), which proscribed physicians from "perform[ing] a gender transitioning or gender reassignment procedure or treatment in violation of [Tex. Health & Safety Code § 161.702]."

27. Finally, SB14 added Tex. Occ. Code § 164.0552, which commands that the Texas Medical Board "*shall revoke* the license or other authorization to practice medicine of a physician who violates [Tex. Health & Safety Code § 161.702]." (emphasis added).

B. *The Texas Supreme Court Held That SB 14 is Constitutional.*

28. Before SB 14 took effect several minors, parents of minors, and physicians brought suit in Travis County, TX, alleging a variety of constitutional challenges to the law. *Loe*, 692 S.W.3d at 222.

29. On August 25, 2023, a Travis County District Court entered a temporary injunction enjoining enforcement of SB 14. *Id.*

30. Texas appealed directly to the Texas Supreme Court, thereby dissolving the temporary injunction. *Id.*

31. On September 1, 2023, the Texas Supreme Court allowed SB 14 to take effect during the pendency of the appeal. *Id.*

32. On June 28, 2024, the Supreme Court of Texas reversed and vacated the trial court's Temporary Injunction Order after rejecting each of the plaintiffs' constitutional challenges to SB 14. *Id.* at 239.

C.  *Lau is a Radical Gender Activist.*

33.  Lau "specializes in adolescent female and male sexual and reproductive health, including … gender dysphoria …." *Biography of May Lau, M.D.*, UT Southwestern (accessed October 8, 2024), https://tinyurl.com/259556bc.

34.  Lau serves as "Medical Director of the Adolescent and Young Adult clinic at Children's Medical Center Dallas." *Id.*

35.  Lau has published extensively advocating for the medical transition of children's biological sex, contributing to the following:

    i.  Tri Pham, *et al.*, *Transition from Pediatric to Adult Care for Transgender Youth: A Qualitative Study of Patient, Parent, and Provider Perspectives*, LGBT Health (May-Jun 2021), https://tinyurl.com/5n8jbc6n.

    ii.  Bethany G. Hart, *et al.*, *Developing a Curriculum on Transgender Health Care for Physician Assistant Students*, Journal of Physician Assistant Education (Mar. 2021), https://tinyurl.com/mvbhyp8e.

    iii.  Lauren R. Shaffer, *et al.*, *Gender-affirming hormone therapy in cystic fibrosis – A case of new Pseudomonas infection*, Respiratory Medicine Case Reports (2021), https://tinyurl.com/mv4jp85.

    iv.  Laura E. Kuper, *et al.*, *Body Dissatisfaction and Mental Health Outcomes of Youth on Gender-Affirming Hormone Therapy*, Pediatrics (2020), https://tinyurl.com/5n8s75v8.

    v.  Laura E. Kuper, *et al.*, *Baseline Mental Health and Psychosocial Functioning of Transgender Adolescents Seeking Gender-Affirming Hormone Therapy*, Journal of Developmental and Behavioral Pediatrics (Oct/Nov 2019), https://tinyurl.com/4wxxzes5.

36.  Approximately 20% of the publications listed in Lau's biography relate to gender transitioning. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

7

**M.R. 30**

37.     On January 8, 2020, Lau and her physician's assistant, Patti Pagels MPAS, PA-C, gave a presentation entitled *Transgender Care of Adolescents and Adults*, Youtube (Jan. 8, 2020), https://tinyurl.com/mkt4pzs3 wherein they asserted:

i.      That Lau alters her patient's medical records to reflect their preferred name, sex, and pronouns, which can change on a visit-to-visit basis, something that is apparently "fairly typical [and] kind of persists into adulthood" for her patients. 20:59-22:40.

ii.     That "adolescents' gender identity is fluid so from one day or one point in time they say no, I'm this, I'm female, but then realize later on that I'm male." 28:08-28.

iii.    That "we're not sure about the safety and long-term effects of puberty suppression in youth with gender dysphoria we do know that this is safe to use in youth with precocious puberty, but we don't know if we can translate those side effects and the long-term effects to those with gender dysphoria and who are using puberty suppression for those reasons." 28:28-46.

iv.     That "some of the consequences of hormonotherapy are permanent." 29:57-30:09.

v.      That biological females that take testosterone to transition their biological sex "will get some atrophy of the vagina … [and thereafter for the duration of their life] they'll need some sort of water-based lubricant if they're going to still use the vagina as part of sex …." 32:41-52.

vi.     That "it's so important that these folks get identified in childhood because when they come to me and are 30 or 40 years old and they've been under the influence of their gender hormones all this time it's very hard to reverse it. I can't take somebody that's, you know, five-foot ten and very muscular uh and make them a woman overnight even if they use the clothing and so forth "33:05-39.

vii.    That "testosterone is a powerful hormone, so I tell them that the effect of estrogen is like a feather, you know, just it's just a whiff and whereas testosterone you give a little bit [and] you get a lot of effect." 33:39-59.

viii.   That "I want you to look at the graphic to see that the number of surgeries has increased and continue to increase and many of our patients … are getting them done. There are more surgeries for the affirm females than the affirm males and we may not know how many people actually are getting gender affirming surgery because some of them are going to Thailand,

**M.R. 31**

they're going to Europe, they're going to other counties to get this done because its much cheaper." 37:37-38:13.

ix. "There's a recent study May 2018 that suggests the timing of top surgery or breast surgery for affirm males should be based on physical and mental health status of the youth not by a specific age and *I will tell you that we have had youth in our clinic come in who have had top surgery before they have even started hormone treatment*." 39:39-40:05 (emphasis added).

38. Lau was previously associated with the now dissolved Gender Education and Care Interdisciplinary Support (GENECIS) Program, which was dedicated to using medical interventions to transition the biological sex of children or affirm a child's beliefs that their gender identity is inconsistent with their biological sex. May Lau, M.D., and Patti Pagels MPAS, PA-C, *Transgender Care of Adolescents and Adults*, Mid-Atlantic Chapter of the Medical Library Association (Jan. 8, 2020), https://tinyurl.com/mry8wtv9.

39. Ximena Lopez, M.D., the founder of the GENECIS, shuttered the program and high-tailed it to California shortly after SB 14 was enacted. Paul Hunter, *Texas ban on gender-affirming care leaves trans teens without options*, CBC News (July 5, 2023), https://tinyurl.com/4r6c8kr5 (Lopez declaring that medically transitioning children is "one of the most important things I've done in my life" and stating that she was leaving Texas because she thinks the whole state is "crazy.").

40. Lopez and Lau are co-authors on several publications advocating for the medical transition of minors diagnosed with gender dysphoria. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

41. Lau and the staff of GENECIS were thanked for assisting with a medical student's dissertation on transitioning minors from their biological sex. Antoinette Moore, *Health Related*

*Quality of Life of Transgender Adolescents Undergoing Hormonal Transition or Elective Pubertal Delay*, UT Southwestern (2018), https://tinyurl.com/3y6jwv7y.

42.     Lau's practices, publications, and presentations betrays an entrenched commitment to a gender ideology that desires to medically transition the biological sex of children or affirm the belief that a child's gender identity is inconsistent with their biological sex.

### IX.     VIOLATIONS OF SB 14.

43.     Lau has knowingly violated Tex. Health & Safety Code § 161.702(3).

A.     *Cross-Sex Hormones to Transition Biological Sex or Affirm a Child's Belief that their Gender Identity is Inconsistent with their Biological Sex.*

44.     High dose cross-sex hormones are commonly used by gender activists to transition the biological sex of children or affirm a child's belief that their gender identity is inconsistent with their biological sex.

45.     High dose cross-sex hormones are prescribed to induce a supraphysiologic state where the hormone levels are greater than would otherwise normally be present in the child's body.

46.     As a result of the hormones, the child will develop secondary sex characteristics.

47.     Testosterone is a cross-sex hormone that is prescribed to transition biological females to biological females with irreversible male secondary sex characteristics.

48.     Testosterone is a Schedule III controlled substance.

49.     Radical gender activists within the medical profession rely on the so-called "Standards of Care" promulgated by the World Professional Association of Transgender Health (WPATH) as guidelines for transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex. *See e.g.* Selena Simmons-Duffin, *Rachel Levine calls state anti-LGBTQ bills disturbing and dangerous to trans youth*, NPR (Apr. 29,

**M.R. 33**

2022) (claiming that the standard for treating gender dysphoria is set by the WPATH), https://tinyurl.com/3jxymtum.

50.     WPATH recommends that a doctor transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex prescribe enough testosterone to induce the same level that would be present in a biological male. Standards of Care 8, WPATH pg. 110 (2023), https://tinyurl.com/32z3bnhr.

B.     Lau's Testosterone Prescribing

51.     WPATH recommends transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex by prescribing injectable testosterone cypionate at 100-200 mg. so as to induce a state of male puberty in a biological female such that she will develop irreversible male secondary sex characteristics, *Standards of Care 8*, WPATH App'x C, https://tinyurl.com/32z3bnhr.

52.     WPATH recommends "induction of male puberty" in a biological female minor by prescribing testosterone esters at "$25mg/m^2/2$ weeks (or alternatively half this dose weekly). Increase by 25 $25mg/m^2/2$ weeks every 6 months until adult dose and target testosterone levels achieved." *Id.*

53.     WPATH alternatively recommends the following testosterone regime for biological females to induce male secondary sex characteristics, "testosterone enanthate/cypionate 50-100 IM/SQ weekly or 100-200 IM every 2 weeks." *Id.*

54.     A "testosterone cypionate injection is use[d] to treat **males** whose bodies do not make enough natural testosterone, a condition called hypogonadism. Testosterone is a male hormone responsible for the growth and development of the male sex organs and maintenance of

secondary sex characteristics. **This medicine is not for use in female patients**." TESTOSTERONE CYPIONATE, Mayo Clinic (accessed October 15, 2024) (emphasis added), https://tinyurl.com/558b8fcv.

55.     The Federal and Drug Administration warns that testosterone cypionate "**is contraindicated in pregnant women and not indicated for use in females**." TESTOSTERONE CYPIONATE INJECTION, FDA (June 2022) (emphasis added), https://tinyurl.com/4psvbdeb.

56.     Lau has violated the law by providing, prescribing, administering, or dispensing testosterone to minor patients for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex:

**Patient One**[1]

57.     Patient One resides in Collin County, TX.

58.     Patient One was 17 years old during the relevant time.

59.     Lau identifies Patient One as a biological female.

60.     On October 2, 2023, after SB 14 went into effect, Lau wrote Patient One a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate.

61.     The prescriptions purpose is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

62.     On October 12, 2023, Patient One filled the prescription at a pharmacy located in Collin County, TX.

63.     Later, Patient One turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone**.**

---

[1]     Pseudonyms are used throughout to protect the identity of the victim minor patients.

**M.R. 35**

64. The prescriptions purpose is for transitioning her biological sex or affirming her belief that their gender identity is inconsistent with her biological sex.

**Patient Two**

65. Patient Two resides in Collin County, TX.

66. Patient Two was 17 years old during the relevant time.

67. Lau identifies Patient Two as a biological female.

68. On October 9, 2023, after SB 14 went into effect, Lau wrote Patient Two a prescription for a 90-day supply of 200 mg/ml of testosterone cypionate.

69. The prescriptions purpose is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

70. The same day, Patient Two filled the prescription at a pharmacy located in Collin County, TX.

**Patient Three**

71. Patient Three resides in Denton County, TX.

72. Patient Three was 17 years old during the relevant time.

73. Lau identifies Patient Three as a biological male, but upon information and belief, Patient Three may be a biological female.

74. On August 25, 2023, Lau wrote Patient Three a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

75. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**M.R. 36**

76. On January 7, 2024, 135-days after the prescription was written and after SB 14 went into effect, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

77. On February 23, 2024, Lau wrote Patient Three a prescription for a 30-day supply of 200 mg/ml of testosterone cypionate.

78. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

79. On February 25, 2024, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

80. Later, Patient Three turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

81. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Four**

82. Patient Four resides in Dallas County, TX.

83. Patient Four was 16 during the relevant time.

84. Lau identifies Patient Four as a biological female.

85. On August 31, 2023, Lau wrote Patient Four two prescriptions for a 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

86. The prescriptions purposes is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

87. On September 1, 2023, after SB 14 went into effect, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

88. On October 28, 2023, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

89. On March 26, 2024, Lau wrote Patient Four two prescriptions for a 28-day supply of 200 mg/ml of testosterone cypionate.

90. On March 28, 2024, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

91. On July 26, 2024, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

**Patient Five**

92. Patient Five resides in Collin County, TX.

93. Patient Five was 16 years old at the relevant time.

94. Lau identifies Patient Five as a biological male, but upon information and belief, Patient Five may be a biological female.

95. On August 17, 2023, Lau wrote Patient Five a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription both before and after SB 14 took effect.

96. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

97. On October 7, 2023, after SB 14 went into effect, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

98. On November 14, 2023, Lau wrote Patient Five a prescription with five refills for 28-day supplies of 200 mg/ml of testosterone cypionate.

M.R. 38

99. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

100. The same day, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

101. On December 11, 2023, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

102. On January 17, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

103. On March 11, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

104. On April 12, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

105. On June 21, 2024, Lau wrote Patient Five multiple prescriptions for 22-day supplies of 200 mg/ml of testosterone cypionate.

106. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

107. On June 24, 2024, Patient Five filled the prescription a pharmacy located in Collin County, TX.

108. On July 13, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

109. On August 18, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

**Patient Six**

110. Patient Six resides in Collin County, TX.

111. Patient Six was 17 years old at the relevant time.

112. Lau identifies Patient Six as a biological male, but upon information and belief, Patient Six may be a biological female.

113. On August 30, 2023, Lau wrote Patient Six one prescription with one refill for 84-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

114. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

115. On October 24, 2023, 55-days after Lau wrote the prescription and after SB 14 went into effect, Patient Six filled the prescription at a pharmacy located in Collin County, TX.

116. On January 22, 2024, Patient Six refilled the prescription at a pharmacy located in Collin County, TX.

117. Later, Patient Six turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

118. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Seven**

119. Patient Seven resided in Wise County, TX.

120. Patient Seven was 17 at the relevant time.

121. Lau identifies Patient Seven as a biological female.

17

M.R. 40

122.    On August 31, 2023, Lau wrote Patient Seven a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

123.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

124.    On September 1, 2023, after SB 14 went into effect, Patient Seven filled the prescription at a pharmacy located in Wise County, TX.

125.    Later, Patient Seven turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

126.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Eight**

127.    Patient Eight resides in Dallas County, TX.

128.    Patient Eight was 16 years old at the relevant time.

129.    Lau identifies Patient Eight as a biological male, but upon information and belief, Patient Eight may be a biological female.

130.    On August 28, 2023, Lau wrote Patient Eight a prescription for a 28-day supply of 200 mg/ml of Depo-testosterone with orders to fill the prescription after SB 14 took effect.

131.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

132.    On October 16, 2023, 61-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eight filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Nine**

133. Patient Nine resides in Dallas County, TX.

134. Patient Nine was 14 years old at the relevant time.

135. Lau identifies Patient Nine as a male, but upon information and belief, Patient Nine may be a biological female.

136. On July 5, 2023, Lau wrote Patient Nine a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

137. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

138. On October 27, 2023, 114-days after Lau wrote the prescription and after SB 14 went into effect, Patient Nine filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Ten**

139. Patient Ten resides in Tarrant County, TX.

140. Patient Ten was 14 years old at the relevant time.

141. Lau identifies Patient Ten as a biological female.

142. On August 29, 2023, Lau wrote Patient Ten two prescriptions for either a 7-day or 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

143. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

144. On October 2, 2023, after SB 14 went into effect, Patient Ten filled the prescription at a pharmacy located in Tarrant County, TX.

145. On November 1, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

146. On December 4, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

147. On January 5, 2024, Patient Ten filled the second prescription at a pharmacy located in Tarrant County, TX.

148. On February 12, 2024, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Eleven**

149. Patient Eleven resides in Kaufman County, TX.

150. Patient Eleven was 14 years old at the relevant time.

151. Lau identifies Patient Eleven as a biological female.

152. On August 29, 2023, Lau wrote Patient Eleven four prescriptions for 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

153. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

154. On September 5, 2023, after SB 14 went into effect, Patient Eleven filled the prescription at a pharmacy located in Kaufman County, TX.

155. On October 15, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

M.R. 43

156. On November 17, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

157. On January 7, 2024, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

**Patient Twelve**

158. Patient Twelve resides in Rockwall County, TX.

159. Patient Twelve was 14 years old at the relevant time.

160. Lau identifies Patient Twelve as a biological female.

161. On August 31, 2023, Lau wrote Patient Twelve a prescription for a 90-day supply of testosterone 1.62% Gel Pump with orders to fill the prescription after SB 14 took effect.

162. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

163. On January 19, 2024, 141-days after Lau wrote the prescription and after SB 14 took effect, Patient Twelve filled the prescription at a pharmacy located in Rockwall County, TX.

**Patient Thirteen**

164. Patient Thirteen resides in Dallas County, TX.

165. Patient Thirteen was 15 years old at the relevant date.

166. Lau identifies Patient Thirteen as a biological female.

167. On July 11, 2023, Lau wrote Patient Thirteen several prescriptions for a 90-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

168.	The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

169.	On October 13, 2023, 94-days after Lau wrote the prescription and after SB 14 went into effect, Patient Thirteen refilled the prescription at a pharmacy located in Dallas County, TX.

**Patient Fourteen**

170.	Patient Fourteen resides in Denton County, TX.

171.	Patient Fourteen was 15 years old at the relevant time.

172.	Lau identifies Patient Fourteen as a biological female.

173.	On August 21, 2023, Lau wrote Patient Fourteen a prescription for a 34-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

174.	The purpose  is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

175.	On October 27, 2023, 67-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fourteen filled the prescription at a pharmacy located in Denton County, TX.

**Patient Fifteen**

176.	Patient Fifteen resides in Dallas County, TX.

177.	Patient Fifteen was 15 years old at the relevant time.

178.	Lau identifies Patient Fifteen as a biological female.

179.	On June 23, 2023, Lau wrote Patient Fifteen a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

180.	The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

M.R. 45

181. On September 11, 2023, 80-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fifteen filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Sixteen**

182. Patient Sixteen resides in Tarrant County, TX.

183. Patient Sixteen was 15 years old at the relevant time.

184. Lau identifies Patient Sixteen as a biological female.

185. On August 23, 2023, Lau wrote Patient Sixteen a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

186. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

187. On January 7, 2024, 137-days after Lau wrote the prescription and after SB 14 went into effect, Patient Sixteen filled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Seventeen**

188. Patient Seventeen resides in Potter County, TX.

189. Patient Seventeen was sixteen years old at the relevant time.

190. Lau identifies Patient Seventeen as a biological female.

191. On August 31, 2023, Lau wrote Patient Seventeen a prescription for a 42-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

192. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

193. On September 1, 2023, after SB 14 went into effect, Patient Seventeen filled the prescription at a pharmacy located in Potter County, TX.

**Patient Eighteen**

194.    Patient Eighteen resides in Collin County, TX.

195.    Patient Eighteen was 16 years old at the relevant time.

196.    Lau identifies Patient Eighteen as a biological male, but upon information and belief, Patient Eighteen may be a biological female.

197.    On August 24, 2023, Lau wrote Patient Eighteen a prescription for an 80-day supplies of 200 mg/ml of testosterone 12.5 mg/1.25 g with orders to fill the prescription after SB 14 took effect.

198.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

199.    On October 27, 2023, 64-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eighteen filled the prescription at a pharmacy located in Saint Louis County, MO.

**Patient Nineteen**

200.    Patient Nineteen resides in Collin County, TX.

201.    Patient Nineteen was 16 years old at the relevant time.

202.    Lau identifies Patient Nineteen as a biological male, but upon information and belief, Patient Nineteen may be a biological female.

203.    On August 31, 2023, Lau wrote Patient Nineteen a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

204.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

24

205. On October 24, 2023, 54- days after Lau wrote the prescription and after SB 14 went into effect, Patient Nineteen filled the prescription at a pharmacy located in Collin County, TX.

**Patient Twenty**

206. Patient Twenty resides in Dallas County, TX.

207. Patient Twenty was 17 years old at the relevant time.

208. Lau identifies Patient Twenty as a biological female.

209. On August 31, 2023, Lau wrote Patient Twenty a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

210. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

211. On November 22, 2023, 83-days after Lau wrote the prescription and after SB 14 went into effect, Patient Twenty filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Twenty-One**

212. Patient Twenty-one resides in Dallas County, TX.

213. Patient Twenty-one was 17 years old at the relevant time.

214. Lau identifies Patient Twenty-one as a biological female.

215. On August 15, 2023, Lau wrote Patient Twenty-one a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

216. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

217.     On September 10, 2023, after SB 14 went into effect, Patient Twenty-one filled the prescription at a pharmacy located in Dallas County, TX.

218.     Later, Lau identifies the now 18-year-old Patient Twenty-one, as a biological male.

* * *

219.     Paragraphs 58-219 describe 21 minor patients who Lau has unlawfully treated with testosterone for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of SB 14.

220.     Some of Lau's medical records for the patients identified in the preceding paragraphs indicate that the patients are male, but upon information and belief, **all of these patients are biological females** and Lau is prescribing to them for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex. *See also supra* ¶ 37(i) (Lau admitting that she commonly changes the biological sex of her patients in her medical records).

221.     Lau cannot circumvent SB 14 by writing prescriptions to her patients *prior* to the SB 14 taking effect with orders to fill or refill the prescriptions *after* it takes effect, see 22 Tex. Admin. Code § 315.3(b)(2) (Schedule III Controlled Substances can be refilled up to five times within six months of the date of issuance), because a "prescription" order is not a singular discrete act, but a continuing act of treatment that begins with the prescription being written and continues through the pharmacist filling the prescription and the drug being used as directed by the patient, or until the written prescription expires or is cancelled, and *alternatively*, because by issuing prescriptions with orders to fill them after the effective date of SB 14 Lau is "providing" the

prescribed medication to the patient at the time they fill and use the prescription as directed, which they could not do otherwise without the prescription.

222. Each and every prescription written by Lau after September 1, 2023, or filled or taken as directed by a patient after September 1, 2023, for the purpose of transitioning the minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex violates Tex. Health & Safety Code § 161.702(3).

## X. FALSE, MISLEADING, OR DECEPTIVE ACTS

223. Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

224. Lau, as alleged herein, has in the course of trade and commerce engaged in false, misleading, and deceptive acts and practices declared unlawful in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

225. Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

226. As illustrated in the representative example below, Lau deceptively misleads pharmacies, insurance providers, and/or the patients by falsifying patient medical records, prescriptions, and billing records to indicate that the use of puberty blockers for minor patients are for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

227. Lau also likely deceptively misled pharmacies, insurance providers and/or the patients by falsifying patient medical records, prescriptions and billing records to indicate the use of Testosterone for minor Patients One through Twenty-one for something other than

transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

228. Texas Bus. & Com. Code § 17.46(b)(5) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not."

229. As illustrated in the representative example below, Lau deceptively represents that goods or services have approval, characteristics, uses, or benefits which they do not or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not have by falsifying patient medical records, prescriptions, and billing records for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

230. Texas Bus. & Com. Code § 17.46(b)(24) prohibits "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

231. As illustrated in the representative example below, Lau deceptively induces pharmacies, insurance providers, and/or the patients into entering into transactions by falsifying patient medical records, prescriptions, and billing records to indicate that treatments are for something other than transitioning a child's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

A. *Lau uses false diagnoses and billing codes on transgender patients.*

**Patient Twenty-Two**

232. Patient Twenty-Two, a 15-year-old minor, was first seen by Lau in January 2023.

233. Lau represented that Twenty-two was identified in the medical records as a male at the time.

234. Lau falsely billed Patient Twenty-Two's insurance using the diagnostic code for an endocrine disorder, unspecified (E349).

235. In fact, Lau diagnosed Twenty-two with gender dysphoria and began "treatment" for that condition by prescribing and inserting a puberty blocker device in the patient for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

236. On August 3, 2023, Lau changed Twenty-two's sex to female in the medical and billing records—further proof that Lau was transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

237. Less than a week later, Twenty-two met with Lowell, the founder of Queer Med and who exclusively treats transgender patients, *see What We Do*, QueerMed (accessed October 8, 2024), https://tinyurl.com/2rr2ff7e, for a fertility preservation counseling visit.

238. Lowell used the same false diagnostic billing code for endocrine disorder, unspecified (E349), when she was actually providing treatment to Patient Twenty-Two for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

239. Two weeks later, on August 18, 2023, Twenty-two visited Lau who falsely billed for the removal and reinsertion of a puberty blocker for the treatment of an endocrine disorder, unspecified (E349)—when in fact Lau was using puberty blockers for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

240. The same day, Twenty-two was seen by a different provider at Children's Medical Center of Dallas who correctly used billing codes for gender identity disorder, unspecified (F649).

241. Patient Twenty-Two had follow up visits with Lowell of QueerMed in January and March 2024, where her diagnosis was again falsely billed as an endocrine disorder, unspecified (E349).

242. Thus, even prior to September 1, 2023, and despite other providers correctly diagnosing Twenty-two with gender identity disorder, unspecified (F649), Drs. Lau and Lowell demonstrated a pattern of false, misleading, and deceptive acts by choosing to falsify Patient Twenty-Two's biological sex, medical records, diagnoses, treatment plan, prescriptions, and billing records to conceal that they were transitioning Patient Twenty-Two's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

B.    *Gender dysphoria is not an endocrine disorder.*

243. "Insurance Coding Alternatives for Trans Healthcare," Campaign for Southern Equality (accessed October 8, 2024), https://tinyurl.com/5ce62v2d, purports to assist healthcare providers with instructions on how to use false billing codes to provide medical treatments for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

244. The fact sheet claims that it is intended to "assist trans people in advocating for themselves with their healthcare providers and insurance companies" and discusses "insurance codes for trans healthcare that are commonly accepted and rejected." *Id.*

245. The fact sheet notes certain billing codes that are commonly rejected by insurance providers include the F64 set of codes for gender dysphoria or gender identity disorder. *Id.*

246. The fact sheet recommends billing for hormone replacement therapy to transition a minor's biological sex as an endocrine disorder, unspecified (E34.9).

247. Upon information and belief, Lau is using this diagnostic billing code to falsely represent that she's treating patients for an unspecified endocrine disorder, when in fact she is transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex—something that is *not* an endocrine disorder.

248. An endocrine disorder results from the improper function of the endocrine system.

249. Children normally enter puberty reflecting their biological sex. There is no disorder at all. Rather, the disorder results when a physician intervenes in a child's natural puberty to induce through puberty blockers and cross-sex hormones a state of puberty naturally occurring in the opposite sex. Such physician *causes a disorder* rather than treats one, by introducing supraphysiological dose of a cross-sex hormone to force a child's body (a biological reality) to fit that child's gender identity (a mental construct).

250. Here, Lau is engaging in false, misleading, or deceptive practices, by falsely diagnosing and billing patients using the endocrine disorder, unspecified, code instead of the F64 gender related diagnosis codes to conceal that she is transitioning their biological sex or affirming

their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

## XI.     APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

251.    Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

252.    Texas has reason to believe that Lau is engaging in, has engaged in, or is about to engage in acts and practices declared to be unlawful under Tex. Health & Safety Code § 161.702(3) and Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), and believes these proceedings to be in the public interest.

253.    Texas is entitled to, and seeks, temporary and permanent injunctions pursuant to Tex. Health and Safety Code § 161.702 as well as Tex. Bus. & Com. Code § 17.47.

254.    Cessation of unlawful conduct by Lau shall not render such court action moot under any circumstances. *Id*.

255.    Immediate injunctive relief is necessary to prevent continuing harm prior to trial.

256.    In addition to the above-requested relief, pursuant to Tex. Civ. Prac.  Rem. Code § 65.011 *et seq*. and Tex. R. Civ. P. 680 *et seq*., to preserve the status quo pending a full trial on the merits, *see Butnaru v. Ford Motor Co*., 84 S.W.3d 198, 204 (Tex. 2002), the Texas Attorney General's Office request a temporary injunction against Lau that enjoins her from the following until final resolution of this matter:

    i.  Prescribing supraphysiologic doses of testosterone and estrogen to minors for the purpose of transitioning their biological sex; and

    ii. Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for treatments to transition a child's biological sex under false

32

# M.R. 55

diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

## XII.    PRAYER FOR RELIEF

257.    NOW THEREFORE Texas prays that Lau be cited to appear and that after due notice and hearing, a temporary injunction be issued, and that upon final hearing a permanent injunction be issued, restraining and enjoining Lau and all persons in active concert or participation with her, who receive actual notice of the injunction by personal service or otherwise from engaging in false, misleading or deceptive acts and practices declared to be unlawful by Tex. Health and Safety Code § 161.702 and Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24), including but not limited to:

    i.   Prescribing supraphysiologic doses of testosterone and estrogen to minors for the purpose of transitioning their biological sex;

    ii.   Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for treatments to transition a child's biological sex under false diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

258.    TEXAS FURTHER PRAYS that upon final hearing, this Court order:

    i.   Adjudge against Lau civil penalties in favor of the State in the amount of not more than $10,000 per violation of Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24);

    ii.   Order Lau to pay Texas's attorneys' fees and costs of court pursuant to Tex. Gov't Code § 402.006(c);

    iii.   Order Lau to pay both pre-judgment ad post-judgment interest on all money awards as provided by law; and

    iv.   Grant all other and further relief Texas may show itself entitled to.

33

## M.R. 56

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
State Bar No. 24092619
Deputy Chief, Consumer Protection Division

Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Telephone: 512-463-2185
Facsimile: 512-473-8301
**ATTORNEYS FOR TEXAS**

## DECLARATION

Pursuant to Tex. Civ. Rem. & Prac. Code § 132.001(f), JOHNATHAN STONE submit this unsworn declaration in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by Texas Rule of Civil Procedure 682. I am an employee of the following governmental agency: Texas Office of the Attorney General. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the factual statements in the foregoing are true and correct.

Executed in Travis County, State of Texas, on the 17th day of October, 2024.


/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Emily Samuels on behalf of David Shatto
Bar No. 24104114
emily.samuels@oag.texas.gov
Envelope ID: 93309242
Filing Code Description: Plaintiff's Original Petition (OCA)
Filing Description: Plaintiff's Verified Original Petition and Request for an
Application for Temporary and Permanent Injunctions
Status as of 10/18/2024 10:26 AM CST

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| Matthew T.Kennedy | | matt.kennedy@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| David G. Shatto | | david.shatto@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| Zoann Willis | | zoann.willis@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| Clayton Watkins | 24103982 | clayton.watkins@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |

**M.R. 59**

CAUSE NO. 493-07676-2024

| THE STATE OF TEXAS. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D. | § | |
| Defendant. | § | 493RD JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Mauricio Segovia** who, being by me duly sworn, deposed and said:

"The following came to hand on **Jan 16, 2025, 11:25 am,**

**STATE'S NOTICE OF SUBPOENA DUCES TECUM, SUBPOENA DUCES TECUM PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205, PROTECTIVE ORDER,**

and was executed at **1999 BRYAN ST SUITE 900, DALLAS, TX 75201** within the county of DALLAS at 12:35 PM on **Thu, Jan 16 2025,** by delivering a true copy to the within named

**CHILDREN'S HEALTH SYSTEM OF TEXAS C/O CT CORPORATION SYSTEM**
**accepted by Intake Specialist William Miller**
Witness Fee $1.00

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Mauricio Segovia
Certification Number: PSC-1689
Certification Expiration: 8/31/2026

**BEFORE ME,** a Notary Public, on this day personally appeared **Mauricio Segovia,** known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON ___1/16/2025___

Notary Public, State of Texas

MARIA M. SEGOVIA
My Notary ID # 129480220
Expires July 5, 2025

**M.R. 60**

| THE STATE OF TEXAS., | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## STATE'S NOTICE OF SUBPOENA DUCES TECUM

To:  Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201

Please take notice that pursuant to Tex. R. Civ. P. 205 gives you 10 days' notice of its intent to serve the attached subpoena duces tecum. The State of Texas has complied with all the requirements in Tex. R. Civ. P. 205.

Please take notice that the Court has entered the attached Protective Order in this matter expressly finding that attestations are not required. *See* Prot. Ord. at 10.

January 16, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division

**M.R. 61**

State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2025, a copy of the foregoing document was served to all counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

**M.R. 62**

# THE STATE OF TEXAS

## SUBPOENA DUCES TECUM
### PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

CAUSE NO. 493-07676-2024      IN THE 493rd JUDICIAL DISTRICT COURT OF COLLIN COUNTY, TEXAS

*State of Texas vs. Defendant May C. Lau, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN RULE 176 T.R.C.P.**

**YOU ARE HEREBY COMMANDED TO SUMMON** Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201, to provide documents to the

**Office of the Attorney General**
300 West 15th Street
Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN SEVEN DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street, 9th Floor, Austin, TX 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on January 16, 2025,** at the request the request of the State of Texas.

# M.R. 63

*/s/ Johnathan Stone*

JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
Deputy Chief, Consumer Protection Division
State Bar No. 15092619

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**M.R. 64**

## SUBPOENA DUCES TECUM—DOCUMENTS REQUESTED

1. Produce documents relating to the care and treatment of ████████████ (DOB: ██████ ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

2. Produce documents relating to the care and treatment of ████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

3. Produce documents relating to the care and treatment of ██████████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

4. Produce documents relating to the care and treatment of ████████████ (DOB: ████████, ██████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

5. Produce documents relating to the care and treatment of ████████████ (DOB: █████████ ██████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

6. Produce documents relating to the care and treatment of ████████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

7. Produce documents relating to the care and treatment of ██████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

8. Produce documents relating to the care and treatment of ██████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

9. Produce documents relating to the care and treatment of ████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

10. Produce documents relating to the care and treatment of ████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

11. Produce documents relating to the care and treatment of ██████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

**M.R. 65**

12. Produce documents relating to the care and treatment of ██████████ (DOB: ████ ██████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

13. Produce documents relating to the care and treatment of ██████████ (DOB: ████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

14. Produce documents relating to the care and treatment of ██████████ (DOB: █████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

15. Produce documents relating to the care and treatment of ████████ (DOB: ██ █ ██████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

16. Produce documents relating to the care and treatment of ████████ (DOB: ██████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

17. Produce documents relating to the care and treatment of ███████ (DOB: ████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

18. Produce documents relating to the care and treatment of ███████ (DOB: ████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

19. Produce documents relating to the care and treatment of ████████ (DOB: ████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

20. Produce documents relating to the care and treatment of █████████ (DOB: █████████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

21. Produce documents relating to the care and treatment of ██████████ (DOB: ██████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

M.R. 66

# WITNESS SUBPOENA RETURN

Came to hand the _____ day of _____, 2025, at ____ o'clock, ___ .M. and executed

the _____ day of _____, 2025, at ____ o'clock, ___ .M. by delivering to the within named

_____ in person at _____ in _____

County, TX, a true copy of this Subpoena, and tendering said witness the sum of $_____.

By Deputy: _____, _____ County, TX.

Sheriff/Constable:_____, _____ County, TX.

## OR

By:

Person who is not a party to the suit and is not less than 18 years of age.

## ACCEPTANCE OF SERVICE OF SUBPOENA BY WITNESS PER RULE 176 T.R.C.P.

I, the undersigned witness named in the Subpoena acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

_____          _____
SIGNATURE                         DATE

**M.R. 67**

CAUSE NO. 493-07676-2024

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D. | § | |
| Defendant. | § | 493RD JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Mauricio Segovia** who, being by me duly sworn, deposed and said:

"The following came to hand on Jan 16, 2025, 11:25 am,

**STATE'S NOTICE OF SUBPOENA DUCES TECUM, SUBPOENA DUCES TECUM PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205, PROTECTIVE ORDER,**

and was executed at 1999 BRYAN ST SUITE 900, DALLAS, TX 75201 within the county of DALLAS at 12:35 PM on **Thu, Jan 16 2025**, by delivering a true copy to the within named

**UT SOUTHWESTERN MEDICAL CENTER C/O CT CORPORATION SYSTEM**
accepted by Intake Specialist William Miller
Witness Fee $1.00

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Mauricio Segovia
Certification Number: PSC-1689
Certification Expiration: 8/31/2026

BEFORE ME, a Notary Public, on this day personally appeared **Mauricio Segovia**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON ___1/16/2025___

MARIA M. SEGOVIA
My Notary ID # 129480220
Expires July 5, 2025

Notary Public, State of Texas

**M.R. 68**

| THE STATE OF TEXAS., | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## STATE'S NOTICE OF SUBPOENA DUCES TECUM

To:  UT Southwestern Medical Center c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201

Please take notice that pursuant to Tex. R. Civ. P. 205 gives you 10 days' notice of its intent to serve the attached subpoena duces tecum. The State of Texas has complied with all the requirements in Tex. R. Civ. P. 205.

Please take notice that the Court has entered the attached Protective Order in this matter expressly finding that attestations are not required. *See* Prot. Ord. at 10.

January 16, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division

**M.R. 69**

State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2025, a copy of the foregoing document was served to all counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

# THE STATE OF TEXAS

## SUBPOENA DUCES TECUM
### PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

CAUSE NO. 493-07676-2024      IN THE 493ʳᵈ JUDICIAL DISTRICT COURT OF COLLIN COUNTY, TEXAS

*State of Texas vs. Defendant May C. Lau, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN RULE 176 T.R.C.P.**

**YOU ARE HEREBY COMMANDED TO SUMMON** Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201, to provide documents to the

**Office of the Attorney General**
300 West 15ᵗʰ Street
Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN SEVEN DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street, 9th Floor, Austin, TX 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on January 16, 2025,** at the request the request of the State of Texas.

# M.R. 71

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
Deputy Chief, Consumer Protection Division
State Bar No. 15092619

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**M.R. 72**

## SUBPOENA DUCES TECUM—DOCUMENTS REQUESTED

1. Produce documents relating to the care and treatment of ███████ (DOB: ████, ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

2. Produce documents relating to the care and treatment of ███████ (DOB: ███████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

3. Produce documents relating to the care and treatment of ███████ (DOB: ███████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

4. Produce documents relating to the care and treatment of ███████ (DOB: ████, ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

5. Produce documents relating to the care and treatment of ███████ (DOB: ███████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

6. Produce documents relating to the care and treatment of ███████ (DOB: ███████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

7. Produce documents relating to the care and treatment of ███████ (DOB: ███████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

8. Produce documents relating to the care and treatment of ███████ (DOB: ███████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

9. Produce documents relating to the care and treatment of ███████ (DOB: ███████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

10. Produce documents relating to the care and treatment of ███████ (DOB: ███████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

11. Produce documents relating to the care and treatment of ███████ (DOB: ███████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

12. Produce documents relating to the care and treatment of ██████████ (DOB: ██████ ██), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

13. Produce documents relating to the care and treatment of ██████████ (DOB: ████ ██), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

14. Produce documents relating to the care and treatment of ████████ (DOB: ████ ██ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

15. Produce documents relating to the care and treatment of ████████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

16. Produce documents relating to the care and treatment of ████████ (DOB: ██████ ██), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

17. Produce documents relating to the care and treatment of ██████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

18. Produce documents relating to the care and treatment of ██████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

19. Produce documents relating to the care and treatment of ██████ (DOB: ████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

20. Produce documents relating to the care and treatment of ████████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

21. Produce documents relating to the care and treatment of ██████████ (DOB: ██████, ██), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

# WITNESS SUBPOENA RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock, ___ .M. and executed

the _____ day of _____, 2025, at _____ o'clock, ___ .M. by delivering to the within named

_____ in person at _____ in _____

County, TX, a true copy of this Subpoena, and tendering said witness the sum of $_____.


By Deputy: _____, _____ County, TX.

Sheriff/Constable:_____, _____ County, TX.


## OR

By:

    Person who is not a party to the suit and is not less than 18 years of age.


**ACCEPTANCE OF SERVICE OF SUBPOENA BY WITNESS PER RULE 176 T.R.C.P.**

I, the undersigned witness named in the Subpoena acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*


_____                    _____
SIGNATURE                                   DATE


**M.R. 75**

FILED
2/3/2025 12:00 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Belinda Hernandez DEPUTY

Cause No. \underline{DC-25-01823}

| | |
|---|---|
| Nonparty Patient No. 1, | IN THE DISTRICT COURT OF |
| Nonparty Patient No. 2, | |
| Nonparty Patient No. 3, | |
| Nonparty Patient No. 4, | DALLAS COUNTY, TEXAS |
| Nonparty Patient No. 5, | |
| Nonparty Patient No. 6, | 95th JUDICIAL DISTRICT |
| Nonparty Patient No. 7, and | |
| Nonparty Patient No. 8, | |
| | |
| Plaintiffs, | |
| | |
| vs. | |
| | |
| The State of Texas, | |
| | |
| Defendant. | |

**THE NONPARTY PATIENTS' PETITION FOR MOTION
FOR PROTECTION FROM DISCOVERY SUBPOENAS**

To the Honorable Judge of this Court:

Pursuant to Texas Rule of Civil Procedure 176.6(e), Plaintiffs ("Nonparty Patients")[1] move for protection from discovery subpoenas (Exhibits A and B) ("Subpoenas") that the State of Texas served on Children's Health System of Texas and UT Southwestern Medical Center ("Hospital Systems"). Ex. C ¶¶ 3–4. Nonparty Patients would respectfully show the Court as follows:

## I.      INTRODUCTION

1.      The State has brought a lawsuit in the 493rd Judicial District in Collin County, Texas (the "Lau Litigation"), alleging in its Petition (attached as Exhibit D) that Dr. May C. Lau violated provisions in Senate Bill 14 ("SB14") and engaged in false, misleading, or deceptive acts

---

[1] Pursuant to the Collin County District Court's Protective Order § III(F) (attached as Exhibit E), the Nonparty Patients have filed this Motion using a generic reference to avoid disclosing their identities as patients related to that litigation. Ex. C ¶ 5. Consistent with the Protective Order, the Nonparty Patients may be identified *in camera* or as otherwise ordered by the Court. *Id.*

1

**M.R. 76**

by providing gender affirming care to teenage patients. Ex. D ¶¶ 23, 43. On Monday, January 27, the State served sweeping Subpoenas in Dallas County on the Hospital Systems, demanding private medical records of 21 individuals, including the Nonparty Patients. Ex. A at 7; Ex. B at 7. The State's requests broadly seek all "documents relating to the care and treatment [of the nonparty]," irrespective of any relevance to the underlying litigation. Ex. A at 7; Ex. B at 7. The non-limiting examples in the State's requests underscore that the Subpoenas are invasive and target sensitive medical records, including psychotherapy notes. Ex. A at 7; Ex. B at 7.

2. The Texas Rules of Evidence codify a longstanding physician-patient privilege that precludes such discovery. Tex. R. Evid. 509; Tex. R. Evid. 510. This privilege acknowledges that meaningful healthcare requires allowing patients to talk freely with their doctors on sensitive topics without fear of disclosure, or repercussions from the State. *See, e.g., R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994) ("The basis for the privileges is twofold: (1) to encourage the full communication necessary for effective treatment, … and (2) to prevent unnecessary disclosure of highly personal information."). The State's requests in the Subpoenas—which are untethered to any issue of consequence in the Lau litigation—cannot plausibly satisfy the narrow exceptions to that privilege, and the requests are impermissibly broad, unduly burdensome, and unnecessarily target irrelevant information. The Nonparty Patients have thus filed this Petition in Dallas County, where the Subpoenas were served, seeking protection from the discovery sought.

## II. JURISDICTION

3. The Court has jurisdiction over this matter under Texas Rules of Civil Procedure 176.6 and 192.6(a). A "[p]erson affected by the subpoena, may move for a protective order under Rule 192.6(b) ... in a district court in the county where the subpoena was served." Tex. R. Civ. P. 176.6(e). The Nonparty Patients are not parties to the Lau Litigation but are each a nonparty patient about whom the State has sought medical records and other information from the Hospital Systems

2

in the Subpoenas. Ex. C ¶ 2. The Nonparty Patients thus have standing to seek "an order protecting [Movant] from the discovery sought" because each is "a person affected by the subpoena." Tex. Tex. R. Civ. P. 176.6(e); R. Civ. P. 192.6(a). The Hospital Systems were both served the Subpoenas in Dallas County, where this Court is situated, via their common registered agent, CT Corporation System, at 1999 Bryan St, Suite 900, Dallas, TX 75201. Ex. A at 2; Ex. B at 2.

### III. BACKGROUND

4. In the Lau Litigation, the State's allegations largely center on Dr. Lau purportedly prescribing medicines to teenage patients, including testosterone. Ex. D ¶ 56. The State alleges that such care became unlawful under SB14 on September 1, 2023. *Id.* ¶¶ 23, 222. The State also alleges that Dr. Lau engaged in false, misleading, or deceptive practices after or around the enactment of SB14, purportedly to mislead pharmacies, insurance providers, or patients into believing that the patients' testosterone treatments were for purposes other than gender-affirming care to circumvent the restrictions in SB14. *Id.* ¶¶ 226-27.

5. On January 27, 2024, the State served the Subpoenas on the Hospital Systems. Ex. A; Ex. B. The Subpoenas are substantially identical. Ex. A; Ex. B. Each includes the same requests for production for 21 nonparty patients:

> Produce documents relating to the care and treatment of [a patient] …, including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

Ex. A at 7; Ex. B at 7. There are no accompanying instructions or definitions that would limit the requested production in a meaningful way, such as only to materials that would be of legal consequence in the Lau Litigation. The only limitation in time is ambiguous. It is unclear whether the requests are limited to "documents … from January 1, 2021, through present," or whether that timeframe applies only to "correspondence from January 1, 2021, through present." In either event, there is no apparent, meaningful relationship between the nonparty patients' medical records

3

(including highly sensitive materials, like psychotherapy notes) from 2021 or earlier and the State's allegations about Dr. Lau's actions in or around the enactment of SB14 in September 2023.

6. Despite the obvious gravity of the privacy rights threatened by the Subpoenas for 21 nonparty patients, the State has inexplicably demanded compliance from the Hospital Systems within seven days from when the Subpoenas were served on January 27, 2024 (Ex. A at 5; Ex. B at 5), effectively denying many of the 21 nonparty patients a reasonable opportunity to obtain counsel and seek advice on their legal rights before compliance is due.

IV. ARGUMENT AND AUTHORITIES

7. The Court should enter an order preventing the Hospital Systems from producing the materials sought in the Subpoenas because the State's requests are overly broad, seek irrelevant materials, and demand materials that are protected from disclosure under the Physician-Patient Privilege (Tex. R. Evid. 509) and the Mental Health Information Privilege (Tex. R. Evid. 510). Courts may enter orders protecting individuals from discovery by subpoena to prevent an invasion of personal rights, including privacy and privileges. Tex. R. Civ. P. 192.6(b); Tex. R. Civ. P. 176.6(e), 176.7. Courts also have the authority to limit the scope of discovery based on the needs and circumstances of the case. Tex. R. Civ. P. 192 cmt. 7.

8. Under the Physician-Patient Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (1) a confidential communication between a physician and the patient that relates to or was made in connection with any professional services the physician rendered the patient; and (2) a record of the patient's identity, diagnosis, evaluation, or treatment created or maintained by a physician." Tex. R. Evid. 509(c). Similarly, under the Mental Health Information Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (A) a confidential communication between the patient and a

4

professional; and (B) a record of the patient's identity, diagnosis, evaluation, or treatment that is created or maintained by a professional." Tex. R. Evid. 510(b)(1).

9. It is self-evident from the State's Subpoenas that the documents sought are subject to the Physician-Patient Privilege and the Mental Health Information Privilege. Each request asks for "document relating to the care and treatment" of the nonparties, such as "medical … records," "psychotherapy notes," and "correspondence" with the nonparty patients, including Movant. Ex. A at 7; Ex. B at 7; Ex. C ¶ 2. Documents relating to the care and treatment of the nonparties, medical records, psychotherapy notes, and correspondence between the Hospital Systems, the nonparty patients, and healthcare providers will necessarily include confidential communications between the nonparty patients and their physicians and/or professionals, along with records of the nonparty patients' identities, diagnoses, evaluations, and treatments that were created or maintained by physicians and/or mental health professionals. *See generally In re Irvin*, No. 05-98-01771-CV, 1998 WL 908955, at *4 (Tex. App.—Dallas Dec. 31, 1998, no pet.) (finding abuse of discretion and granting mandamus when district court ordered production of mental health records).

10. There is no exception to the Physician-Patient Privilege or the Mental Health Information Privilege that would plausibly apply to the broad requests in the Subpoenas. If the State is suggesting that it is entitled to the nonparty patients' medical records because some information therein may be relevant to a party's claim or defense in the Lau Litigation it is wrong. The State's expansive requests cannot fit under such an exception. The exception to the Physician-Patient Privilege and Mental Health Information Privilege that applies when a party relies on a patient's medical condition (often referred to as the "patient-litigant exception") is narrow, particularly for nonparty patients. *See R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994). As the Texas Supreme Court has explained, it is not enough that there are allegations in the lawsuit for

5

which a condition of the nonparty patient may be relevant—rather, "[t]he scope of the exception should be tied in a meaningful way to the legal consequences of the claim or defense." *Id.* at 842.

11. In other words, for the patient-litigant exception to apply, discovery must be directed to information about a patient's condition that is "a 'part' of a claim or defense," and "must itself be a fact to which the substantive law assigns significance." *Id.* Generally, this means the discovery must be directed to a condition about which "the jury must make a factual determination." *Id.* at 843. Even then, the exception applies "only to the extent necessary to satisfy the discovery needs of the requesting party" when balanced against the privacy interests of the patients and requires *in camera* review of each document so that "any information not meeting this standard remains privileged and must be redacted or otherwise protected." *Id.*

12. The State's Subpoenas cannot remotely meet this standard. The Subpoenas' requests are not directed to *any* specific condition whatsoever. They are broad requests to entire Hospital Systems for all medical records and psychiatry notes about *any* condition or treatment, without any bounds or guidance based on the underlying lawsuit. Nor are the requests reasonably limited in time. At best, they seek all the Nonparty Patients' medical records, including psychiatry notes, for the past four years. Potentially, they seek all the Nonparty Patients' medical records, including psychiatry notes, since birth. Either way, they are untethered in time and scope from the Lau Litigation, which involves acts around or after SB14 was enacted in September 2023. These requests are thus too broad in scope and time to satisfy the patient-litigant exception. *See R.K.*, 887 S.W.2d at 843 (requiring "the request for records and the records disclosed are closely related in time and scope to the claims made … to avoid any unnecessary incursion into private affairs").

13. The Court should therefore enter an order protecting the Nonparty Patients from disclosure under the Subpoenas, including because the requests are not restrictively tailored to

6

**M.R. 81**

maintain the privilege for records and communications that would not be subject to the patient-litigant exception, if it applied at all. *See id.*; *c.f. Groves v. Gabriel*, 874 S.W.2d 660, 661 (Tex. 1994) ("However, a trial court's order compelling release of medical records should be restrictively drawn so as to maintain the privilege with respect to records or communications not relevant to the underlying suit.").

14.     Alternatively, if the Court does not enter an order protecting the Nonparty Patients from the Subpoenas in whole, Movant respectfully requests an opportunity to review any proposed productions from the Hospital Systems to evaluate the documents produced for privilege before they are provided to the State. For claims of privilege, "the documents themselves may constitute the only evidence substantiating the claim of privilege." *Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986). The Nonparty Patients thus require a reasonable opportunity to review any documents that the Hospital Systems would produce to the State so that they may "segregate and produce the documents to the court" for *in camera* review to ensure that only relevant materials subject to the applicable privilege exception are produced, with appropriate redactions. *See id.* (providing for *in camera* review); *R.K.*, 887 S.W.2d at 843 ("Even when a document includes some information meeting this standard, any information not meeting this standard remains privileged and must be redacted or otherwise protected.") ("[W]hen requested, the trial court must perform an *in camera* inspection of the documents produced to assure that the proper balancing of interests, which we have described, occurs before production is ordered.").

15.     For example, the State has no apparent interest in receiving documents that contain personally identifiable information about the Nonparty Patients, and that information should be redacted in any production. Nor does the State have any apparent interest in the Nonparty Patients' medical records from before SB14 was enacted in September 2023. After all, the State's

7

allegations in the Lau Litigation turn on the actions *after* SB14 became law, and neither the identities of Dr. Lau's patients, nor their medical records and communications before September 2023, are facts of consequence that must be adjudicated.

16. Apart from the Nonparty Patients' privilege assertions, the requests in the Subpoenas are overbroad, directed to irrelevant information, and not proportional to the needs of the case. For instance, there are no limitations to exclude from production materials unrelated to the allegations against Dr. Lau. The State's expansive requests instead presumably encompass all care the Nonparty Patients have received from any provider affiliated with the Hospital Systems, potentially without any meaningful limitation in time, no matter how attenuated or divorced that care is from the Lau Litigation. The State's requests would potentially encompass, for instance, all unrelated physical and mental healthcare (including communications with providers other than Dr. Lau, emergency room visits, vaccinations, and pharmacy records) at the Hospital Systems, without any apparent limitation whatsoever to restrict the requests to the subject matter of the Lau Litigation or a relevant timeframe.

17. Given the extraordinary breadth of the requests and the attendant high likelihood that irrelevant materials would be produced, if the Court does not enter an order protecting the Nonparty Patients from production under the Subpoenas in whole, the Nonparty Patients request the opportunity to review any proposed production for relevance and, if appropriate, request that the Court conduct an *in camera* inspection of materials proposed for production that the Nonparty Patients identify as irrelevant to the Lau Litigation. *See, e.g.*, *Weisel Enterprises*, 718 S.W.2d at 58 (holding *in camera* review appropriate in situations when the documents' contents are the only evidence of discoverability).

8
M.R. 83

## V. CONCLUSION

18. The State has overstepped the bounds of permissible nonparty discovery. Its Subpoenas to the Hospital Systems plainly seek materials about the Nonparty Patients that are protected from disclosure under the Physician-Patient Privilege and the Mental Health Information Privilege. The requests are also overbroad, seek irrelevant information, and are not proportional to the needs of the case, as they are not meaningfully restricted in time or subject matter to the allegations underpinning the Lau Litigation. The Court should therefore enter a protective order preventing the Hospital Systems from producing discovery in response to the Subpoenas or, alternatively, provide the Nonparty Patients an opportunity to review any proposed production and segregate documents for *in camera* review for relevance and privilege before they are produced.

## VI. PRAYER FOR RELIEF

19. For the foregoing reasons, the Nonparty Patients respectfully request that the Court set this Motion for hearing and, after the hearing, issue an order granting the relief requested herein.

**DATED:** February 2, 2025

Respectfully submitted,

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869
jnewsome@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

9

M.R. 84

## CERTIFICATE OF CONFERENCE

Counsel for movants has personally attempted to contact counsel for respondent as follows: by email on February 2, 2025, at 6:03 PM. Counsel has not yet received a response. An emergency exists of such a nature that further delay would cause irreparable harm to movants, as follows: Counsel has only just been retained, and given the State's expedited request for compliance with the subpoenas by tomorrow (Monday, February 3), there is no opportunity to wait for a response from the State before seeking relief as production of movants' privileged records may be imminent. Counsel for movants will continue attempting to confer with respondent in good faith.

Certified to the Day of February 2, 2025, by:

*/s/ William M. Logan*
William M. Logan
Texas Bar No. 24106214

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2025, an electronic copy of this Petition was served to counsel of record for the State of Texas that are listed on the relevant subpoenas, as follows:

Jonathan Stone — Jonathan.Stone@oag.texas.gov
Matthew Kennedy — Matt.Kennedy@oag.texas.gov
Rob Farquaharson — Rob.Farquharson@oag.texas.gov
David Shatto — David.Shatto@oag.texas.gov

I further certify that a copy of this Petition and citation are being served via registered or certified mail, return receipt requested, to the above-listed counsel at the following address listed for compliance on the relevant subpoenas:

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869

10

# M.R. 85

# EXHIBIT A

CAUSE NO. 493-07676-2024

| THE STATE OF TEXAS. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D. | § | |
| Defendant. | § | 493RD JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Mauricio Segovia** who, being by me duly sworn, deposed and said:

"The following came to hand on **Jan 16, 2025, 11:25 am,**

**STATE'S NOTICE OF SUBPOENA DUCES TECUM, SUBPOENA DUCES TECUM PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205, PROTECTIVE ORDER,**

and was executed at **1999 BRYAN ST SUITE 900, DALLAS, TX 75201** within the county of DALLAS at 12:35 PM on **Thu, Jan 16 2025,** by delivering a true copy to the within named

**CHILDREN'S HEALTH SYSTEM OF TEXAS C/O CT CORPORATION SYSTEM**
**accepted by Intake Specialist William Miller**
**Witness Fee $1.00**

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Mauricio Segovia
Certification Number: PSC-1689
Certification Expiration: 8/31/2026

BEFORE ME, a Notary Public, on this day personally appeared **Mauricio Segovia**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON ___1/16/2025___

MARIA M. SEGOVIA
My Notary ID # 129480220
Expires July 5, 2025

Notary Public, State of Texas

**M.R. 87**

| | | |
|---|---|---|
| THE STATE OF TEXAS., | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## STATE'S NOTICE OF SUBPOENA DUCES TECUM

To:   Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201

Please take notice that pursuant to Tex. R. Civ. P. 205 gives you 10 days' notice of its intent to serve the attached subpoena duces tecum. The State of Texas has complied with all the requirements in Tex. R. Civ. P. 205.

Please take notice that the Court has entered the attached Protective Order in this matter expressly finding that attestations are not required. *See* Prot. Ord. at 10.

January 16, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division

## M.R. 88

State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2025, a copy of the foregoing document was served to

all counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

**M.R. 89**

# THE STATE OF TEXAS

## SUBPOENA DUCES TECUM
### PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

CAUSE NO. 493-07676-2024    IN THE 493rd JUDICIAL DISTRICT COURT OF COLLIN COUNTY, TEXAS

*State of Texas vs. Defendant May C. Lau, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN RULE 176 T.R.C.P.**

**YOU ARE HEREBY COMMANDED TO SUMMON** Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201, to provide documents to the

**Office of the Attorney General**
300 West 15th Street
Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN SEVEN DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street, 9th Floor, Austin, TX 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on January 16, 2025,** at the request the request of the State of Texas.

**M.R. 90**

*/s/ Johnathan Stone*

JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
Deputy Chief, Consumer Protection Division
State Bar No. 15092619

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

## SUBPOENA DUCES TECUM—DOCUMENTS REQUESTED

1. Produce documents relating to the care and treatment of ███████████ (DOB: ███████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

2. Produce documents relating to the care and treatment of ██████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

3. Produce documents relating to the care and treatment of █████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

4. Produce documents relating to the care and treatment of ████████████ (DOB: ██████, ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

5. Produce documents relating to the care and treatment of ████████████ (DOB: ████████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

6. Produce documents relating to the care and treatment of ████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

7. Produce documents relating to the care and treatment of ██████████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

8. Produce documents relating to the care and treatment of ████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

9. Produce documents relating to the care and treatment of ██████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

10. Produce documents relating to the care and treatment of ███████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

11. Produce documents relating to the care and treatment of █████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

## M.R. 92

12. Produce documents relating to the care and treatment of ██████████ (DOB: ██████ ███ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

13. Produce documents relating to the care and treatment of ██████████ (DOB: ███ ███ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

14. Produce documents relating to the care and treatment of ██████ (DOB: ███ ███ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

15. Produce documents relating to the care and treatment of ██████ (DOB: ██ ███ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

16. Produce documents relating to the care and treatment of ██████ (DOB: ███ ███ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

17. Produce documents relating to the care and treatment of ██████ (DOB: ██████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

18. Produce documents relating to the care and treatment of ██████ (DOB: ██████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

19. Produce documents relating to the care and treatment of ██████ (DOB: ██████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

20. Produce documents relating to the care and treatment of ██████ (DOB: ██████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

21. Produce documents relating to the care and treatment of ██████ (DOB: ██████ ███ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

# WITNESS SUBPOENA RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock, ___ .M. and executed

the _____ day of _____, 2025, at _____ o'clock, ___ .M. by delivering to the within named

_____ in person at _____ in _____

County, TX, a true copy of this Subpoena, and tendering said witness the sum of $_____.

By Deputy: _____, _____ County, TX.

Sheriff/Constable:_____, _____ County, TX.

**OR**

By:

    Person who is not a party to the suit and is not less than 18 years of age.

**ACCEPTANCE OF SERVICE OF SUBPOENA BY WITNESS PER RULE 176 T.R.C.P.**

I, the undersigned witness named in the Subpoena acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

_____           _____
SIGNATURE                                          DATE

# M.R. 94

# EXHIBIT B

CAUSE NO. 493-07676-2024

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D. | § | |
| Defendant. | § | 493RD JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Mauricio Segovia** who, being by me duly sworn, deposed and said:

"The following came to hand on Jan 16, 2025, 11:25 am,

### STATE'S NOTICE OF SUBPOENA DUCES TECUM, SUBPOENA DUCES TECUM PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205, PROTECTIVE ORDER.

and was executed at 1999 BRYAN ST SUITE 900, DALLAS, TX 75201 within the county of DALLAS at 12:35 PM on **Thu, Jan 16 2025**, by delivering a true copy to the within named

### UT SOUTHWESTERN MEDICAL CENTER C/O CT CORPORATION SYSTEM
accepted by Intake Specialist William Miller
Witness Fee $1.00

In person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Mauricio Segovia
Certification Number: PSC-1689
Certification Expiration: 8/31/2026

BEFORE ME, a Notary Public, on this day personally appeared **Mauricio Segovia**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON ___1/16/2025___

MARIA M. SEGOVIA
My Notary ID # 129480220
Expires July 5, 2025

Notary Public, State of Texas

**M.R. 96**

| | | |
|---|---|---|
| THE STATE OF TEXAS., *Plaintiff,* | § § § | IN THE DISTRICT COURT OF |
| v. | § § § | COLLIN COUNTY, TEXAS |
| MAY C. LAU, M.D., *Defendant.* | § § § | 493rd JUDICIAL DISTRICT |

## STATE'S NOTICE OF SUBPOENA DUCES TECUM

To:     UT Southwestern Medical Center c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201

Please take notice that pursuant to Tex. R. Civ. P. 205 gives you 10 days' notice of its intent to serve the attached subpoena duces tecum. The State of Texas has complied with all the requirements in Tex. R. Civ. P. 205.

Please take notice that the Court has entered the attached Protective Order in this matter expressly finding that attestations are not required. *See* Prot. Ord. at 10.

January 16, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division

**M.R. 97**

State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2025, a copy of the foregoing document was served to

all counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

**M.R. 98**

# THE STATE OF TEXAS

## SUBPOENA DUCES TECUM
## PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

CAUSE NO. 493-07676-2024     IN THE 493rd JUDICIAL DISTRICT COURT OF
COLLIN COUNTY, TEXAS

*State of Texas vs. Defendant May C. Lau, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN RULE 176 T.R.C.P.**

**YOU ARE HEREBY COMMANDED TO SUMMON** Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201, to provide documents to the

**Office of the Attorney General**
300 West 15th Street
Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN SEVEN DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street, 9th Floor, Austin, TX 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on January 16, 2025,** at the request the request of the State of Texas.

# M.R. 99

*/s/ Johnathan Stone*

JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
Deputy Chief, Consumer Protection Division
State Bar No. 15092619

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**M.R. 100**

## SUBPOENA DUCES TECUM—DOCUMENTS REQUESTED

1. Produce documents relating to the care and treatment of ███████████ (DOB: ███████, ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

2. Produce documents relating to the care and treatment of ███████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

3. Produce documents relating to the care and treatment of ███████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

4. Produce documents relating to the care and treatment of ███████████ (DOB: ███████, ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

5. Produce documents relating to the care and treatment of ███████████ (DOB: ███████████, ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

6. Produce documents relating to the care and treatment of ███████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

7. Produce documents relating to the care and treatment of ███████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

8. Produce documents relating to the care and treatment of ███████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

9. Produce documents relating to the care and treatment of ███████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

10. Produce documents relating to the care and treatment of ███████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

11. Produce documents relating to the care and treatment of ███████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

M.R. 101

12. Produce documents relating to the care and treatment of ███████████ (DOB: ███████ ██), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

13. Produce documents relating to the care and treatment of ███████████ (DOB: ██████ ██), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

14. Produce documents relating to the care and treatment of ██████████ (DOB: ██████ ██████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

15. Produce documents relating to the care and treatment of ████████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

16. Produce documents relating to the care and treatment of ██████████ (DOB: ██████ ██████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

17. Produce documents relating to the care and treatment of ████████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

18. Produce documents relating to the care and treatment of ████████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

19. Produce documents relating to the care and treatment of ██████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

20. Produce documents relating to the care and treatment of ██████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

21. Produce documents relating to the care and treatment of ████████████ (DOB: ██████, ██████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

## WITNESS SUBPOENA RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock, ___ .M. and executed

the _____ day of _____, 2025, at _____ o'clock, ___ .M. by delivering to the within named

_____ in person at _____ in _____

County, TX, a true copy of this Subpoena, and tendering said witness the sum of $_____.

By Deputy: _____, _____ County, TX.

Sheriff/Constable: _____, _____ County, TX.

### OR

By:

Person who is not a party to the suit and is not less than 18 years of age.

**ACCEPTANCE OF SERVICE OF SUBPOENA BY WITNESS PER RULE 176 T.R.C.P.**

I, the undersigned witness named in the Subpoena acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

_____          _____
SIGNATURE                                          DATE

# M.R. 103

# EXHIBIT C

Cause No. _____

| | |
|---|---|
| Nonparty Patient No. 1,<br>Nonparty Patient No. 2,<br>Nonparty Patient No. 3,<br>Nonparty Patient No. 4,<br>Nonparty Patient No. 5,<br>Nonparty Patient No. 6,<br>Nonparty Patient No. 7, and<br>Nonparty Patient No. 8,<br><br>        Plaintiffs,<br><br>  vs.<br><br>The State of Texas,<br><br>        Defendant. | IN THE DISTRICT COURT OF<br><br>DALLAS COUNTY, TEXAS<br><br>_____ JUDICIAL DISTRICT |

**DECLARATION IN SUPPORT OF THE NONPARTY PATIENTS' PETITION FOR MOTION FOR PROTECTION FROM DISCOVERY SUBPOENAS**

1.     I am an attorney at the law firm of Winston & Strawn LLP. I represent the Petitioners ("Nonparty Patients") in responding to the State of Texas's subpoenas ("Subpoenas") to Children's Health System of Texas and UT Southwestern Medical Center ("Hospital Systems"). I am a member in good standing of the State Bar of Texas. I provide this declaration in support of The Nonparty Patients' Petition for Motion for Protection from Discovery Subpoenas ("Petition"). I have personal knowledge of the facts stated herein, and I could and would testify completely thereto if called as a witness in this matter.

2.     Each of the Nonparty Patients is one of 21 individuals about whom the State has sought documents via the Subpoenas related to medical and mental health care and treatment received at the Hospital Systems, including medical records, billing records, psychiatry notes, and correspondence.

1

**M.R. 105**

3.    A true and correct copy of the subpoena to Children's Health System of Texas is attached as Exhibit A to the Petition, with redactions to safeguard the identities and confidential health information of the patients identified therein.

4.    A true and correct copy of the subpoena to UT Southwestern Medical Center is attached as Exhibit B to the Petition, with redactions to safeguard the identities and confidential health information of the patients identified therein.

5.    The Subpoenas were accompanied by a Protective Order issued by the 493rd Judicial District in Collin County, Texas. A true and correct copy of that Protective Order is attached to the Petition as Exhibit E. To comply with § III(F) of the Protective, to safeguard the identity of the patients at issue in the Collin County litigation, and to preserve the confidential health information of the Nonparty Patients, the Petition has been filed using a generic reference for the Nonparty Patients. Also consistent with the Protective Order, in the event the Court wishes to identify one or more of the Nonparty Patients, they may be identified *in camera* or as otherwise ordered by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Montgomery County, State of Texas, on February 2, 2025.

_/s/*William M. Logan*_

2

**M.R. 106**

# EXHIBIT D

CAUSE NO. _____

| | | |
|---|---|---|
| THE STATE OF TEXAS, *Plaintiff,* | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§<br>§ | COLLIN COUNTY, TEXAS |
| MAY C. LAU, M.D., *Defendant.* | §<br>§<br>§ | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND REQUEST FOR AN APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

1. The debate in Texas on the legality of dangerous and experimental medical procedures seeking to transition or affirm a child's belief that their gender identity is inconsistent with their biological sex is over.

2. Texas law prohibits surgeries, puberty blockers, and cross-sex hormones for the purposes of transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex. Tex. Health & Safety Code § 161.702.

3. The Supreme Court of Texas held that the law was constitutional. *State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

4. Today, enforcement begins against those who have violated the law by providing, prescribing, administering, or dispensing cross-sex hormones to minors for the purposes of transitioning their biological sex or affirming the child's belief that their gender identity is inconsistent with their biological sex.

5. Plaintiff, STATE OF TEXAS, by and through the Attorney General of Texas, KEN PAXTON, complains of Defendant, MAY C. LAU, M.D. and will show Lau has engaged in deceptive trade practices, including by misleading pharmacies, insurance providers, and/or

1

## M.R. 108

patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

6. Lau is a scofflaw who is putting the health and safety of minors at risk by prescribing testosterone, a controlled substance, to biological female minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See* Tex. Occ. Code § 164.052(a)(24) (each violation separately violates the Texas Medical Practice Act); *see also* Tex. Occ. Code § 164.0552 (each violation serves as an independent ground for revocation of Lau's medical license).

7. Lau is also violating Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

8. Lau must be held accountable for her use, on at least 21 minor patients, of these illegal, dangerous, and experimental medical procedures for the purposes of transitioning their biological sex or affirming their belief that their gender identities are inconsistent with their biological sex.

## I.    PARTIES

9. Defendant is MAY C. LAU, M.D. (NPI# 1750351375), an employee of the University of Texas Southwestern Medical Center ("UT Southwestern") in Dallas, Texas. She

holds hospital privileges at Childrens Medical Center Dallas and Children's Medical Center Plano. Lau may be served with process at UT Southwestern, 5323 Harry Hines Blvd. Dallas, TX 75390.

## II. DISCOVERY CONTROL PLAN

10. Discovery in this case should be conducted under Level 3 pursuant to Tex. R. Civ. P. 190.4. This case is not subject to the restrictions of expedited discovery under Tex. R. Civ. P. 169 because Texas seeks nonmonetary injunctive relief.

11. Additionally, Texas claims entitlement to monetary relief in an amount greater than **$1,000,000,** including civil penalties, reasonable attorney's fees, litigation expenses, restitution, and costs.

## III. JURISDICTION AND VENUE

12. Texas Occ. Code § 161.706(b) provides that venue is proper in "the county where the violation occurred or is about to occur."

13. Venue of this suit lies in Collin County, Texas pursuant to Texas Bus. & Com. Code § 17.47(b), because transactions forming the basis of this suit occurred in Collin County, Texas and Lau's unlawful conduct occurred in Collin County, Texas.

## IV. PUBLIC INTEREST

14. Lau violated Tex. Health & Safety Code § 161.702, Tex. Bus. & Com. Code § 17.46(a) and is engaged in unlawful practices, as set forth in this petition.

15. Texas has reason to believe that Lau is engaging in, has engaged in or is about to engage in, the unlawful acts or practices set forth below. Texas has further reason to believe Lau has caused injury, loss, and damage to Texas by endangering the health of its citizens. Therefore,

the Consumer Protection Division of the Office of the Attorney General of the State of Texas is of the opinion that these proceedings are in the public interest.

## V.     TRADE AND COMMERCE

16.     At all times described below, Lau engaged in conduct, the purported practice of medicine, which constitutes "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6).

## VI.     NO NOTICE BEFORE SUIT

17.     The Consumer Protection Division has reason to believe that Lau "is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful … and that proceedings would be in the public interest…." Tex. Bus. & Com. Code § 17.47(a).

18.     The Consumer Protection Division did not contact Lau before filing suit to notify her "in general of the alleged unlawful conduct" because it is the opinion of the Consumer Protection Division that Lau likely "would destroy" or alter "relevant records if prior contact were made." *Id.*

## VII.     APPLICABLE LAW

19.     Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

20.      Texas Bus. & Com. Code § 17.47 authorizes the Consumer Protection Division to bring an action for temporary and permanent injunction whenever it has reason to believe that any person is engaged in, in has engaged in, or is about to engage in any act or practice declared unlawful under Chapter 17 of the Business and Commerce Code.

# M.R. 111

## VIII. FACTUAL BACKGROUND

A. *Texas Prohibits the Provision of Puberty Blockers and Cross-Sex Hormones to Minors for the Treatment of Gender Dysphoria.*

21.     On May 17, 2023, the Legislature added Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children (SB 14)." Act of May 17, 2023, 88th Leg., R.S., ch. 335; *Loe*, 692 S.W.3d at 223.

22.     Senate Bill 14 prohibits physician and health care providers from performing certain procedures or treatments when performed to (1) "transition[] a child's biological sex as determined by the sex organs, chromosomes, and endogenous profiles of the child"; or (2) "affirm[] the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." Tex. Health & Safety Code § 161.702.

23.     The effective date for SB14 was September 1, 2023.

24.     Senate Bill 14 added Tex. Health & Safety Code § 161.702(3), which prohibits physicians from knowingly prescribing the following to transition a child's biological sex or affirm a child's perception of their sex if it is different from their biological sex: "(A) puberty suppression or blocking prescription drugs to stop or delay normal puberty; (B) supraphysiologic doses of testosterone to females; or (C) supraphysiologic doses of estrogen to males."

25.     Physicians were permitted to prescribe to patients already subject to a continuing course of treatment that began prior to June 1, 2023, and who attended at least 12 mental health counseling or psychotherapy sessions over a period of at least six months prior to starting treatment, provided that the prescriptions were for the purpose of "wean[ing] off the prescription drug over a period of time and in a manner that is safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b)-(c).

26.     Senate Bill 14 also added Tex. Occ. Code § 164.052(a)(24), which proscribed physicians from "perform[ing] a gender transitioning or gender reassignment procedure or treatment in violation of [Tex. Health & Safety Code § 161.702]."

27.     Finally, SB14 added Tex. Occ. Code § 164.0552, which commands that the Texas Medical Board "*shall revoke* the license or other authorization to practice medicine of a physician who violates [Tex. Health & Safety Code § 161.702]." (emphasis added).

B.      *The Texas Supreme Court Held That SB 14 is Constitutional.*

28.     Before SB 14 took effect several minors, parents of minors, and physicians brought suit in Travis County, TX, alleging a variety of constitutional challenges to the law. *Loe*, 692 S.W.3d at 222.

29.     On August 25, 2023, a Travis County District Court entered a temporary injunction enjoining enforcement of SB 14. *Id.*

30.     Texas appealed directly to the Texas Supreme Court, thereby dissolving the temporary injunction. *Id.*

31.     On September 1, 2023, the Texas Supreme Court allowed SB 14 to take effect during the pendency of the appeal. *Id.*

32.     On June 28, 2024, the Supreme Court of Texas reversed and vacated the trial court's Temporary Injunction Order after rejecting each of the plaintiffs' constitutional challenges to SB 14. *Id.* at 239.

C.     *Lau is a Radical Gender Activist.*

33.     Lau "specializes in adolescent female and male sexual and reproductive health, including … gender dysphoria …." *Biography of May Lau, M.D.*, UT Southwestern (accessed October 8, 2024), https://tinyurl.com/259556bc.

34.     Lau serves as "Medical Director of the Adolescent and Young Adult clinic at Children's Medical Center Dallas." *Id.*

35.     Lau has published extensively advocating for the medical transition of children's biological sex, contributing to the following:

    i.    Tri Pham, *et al.*, *Transition from Pediatric to Adult Care for Transgender Youth: A Qualitative Study of Patient, Parent, and Provider Perspectives*, LGBT Health (May-Jun 2021), https://tinyurl.com/5n8jbc6n.

    ii.    Bethany G. Hart, *et al.*, *Developing a Curriculum on Transgender Health Care for Physician Assistant Students*, Journal of Physician Assistant Education (Mar. 2021), https://tinyurl.com/mvbhyp8e.

    iii.    Lauren R. Shaffer, *et al.*, *Gender-affirming hormone therapy in cystic fibrosis – A case of new Pseudomonas infection*, Respiratory Medicine Case Reports (2021), https://tinyurl.com/mv4jp85.

    iv.    Laura E. Kuper, *et al.*, *Body Dissatisfaction and Mental Health Outcomes of Youth on Gender-Affirming Hormone Therapy*, Pediatrics (2020), https://tinyurl.com/5n8s75v8.

    v.    Laura E. Kuper, *et al.*, *Baseline Mental Health and Psychosocial Functioning of Transgender Adolescents Seeking Gender-Affirming Hormone Therapy*, Journal of Developmental and Behavioral Pediatrics (Oct/Nov 2019), https://tinyurl.com/4wxxzes5.

36.     Approximately 20% of the publications listed in Lau's biography relate to gender transitioning. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

37.     On January 8, 2020, Lau and her physician's assistant, Patti Pagels MPAS, PA-C, gave a presentation entitled *Transgender Care of Adolescents and Adults*, Youtube (Jan. 8, 2020), https://tinyurl.com/mkt4pzs3 wherein they asserted:

i.      That Lau alters her patient's medical records to reflect their preferred name, sex, and pronouns, which can change on a visit-to-visit basis, something that is apparently "fairly typical [and] kind of persists into adulthood" for her patients. 20:59-22:40.

ii.     That "adolescents' gender identity is fluid so from one day or one point in time they say no, I'm this, I'm female, but then realize later on that I'm male." 28:08-28.

iii.    That "we're not sure about the safety and long-term effects of puberty suppression in youth with gender dysphoria we do know that this is safe to use in youth with precocious puberty, but we don't know if we can translate those side effects and the long-term effects to those with gender dysphoria and who are using puberty suppression for those reasons." 28:28-46.

iv.     That "some of the consequences of hormonotherapy are permanent." 29:57-30:09.

v.      That biological females that take testosterone to transition their biological sex "will get some atrophy of the vagina … [and thereafter for the duration of their life] they'll need some sort of water-based lubricant if they're going to still use the vagina as part of sex …." 32:41-52.

vi.     That "it's so important that these folks get identified in childhood because when they come to me and are 30 or 40 years old and they've been under the influence of their gender hormones all this time it's very hard to reverse it. I can't take somebody that's, you know, five-foot ten and very muscular uh and make them a woman overnight even if they use the clothing and so forth "33:05-39.

vii.    That "testosterone is a powerful hormone, so I tell them that the effect of estrogen is like a feather, you know, just it's just a whiff and whereas testosterone you give a little bit [and] you get a lot of effect." 33:39-59.

viii.   That "I want you to look at the graphic to see that the number of surgeries has increased and continue to increase and many of our patients … are getting them done. There are more surgeries for the affirm females than the affirm males and we may not know how many people actually are getting gender affirming surgery because some of them are going to Thailand,

8

M.R. 115

they're going to Europe, they're going to other counties to get this done because its much cheaper." 37:37-38:13.

    ix.     "There's a recent study May 2018 that suggests the timing of top surgery or breast surgery for affirm males should be based on physical and mental health status of the youth not by a specific age and *I will tell you that we have had youth in our clinic come in who have had top surgery before they have even started hormone treatment.*" 39:39-40:05 (emphasis added).

38.     Lau was previously associated with the now dissolved Gender Education and Care Interdisciplinary Support (GENECIS) Program, which was dedicated to using medical interventions to transition the biological sex of children or affirm a child's beliefs that their gender identity is inconsistent with their biological sex. May Lau, M.D., and Patti Pagels MPAS, PA-C, *Transgender Care of Adolescents and Adults*, Mid-Atlantic Chapter of the Medical Library Association (Jan. 8, 2020), https://tinyurl.com/mry8wtv9.

39.     Ximena Lopez, M.D., the founder of the GENECIS, shuttered the program and high-tailed it to California shortly after SB 14 was enacted. Paul Hunter, *Texas ban on gender-affirming care leaves trans teens without options*, CBC News (July 5, 2023), https://tinyurl.com/4r6c8kr5 (Lopez declaring that medically transitioning children is "one of the most important things I've done in my life" and stating that she was leaving Texas because she thinks the whole state is "crazy.").

40.     Lopez and Lau are co-authors on several publications advocating for the medical transition of minors diagnosed with gender dysphoria. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

41.     Lau and the staff of GENECIS were thanked for assisting with a medical student's dissertation on transitioning minors from their biological sex. Antoinette Moore, *Health Related*

*Quality of Life of Transgender Adolescents Undergoing Hormonal Transition or Elective Pubertal Delay*, UT Southwestern (2018), https://tinyurl.com/3y6jwv7y.

42.　　Lau's practices, publications, and presentations betrays an entrenched commitment to a gender ideology that desires to medically transition the biological sex of children or affirm the belief that a child's gender identity is inconsistent with their biological sex.

## IX.　VIOLATIONS OF SB 14.

43.　　Lau has knowingly violated Tex. Health & Safety Code § 161.702(3).

A.　　*Cross-Sex Hormones to Transition Biological Sex or Affirm a Child's Belief that their Gender Identity is Inconsistent with their Biological Sex.*

44.　　High dose cross-sex hormones are commonly used by gender activists to transition the biological sex of children or affirm a child's belief that their gender identity is inconsistent with their biological sex.

45.　　High dose cross-sex hormones are prescribed to induce a supraphysiologic state where the hormone levels are greater than would otherwise normally be present in the child's body.

46.　　As a result of the hormones, the child will develop secondary sex characteristics.

47.　　Testosterone is a cross-sex hormone that is prescribed to transition biological females to biological females with irreversible male secondary sex characteristics.

48.　　Testosterone is a Schedule III controlled substance.

49.　　Radical gender activists within the medical profession rely on the so-called "Standards of Care" promulgated by the World Professional Association of Transgender Health (WPATH) as guidelines for transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex. *See e.g.* Selena Simmons-Duffin, *Rachel Levine calls state anti-LGBTQ bills disturbing and dangerous to trans youth*, NPR (Apr. 29,

M.R. 117

2022) (claiming that the standard for treating gender dysphoria is set by the WPATH), https://tinyurl.com/3jxymtum.

50. WPATH recommends that a doctor transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex prescribe enough testosterone to induce the same level that would be present in a biological male. Standards of Care 8, WPATH pg. 110 (2023), https://tinyurl.com/32z3bnhr.

B.     Lau's Testosterone Prescribing

51. WPATH recommends transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex by prescribing injectable testosterone cypionate at 100-200 mg. so as to induce a state of male puberty in a biological female such that she will develop irreversible male secondary sex characteristics, *Standards of Care 8*, WPATH App'x C, https://tinyurl.com/32z3bnhr.

52. WPATH recommends "induction of male puberty" in a biological female minor by prescribing testosterone esters at "25mg/m²/2 weeks (or alternatively half this dose weekly). Increase by 25 25mg/m²/2 weeks every 6 months until adult dose and target testosterone levels achieved." *Id.*

53. WPATH alternatively recommends the following testosterone regime for biological females to induce male secondary sex characteristics, "testosterone enanthate/cypionate 50-100 IM/SQ weekly or 100-200 IM every 2 weeks." *Id.*

54. A "testosterone cypionate injection is use[d] to treat **males** whose bodies do not make enough natural testosterone, a condition called hypogonadism. Testosterone is a male hormone responsible for the growth and development of the male sex organs and maintenance of

secondary sex characteristics. **This medicine is not for use in female patients**." TESTOSTERONE CYPIONATE, Mayo Clinic (accessed October 15, 2024) (emphasis added), https://tinyurl.com/558b8fcv.

55. The Federal and Drug Administration warns that testosterone cypionate "**is contraindicated in pregnant women and not indicated for use in females**." TESTOSTERONE CYPIONATE INJECTION, FDA (June 2022) (emphasis added), https://tinyurl.com/4psvbdeb.

56. Lau has violated the law by providing, prescribing, administering, or dispensing testosterone to minor patients for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex:

**Patient One**[1]

57. Patient One resides in Collin County, TX.

58. Patient One was 17 years old during the relevant time.

59. Lau identifies Patient One as a biological female.

60. On October 2, 2023, after SB 14 went into effect, Lau wrote Patient One a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate.

61. The prescriptions purpose is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

62. On October 12, 2023, Patient One filled the prescription at a pharmacy located in Collin County, TX.

63. Later, Patient One turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone.

---

[1] Pseudonyms are used throughout to protect the identity of the victim minor patients.

M.R. 119

64.     The prescriptions purpose is for transitioning her biological sex or affirming her belief that their gender identity is inconsistent with her biological sex.

**Patient Two**

65.     Patient Two resides in Collin County, TX.

66.     Patient Two was 17 years old during the relevant time.

67.     Lau identifies Patient Two as a biological female.

68.     On October 9, 2023, after SB 14 went into effect, Lau wrote Patient Two a prescription for a 90-day supply of 200 mg/ml of testosterone cypionate.

69.     The prescriptions purpose is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

70.     The same day, Patient Two filled the prescription at a pharmacy located in Collin County, TX.

**Patient Three**

71.     Patient Three resides in Denton County, TX.

72.     Patient Three was 17 years old during the relevant time.

73.     Lau identifies Patient Three as a biological male, but upon information and belief, Patient Three may be a biological female.

74.     On August 25, 2023, Lau wrote Patient Three a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

75.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

76.    On January 7, 2024, 135-days after the prescription was written and after SB 14 went into effect, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

77.    On February 23, 2024, Lau wrote Patient Three a prescription for a 30-day supply of 200 mg/ml of testosterone cypionate.

78.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

79.    On February 25, 2024, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

80.    Later, Patient Three turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

81.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Four**

82.    Patient Four resides in Dallas County, TX.

83.    Patient Four was 16 during the relevant time.

84.    Lau identifies Patient Four as a biological female.

85.    On August 31, 2023, Lau wrote Patient Four two prescriptions for a 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

86.    The prescriptions purposes is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

87.    On September 1, 2023, after SB 14 went into effect, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

14

# M.R. 121

88. On October 28, 2023, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

89. On March 26, 2024, Lau wrote Patient Four two prescriptions for a 28-day supply of 200 mg/ml of testosterone cypionate.

90. On March 28, 2024, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

91. On July 26, 2024, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

**Patient Five**

92. Patient Five resides in Collin County, TX.

93. Patient Five was 16 years old at the relevant time.

94. Lau identifies Patient Five as a biological male, but upon information and belief, Patient Five may be a biological female.

95. On August 17, 2023, Lau wrote Patient Five a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription both before and after SB 14 took effect.

96. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

97. On October 7, 2023, after SB 14 went into effect, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

98. On November 14, 2023, Lau wrote Patient Five a prescription with five refills for 28-day supplies of 200 mg/ml of testosterone cypionate.

99.	The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

100.	The same day, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

101.	On December 11, 2023, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

102.	On January 17, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

103.	On March 11, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

104.	On April 12, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

105.	On June 21, 2024, Lau wrote Patient Five multiple prescriptions for 22-day supplies of 200 mg/ml of testosterone cypionate.

106.	The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

107.	On June 24, 2024, Patient Five filled the prescription a pharmacy located in Collin County, TX.

108.	On July 13, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

109.	On August 18, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

16

M.R. 123

**Patient Six**

110. Patient Six resides in Collin County, TX.

111. Patient Six was 17 years old at the relevant time.

112. Lau identifies Patient Six as a biological male, but upon information and belief, Patient Six may be a biological female.

113. On August 30, 2023, Lau wrote Patient Six one prescription with one refill for 84-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

114. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

115. On October 24, 2023, 55-days after Lau wrote the prescription and after SB 14 went into effect, Patient Six filled the prescription at a pharmacy located in Collin County, TX.

116. On January 22, 2024, Patient Six refilled the prescription at a pharmacy located in Collin County, TX.

117. Later, Patient Six turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

118. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Seven**

119. Patient Seven resided in Wise County, TX.

120. Patient Seven was 17 at the relevant time.

121. Lau identifies Patient Seven as a biological female.

122. On August 31, 2023, Lau wrote Patient Seven a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

123. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

124. On September 1, 2023, after SB 14 went into effect, Patient Seven filled the prescription at a pharmacy located in Wise County, TX.

125. Later, Patient Seven turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

126. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Eight**

127. Patient Eight resides in Dallas County, TX.

128. Patient Eight was 16 years old at the relevant time.

129. Lau identifies Patient Eight as a biological male, but upon information and belief, Patient Eight may be a biological female.

130. On August 28, 2023, Lau wrote Patient Eight a prescription for a 28-day supply of 200 mg/ml of Depo-testosterone with orders to fill the prescription after SB 14 took effect.

131. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

132. On October 16, 2023, 61-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eight filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Nine**

133. Patient Nine resides in Dallas County, TX.

134. Patient Nine was 14 years old at the relevant time.

135. Lau identifies Patient Nine as a male, but upon information and belief, Patient Nine may be a biological female.

136. On July 5, 2023, Lau wrote Patient Nine a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

137. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

138. On October 27, 2023, 114-days after Lau wrote the prescription and after SB 14 went into effect, Patient Nine filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Ten**

139. Patient Ten resides in Tarrant County, TX.

140. Patient Ten was 14 years old at the relevant time.

141. Lau identifies Patient Ten as a biological female.

142. On August 29, 2023, Lau wrote Patient Ten two prescriptions for either a 7-day or 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

143. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

144. On October 2, 2023, after SB 14 went into effect, Patient Ten filled the prescription at a pharmacy located in Tarrant County, TX.

145. On November 1, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

146. On December 4, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

147. On January 5, 2024, Patient Ten filled the second prescription at a pharmacy located in Tarrant County, TX.

148. On February 12, 2024, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Eleven**

149. Patient Eleven resides in Kaufman County, TX.

150. Patient Eleven was 14 years old at the relevant time.

151. Lau identifies Patient Eleven as a biological female.

152. On August 29, 2023, Lau wrote Patient Eleven four prescriptions for 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

153. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

154. On September 5, 2023, after SB 14 went into effect, Patient Eleven filled the prescription at a pharmacy located in Kaufman County, TX.

155. On October 15, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

156.    On November 17, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

157.    On January 7, 2024, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

**Patient Twelve**

158.    Patient Twelve resides in Rockwall County, TX.

159.    Patient Twelve was 14 years old at the relevant time.

160.    Lau identifies Patient Twelve as a biological female.

161.    On August 31, 2023, Lau wrote Patient Twelve a prescription for a 90-day supply of testosterone 1.62% Gel Pump with orders to fill the prescription after SB 14 took effect.

162.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

163.    On January 19, 2024, 141-days after Lau wrote the prescription and after SB 14 took effect, Patient Twelve filled the prescription at a pharmacy located in Rockwall County, TX.

**Patient Thirteen**

164.    Patient Thirteen resides in Dallas County, TX.

165.    Patient Thirteen was 15 years old at the relevant date.

166.    Lau identifies Patient Thirteen as a biological female.

167.    On July 11, 2023, Lau wrote Patient Thirteen several prescriptions for a 90-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

168. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

169. On October 13, 2023, 94-days after Lau wrote the prescription and after SB 14 went into effect, Patient Thirteen refilled the prescription at a pharmacy located in Dallas County, TX.

**Patient Fourteen**

170. Patient Fourteen resides in Denton County, TX.

171. Patient Fourteen was 15 years old at the relevant time.

172. Lau identifies Patient Fourteen as a biological female.

173. On August 21, 2023, Lau wrote Patient Fourteen a prescription for a 34-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

174. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

175. On October 27, 2023, 67-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fourteen filled the prescription at a pharmacy located in Denton County, TX.

**Patient Fifteen**

176. Patient Fifteen resides in Dallas County, TX.

177. Patient Fifteen was 15 years old at the relevant time.

178. Lau identifies Patient Fifteen as a biological female.

179. On June 23, 2023, Lau wrote Patient Fifteen a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

180. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

M.R. 129

181. On September 11, 2023, 80-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fifteen filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Sixteen**

182. Patient Sixteen resides in Tarrant County, TX.

183. Patient Sixteen was 15 years old at the relevant time.

184. Lau identifies Patient Sixteen as a biological female.

185. On August 23, 2023, Lau wrote Patient Sixteen a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

186. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

187. On January 7, 2024, 137-days after Lau wrote the prescription and after SB 14 went into effect, Patient Sixteen filled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Seventeen**

188. Patient Seventeen resides in Potter County, TX.

189. Patient Seventeen was sixteen years old at the relevant time.

190. Lau identifies Patient Seventeen as a biological female.

191. On August 31, 2023, Lau wrote Patient Seventeen a prescription for a 42-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

192. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

193. On September 1, 2023, after SB 14 went into effect, Patient Seventeen filled the prescription at a pharmacy located in Potter County, TX.

**Patient Eighteen**

194. Patient Eighteen resides in Collin County, TX.

195. Patient Eighteen was 16 years old at the relevant time.

196. Lau identifies Patient Eighteen as a biological male, but upon information and belief, Patient Eighteen may be a biological female.

197. On August 24, 2023, Lau wrote Patient Eighteen a prescription for an 80-day supplies of 200 mg/ml of testosterone 12.5 mg/1.25 g with orders to fill the prescription after SB 14 took effect.

198. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

199. On October 27, 2023, 64-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eighteen filled the prescription at a pharmacy located in Saint Louis County, MO.

**Patient Nineteen**

200. Patient Nineteen resides in Collin County, TX.

201. Patient Nineteen was 16 years old at the relevant time.

202. Lau identifies Patient Nineteen as a biological male, but upon information and belief, Patient Nineteen may be a biological female.

203. On August 31, 2023, Lau wrote Patient Nineteen a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

204. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

205. On October 24, 2023, 54- days after Lau wrote the prescription and after SB 14 went into effect, Patient Nineteen filled the prescription at a pharmacy located in Collin County, TX.

**Patient Twenty**

206. Patient Twenty resides in Dallas County, TX.

207. Patient Twenty was 17 years old at the relevant time.

208. Lau identifies Patient Twenty as a biological female.

209. On August 31, 2023, Lau wrote Patient Twenty a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

210. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

211. On November 22, 2023, 83-days after Lau wrote the prescription and after SB 14 went into effect, Patient Twenty filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Twenty-One**

212. Patient Twenty-one resides in Dallas County, TX.

213. Patient Twenty-one was 17 years old at the relevant time.

214. Lau identifies Patient Twenty-one as a biological female.

215. On August 15, 2023, Lau wrote Patient Twenty-one a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

216. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

217. On September 10, 2023, after SB 14 went into effect, Patient Twenty-one filled the prescription at a pharmacy located in Dallas County, TX.

218. Later, Lau identifies the now 18-year-old Patient Twenty-one, as a biological male.

\* \* \*

219. Paragraphs 58-219 describe 21 minor patients who Lau has unlawfully treated with testosterone for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of SB 14.

220. Some of Lau's medical records for the patients identified in the preceding paragraphs indicate that the patients are male, but upon information and belief, **all of these patients are biological females** and Lau is prescribing to them for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex. *See also supra* ¶ 37(i) (Lau admitting that she commonly changes the biological sex of her patients in her medical records).

221. Lau cannot circumvent SB 14 by writing prescriptions to her patients *prior* to the SB 14 taking effect with orders to fill or refill the prescriptions *after* it takes effect, see 22 Tex. Admin. Code § 315.3(b)(2) (Schedule III Controlled Substances can be refilled up to five times within six months of the date of issuance), because a "prescription" order is not a singular discrete act, but a continuing act of treatment that begins with the prescription being written and continues through the pharmacist filling the prescription and the drug being used as directed by the patient, or until the written prescription expires or is cancelled, and *alternatively*, because by issuing prescriptions with orders to fill them after the effective date of SB 14 Lau is "providing" the

prescribed medication to the patient at the time they fill and use the prescription as directed, which they could not do otherwise without the prescription.

222. Each and every prescription written by Lau after September 1, 2023, or filled or taken as directed by a patient after September 1, 2023, for the purpose of transitioning the minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex violates Tex. Health & Safety Code § 161.702(3).

## X.     FALSE, MISLEADING, OR DECEPTIVE ACTS

223. Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

224. Lau, as alleged herein, has in the course of trade and commerce engaged in false, misleading, and deceptive acts and practices declared unlawful in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

225. Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

226. As illustrated in the representative example below, Lau deceptively misleads pharmacies, insurance providers, and/or the patients by falsifying patient medical records, prescriptions, and billing records to indicate that the use of puberty blockers for minor patients are for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

227. Lau also likely deceptively misled pharmacies, insurance providers and/or the patients by falsifying patient medical records, prescriptions and billing records to indicate the use of Testosterone for minor Patients One through Twenty-one for something other than

transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

228. Texas Bus. & Com. Code § 17.46(b)(5) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not."

229. As illustrated in the representative example below, Lau deceptively represents that goods or services have approval, characteristics, uses, or benefits which they do not or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not have by falsifying patient medical records, prescriptions, and billing records for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

230. Texas Bus. & Com. Code § 17.46(b)(24) prohibits "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

231. As illustrated in the representative example below, Lau deceptively induces pharmacies, insurance providers, and/or the patients into entering into transactions by falsifying patient medical records, prescriptions, and billing records to indicate that treatments are for something other than transitioning a child's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

A.      *Lau uses false diagnoses and billing codes on transgender patients.*

**Patient Twenty-Two**

232.    Patient Twenty-Two, a 15-year-old minor, was first seen by Lau in January 2023.

233.    Lau represented that Twenty-two was identified in the medical records as a male at the time.

234.    Lau falsely billed Patient Twenty-Two's insurance using the diagnostic code for an endocrine disorder, unspecified (E349).

235.    In fact, Lau diagnosed Twenty-two with gender dysphoria and began "treatment" for that condition by prescribing and inserting a puberty blocker device in the patient for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

236.    On August 3, 2023, Lau changed Twenty-two's sex to female in the medical and billing records—further proof that Lau was transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

237.    Less than a week later, Twenty-two met with Lowell, the founder of Queer Med and who exclusively treats transgender patients, *see What We Do*, QueerMed (accessed October 8, 2024), https://tinyurl.com/2rr2ff7e, for a fertility preservation counseling visit.

238.    Lowell used the same false diagnostic billing code for endocrine disorder, unspecified (E349), when she was actually providing treatment to Patient Twenty-Two for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

239. Two weeks later, on August 18, 2023, Twenty-two visited Lau who falsely billed for the removal and reinsertion of a puberty blocker for the treatment of an endocrine disorder, unspecified (E349)—when in fact Lau was using puberty blockers for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

240. The same day, Twenty-two was seen by a different provider at Children's Medical Center of Dallas who correctly used billing codes for gender identity disorder, unspecified (F649).

241. Patient Twenty-Two had follow up visits with Lowell of QueerMed in January and March 2024, where her diagnosis was again falsely billed as an endocrine disorder, unspecified (E349).

242. Thus, even prior to September 1, 2023, and despite other providers correctly diagnosing Twenty-two with gender identity disorder, unspecified (F649), Drs. Lau and Lowell demonstrated a pattern of false, misleading, and deceptive acts by choosing to falsify Patient Twenty-Two's biological sex, medical records, diagnoses, treatment plan, prescriptions, and billing records to conceal that they were transitioning Patient Twenty-Two's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

B. *Gender dysphoria is not an endocrine disorder.*

243. "Insurance Coding Alternatives for Trans Healthcare," Campaign for Southern Equality (accessed October 8, 2024), https://tinyurl.com/5ce62v2d, purports to assist healthcare providers with instructions on how to use false billing codes to provide medical treatments for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

M.R. 137

244. The fact sheet claims that it is intended to "assist trans people in advocating for themselves with their healthcare providers and insurance companies" and discusses "insurance codes for trans healthcare that are commonly accepted and rejected." *Id.*

245. The fact sheet notes certain billing codes that are commonly rejected by insurance providers include the F64 set of codes for gender dysphoria or gender identity disorder. *Id.*

246. The fact sheet recommends billing for hormone replacement therapy to transition a minor's biological sex as an endocrine disorder, unspecified (E34.9).

247. Upon information and belief, Lau is using this diagnostic billing code to falsely represent that she's treating patients for an unspecified endocrine disorder, when in fact she is transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex—something that is *not* an endocrine disorder.

248. An endocrine disorder results from the improper function of the endocrine system.

249. Children normally enter puberty reflecting their biological sex. There is no disorder at all. Rather, the disorder results when a physician intervenes in a child's natural puberty to induce through puberty blockers and cross-sex hormones a state of puberty naturally occurring in the opposite sex. Such physician *causes a disorder* rather than treats one, by introducing supraphysiological dose of a cross-sex hormone to force a child's body (a biological reality) to fit that child's gender identity (a mental construct).

250. Here, Lau is engaging in false, misleading, or deceptive practices, by falsely diagnosing and billing patients using the endocrine disorder, unspecified, code instead of the F64 gender related diagnosis codes to conceal that she is transitioning their biological sex or affirming

31

their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

## XI. APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

251. Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

252. Texas has reason to believe that Lau is engaging in, has engaged in, or is about to engage in acts and practices declared to be unlawful under Tex. Health & Safety Code § 161.702(3) and Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), and believes these proceedings to be in the public interest.

253. Texas is entitled to, and seeks, temporary and permanent injunctions pursuant to Tex. Health and Safety Code § 161.702 as well as Tex. Bus. & Com. Code § 17.47.

254. Cessation of unlawful conduct by Lau shall not render such court action moot under any circumstances. *Id.*

255. Immediate injunctive relief is necessary to prevent continuing harm prior to trial.

256. In addition to the above-requested relief, pursuant to Tex. Civ. Prac. Rem. Code § 65.011 *et seq.* and Tex. R. Civ. P. 680 *et seq.*, to preserve the status quo pending a full trial on the merits, *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002), the Texas Attorney General's Office request a temporary injunction against Lau that enjoins her from the following until final resolution of this matter:

    i. Prescribing supraphysiologic doses of testosterone and estrogen to minors for the purpose of transitioning their biological sex; and

    ii. Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for treatments to transition a child's biological sex under false

diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

## XII. PRAYER FOR RELIEF

257. NOW THEREFORE Texas prays that Lau be cited to appear and that after due notice and hearing, a temporary injunction be issued, and that upon final hearing a permanent injunction be issued, restraining and enjoining Lau and all persons in active concert or participation with her, who receive actual notice of the injunction by personal service or otherwise from engaging in false, misleading or deceptive acts and practices declared to be unlawful by Tex. Health and Safety Code § 161.702 and Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24), including but not limited to:

    i. Prescribing supraphysiologic doses of testosterone and estrogen to minors for the purpose of transitioning their biological sex;

    ii. Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for treatments to transition a child's biological sex under false diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

258. TEXAS FURTHER PRAYS that upon final hearing, this Court order:

    i. Adjudge against Lau civil penalties in favor of the State in the amount of not more than $10,000 per violation of Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24);

    ii. Order Lau to pay Texas's attorneys' fees and costs of court pursuant to Tex. Gov't Code § 402.006(c);

    iii. Order Lau to pay both pre-judgment ad post-judgment interest on all money awards as provided by law; and

    iv. Grant all other and further relief Texas may show itself entitled to.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
State Bar No. 24092619
Deputy Chief, Consumer Protection Division

Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Telephone: 512-463-2185
Facsimile: 512-473-8301
**ATTORNEYS FOR TEXAS**

# DECLARATION

Pursuant to Tex. Civ. Rem. & Prac. Code § 132.001(f), JOHNATHAN STONE submit this unsworn declaration in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by Texas Rule of Civil Procedure 682. I am an employee of the following governmental agency: Texas Office of the Attorney General. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the factual statements in the foregoing are true and correct.

Executed in Travis County, State of Texas, on the 17th day of October, 2024.

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

# EXHIBIT E

Filed: 1/13/2025 10:18 AM
Michael Gould
District Clerk
Collin County, Texas
By Elizabeth Anderson Deputy
Envelope ID: 96128789

## Cause No. 493-07676-2024

| | | |
|---|---|---|
| The State of Texas, | § | In the District Court of |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Collin County, Texas** |
| | § | |
| May C. Lau, M.D., | § | |
| *Defendant.* | § | 493rd Judicial District |

## PROTECTIVE ORDER

After considering the parties' motions, any responses thereto, and arguments of counsel, the Court hereby enters the following protective order in Case Nos. 493-08026-2024 and 493-07676-2024.

To adequately protect individually identifiable health information and other information entitled to be kept confidential, the Court orders as follows:

I. **Definitions**:

(A)     As used in this Order, the term **"party"** shall mean all named parties to any action in the above-captioned litigation, including any named party added or joined to any complaint in this action.

(B)     The term **"third-party"** shall mean any individual, corporation, other natural person or entity, or any state, federal, or local government agency.

(C)     The term **"documents"** as used herein is intended to be comprehensive and includes any and all materials in the broadest sense contemplated by Tex. R. Civ. P. 192.3(b), and shall include all written, oral, recorded, or graphic material, however produced or reproduced, including, but not limited to, all written or printed matter of any kind, computer data, all graphic or manual records or representations of any kind, and electronic, mechanical, or electric records or representations of any kind.

# M.R. 144

(D)    As used in this Order, the term **"confidential health information"** means "protected health information" as defined in the Texas Medical Records Privacy Act (TMRPA), Tex. Health & Safety Code Ch. 181 and the Health Insurance Portability and Accountability Act (HIPAA) of 1996, 45 C.F.R § 164.501 ("protected health information") and 160.103 ("individually identifiable health information").

(E)    The term **"confidential information"** means information (regardless of how it is generated, stored or maintained) or tangible things that contain or reflect confidential, non-public, proprietary, commercially sensitive, and/or private information of a n individual or entity. confidential information includes, but is not limited to, confidential health information.

(F)    The term **"classified information"** refers to all documents designated as "confidential information" or "confidential health information."

II.    **General Provisions**:

(A)    **Production of Health Information That May Be Subject To 5 U.S.C. § 552a, to 45 C.F.R. §§ 164.102-164.534, or to 42 U.S.C. § 1306, or Other Privacy Protections**. Documents produced during discovery in the above-captioned litigation may contain information subject to provisions of state and federal privacy laws governing health information. In order to facilitate the production of these records and to protect their confidentiality, the requested or subpoenaed parties are permitted to produce these documents to any party of the litigation in an unredacted form to the extent permitted by law. Upon producing these documents, the producing party shall designate them as "confidential health information" in the manner set forth below. All parties receiving these documents may use such designated records only for purposes of the above-captioned litigation and may disclose them to non-parties to this litigation only as specified within this Order and only if the non-party signs the form of acknowledgment attached to this Order as set forth below.

- 2 -

(B)     **Designation of Material Subject to this Protective Order.** To designate Confidential Information produced in Documentary form (e.g., paper or electronic Documents), the Producing Party shall so designate on the material itself or in an accompany cover letter using the following designations, as appropriate: "CONFIDENTIAL" or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." If only a portion or portions of the material on a page qualifies for protection, and it is feasible and not unduly burdensome to do so, the Producing Party also must clearly identify the protected portions and must specify, for each portion, the protection being asserted. For testimony given in deposition or in other pretrial or trial 4 proceedings, that the Designating Party when practical identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the protection being asserted. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards, that the entire transcript or any portion thereof shall be treated as "CONFIDENTIAL," or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." Parties shall give the other Parties reasonable notice (a minimum of two business days) if they reasonably expect a deposition, hearing or other proceeding to include Confidential Information so that the other Parties can ensure that only authorized individuals who have signed the "Certification" (Exhibit A) are present at those proceedings.

(C)     **Scope of Order.** The terms and conditions of this Order shall govern all documents designated as classified information. Should a document or record contain information that is protected under the terms and conditions of this Order as well as the terms and conditions of any other Protective Order entered in the above-captioned litigation, the terms and conditions of this Order shall govern in the event of any conflict between the Orders.

III.     **Provisions Governing Use and Disclosure of Classified Information:**

- 3 -

(A)     The parties may not use or disclose classified information for any purpose other than use in the above-captioned litigation.

(B)     Classified information may be disclosed only to the following qualified persons:

1.      This Court and all persons assisting this Court in this action, including court reporters taking testimony involving such information, and necessary stenographic and clerical personnel;

2.      Persons retained as consultants or experts for any party and principals and employees of the firms with which consultants or experts are associated;

3.      Persons other than consultants or experts, who are employed by counsel to provide purely administrative assistance to counsel for any party for the purpose of this action, including litigation support services and outside copying services;

4.      Any person who may testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in this action, and for the purpose of assisting in the preparation or examination of the witness;

5.      Any other person hereafter designated by written stipulation of the parties and, if applicable, the third-party who produced or supplied the confidential health information, or by further order of this Court; and

6.      The parties, the parties' counsel and their partners, associates, paralegals, and clerical and support personnel.

(C)     No classified information may be disclosed to any person pursuant to the provisions of paragraph III. (B) of this Order unless counsel first informs such person that pursuant to this Order the material to be disclosed may only be used for purposes of preparing and presenting evidence in this litigation and must be kept confidential. No classified information may be disclosed to any person identified in this Order unless such person first is given a copy of this Order and advised that the information contained in the document is classified information and informed that an unauthorized disclosure of the information in the document may constitute contempt of this Court. Each person to whom classified information is disclosed shall execute an acknowledgement in the form of attached hereto as Exhibit A and shall agree to be bound by this Order prior to receiving any classified information. Copies of the executed Certifications, and a current log of the

- 4 -

materials containing confidential health information disclosed to each person executing a Certification, shall be retained by counsel for the party or parties who disclosed the confidential health information to such persons.

(D)     No person, firm, corporation, or other entity subject to this Order shall give, show, disclose, make available, or communicate classified information to any person, firm, corporation, or other entity not expressly authorized by this Order to receive such classified information.

(E)     **Use of Classified Information in Court.** In the event any party wishes to use classified information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the classified information, such as redacting the personal identifiable information, including patient names, names of family members, social security numbers, patient numbers, addresses, phone numbers, email addresses, or other contact information. In the event this Court wishes to review the redacted material, this Court may review the redacted material in camera or order that the documents or transcript of any hearing containing classified information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

(F)     **Identification of Patients and Their Confidential Health Information.** In the event any party wishes to identify any patient or their confidential health information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the identities and confidential health information of each patient, by referring to the patient through a generic reference, as follows: "Patient One," "Patient Two," etc. In the event this Court wishes to know the identification of the patient, this Court may review the identification of each patient in camera or order that the documents or

- 5 -

# M.R. 148

transcript of any hearing containing the identities of the patient and their confidential health information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

IV. **Challenging Classified Information Designations:**

(A) A party shall not be obligated to challenge the propriety of a classified information designation at the time such designation is made and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as classified information, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as classified information. The designating party shall then have fourteen (14) days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain classified information unless and until the court orders otherwise, except that the failure of the designating party to request and obtain a setting seeking an order within thirty days of moving the court for an order shall constitute a termination of the status of such item as classified information.

V. **Destruction of Classified Information at Completion of Litigation:**

(A) Within sixty (60) days after the final resolution of the above-captioned action, including resolution of all appellate proceedings, all documents and copies of documents in the Attorney General's possession, which are designated as containing classified information, as well as notes, memoranda, and summaries taken or made of such documents that contain classified information, shall either be returned to the producing party or third party or destroyed.

(B)     All counsel of record who received documents that contain classified information shall certify compliance herewith and shall deliver the same to the producing party or third party not more than sixty (60) days after the final resolution of this action. The return of documents or certifications of destruction relating to documents produced by the State of Texas shall be provided to Office of the Attorney General, Consumer Protection Division.

(C)     This provision does not apply to patient medical records that are already existing in the patient's medical chart and may remain in the patient's medical chart for the purpose of continuing healthcare and must be preserved according to the physician's obligations to the patient and medical board.

## VI.     Miscellaneous Provisions:

(A)     **No Waiver.** The failure to designate any materials shall not constitute a waiver of the assertion that the materials are covered by this Protective Order.

(B)     **Third-Party Request or Demand for Disclosure.** Should any party bound by this Order receive a subpoena, civil investigative demand, or other process from a third-party seeking, requesting, or requiring disclosure of classified information in any form, such person shall give notice immediately to the producing party so that the producing party may seek appropriate relief, if any. Notice shall be made within ten (10) days of receiving the request for production and shall be in writing. Notice to the State of Texas shall take the form of written notification to the Office of the Attorney General, Consumer Protection Division. No person bound by this Order who receives a subpoena, civil investigative demand, other process from a third-party seeking, requesting, or requiring the disclosure of classified information shall produce or disclose such documents or information unless and until a) ordered by a court having competent jurisdiction, or b) such production or disclosure is in accordance with the provisions herein and is expressly consented to by the producing party.

**M.R. 150**

(C)     **Inadvertent Failures to Designate.** An inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this Order for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

(D)     **Storage and Maintenance of Classified Information.** Classified information must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. Any person in possession of classified information will maintain appropriate administrative, technical, and organizational safeguards ("Safeguards") that protect the security and privacy of classified information. The Safeguards will meet or exceed relevant industry standards and limit the collection, storage, disclosure, use of, or access to classified information solely to personnel and purposes authorized by this Order.

(E)     **Inadvertent Production of Privileged Material.** When a producing party gives notice of receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set in the Texas Rules of Civil Procedure, including Texas Rule of Civil Procedure 193.3(d). The production or disclosure of any material that is attorney-client privileged, physician-patient privileged, work-product-protected, or otherwise privileged under Texas law shall not result in the waiver of any claim of privilege or work product protection associated with such information, regardless of the circumstances of such production or disclosure.

(F)     **Unauthorized Disclosure of Classified Information.** If a receiving party learns that, by inadvertence or otherwise, it has disclosed classified information to any person or in any circumstance not authorized under this Order, the receiving party must immediately (a) notify in

- 8 -

# M.R. 151

writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the classified information, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Certification" that is attached hereto as Exhibit A. If a receiving party or person authorized to access classified information ("Authorized Recipient") discovers any loss of classified information or a breach of security, including any actual or suspected unauthorized access, relating to another party's classified information, the receiving party or authorized recipient shall: (1) promptly stop the unauthorized breach; (2) promptly (within 72 hours) provide written notice to the designating party of such breach, including information regarding the size and scope of the breach; and (3) investigate and make reasonable efforts to remediate the effects of the breach. In any event, the receiving party or authorized recipient shall promptly take all necessary and appropriate corrective action to terminate any unauthorized access.

(G)     **The Application of Other Privacy Provisions of Law.** Notwithstanding any provision of this Order to the contrary, in accordance with any applicable federal, state, or local laws that afford heightened protection to certain categories of confidential health information including, but not limited to records or diagnosis or treatment for alcohol or substance abuse, certain sexually transmitted diseases such as HIV/AIDS, mental health, minors, and research pertaining to genetic testing, the producing party may completely exclude from production any information afforded heightened protection by such federal, state, or local laws.

(H)     Nothing in this Order shall affect the rights of the parties or third parties to object to discovery on grounds other than those related to the protection of confidential health information, nor shall it preclude any party or third-party from seeking further relief of protective orders from this Court as may be appropriate under the Texas Rules of Civil Procedure.

**M.R. 152**

(I)     Any person requiring further protection of confidential health information may petition this Court for a separate order governing the disclosure of its information.

(J)     The provisions of this Order shall survive the conclusion of this action.

## VII.    No Good Cause to Excuse Patient Notification:

This Court does not find that good cause exists to excuse the parties from the patient notification requirements in Tex. R. Civ. P. 196.1(c); save and except, as to the identified limited motion to transfer venue discovery (date, location of treatment, location of filling of prescription) which the parties agree falls within 196.1(c)(2)(B). (Parties agree all other information will be wholly redacted).

## VIII.   No Attestation Required:

This Court finds that the allegations in this suit involve the prescribing of puberty blockers and/or cross-sex hormones for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex in violation of Tex. Health & Safety Code §161.702(3), and alleged falsification of medical records, prescriptions, and billing records to intentionally conceal the allegedly unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5). See generally Tex. Orig. Pet.

The Court finds the attestation provision is not applicable in this cause, including but not limited for the reason the information is not sought for a prohibited purpose. The parties are, therefore, excused from the attestation requirement contained in 45 C.F.R. § 164.509(a), to the extent such requirements exist.

SIGNED on this 13th day of January, 2025.

- 10 -

# M.R. 153

CHRISTINE A. NOWAK
DISTRICT COURT JUDGE

1/13/25

# EXHIBIT A

## CERTIFICATION

I certify that I have read the attached Agreed Protective Order (the Order), and I agree that I will not use or disclose classified information or individually identifiable health information for any purpose other than this litigation and that, within sixty days (60) after the final resolution of this action, I will either return all classified information to the party that produced such information or destroy such classified information. I will otherwise keep all classified information in accordance with this Order. I agree that the 493rd District Court in Collin County Texas has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I agree that the court where *Texas v. Lau*, No. 493-07676-2024 is pending at the time of enforcement or where the trial in *Texas v. Lau* occurred has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.

_____
Date

_____
[Printed Name]

_____
[Signature]

**M.R. 156**

FILED
2/20/2025 4:41 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Martin Reyes DEPUTY

Cause No. DC-25-01823

Nonparty Patient No. 1,
Nonparty Patient No. 2,
Nonparty Patient No. 3,
Nonparty Patient No. 4,
Nonparty Patient No. 5,
Nonparty Patient No. 6,
Nonparty Patient No. 7,
Nonparty Patient No. 8,
Nonparty Patient No. 9,
Nonparty Patient No. 10, and
Nonparty Patient No. 11,

              Plaintiffs,

   vs.

The State of Texas,

              Defendant.

IN THE DISTRICT COURT OF

DALLAS COUNTY, TEXAS

95TH JUDICIAL DISTRICT

## THE NONPARTY PATIENTS' AMENDED PETITION
## FOR PROTECTION FROM DISCOVERY SUBPOENAS

To the Honorable Judge of this Court:

Pursuant to Texas Rule of Civil Procedure 176.6(e), Plaintiffs ("Nonparty Patients")[1] move for protection from discovery subpoenas (Exhibits A and B) ("Subpoenas") that the State of Texas served on Children's Health System of Texas and UT Southwestern Medical Center ("Hospital Systems"). Ex. C ¶¶ 3–4. Nonparty Patients would respectfully show the Court as follows:

### I.     INTRODUCTION

1.     The State has brought a lawsuit in the 493rd Judicial District in Collin County, Texas (the "Lau Litigation"), alleging in its Petition (attached as Exhibit D) that Dr. May C. Lau

---

[1] Pursuant to the Collin County District Court's Protective Order § III(F) (attached as Exhibit E), the Nonparty Patients have filed this Motion using a generic reference to avoid disclosing their identities as patients related to that litigation. Ex. C ¶ 5. Consistent with the Protective Order, the Nonparty Patients may be identified *in camera* or as otherwise ordered by the Court. *Id.*

M.R. 157

violated provisions in Senate Bill 14 ("SB14") and engaged in false, misleading, or deceptive acts by providing gender affirming care to teenage patients. Ex. D ¶¶ 23, 43. On Monday, January 27, the State served sweeping Subpoenas in Dallas County on the Hospital Systems, demanding private medical records of 21 individuals, including the Nonparty Patients. Ex. A at 7; Ex. B at 7. The State's requests broadly seek all "documents relating to the care and treatment [of the nonparty]," irrespective of any relevance to the underlying litigation. Ex. A at 7; Ex. B at 7. The non-limiting examples in the State's requests underscore that the Subpoenas are invasive and target sensitive medical records, including psychotherapy notes. Ex. A at 7; Ex. B at 7.

2. The Texas Rules of Evidence codify a longstanding physician-patient privilege that precludes such discovery. Tex. R. Evid. 509; Tex. R. Evid. 510. This privilege acknowledges that meaningful healthcare requires allowing patients to talk freely with their doctors on sensitive topics without fear of disclosure, or repercussions from the State. *See, e.g.*, *R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994) ("The basis for the privileges is twofold: (1) to encourage the full communication necessary for effective treatment, … and (2) to prevent unnecessary disclosure of highly personal information."). The State's requests in the Subpoenas—which are untethered to any issue of consequence in the Lau litigation—cannot plausibly satisfy the narrow exceptions to that privilege, and the requests are impermissibly broad, unduly burdensome, and unnecessarily target irrelevant information. The Nonparty Patients have thus filed this Petition in Dallas County, where the Subpoenas were served, seeking protection from the discovery sought.

## II. JURISDICTION

3. The Court has jurisdiction over this matter under Texas Rules of Civil Procedure 176.6 and 192.6(a). A "[p]erson affected by the subpoena, may move for a protective order under Rule 192.6(b) ... in a district court in the county where the subpoena was served." Tex. R. Civ. P. 176.6(e). The Nonparty Patients are not parties to the Lau Litigation but are each a nonparty patient

2

about whom the State has sought medical records and other information from the Hospital Systems in the Subpoenas. Ex. C ¶ 2. The Nonparty Patients thus have standing to seek "an order protecting [Movant] from the discovery sought" because each is "a person affected by the subpoena." Tex. Tex. R. Civ. P. 176.6(e); R. Civ. P. 192.6(a). The Hospital Systems were both served the Subpoenas in Dallas County, where this Court is situated, via their common registered agent, CT Corporation System, at 1999 Bryan St, Suite 900, Dallas, TX 75201. Ex. A at 2; Ex. B at 2.

### III. BACKGROUND

4. In the Lau Litigation, the State's allegations largely center on Dr. Lau purportedly prescribing medicines to teenage patients, including testosterone. Ex. D ¶ 56. The State alleges that such care became unlawful under SB14 on September 1, 2023. *Id.* ¶¶ 23, 222. The State also alleges that Dr. Lau engaged in false, misleading, or deceptive practices after or around the enactment of SB14, purportedly to mislead pharmacies, insurance providers, or patients into believing that the patients' testosterone treatments were for purposes other than gender-affirming care to circumvent the restrictions in SB14. *Id.* ¶¶ 226-27.

5. On January 27, 2024, the State served the Subpoenas on the Hospital Systems. Ex. A; Ex. B. The Subpoenas are substantially identical. Ex. A; Ex. B. Each includes the same requests for production for 21 nonparty patients:

> Produce documents relating to the care and treatment of [a patient] …, including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

Ex. A at 7; Ex. B at 7. There are no accompanying instructions or definitions that would limit the requested production in a meaningful way, such as only to materials that would be of legal consequence in the Lau Litigation. The only limitation in time is ambiguous. It is unclear whether the requests are limited to "documents … from January 1, 2021, through present," or whether that timeframe applies only to "correspondence from January 1, 2021, through present." In either event,

3

there is no apparent, meaningful relationship between the nonparty patients' medical records (including highly sensitive materials, like psychotherapy notes) from 2021 or earlier and the State's allegations about Dr. Lau's actions in or around the enactment of SB14 in September 2023.

6. Despite the obvious gravity of the privacy rights threatened by the Subpoenas for 21 nonparty patients, the State has inexplicably demanded compliance from the Hospital Systems within seven days from when the Subpoenas were served on January 27, 2024 (Ex. A at 5; Ex. B at 5), effectively denying many of the 21 nonparty patients a reasonable opportunity to obtain counsel and seek advice on their legal rights before compliance is due.

## IV. ARGUMENT AND AUTHORITIES

7. The Court should enter an order preventing the Hospital Systems from producing the materials sought in the Subpoenas because the State's requests are overly broad, seek irrelevant materials, and demand materials that are protected from disclosure under the Physician-Patient Privilege (Tex. R. Evid. 509) and the Mental Health Information Privilege (Tex. R. Evid. 510). Courts may enter orders protecting individuals from discovery by subpoena to prevent an invasion of personal rights, including privacy and privileges. Tex. R. Civ. P. 192.6(b); Tex. R. Civ. P. 176.6(e), 176.7. Courts also have the authority to limit the scope of discovery based on the needs and circumstances of the case. Tex. R. Civ. P. 192 cmt. 7.

8. Under the Physician-Patient Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (1) a confidential communication between a physician and the patient that relates to or was made in connection with any professional services the physician rendered the patient; and (2) a record of the patient's identity, diagnosis, evaluation, or treatment created or maintained by a physician." Tex. R. Evid. 509(c). Similarly, under the Mental Health Information Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (A) a confidential communication between the patient and a

4

professional; and (B) a record of the patient's identity, diagnosis, evaluation, or treatment that is created or maintained by a professional." Tex. R. Evid. 510(b)(1).

9.     It is self-evident from the State's Subpoenas that the documents sought are subject to the Physician-Patient Privilege and the Mental Health Information Privilege. Each request asks for "document relating to the care and treatment" of the nonparties, such as "medical … records," "psychotherapy notes," and "correspondence" with the nonparty patients, including Movant. Ex. A at 7; Ex. B at 7; Ex. C ¶ 2. Documents relating to the care and treatment of the nonparties, medical records, psychotherapy notes, and correspondence between the Hospital Systems, the nonparty patients, and healthcare providers will necessarily include confidential communications between the nonparty patients and their physicians and/or professionals, along with records of the nonparty patients' identities, diagnoses, evaluations, and treatments that were created or maintained by physicians and/or mental health professionals. *See generally In re Irvin*, No. 05-98-01771-CV, 1998 WL 908955, at *4 (Tex. App.—Dallas Dec. 31, 1998, no pet.) (finding abuse of discretion and granting mandamus when district court ordered production of mental health records).

10.     There is no exception to the Physician-Patient Privilege or the Mental Health Information Privilege that would plausibly apply to the broad requests in the Subpoenas. If the State is suggesting that it is entitled to the nonparty patients' medical records because some information therein may be relevant to a party's claim or defense in the Lau Litigation it is wrong. The State's expansive requests cannot fit under such an exception. The exception to the Physician-Patient Privilege and Mental Health Information Privilege that applies when a party relies on a patient's medical condition (often referred to as the "patient-litigant exception") is narrow, particularly for nonparty patients. *See R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994). As the Texas Supreme Court has explained, it is not enough that there are allegations in the lawsuit for

5

which a condition of the nonparty patient may be relevant—rather, "[t]he scope of the exception should be tied in a meaningful way to the legal consequences of the claim or defense." *Id.* at 842.

11. In other words, for the patient-litigant exception to apply, discovery must be directed to information about a patient's condition that is "a 'part' of a claim or defense," and "must itself be a fact to which the substantive law assigns significance." *Id.* Generally, this means the discovery must be directed to a condition about which "the jury must make a factual determination." *Id.* at 843. Even then, the exception applies "only to the extent necessary to satisfy the discovery needs of the requesting party" when balanced against the privacy interests of the patients and requires *in camera* review of each document so that "any information not meeting this standard remains privileged and must be redacted or otherwise protected." *Id.*

12. The State's Subpoenas cannot remotely meet this standard. The Subpoenas' requests are not directed to *any* specific condition whatsoever. They are broad requests to entire Hospital Systems for all medical records and psychiatry notes about *any* condition or treatment, without any bounds or guidance based on the underlying lawsuit. Nor are the requests reasonably limited in time. At best, they seek all the Nonparty Patients' medical records, including psychiatry notes, for the past four years. Potentially, they seek all the Nonparty Patients' medical records, including psychiatry notes, since birth. Either way, they are untethered in time and scope from the Lau Litigation, which involves acts around or after SB14 was enacted in September 2023. These requests are thus too broad in scope and time to satisfy the patient-litigant exception. *See R.K.*, 887 S.W.2d at 843 (requiring "the request for records and the records disclosed are closely related in time and scope to the claims made … to avoid any unnecessary incursion into private affairs").

13. The Court should therefore enter an order protecting the Nonparty Patients from disclosure under the Subpoenas, including because the requests are not restrictively tailored to

6

maintain the privilege for records and communications that would not be subject to the patient-litigant exception, if it applied at all. *See id.*; *c.f. Groves v. Gabriel*, 874 S.W.2d 660, 661 (Tex. 1994) ("However, a trial court's order compelling release of medical records should be restrictively drawn so as to maintain the privilege with respect to records or communications not relevant to the underlying suit.").

14.     Alternatively, if the Court does not enter an order protecting the Nonparty Patients from the Subpoenas in whole, Movant respectfully requests an opportunity to review any proposed productions from the Hospital Systems to evaluate the documents produced for privilege before they are provided to the State. For claims of privilege, "the documents themselves may constitute the only evidence substantiating the claim of privilege." *Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986). The Nonparty Patients thus require a reasonable opportunity to review any documents that the Hospital Systems would produce to the State so that they may "segregate and produce the documents to the court" for *in camera* review to ensure that only relevant materials subject to the applicable privilege exception are produced, with appropriate redactions. *See id.* (providing for *in camera* review); *R.K.*, 887 S.W.2d at 843 ("Even when a document includes some information meeting this standard, any information not meeting this standard remains privileged and must be redacted or otherwise protected.") ("[W]hen requested, the trial court must perform an *in camera* inspection of the documents produced to assure that the proper balancing of interests, which we have described, occurs before production is ordered.").

15.     For example, the State has no apparent interest in receiving documents that contain personally identifiable information about the Nonparty Patients, and that information should be redacted in any production. Nor does the State have any apparent interest in the Nonparty Patients' medical records from before SB14 was enacted in September 2023. After all, the State's

7

allegations in the Lau Litigation turn on the actions *after* SB14 became law, and neither the identities of Dr. Lau's patients, nor their medical records and communications before September 2023, are facts of consequence that must be adjudicated.

16.     Apart from the Nonparty Patients' privilege assertions, the requests in the Subpoenas are overbroad, directed to irrelevant information, and not proportional to the needs of the case. For instance, there are no limitations to exclude from production materials unrelated to the allegations against Dr. Lau. The State's expansive requests instead presumably encompass all care the Nonparty Patients have received from any provider affiliated with the Hospital Systems, potentially without any meaningful limitation in time, no matter how attenuated or divorced that care is from the Lau Litigation. The State's requests would potentially encompass, for instance, all unrelated physical and mental healthcare (including communications with providers other than Dr. Lau, emergency room visits, vaccinations, and pharmacy records) at the Hospital Systems, without any apparent limitation whatsoever to restrict the requests to the subject matter of the Lau Litigation or a relevant timeframe.

17.     Given the extraordinary breadth of the requests and the attendant high likelihood that irrelevant materials would be produced, if the Court does not enter an order protecting the Nonparty Patients from production under the Subpoenas in whole, the Nonparty Patients request the opportunity to review any proposed production for relevance and, if appropriate, request that the Court conduct an *in camera* inspection of materials proposed for production that the Nonparty Patients identify as irrelevant to the Lau Litigation. *See, e.g., Weisel Enterprises*, 718 S.W.2d at 58 (holding *in camera* review appropriate in situations when the documents' contents are the only evidence of discoverability).

## V. CONCLUSION

18. The State has overstepped the bounds of permissible nonparty discovery. Its Subpoenas to the Hospital Systems plainly seek materials about the Nonparty Patients that are protected from disclosure under the Physician-Patient Privilege and the Mental Health Information Privilege. The requests are also overbroad, seek irrelevant information, and are not proportional to the needs of the case, as they are not meaningfully restricted in time or subject matter to the allegations underpinning the Lau Litigation. The Court should therefore enter a protective order preventing the Hospital Systems from producing discovery in response to the Subpoenas or, alternatively, provide the Nonparty Patients an opportunity to review any proposed production and segregate documents for *in camera* review for relevance and privilege before they are produced.

## VI. PRAYER FOR RELIEF

19. For the foregoing reasons, the Nonparty Patients respectfully request that the Court set this Motion for hearing and, after the hearing, issue an order granting the relief requested herein.

**DATED:** February 20, 2025

Respectfully submitted,

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869
jnewsome@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

9

M.R. 165

## CERTIFICATE OF CONFERENCE

Counsel for movant and counsel for respondent have personally conducted a conference at which there was a substantive discussion of every item presented to the Court herein and despite best efforts the counsel have not been able to resolve those matters presented.

Certified to the Day of February 20, 2025, by:

/s/ William M. Logan
William M. Logan
Texas Bar No. 24106214


## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2025, an electronic copy of this Amended Petition was served to counsel of record for the State of Texas on the relevant subpoenas, as follows:

Jonathan Stone — Jonathan.Stone@oag.texas.gov
Matthew Kennedy — Matt.Kennedy@oag.texas.gov
Rob Farquaharson — Rob.Farquharson@oag.texas.gov
David Shatto — David.Shatto@oag.texas.gov

I further certify that a copy of this Amended Petition is being served via registered or certified mail, return receipt requested, to the above-listed counsel at the following address listed for compliance on the relevant subpoenas:

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711

/s/ Jervonne D. Newsome
Jervonne D. Newsome
Texas Bar No. 24094869

10
# M.R. 166

# EXHIBIT A

CAUSE NO. 493-07676-2024

| | | |
|---|---|---|
| THE STATE OF TEXAS. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D. | § | |
| Defendant. | § | 493RD JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Mauricio Segovia** who, being by me duly sworn, deposed and said:

"The following came to hand on **Jan 16, 2025, 11:25 am,**

**STATE'S NOTICE OF SUBPOENA DUCES TECUM, SUBPOENA DUCES TECUM PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205, PROTECTIVE ORDER,**

and was executed at **1999 BRYAN ST SUITE 900, DALLAS, TX 75201** within the county of DALLAS at 12:35 PM on **Thu, Jan 16 2025**, by delivering a true copy to the within named

**CHILDREN'S HEALTH SYSTEM OF TEXAS C/O CT CORPORATION SYSTEM**
**accepted by Intake Specialist William Miller**
**Witness Fee $1.00**

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Mauricio Segovia
Certification Number: PSC-1689
Certification Expiration: 8/31/2026

BEFORE ME, a Notary Public, on this day personally appeared **Mauricio Segovia**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON ____1/16/2025____

MARIA M. SEGOVIA
My Notary ID # 129480220
Expires July 5, 2025

Notary Public, State of Texas

**M.R. 168**

| | | |
|---|---|---|
| THE STATE OF TEXAS., | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## STATE'S NOTICE OF SUBPOENA DUCES TECUM

To:    Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201

Please take notice that pursuant to Tex. R. Civ. P. 205 gives you 10 days' notice of its intent to serve the attached subpoena duces tecum. The State of Texas has complied with all the requirements in Tex. R. Civ. P. 205.

Please take notice that the Court has entered the attached Protective Order in this matter expressly finding that attestations are not required. *See* Prot. Ord. at 10.


January 16, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division


# M.R. 169

State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2025, a copy of the foregoing document was served to all counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

**M.R. 170**

# THE STATE OF TEXAS

## SUBPOENA DUCES TECUM
## PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

CAUSE NO. 493-07676-2024     IN THE 493rd JUDICIAL DISTRICT COURT OF COLLIN COUNTY, TEXAS

*State of Texas vs. Defendant May C. Lau, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN RULE 176 T.R.C.P.**

**YOU ARE HEREBY COMMANDED TO SUMMON** Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201, to provide documents to the

**Office of the Attorney General**
300 West 15th Street
Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN SEVEN DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street, 9th Floor, Austin, TX 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on January 16, 2025,** at the request the request of the State of Texas.

# M.R. 171

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
Deputy Chief, Consumer Protection Division
State Bar No. 15092619

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**M.R. 172**

## SUBPOENA DUCES TECUM—DOCUMENTS REQUESTED

1.  Produce documents relating to the care and treatment of ███████████ (DOB: ███████ ██ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

2.  Produce documents relating to the care and treatment of ████████ (DOB: █████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

3.  Produce documents relating to the care and treatment of █████████ (DOB: █████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

4.  Produce documents relating to the care and treatment of ██████████ (DOB: ███████ , █████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

5.  Produce documents relating to the care and treatment of ██████████ (DOB: ████████ █████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

6.  Produce documents relating to the care and treatment of █████████ (DOB: ███████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

7.  Produce documents relating to the care and treatment of █████████ (DOB: ███████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

8.  Produce documents relating to the care and treatment of █████████ (DOB: ███████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

9.  Produce documents relating to the care and treatment of ████████ (DOB: ██████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

10. Produce documents relating to the care and treatment of ████████ (DOB: ███████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

11. Produce documents relating to the care and treatment of █████████ (DOB: ██████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

12. Produce documents relating to the care and treatment of ▮▮▮▮▮▮▮ (DOB: ▮▮▮▮ ▮▮▮) including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

13. Produce documents relating to the care and treatment of ▮▮▮▮▮▮ (DOB: ▮▮ ▮▮) including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

14. Produce documents relating to the care and treatment of ▮▮▮▮ (DOB: ▮▮ ▮▮) including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

15. Produce documents relating to the care and treatment of ▮▮▮ (DOB: ▮▮ ▮▮) including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

16. Produce documents relating to the care and treatment of ▮▮▮▮ (DOB: ▮▮) including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

17. Produce documents relating to the care and treatment of ▮▮▮ (DOB: ▮▮▮▮), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

18. Produce documents relating to the care and treatment of ▮▮▮ (DOB: ▮▮▮), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

19. Produce documents relating to the care and treatment of ▮▮▮ (DOB: ▮▮▮), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

20. Produce documents relating to the care and treatment of ▮▮▮ (DOB: ▮▮▮) including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

21. Produce documents relating to the care and treatment of ▮▮▮▮ (DOB: ▮▮▮) including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

# WITNESS SUBPOENA RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock, ___ .M. and executed

the _____ day of _____, 2025, at _____ o'clock, ___ .M. by delivering to the within named

_____ in  person  at  _____ in _____

County, TX, a true copy of this Subpoena, and tendering said witness the sum of $_____.



By Deputy: _____, _____ County, TX.

Sheriff/Constable:_____, _____ County, TX.


**OR**


By:

    Person who is not a party to the suit and is not less than 18 years of age.


**ACCEPTANCE OF SERVICE OF SUBPOENA BY WITNESS PER RULE 176 T.R.C.P.**

I, the undersigned witness named in the Subpoena acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*


_____          _____
SIGNATURE                           DATE


# M.R. 175

# EXHIBIT B

CAUSE NO. 493-07676-2024

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D. | § | |
| Defendant. | § | 493RD JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Mauricio Segovia** who, being by me duly sworn, deposed and said:

"The following came to hand on Jan 16, 2025, 11:25 am,

**STATE'S NOTICE OF SUBPOENA DUCES TECUM, SUBPOENA DUCES TECUM PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205, PROTECTIVE ORDER,**

and was executed at 1999 BRYAN ST SUITE 900, DALLAS, TX 75201 within the county of DALLAS at 12:35 PM on **Thu, Jan 16 2025**, by delivering a true copy to the within named

**UT SOUTHWESTERN MEDICAL CENTER C/O CT CORPORATION SYSTEM
accepted by Intake Specialist William Miller
Witness Fee $1.00**

In person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Mauricio Segovia
Certification Number: PSC-1689
Certification Expiration: 8/31/2026

BEFORE ME, a Notary Public, on this day personally appeared Mauricio Segovia, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON _1/16/2025_

MARIA M. SEGOVIA
My Notary ID # 129480220
Expires July 5, 2025

Notary Public, State of Texas

**M.R. 177**

| THE STATE OF TEXAS., | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## STATE'S NOTICE OF SUBPOENA DUCES TECUM

To:    UT Southwestern Medical Center c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201

Please take notice that pursuant to Tex. R. Civ. P. 205 gives you 10 days' notice of its intent to serve the attached subpoena duces tecum. The State of Texas has complied with all the requirements in Tex. R. Civ. P. 205.

Please take notice that the Court has entered the attached Protective Order in this matter expressly finding that attestations are not required. *See* Prot. Ord. at 10.

January 16, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division

# M.R. 178

State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2025, a copy of the foregoing document was served to all counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

# M.R. 179

# THE STATE OF TEXAS

## SUBPOENA DUCES TECUM
## PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

CAUSE NO. 493-07676-2024      IN THE 493rd JUDICIAL DISTRICT COURT OF
COLLIN COUNTY, TEXAS

*State of Texas vs. Defendant May C. Lau, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN RULE 176 T.R.C.P.**

**YOU ARE HEREBY COMMANDED TO SUMMON** Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201, to provide documents to the

**Office of the Attorney General**
300 West 15th Street
Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN SEVEN DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street, 9th Floor, Austin, TX 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on January 16, 2025,** at the request the request of the State of Texas.

# M.R. 180

/s/ Johnathan Stone
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
Deputy Chief, Consumer Protection Division
State Bar No. 15092619

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**M.R. 181**

## SUBPOENA DUCES TECUM—DOCUMENTS REQUESTED

1. Produce documents relating to the care and treatment of ███████████ (DOB: █████, ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

2. Produce documents relating to the care and treatment of ███████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

3. Produce documents relating to the care and treatment of ███████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

4. Produce documents relating to the care and treatment of █████████ (DOB: ██████, ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

5. Produce documents relating to the care and treatment of █████████ (DOB: ██████████ ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

6. Produce documents relating to the care and treatment of ████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

7. Produce documents relating to the care and treatment of █████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

8. Produce documents relating to the care and treatment of █████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

9. Produce documents relating to the care and treatment of █████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

10. Produce documents relating to the care and treatment of █████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

11. Produce documents relating to the care and treatment of █████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

M.R. 182

12. Produce documents relating to the care and treatment of ███████████ (DOB: ███████ ███ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

13. Produce documents relating to the care and treatment of ███████████ (DOB: ███████ ███ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

14. Produce documents relating to the care and treatment of ██████████ (DOB: ███████ ██████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

15. Produce documents relating to the care and treatment of ████████ (DOB: ███████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

16. Produce documents relating to the care and treatment of ███████████ (DOB: ███████ ███ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

17. Produce documents relating to the care and treatment of ████████ (DOB: ███████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

18. Produce documents relating to the care and treatment of ████████ (DOB: ███████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

19. Produce documents relating to the care and treatment of ███████████ (DOB: ██████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

20. Produce documents relating to the care and treatment of ███████████ (DOB: ██████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

21. Produce documents relating to the care and treatment of ████████████ (DOB: ████████ , ███ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

## WITNESS SUBPOENA RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock, ___ .M. and executed

the _____ day of _____, 2025, at _____ o'clock, ___ .M. by delivering to the within named

_____ in person at _____ in _____

County, TX, a true copy of this Subpoena, and tendering said witness the sum of $_____.

By Deputy: _____, _____ County, TX.

Sheriff/Constable:_____, _____ County, TX.

**OR**

By:

    Person who is not a party to the suit and is not less than 18 years of age.

**ACCEPTANCE OF SERVICE OF SUBPOENA BY WITNESS PER RULE 176 T.R.C.P.**

I, the undersigned witness named in the Subpoena acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

_____        _____
SIGNATURE                          DATE

# M.R. 184

# Exhibit C

| | |
|---|---|
| Nonparty Patient No. 1,<br>Nonparty Patient No. 2,<br>Nonparty Patient No. 3,<br>Nonparty Patient No. 4,<br>Nonparty Patient No. 5,<br>Nonparty Patient No. 6,<br>Nonparty Patient No. 7,<br>Nonparty Patient No. 8,<br>Nonparty Patient No. 9,<br>Nonparty Patient No. 10, and<br>Nonparty Patient No. 11,<br><br>          Plaintiffs,<br><br>   vs.<br><br>The State of Texas,<br><br>          Defendant. | IN THE DISTRICT COURT OF<br><br>DALLAS COUNTY, TEXAS<br><br>95TH JUDICIAL DISTRICT |

## DECLARATION IN SUPPORT OF THE NONPARTY PATIENTS' AMENDED PETITION FOR PROTECTION FROM DISCOVERY SUBPOENAS

1. I am an attorney at the law firm of Winston & Strawn LLP. I represent the Petitioners ("Nonparty Patients") in responding to the State of Texas's subpoenas ("Subpoenas") to Children's Health System of Texas and UT Southwestern Medical Center ("Hospital Systems"). I am a member in good standing of the State Bar of Texas. I provide this declaration in support of The Nonparty Patients' Amended Petition for Protection from Discovery Subpoenas ("Petition"). I have personal knowledge of the facts stated herein, and I could and would testify completely thereto if called as a witness in this matter.

2. Each of the Nonparty Patients is one of 21 individuals about whom the State has sought documents via the Subpoenas related to medical and mental health care and treatment

1

# M.R. 186

received at the Hospital Systems, including medical records, billing records, psychiatry notes, and correspondence.

3. A true and correct copy of the subpoena to Children's Health System of Texas is attached as Exhibit A to the Petition, with redactions to safeguard the identities and confidential health information of the patients identified therein.

4. A true and correct copy of the subpoena to UT Southwestern Medical Center is attached as Exhibit B to the Petition, with redactions to safeguard the identities and confidential health information of the patients identified therein.

5. The Subpoenas were accompanied by a Protective Order issued by the 493rd Judicial District in Collin County, Texas. A true and correct copy of that Protective Order is attached to the Petition as Exhibit E. To comply with § III(F) of the Protective, to safeguard the identity of the patients at issue in the Collin County litigation, and to preserve the confidential health information of the Nonparty Patients, the Petition has been filed using a generic reference for the Nonparty Patients. Also consistent with the Protective Order, in the event the Court wishes to identify one or more of the Nonparty Patients, they may be identified *in camera* or as otherwise ordered by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Montgomery County, State of Texas, on February 20, 2025.

__/s/*William M. Logan*__

2

**M.R. 187**

# EXHIBIT D

CAUSE NO. _____

| | | |
|---|---|---|
| THE STATE OF TEXAS, *Plaintiff,* | § § § § | IN THE DISTRICT COURT OF |
| v. | § § § § | COLLIN COUNTY, TEXAS |
| MAY C. LAU, M.D., *Defendant.* | § § § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S VERIFIED ORIGINAL PETITION AND REQUEST FOR AN APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

1.      The debate in Texas on the legality of dangerous and experimental medical procedures seeking to transition or affirm a child's belief that their gender identity is inconsistent with their biological sex is over.

2.      Texas law prohibits surgeries, puberty blockers, and cross-sex hormones for the purposes of transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex. Tex. Health & Safety Code § 161.702.

3.      The Supreme Court of Texas held that the law was constitutional. *State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

4.      Today, enforcement begins against those who have violated the law by providing, prescribing, administering, or dispensing cross-sex hormones to minors for the purposes of transitioning their biological sex or affirming the child's belief that their gender identity is inconsistent with their biological sex.

5.      Plaintiff, STATE OF TEXAS, by and through the Attorney General of Texas, KEN PAXTON, complains of Defendant, MAY C. LAU, M.D. and will show Lau has engaged in deceptive trade practices, including by misleading pharmacies, insurance providers, and/or

1

M.R. 189

patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

6. Lau is a scofflaw who is putting the health and safety of minors at risk by prescribing testosterone, a controlled substance, to biological female minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See* Tex. Occ. Code § 164.052(a)(24) (each violation separately violates the Texas Medical Practice Act); *see also* Tex. Occ. Code § 164.0552 (each violation serves as an independent ground for revocation of Lau's medical license).

7. Lau is also violating Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

8. Lau must be held accountable for her use, on at least 21 minor patients, of these illegal, dangerous, and experimental medical procedures for the purposes of transitioning their biological sex or affirming their belief that their gender identities are inconsistent with their biological sex.

## I. PARTIES

9. Defendant is MAY C. LAU, M.D. (NPI# 1750351375), an employee of the University of Texas Southwestern Medical Center ("UT Southwestern") in Dallas, Texas. She

holds hospital privileges at Childrens Medical Center Dallas and Children's Medical Center Plano. Lau may be served with process at UT Southwestern, 5323 Harry Hines Blvd. Dallas, TX 75390.

## II.     DISCOVERY CONTROL PLAN

10.     Discovery in this case should be conducted under Level 3 pursuant to Tex. R. Civ. P. 190.4. This case is not subject to the restrictions of expedited discovery under Tex. R. Civ. P. 169 because Texas seeks nonmonetary injunctive relief.

11.     Additionally, Texas claims entitlement to monetary relief in an amount greater than **$1,000,000,** including civil penalties, reasonable attorney's fees, litigation expenses, restitution, and costs.

## III.     JURISDICTION AND VENUE

12.     Texas Occ. Code § 161.706(b) provides that venue is proper in "the county where the violation occurred or is about to occur."

13.     Venue of this suit lies in Collin County, Texas pursuant to Texas Bus. & Com. Code § 17.47(b), because transactions forming the basis of this suit occurred in Collin County, Texas and Lau's unlawful conduct occurred in Collin County, Texas.

## IV.     PUBLIC INTEREST

14.     Lau violated Tex. Health & Safety Code § 161.702, Tex. Bus. & Com. Code § 17.46(a) and is engaged in unlawful practices, as set forth in this petition.

15.     Texas has reason to believe that Lau is engaging in, has engaged in or is about to engage in, the unlawful acts or practices set forth below. Texas has further reason to believe Lau has caused injury, loss, and damage to Texas by endangering the health of its citizens. Therefore,

3

M.R. 191

the Consumer Protection Division of the Office of the Attorney General of the State of Texas is of the opinion that these proceedings are in the public interest.

## V. TRADE AND COMMERCE

16. At all times described below, Lau engaged in conduct, the purported practice of medicine, which constitutes "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6).

## VI. NO NOTICE BEFORE SUIT

17. The Consumer Protection Division has reason to believe that Lau "is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful … and that proceedings would be in the public interest…." Tex. Bus. & Com. Code § 17.47(a).

18. The Consumer Protection Division did not contact Lau before filing suit to notify her "in general of the alleged unlawful conduct" because it is the opinion of the Consumer Protection Division that Lau likely "would destroy" or alter "relevant records if prior contact were made." *Id.*

## VII. APPLICABLE LAW

19. Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

20. Texas Bus. & Com. Code § 17.47 authorizes the Consumer Protection Division to bring an action for temporary and permanent injunction whenever it has reason to believe that any person is engaged in, in has engaged in, or is about to engage in any act or practice declared unlawful under Chapter 17 of the Business and Commerce Code.

## VIII.   FACTUAL BACKGROUND

A.   *Texas Prohibits the Provision of Puberty Blockers and Cross-Sex Hormones to Minors for the Treatment of Gender Dysphoria.*

21.   On May 17, 2023, the Legislature added Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children (SB 14)." Act of May 17, 2023, 88th Leg., R.S., ch. 335; *Loe*, 692 S.W.3d at 223.

22.   Senate Bill 14 prohibits physician and health care providers from performing certain procedures or treatments when performed to (1) "transition[] a child's biological sex as determined by the sex organs, chromosomes, and endogenous profiles of the child"; or (2) "affirm[] the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." Tex. Health & Safety Code § 161.702.

23.   The effective date for SB14 was September 1, 2023.

24.   Senate Bill 14 added Tex. Health & Safety Code § 161.702(3), which prohibits physicians from knowingly prescribing the following to transition a child's biological sex or affirm a child's perception of their sex if it is different from their biological sex: "(A) puberty suppression or blocking prescription drugs to stop or delay normal puberty; (B) supraphysiologic doses of testosterone to females; or (C) supraphysiologic doses of estrogen to males."

25.   Physicians were permitted to prescribe to patients already subject to a continuing course of treatment that began prior to June 1, 2023, and who attended at least 12 mental health counseling or psychotherapy sessions over a period of at least six months prior to starting treatment, provided that the prescriptions were for the purpose of "wean[ing] off the prescription drug over a period of time and in a manner that is safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b)-(c).

5

26. Senate Bill 14 also added Tex. Occ. Code § 164.052(a)(24), which proscribed physicians from "perform[ing] a gender transitioning or gender reassignment procedure or treatment in violation of [Tex. Health & Safety Code § 161.702]."

27. Finally, SB14 added Tex. Occ. Code § 164.0552, which commands that the Texas Medical Board "*shall revoke* the license or other authorization to practice medicine of a physician who violates [Tex. Health & Safety Code § 161.702]." (emphasis added).

B. *The Texas Supreme Court Held That SB 14 is Constitutional.*

28. Before SB 14 took effect several minors, parents of minors, and physicians brought suit in Travis County, TX, alleging a variety of constitutional challenges to the law. *Loe*, 692 S.W.3d at 222.

29. On August 25, 2023, a Travis County District Court entered a temporary injunction enjoining enforcement of SB 14. *Id.*

30. Texas appealed directly to the Texas Supreme Court, thereby dissolving the temporary injunction. *Id.*

31. On September 1, 2023, the Texas Supreme Court allowed SB 14 to take effect during the pendency of the appeal. *Id.*

32. On June 28, 2024, the Supreme Court of Texas reversed and vacated the trial court's Temporary Injunction Order after rejecting each of the plaintiffs' constitutional challenges to SB 14. *Id.* at 239.

C.     *Lau is a Radical Gender Activist.*

33.     Lau "specializes in adolescent female and male sexual and reproductive health, including … gender dysphoria …." *Biography of May Lau, M.D.*, UT Southwestern (accessed October 8, 2024), https://tinyurl.com/259556bc.

34.     Lau serves as "Medical Director of the Adolescent and Young Adult clinic at Children's Medical Center Dallas." *Id.*

35.     Lau has published extensively advocating for the medical transition of children's biological sex, contributing to the following:

    i.     Tri Pham, *et al.*, *Transition from Pediatric to Adult Care for Transgender Youth: A Qualitative Study of Patient, Parent, and Provider Perspectives*, LGBT Health (May-Jun 2021), https://tinyurl.com/5n8jbc6n.

    ii.    Bethany G. Hart, *et al.*, *Developing a Curriculum on Transgender Health Care for Physician Assistant Students*, Journal of Physician Assistant Education (Mar. 2021), https://tinyurl.com/mvbhyp8e.

    iii.   Lauren R. Shaffer, *et al.*, *Gender-affirming hormone therapy in cystic fibrosis – A case of new Pseudomonas infection*, Respiratory Medicine Case Reports (2021), https://tinyurl.com/mv4jp85.

    iv.    Laura E. Kuper, *et al.*, *Body Dissatisfaction and Mental Health Outcomes of Youth on Gender-Affirming Hormone Therapy*, Pediatrics (2020), https://tinyurl.com/5n8s75v8.

    v.     Laura E. Kuper, *et al.*, *Baseline Mental Health and Psychosocial Functioning of Transgender Adolescents Seeking Gender-Affirming Hormone Therapy*, Journal of Developmental and Behavioral Pediatrics (Oct/Nov 2019), https://tinyurl.com/4wxxzes5.

36.     Approximately 20% of the publications listed in Lau's biography relate to gender transitioning. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

7

**M.R. 195**

37.     On January 8, 2020, Lau and her physician's assistant, Patti Pagels MPAS, PA-C,

gave a presentation entitled *Transgender Care of Adolescents and Adults*, Youtube (Jan. 8, 2020),

https://tinyurl.com/mkt4pzs3 wherein they asserted:

i.      That Lau alters her patient's medical records to reflect their preferred name, sex, and pronouns, which can change on a visit-to-visit basis, something that is apparently "fairly typical [and] kind of persists into adulthood" for her patients. 20:59-22:40.

ii.     That "adolescents' gender identity is fluid so from one day or one point in time they say no, I'm this, I'm female, but then realize later on that I'm male." 28:08-28.

iii.    That "we're not sure about the safety and long-term effects of puberty suppression in youth with gender dysphoria we do know that this is safe to use in youth with precocious puberty, but we don't know if we can translate those side effects and the long-term effects to those with gender dysphoria and who are using puberty suppression for those reasons." 28:28-46.

iv.     That "some of the consequences of hormonotherapy are permanent." 29:57-30:09.

v.      That biological females that take testosterone to transition their biological sex "will get some atrophy of the vagina … [and thereafter for the duration of their life] they'll need some sort of water-based lubricant if they're going to still use the vagina as part of sex …." 32:41-52.

vi.     That "it's so important that these folks get identified in childhood because when they come to me and are 30 or 40 years old and they've been under the influence of their gender hormones all this time it's very hard to reverse it. I can't take somebody that's, you know, five-foot ten and very muscular uh and make them a woman overnight even if they use the clothing and so forth "33:05-39.

vii.    That "testosterone is a powerful hormone, so I tell them that the effect of estrogen is like a feather, you know, just it's just a whiff and whereas testosterone you give a little bit [and] you get a lot of effect." 33:39-59.

viii.   That "I want you to look at the graphic to see that the number of surgeries has increased and continue to increase and many of our patients … are getting them done. There are more surgeries for the affirm females than the affirm males and we may not know how many people actually are getting gender affirming surgery because some of them are going to Thailand,

8

M.R. 196

they're going to Europe, they're going to other counties to get this done because its much cheaper." 37:37-38:13.

ix. "There's a recent study May 2018 that suggests the timing of top surgery or breast surgery for affirm males should be based on physical and mental health status of the youth not by a specific age and *I will tell you that we have had youth in our clinic come in who have had top surgery before they have even started hormone treatment.*" 39:39-40:05 (emphasis added).

38. Lau was previously associated with the now dissolved Gender Education and Care Interdisciplinary Support (GENECIS) Program, which was dedicated to using medical interventions to transition the biological sex of children or affirm a child's beliefs that their gender identity is inconsistent with their biological sex. May Lau, M.D., and Patti Pagels MPAS, PA-C, *Transgender Care of Adolescents and Adults*, Mid-Atlantic Chapter of the Medical Library Association (Jan. 8, 2020), https://tinyurl.com/mry8wtv9.

39. Ximena Lopez, M.D., the founder of the GENECIS, shuttered the program and high-tailed it to California shortly after SB 14 was enacted. Paul Hunter, *Texas ban on gender-affirming care leaves trans teens without options*, CBC News (July 5, 2023), https://tinyurl.com/4r6c8kr5 (Lopez declaring that medically transitioning children is "one of the most important things I've done in my life" and stating that she was leaving Texas because she thinks the whole state is "crazy.").

40. Lopez and Lau are co-authors on several publications advocating for the medical transition of minors diagnosed with gender dysphoria. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

41. Lau and the staff of GENECIS were thanked for assisting with a medical student's dissertation on transitioning minors from their biological sex. Antoinette Moore, *Health Related*

9

*Quality of Life of Transgender Adolescents Undergoing Hormonal Transition or Elective Pubertal Delay*, UT Southwestern (2018), https://tinyurl.com/3y6jwv7y.

42. Lau's practices, publications, and presentations betrays an entrenched commitment to a gender ideology that desires to medically transition the biological sex of children or affirm the belief that a child's gender identity is inconsistent with their biological sex.

## IX. VIOLATIONS OF SB 14.

43. Lau has knowingly violated Tex. Health & Safety Code § 161.702(3).

A. *Cross-Sex Hormones to Transition Biological Sex or Affirm a Child's Belief that their Gender Identity is Inconsistent with their Biological Sex.*

44. High dose cross-sex hormones are commonly used by gender activists to transition the biological sex of children or affirm a child's belief that their gender identity is inconsistent with their biological sex.

45. High dose cross-sex hormones are prescribed to induce a supraphysiologic state where the hormone levels are greater than would otherwise normally be present in the child's body.

46. As a result of the hormones, the child will develop secondary sex characteristics.

47. Testosterone is a cross-sex hormone that is prescribed to transition biological females to biological females with irreversible male secondary sex characteristics.

48. Testosterone is a Schedule III controlled substance.

49. Radical gender activists within the medical profession rely on the so-called "Standards of Care" promulgated by the World Professional Association of Transgender Health (WPATH) as guidelines for transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex. *See e.g.* Selena Simmons-Duffin, *Rachel Levine calls state anti-LGBTQ bills disturbing and dangerous to trans youth*, NPR (Apr. 29,

2022) (claiming that the standard for treating gender dysphoria is set by the WPATH), https://tinyurl.com/3jxymtum.

50. WPATH recommends that a doctor transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex prescribe enough testosterone to induce the same level that would be present in a biological male. Standards of Care 8, WPATH pg. 110 (2023), https://tinyurl.com/32z3bnhr.

B. Lau's Testosterone Prescribing

51. WPATH recommends transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex by prescribing injectable testosterone cypionate at 100-200 mg. so as to induce a state of male puberty in a biological female such that she will develop irreversible male secondary sex characteristics, *Standards of Care 8*, WPATH App'x C, https://tinyurl.com/32z3bnhr.

52. WPATH recommends "induction of male puberty" in a biological female minor by prescribing testosterone esters at "$25mg/m^2/2$ weeks (or alternatively half this dose weekly). Increase by 25 $25mg/m^2/2$ weeks every 6 months until adult dose and target testosterone levels achieved." *Id.*

53. WPATH alternatively recommends the following testosterone regime for biological females to induce male secondary sex characteristics, "testosterone enanthate/cypionate 50-100 IM/SQ weekly or 100-200 IM every 2 weeks." *Id.*

54. A "testosterone cypionate injection is use[d] to treat **males** whose bodies do not make enough natural testosterone, a condition called hypogonadism. Testosterone is a male hormone responsible for the growth and development of the male sex organs and maintenance of

secondary sex characteristics. **This medicine is not for use in female patients**.” TESTOSTERONE CYPIONATE, Mayo Clinic (accessed October 15, 2024) (emphasis added), https://tinyurl.com/558b8fcv.

55.     The Federal and Drug Administration warns that testosterone cypionate “**is contraindicated in pregnant women and not indicated for use in females**.” TESTOSTERONE CYPIONATE INJECTION, FDA (June 2022) (emphasis added), https://tinyurl.com/4psvbdeb.

56.     Lau has violated the law by providing, prescribing, administering, or dispensing testosterone to minor patients for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex:

**Patient One**[1]

57.     Patient One resides in Collin County, TX.

58.     Patient One was 17 years old during the relevant time.

59.     Lau identifies Patient One as a biological female.

60.     On October 2, 2023, after SB 14 went into effect, Lau wrote Patient One a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate.

61.     The prescriptions purpose is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

62.     On October 12, 2023, Patient One filled the prescription at a pharmacy located in Collin County, TX.

63.     Later, Patient One turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone.

---

[1]     Pseudonyms are used throughout to protect the identity of the victim minor patients.

64.     The prescriptions purpose is for transitioning her biological sex or affirming her belief that their gender identity is inconsistent with her biological sex.

**Patient Two**

65.     Patient Two resides in Collin County, TX.

66.     Patient Two was 17 years old during the relevant time.

67.     Lau identifies Patient Two as a biological female.

68.     On October 9, 2023, after SB 14 went into effect, Lau wrote Patient Two a prescription for a 90-day supply of 200 mg/ml of testosterone cypionate.

69.     The prescriptions purpose is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

70.     The same day, Patient Two filled the prescription at a pharmacy located in Collin County, TX.

**Patient Three**

71.     Patient Three resides in Denton County, TX.

72.     Patient Three was 17 years old during the relevant time.

73.     Lau identifies Patient Three as a biological male, but upon information and belief, Patient Three may be a biological female.

74.     On August 25, 2023, Lau wrote Patient Three a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

75.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

76. On January 7, 2024, 135-days after the prescription was written and after SB 14 went into effect, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

77. On February 23, 2024, Lau wrote Patient Three a prescription for a 30-day supply of 200 mg/ml of testosterone cypionate.

78. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

79. On February 25, 2024, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

80. Later, Patient Three turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

81. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Four**

82. Patient Four resides in Dallas County, TX.

83. Patient Four was 16 during the relevant time.

84. Lau identifies Patient Four as a biological female.

85. On August 31, 2023, Lau wrote Patient Four two prescriptions for a 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

86. The prescriptions purposes is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

87. On September 1, 2023, after SB 14 went into effect, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

88.     On October 28, 2023, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

89.     On March 26, 2024, Lau wrote Patient Four two prescriptions for a 28-day supply of 200 mg/ml of testosterone cypionate.

90.     On March 28, 2024, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

91.     On July 26, 2024, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

**Patient Five**

92.     Patient Five resides in Collin County, TX.

93.     Patient Five was 16 years old at the relevant time.

94.     Lau identifies Patient Five as a biological male, but upon information and belief, Patient Five may be a biological female.

95.     On August 17, 2023, Lau wrote Patient Five a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription both before and after SB 14 took effect.

96.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

97.     On October 7, 2023, after SB 14 went into effect, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

98.     On November 14, 2023, Lau wrote Patient Five a prescription with five refills for 28-day supplies of 200 mg/ml of testosterone cypionate.

15

99.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

100.    The same day, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

101.    On December 11, 2023, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

102.    On January 17, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

103.    On March 11, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

104.    On April 12, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

105.    On June 21, 2024, Lau wrote Patient Five multiple prescriptions for 22-day supplies of 200 mg/ml of testosterone cypionate.

106.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

107.    On June 24, 2024, Patient Five filled the prescription a pharmacy located in Collin County, TX.

108.    On July 13, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

109.    On August 18, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

16

M.R. 204

**Patient Six**

110. Patient Six resides in Collin County, TX.

111. Patient Six was 17 years old at the relevant time.

112. Lau identifies Patient Six as a biological male, but upon information and belief, Patient Six may be a biological female.

113. On August 30, 2023, Lau wrote Patient Six one prescription with one refill for 84-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

114. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

115. On October 24, 2023, 55-days after Lau wrote the prescription and after SB 14 went into effect, Patient Six filled the prescription at a pharmacy located in Collin County, TX.

116. On January 22, 2024, Patient Six refilled the prescription at a pharmacy located in Collin County, TX.

117. Later, Patient Six turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

118. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Seven**

119. Patient Seven resided in Wise County, TX.

120. Patient Seven was 17 at the relevant time.

121. Lau identifies Patient Seven as a biological female.

122. On August 31, 2023, Lau wrote Patient Seven a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

123. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

124. On September 1, 2023, after SB 14 went into effect, Patient Seven filled the prescription at a pharmacy located in Wise County, TX.

125. Later, Patient Seven turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

126. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Eight**

127. Patient Eight resides in Dallas County, TX.

128. Patient Eight was 16 years old at the relevant time.

129. Lau identifies Patient Eight as a biological male, but upon information and belief, Patient Eight may be a biological female.

130. On August 28, 2023, Lau wrote Patient Eight a prescription for a 28-day supply of 200 mg/ml of Depo-testosterone with orders to fill the prescription after SB 14 took effect.

131. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

132. On October 16, 2023, 61-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eight filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Nine**

133. Patient Nine resides in Dallas County, TX.

134. Patient Nine was 14 years old at the relevant time.

135. Lau identifies Patient Nine as a male, but upon information and belief, Patient Nine may be a biological female.

136. On July 5, 2023, Lau wrote Patient Nine a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

137. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

138. On October 27, 2023, 114-days after Lau wrote the prescription and after SB 14 went into effect, Patient Nine filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Ten**

139. Patient Ten resides in Tarrant County, TX.

140. Patient Ten was 14 years old at the relevant time.

141. Lau identifies Patient Ten as a biological female.

142. On August 29, 2023, Lau wrote Patient Ten two prescriptions for either a 7-day or 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

143. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

144. On October 2, 2023, after SB 14 went into effect, Patient Ten filled the prescription at a pharmacy located in Tarrant County, TX.

145. On November 1, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

146. On December 4, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

147. On January 5, 2024, Patient Ten filled the second prescription at a pharmacy located in Tarrant County, TX.

148. On February 12, 2024, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Eleven**

149. Patient Eleven resides in Kaufman County, TX.

150. Patient Eleven was 14 years old at the relevant time.

151. Lau identifies Patient Eleven as a biological female.

152. On August 29, 2023, Lau wrote Patient Eleven four prescriptions for 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

153. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

154. On September 5, 2023, after SB 14 went into effect, Patient Eleven filled the prescription at a pharmacy located in Kaufman County, TX.

155. On October 15, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

156.   On November 17, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

157.   On January 7, 2024, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

**Patient Twelve**

158.   Patient Twelve resides in Rockwall County, TX.

159.   Patient Twelve was 14 years old at the relevant time.

160.   Lau identifies Patient Twelve as a biological female.

161.   On August 31, 2023, Lau wrote Patient Twelve a prescription for a 90-day supply of testosterone 1.62% Gel Pump with orders to fill the prescription after SB 14 took effect.

162.   The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

163.   On January 19, 2024, 141-days after Lau wrote the prescription and after SB 14 took effect, Patient Twelve filled the prescription at a pharmacy located in Rockwall County, TX.

**Patient Thirteen**

164.   Patient Thirteen resides in Dallas County, TX.

165.   Patient Thirteen was 15 years old at the relevant date.

166.   Lau identifies Patient Thirteen as a biological female.

167.   On July 11, 2023, Lau wrote Patient Thirteen several prescriptions for a 90-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

168. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

169. On October 13, 2023, 94-days after Lau wrote the prescription and after SB 14 went into effect, Patient Thirteen refilled the prescription at a pharmacy located in Dallas County, TX.

**Patient Fourteen**

170. Patient Fourteen resides in Denton County, TX.

171. Patient Fourteen was 15 years old at the relevant time.

172. Lau identifies Patient Fourteen as a biological female.

173. On August 21, 2023, Lau wrote Patient Fourteen a prescription for a 34-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

174. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

175. On October 27, 2023, 67-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fourteen filled the prescription at a pharmacy located in Denton County, TX.

**Patient Fifteen**

176. Patient Fifteen resides in Dallas County, TX.

177. Patient Fifteen was 15 years old at the relevant time.

178. Lau identifies Patient Fifteen as a biological female.

179. On June 23, 2023, Lau wrote Patient Fifteen a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

180. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

181.    On September 11, 2023, 80-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fifteen filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Sixteen**

182.    Patient Sixteen resides in Tarrant County, TX.

183.    Patient Sixteen was 15 years old at the relevant time.

184.    Lau identifies Patient Sixteen as a biological female.

185.    On August 23, 2023, Lau wrote Patient Sixteen a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

186.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

187.    On January 7, 2024, 137-days after Lau wrote the prescription and after SB 14 went into effect, Patient Sixteen filled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Seventeen**

188.    Patient Seventeen resides in Potter County, TX.

189.    Patient Seventeen was sixteen years old at the relevant time.

190.    Lau identifies Patient Seventeen as a biological female.

191.    On August 31, 2023, Lau wrote Patient Seventeen a prescription for a 42-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

192.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

193.    On September 1, 2023, after SB 14 went into effect, Patient Seventeen filled the prescription at a pharmacy located in Potter County, TX.

**Patient Eighteen**

194.  Patient Eighteen resides in Collin County, TX.

195.  Patient Eighteen was 16 years old at the relevant time.

196.  Lau identifies Patient Eighteen as a biological male, but upon information and belief, Patient Eighteen may be a biological female.

197.  On August 24, 2023, Lau wrote Patient Eighteen a prescription for an 80-day supplies of 200 mg/ml of testosterone 12.5 mg/1.25 g with orders to fill the prescription after SB 14 took effect.

198.  The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

199.  On October 27, 2023, 64-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eighteen filled the prescription at a pharmacy located in Saint Louis County, MO.

**Patient Nineteen**

200.  Patient Nineteen resides in Collin County, TX.

201.  Patient Nineteen was 16 years old at the relevant time.

202.  Lau identifies Patient Nineteen as a biological male, but upon information and belief, Patient Nineteen may be a biological female.

203.  On August 31, 2023, Lau wrote Patient Nineteen a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

204.  The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

205. On October 24, 2023, 54- days after Lau wrote the prescription and after SB 14 went into effect, Patient Nineteen filled the prescription at a pharmacy located in Collin County, TX.

**Patient Twenty**

206. Patient Twenty resides in Dallas County, TX.

207. Patient Twenty was 17 years old at the relevant time.

208. Lau identifies Patient Twenty as a biological female.

209. On August 31, 2023, Lau wrote Patient Twenty a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

210. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

211. On November 22, 2023, 83-days after Lau wrote the prescription and after SB 14 went into effect, Patient Twenty filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Twenty-One**

212. Patient Twenty-one resides in Dallas County, TX.

213. Patient Twenty-one was 17 years old at the relevant time.

214. Lau identifies Patient Twenty-one as a biological female.

215. On August 15, 2023, Lau wrote Patient Twenty-one a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

216. The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

217. On September 10, 2023, after SB 14 went into effect, Patient Twenty-one filled the prescription at a pharmacy located in Dallas County, TX.

218. Later, Lau identifies the now 18-year-old Patient Twenty-one, as a biological male.

\* \* \*

219. Paragraphs 58-219 describe 21 minor patients who Lau has unlawfully treated with testosterone for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of SB 14.

220. Some of Lau's medical records for the patients identified in the preceding paragraphs indicate that the patients are male, but upon information and belief, **all of these patients are biological females** and Lau is prescribing to them for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex. *See also supra* ¶ 37(i) (Lau admitting that she commonly changes the biological sex of her patients in her medical records).

221. Lau cannot circumvent SB 14 by writing prescriptions to her patients *prior* to the SB 14 taking effect with orders to fill or refill the prescriptions *after* it takes effect, see 22 Tex. Admin. Code § 315.3(b)(2) (Schedule III Controlled Substances can be refilled up to five times within six months of the date of issuance), because a "prescription" order is not a singular discrete act, but a continuing act of treatment that begins with the prescription being written and continues through the pharmacist filling the prescription and the drug being used as directed by the patient, or until the written prescription expires or is cancelled, and *alternatively*, because by issuing prescriptions with orders to fill them after the effective date of SB 14 Lau is "providing" the

prescribed medication to the patient at the time they fill and use the prescription as directed, which they could not do otherwise without the prescription.

222. Each and every prescription written by Lau after September 1, 2023, or filled or taken as directed by a patient after September 1, 2023, for the purpose of transitioning the minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex violates Tex. Health & Safety Code § 161.702(3).

## X.  FALSE, MISLEADING, OR DECEPTIVE ACTS

223. Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

224. Lau, as alleged herein, has in the course of trade and commerce engaged in false, misleading, and deceptive acts and practices declared unlawful in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

225. Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

226. As illustrated in the representative example below, Lau deceptively misleads pharmacies, insurance providers, and/or the patients by falsifying patient medical records, prescriptions, and billing records to indicate that the use of puberty blockers for minor patients are for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

227. Lau also likely deceptively misled pharmacies, insurance providers and/or the patients by falsifying patient medical records, prescriptions and billing records to indicate the use of Testosterone for minor Patients One through Twenty-one for something other than

27

transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

228. Texas Bus. & Com. Code § 17.46(b)(5) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not."

229. As illustrated in the representative example below, Lau deceptively represents that goods or services have approval, characteristics, uses, or benefits which they do not or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not have by falsifying patient medical records, prescriptions, and billing records for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

230. Texas Bus. & Com. Code § 17.46(b)(24) prohibits "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

231. As illustrated in the representative example below, Lau deceptively induces pharmacies, insurance providers, and/or the patients into entering into transactions by falsifying patient medical records, prescriptions, and billing records to indicate that treatments are for something other than transitioning a child's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

A.    *Lau uses false diagnoses and billing codes on transgender patients.*

**Patient Twenty-Two**

232.    Patient Twenty-Two, a 15-year-old minor, was first seen by Lau in January 2023.

233.    Lau represented that Twenty-two was identified in the medical records as a male at the time.

234.    Lau falsely billed Patient Twenty-Two's insurance using the diagnostic code for an endocrine disorder, unspecified (E349).

235.    In fact, Lau diagnosed Twenty-two with gender dysphoria and began "treatment" for that condition by prescribing and inserting a puberty blocker device in the patient for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

236.    On August 3, 2023, Lau changed Twenty-two's sex to female in the medical and billing records—further proof that Lau was transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

237.    Less than a week later, Twenty-two met with Lowell, the founder of Queer Med and who exclusively treats transgender patients, *see What We Do*, QueerMed (accessed October 8, 2024), https://tinyurl.com/2rr2ff7e, for a fertility preservation counseling visit.

238.    Lowell used the same false diagnostic billing code for endocrine disorder, unspecified (E349), when she was actually providing treatment to Patient Twenty-Two for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

239. Two weeks later, on August 18, 2023, Twenty-two visited Lau who falsely billed for the removal and reinsertion of a puberty blocker for the treatment of an endocrine disorder, unspecified (E349)—when in fact Lau was using puberty blockers for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

240. The same day, Twenty-two was seen by a different provider at Children's Medical Center of Dallas who correctly used billing codes for gender identity disorder, unspecified (F649).

241. Patient Twenty-Two had follow up visits with Lowell of QueerMed in January and March 2024, where her diagnosis was again falsely billed as an endocrine disorder, unspecified (E349).

242. Thus, even prior to September 1, 2023, and despite other providers correctly diagnosing Twenty-two with gender identity disorder, unspecified (F649), Drs. Lau and Lowell demonstrated a pattern of false, misleading, and deceptive acts by choosing to falsify Patient Twenty-Two's biological sex, medical records, diagnoses, treatment plan, prescriptions, and billing records to conceal that they were transitioning Patient Twenty-Two's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

B.    *Gender dysphoria is not an endocrine disorder.*

243. "Insurance Coding Alternatives for Trans Healthcare," Campaign for Southern Equality (accessed October 8, 2024), https://tinyurl.com/5ce62v2d, purports to assist healthcare providers with instructions on how to use false billing codes to provide medical treatments for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

244. The fact sheet claims that it is intended to "assist trans people in advocating for themselves with their healthcare providers and insurance companies" and discusses "insurance codes for trans healthcare that are commonly accepted and rejected." *Id.*

245. The fact sheet notes certain billing codes that are commonly rejected by insurance providers include the F64 set of codes for gender dysphoria or gender identity disorder. *Id.*

246. The fact sheet recommends billing for hormone replacement therapy to transition a minor's biological sex as an endocrine disorder, unspecified (E34.9).

247. Upon information and belief, Lau is using this diagnostic billing code to falsely represent that she's treating patients for an unspecified endocrine disorder, when in fact she is transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex—something that is *not* an endocrine disorder.

248. An endocrine disorder results from the improper function of the endocrine system.

249. Children normally enter puberty reflecting their biological sex. There is no disorder at all. Rather, the disorder results when a physician intervenes in a child's natural puberty to induce through puberty blockers and cross-sex hormones a state of puberty naturally occurring in the opposite sex. Such physician *causes a disorder* rather than treats one, by introducing supraphysiological dose of a cross-sex hormone to force a child's body (a biological reality) to fit that child's gender identity (a mental construct).

250. Here, Lau is engaging in false, misleading, or deceptive practices, by falsely diagnosing and billing patients using the endocrine disorder, unspecified, code instead of the F64 gender related diagnosis codes to conceal that she is transitioning their biological sex or affirming

31

their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

## XI.   APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

251.   Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

252.   Texas has reason to believe that Lau is engaging in, has engaged in, or is about to engage in acts and practices declared to be unlawful under Tex. Health & Safety Code § 161.702(3) and Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), and believes these proceedings to be in the public interest.

253.   Texas is entitled to, and seeks, temporary and permanent injunctions pursuant to Tex. Health and Safety Code § 161.702 as well as Tex. Bus. & Com. Code § 17.47.

254.   Cessation of unlawful conduct by Lau shall not render such court action moot under any circumstances. *Id.*

255.   Immediate injunctive relief is necessary to prevent continuing harm prior to trial.

256.   In addition to the above-requested relief, pursuant to Tex. Civ. Prac.  Rem. Code § 65.011 *et seq.* and Tex. R. Civ. P. 680 *et seq.*, to preserve the status quo pending a full trial on the merits, *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002), the Texas Attorney General's Office request a temporary injunction against Lau that enjoins her from the following until final resolution of this matter:

> i.   Prescribing supraphysiologic doses of testosterone and estrogen to minors for the purpose of transitioning their biological sex; and
>
> ii.   Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for treatments to transition a child's biological sex under false

# M.R. 220

diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

## XII. PRAYER FOR RELIEF

257. NOW THEREFORE Texas prays that Lau be cited to appear and that after due notice and hearing, a temporary injunction be issued, and that upon final hearing a permanent injunction be issued, restraining and enjoining Lau and all persons in active concert or participation with her, who receive actual notice of the injunction by personal service or otherwise from engaging in false, misleading or deceptive acts and practices declared to be unlawful by Tex. Health and Safety Code § 161.702 and Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24), including but not limited to:

    i. Prescribing supraphysiologic doses of testosterone and estrogen to minors for the purpose of transitioning their biological sex;

    ii. Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for treatments to transition a child's biological sex under false diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

258. TEXAS FURTHER PRAYS that upon final hearing, this Court order:

    i. Adjudge against Lau civil penalties in favor of the State in the amount of not more than $10,000 per violation of Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24);

    ii. Order Lau to pay Texas's attorneys' fees and costs of court pursuant to Tex. Gov't Code § 402.006(c);

    iii. Order Lau to pay both pre-judgment ad post-judgment interest on all money awards as provided by law; and

    iv. Grant all other and further relief Texas may show itself entitled to.

33

## M.R. 221

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
State Bar No. 24092619
Deputy Chief, Consumer Protection Division

Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Telephone: 512-463-2185
Facsimile: 512-473-8301
**ATTORNEYS FOR TEXAS**

34

**M.R. 222**

## DECLARATION

Pursuant to Tex. Civ. Rem. & Prac. Code § 132.001(f), JOHNATHAN STONE submit this unsworn declaration in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by Texas Rule of Civil Procedure 682. I am an employee of the following governmental agency: Texas Office of the Attorney General. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the factual statements in the foregoing are true and correct.

Executed in Travis County, State of Texas, on the 17th day of October, 2024.

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

# EXHIBIT E

Filed: 1/13/2025 10:18 AM
Michael Gould
District Clerk
Collin County, Texas
By Elizabeth Anderson Deputy
Envelope ID: 96128789

## Cause No. 493-07676-2024

| | | |
|---|---|---|
| **The State of Texas,**<br>*Plaintiff,* | §<br>§<br>§ | **In the District Court of** |
| **v.** | §<br>§ | **Collin County, Texas** |
| **May C. Lau, M.D.,**<br>*Defendant.* | §<br>§<br>§ | **493ʳᵈ Judicial District** |

## PROTECTIVE ORDER

After considering the parties' motions, any responses thereto, and arguments of counsel, the Court hereby enters the following protective order in Case Nos. 493-08026-2024 and 493-07676-2024.

To adequately protect individually identifiable health information and other information entitled to be kept confidential, the Court orders as follows:

**I.    Definitions:**

(A)    As used in this Order, the term **"party"** shall mean all named parties to any action in the above-captioned litigation, including any named party added or joined to any complaint in this action.

(B)    The term **"third-party"** shall mean any individual, corporation, other natural person or entity, or any state, federal, or local government agency.

(C)    The term **"documents"** as used herein is intended to be comprehensive and includes any and all materials in the broadest sense contemplated by Tex. R. Civ. P. 192.3(b), and shall include all written, oral, recorded, or graphic material, however produced or reproduced, including, but not limited to, all written or printed matter of any kind, computer data, all graphic or manual records or representations of any kind, and electronic, mechanical, or electric records or representations of any kind.

## M.R. 225

(D)    As used in this Order, the term **"confidential health information"** means "protected health information" as defined in the Texas Medical Records Privacy Act (TMRPA), Tex. Health & Safety Code Ch. 181 and the Health Insurance Portability and Accountability Act (HIPAA) of 1996, 45 C.F.R § 164.501 ("protected health information") and 160.103 ("individually identifiable health information").

(E)    The term **"confidential information"** means information (regardless of how it is generated, stored or maintained) or tangible things that contain or reflect confidential, non-public, proprietary, commercially sensitive, and/or private information of a n individual or entity. confidential information includes, but is not limited to, confidential health information.

(F)    The term **"classified information"** refers to all documents designated as "confidential information" or "confidential health information."

## II.    <u>General Provisions</u>:

(A)    **Production of Health Information That May Be Subject To 5 U.S.C. § 552a, to 45 C.F.R. §§ 164.102-164.534, or to 42 U.S.C. § 1306, or Other Privacy Protections.** Documents produced during discovery in the above-captioned litigation may contain information subject to provisions of state and federal privacy laws governing health information. In order to facilitate the production of these records and to protect their confidentiality, the requested or subpoenaed parties are permitted to produce these documents to any party of the litigation in an unredacted form to the extent permitted by law. Upon producing these documents, the producing party shall designate them as "confidential health information" in the manner set forth below. All parties receiving these documents may use such designated records only for purposes of the above-captioned litigation and may disclose them to non-parties to this litigation only as specified within this Order and only if the non-party signs the form of acknowledgment attached to this Order as set forth below.

**M.R. 226**

(B) **Designation of Material Subject to this Protective Order.** To designate Confidential Information produced in Documentary form (e.g., paper or electronic Documents), the Producing Party shall so designate on the material itself or in an accompany cover letter using the following designations, as appropriate: "CONFIDENTIAL" or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." If only a portion or portions of the material on a page qualifies for protection, and it is feasible and not unduly burdensome to do so, the Producing Party also must clearly identify the protected portions and must specify, for each portion, the protection being asserted. For testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party when practical identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the protection being asserted. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards, that the entire transcript or any portion thereof shall be treated as "CONFIDENTIAL," or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." Parties shall give the other Parties reasonable notice (a minimum of two business days) if they reasonably expect a deposition, hearing or other proceeding to include Confidential Information so that the other Parties can ensure that only authorized individuals who have signed the "Certification" (Exhibit A) are present at those proceedings.

(C) **Scope of Order.** The terms and conditions of this Order shall govern all documents designated as classified information. Should a document or record contain information that is protected under the terms and conditions of this Order as well as the terms and conditions of any other Protective Order entered in the above-captioned litigation, the terms and conditions of this Order shall govern in the event of any conflict between the Orders.

**III.** **Provisions Governing Use and Disclosure of Classified Information:**

- 3 -

**M.R. 227**

(A)    The parties may not use or disclose classified information for any purpose other than use in the above-captioned litigation.

(B)    Classified information may be disclosed only to the following qualified persons:

1.    This Court and all persons assisting this Court in this action, including court reporters taking testimony involving such information, and necessary stenographic and clerical personnel;

2.    Persons retained as consultants or experts for any party and principals and employees of the firms with which consultants or experts are associated;

3.    Persons other than consultants or experts, who are employed by counsel to provide purely administrative assistance to counsel for any party for the purpose of this action, including litigation support services and outside copying services;

4.    Any person who may testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in this action, and for the purpose of assisting in the preparation or examination of the witness;

5.    Any other person hereafter designated by written stipulation of the parties and, if applicable, the third-party who produced or supplied the confidential health information, or by further order of this Court; and

6.    The parties, the parties' counsel and their partners, associates, paralegals, and clerical and support personnel.

(C)    No classified information may be disclosed to any person pursuant to the provisions of paragraph III. (B) of this Order unless counsel first informs such person that pursuant to this Order the material to be disclosed may only be used for purposes of preparing and presenting evidence in this litigation and must be kept confidential. No classified information may be disclosed to any person identified in this Order unless such person first is given a copy of this Order and advised that the information contained in the document is classified information and informed that an unauthorized disclosure of the information in the document may constitute contempt of this Court. Each person to whom classified information is disclosed shall execute an acknowledgement in the form of attached hereto as Exhibit A and shall agree to be bound by this Order prior to receiving any classified information. Copies of the executed Certifications, and a current log of the

- 4 -

# M.R. 228

materials containing confidential health information disclosed to each person executing a Certification, shall be retained by counsel for the party or parties who disclosed the confidential health information to such persons.

(D)     No person, firm, corporation, or other entity subject to this Order shall give, show, disclose, make available, or communicate classified information to any person, firm, corporation, or other entity not expressly authorized by this Order to receive such classified information.

(E)     **Use of Classified Information in Court.** In the event any party wishes to use classified information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the classified information, such as redacting the personal identifiable information, including patient names, names of family members, social security numbers, patient numbers, addresses, phone numbers, email addresses, or other contact information. In the event this Court wishes to review the redacted material, this Court may review the redacted material in camera or order that the documents or transcript of any hearing containing classified information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

(F)     **Identification of Patients and Their Confidential Health Information.** In the event any party wishes to identify any patient or their confidential health information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the identities and confidential health information of each patient, by referring to the patient through a generic reference, as follows: "Patient One," "Patient Two," etc. In the event this Court wishes to know the identification of the patient, this Court may review the identification of each patient in camera or order that the documents or

**M.R. 229**

transcript of any hearing containing the identities of the patient and their confidential health information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

**IV.    Challenging Classified Information Designations:**

(A)    A party shall not be obligated to challenge the propriety of a classified information designation at the time such designation is made and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as classified information, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as classified information. The designating party shall then have fourteen (14) days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain classified information unless and until the court orders otherwise, except that the failure of the designating party to request and obtain a setting seeking an order within thirty days of moving the court for an order shall constitute a termination of the status of such item as classified information.

**V.    Destruction of Classified Information at Completion of Litigation:**

(A)    Within sixty (60) days after the final resolution of the above-captioned action, including resolution of all appellate proceedings, all documents and copies of documents in the Attorney General's possession, which are designated as containing classified information, as well as notes, memoranda, and summaries taken or made of such documents that contain classified information, shall either be returned to the producing party or third party or destroyed.

**M.R. 230**

(B)     All counsel of record who received documents that contain classified information shall certify compliance herewith and shall deliver the same to the producing party or third party not more than sixty (60) days after the final resolution of this action. The return of documents or certifications of destruction relating to documents produced by the State of Texas shall be provided to Office of the Attorney General, Consumer Protection Division.

(C)     This provision does not apply to patient medical records that are already existing in the patient's medical chart and may remain in the patient's medical chart for the purpose of continuing healthcare and must be preserved according to the physician's obligations to the patient and medical board.

## VI.     Miscellaneous Provisions:

(A)     **No Waiver.** The failure to designate any materials shall not constitute a waiver of the assertion that the materials are covered by this Protective Order.

(B)     **Third-Party Request or Demand for Disclosure.** Should any party bound by this Order receive a subpoena, civil investigative demand, or other process from a third-party seeking, requesting, or requiring disclosure of classified information in any form, such person shall give notice immediately to the producing party so that the producing party may seek appropriate relief, if any. Notice shall be made within ten (10) days of receiving the request for production and shall be in writing. Notice to the State of Texas shall take the form of written notification to the Office of the Attorney General, Consumer Protection Division. No person bound by this Order who receives a subpoena, civil investigative demand, other process from a third-party seeking, requesting, or requiring the disclosure of classified information shall produce or disclose such documents or information unless and until a) ordered by a court having competent jurisdiction, or b) such production or disclosure is in accordance with the provisions herein and is expressly consented to by the producing party.

- 7 -

(C) **Inadvertent Failures to Designate.** An inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this Order for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

(D) **Storage and Maintenance of Classified Information.** Classified information must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. Any person in possession of classified information will maintain appropriate administrative, technical, and organizational safeguards ("Safeguards") that protect the security and privacy of classified information. The Safeguards will meet or exceed relevant industry standards and limit the collection, storage, disclosure, use of, or access to classified information solely to personnel and purposes authorized by this Order.

(E) **Inadvertent Production of Privileged Material.** When a producing party gives notice of receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set in the Texas Rules of Civil Procedure, including Texas Rule of Civil Procedure 193.3(d). The production or disclosure of any material that is attorney-client privileged, physician-patient privileged, work-product-protected, or otherwise privileged under Texas law shall not result in the waiver of any claim of privilege or work product protection associated with such information, regardless of the circumstances of such production or disclosure.

(F) **Unauthorized Disclosure of Classified Information.** If a receiving party learns that, by inadvertence or otherwise, it has disclosed classified information to any person or in any circumstance not authorized under this Order, the receiving party must immediately (a) notify in

- 8 -

writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the classified information, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Certification" that is attached hereto as Exhibit A. If a receiving party or person authorized to access classified information ("Authorized Recipient") discovers any loss of classified information or a breach of security, including any actual or suspected unauthorized access, relating to another party's classified information, the receiving party or authorized recipient shall: (1) promptly stop the unauthorized breach; (2) promptly (within 72 hours) provide written notice to the designating party of such breach, including information regarding the size and scope of the breach; and (3) investigate and make reasonable efforts to remediate the effects of the breach. In any event, the receiving party or authorized recipient shall promptly take all necessary and appropriate corrective action to terminate any unauthorized access.

(G) **The Application of Other Privacy Provisions of Law.** Notwithstanding any provision of this Order to the contrary, in accordance with any applicable federal, state, or local laws that afford heightened protection to certain categories of confidential health information including, but not limited to records or diagnosis or treatment for alcohol or substance abuse, certain sexually transmitted diseases such as HIV/AIDS, mental health, minors, and research pertaining to genetic testing, the producing party may completely exclude from production any information afforded heightened protection by such federal, state, or local laws.

(H) Nothing in this Order shall affect the rights of the parties or third parties to object to discovery on grounds other than those related to the protection of confidential health information, nor shall it preclude any party or third-party from seeking further relief of protective orders from this Court as may be appropriate under the Texas Rules of Civil Procedure.

- 9 -

(I)     Any person requiring further protection of confidential health information may petition this Court for a separate order governing the disclosure of its information.

(J)     The provisions of this Order shall survive the conclusion of this action.

## VII.   No Good Cause to Excuse Patient Notification:

This Court does not find that good cause exists to excuse the parties from the patient notification requirements in Tex. R. Civ. P. 196.1(c); save and except, as to the identified limited motion to transfer venue discovery (date, location of treatment, location of filling of prescription) which the parties agree falls within 196.1(c)(2)(B). (Parties agree all other information will be wholly redacted).

## VIII.   No Attestation Required:

This Court finds that the allegations in this suit involve the prescribing of puberty blockers and/or cross-sex hormones for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex in violation of Tex. Health & Safety Code §161.702(3), and alleged falsification of medical records, prescriptions, and billing records to intentionally conceal the allegedly unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5). See generally Tex. Orig. Pet.

The Court finds the attestation provision is not applicable in this cause, including but not limited for the reason the information is not sought for a prohibited purpose. The parties are, therefore, excused from the attestation requirement contained in 45 C.F.R. § 164.509(a), to the extent such requirements exist.

SIGNED on this 13th day of January, 2025.

- 10 -

# M.R. 234

CHRISTINE A. NOWAK
DISTRICT COURT JUDGE

1/13/25

# EXHIBIT A

## CERTIFICATION

I certify that I have read the attached Agreed Protective Order (the Order), and I agree that I will not use or disclose classified information or individually identifiable health information for any purpose other than this litigation and that, within sixty days (60) after the final resolution of this action, I will either return all classified information to the party that produced such information or destroy such classified information. I will otherwise keep all classified information in accordance with this Order. I agree that the 493rd District Court in Collin County Texas has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I agree that the court where *Texas v. Lau*, **No. 493-07676-2024** is pending at the time of enforcement or where the trial in *Texas v. Lau* occurred has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.

_____
Date

_____
[Printed Name]

_____
[Signature]

- 13 -

## M.R. 237

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Jamie Vargo on behalf of Jervonne Newsome
Bar No. 24094869
JVargo@winston.com
Envelope ID: 97622346
Filing Code Description: Amended Petition
Filing Description: 1ST
Status as of 2/21/2025 8:46 AM CST

Associated Case Party: NONPARTY PATIENT NO. 1

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jervonne Newsome | | JNewsome@winston.com | 2/20/2025 4:41:44 PM | SENT |
| William Logan | | WLogan@winston.com | 2/20/2025 4:41:44 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David Phillips | | DPhillips@winston.com | 2/20/2025 4:41:44 PM | SENT |
| Jamie Vargo | | JVargo@winston.com | 2/20/2025 4:41:44 PM | SENT |
| Houston Docket | | ecf_houston@winston.com | 2/20/2025 4:41:44 PM | SENT |

**M.R. 238**

FILED
2/24/2025 6:56 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Martin Reyes DEPUTY

Cause No. DC-25-01823

| | |
|---|---|
| Nonparty Patient No. 1,<br>Nonparty Patient No. 2,<br>Nonparty Patient No. 3,<br>Nonparty Patient No. 4,<br>Nonparty Patient No. 5,<br>Nonparty Patient No. 6,<br>Nonparty Patient No. 7,<br>Nonparty Patient No. 8,<br>Nonparty Patient No. 9,<br>Nonparty Patient No. 10, and<br>Nonparty Patient No. 11,<br><br>       Plaintiffs,<br><br>  vs.<br><br>The State of Texas,<br><br>       Defendant. | IN THE DISTRICT COURT OF<br><br>DALLAS COUNTY, TEXAS<br><br>95TH JUDICIAL DISTRICT |

## NOTICE OF HEARING

TAKE NOTICE that Nonparty Patients' Amended Petition for Protective Order has been set for an in-person oral hearing on the 12th day of March, 2025, beginning at 3:00 p.m. before the 95th Judicial District Court of Dallas County, Texas, George L. Allen, Sr. Courts Building, 600 Commerce Street, 6th Floor New Tower, Dallas, TX 75202.

**DATED:** February 24, 2025

Respectfully submitted,

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869
jnewsome@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

1

## M.R. 239

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2025, an electronic copy of this Amended Petition was served to counsel of record for the State of Texas as listed on the relevant subpoenas, as follows:

Jonathan Stone — Jonathan.Stone@oag.texas.gov
Matthew Kennedy — Matt.Kennedy@oag.texas.gov
Rob Farquaharson — Rob.Farquharson@oag.texas.gov
David Shatto — David.Shatto@oag.texas.gov

I further certify that a copy of this Notice is also being served via Texas E-File.

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869

2
# M.R. 240

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jamie Vargo on behalf of Jervonne Newsome
Bar No. 24094869
JVargo@winston.com
Envelope ID: 97742878
Filing Code Description: Notice Of Hearing / Fiat
Filing Description: ON AMENDED PETITION FOR PROTECTION FROM DISCOVERY SUBPOENAS
Status as of 2/25/2025 9:48 AM CST

Associated Case Party: NONPARTY PATIENT NO. 1

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jervonne Newsome | | JNewsome@winston.com | 2/24/2025 6:56:22 PM | SENT |
| William Logan | | WLogan@winston.com | 2/24/2025 6:56:22 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David Phillips | | DPhillips@winston.com | 2/24/2025 6:56:22 PM | SENT |
| Jamie Vargo | | JVargo@winston.com | 2/24/2025 6:56:22 PM | SENT |
| Houston Docket | | ecf_houston@winston.com | 2/24/2025 6:56:22 PM | SENT |

M.R. 241

REPORTER'S RECORD

TRIAL COURT CAUSE NO. 493-07676-2024
TRIAL COURT CAUSE NO. 493-08026-2024

THE STATE OF TEXAS,                § IN THE DISTRICT COURT
                                   §
                                   §
          Plaintiff,               §
                                   §
VS.                                §
                                   § 493RD JUDICIAL DISTRICT
                                   §
MAY C. LAU, M.D.,                  §
                                   §
          Defendant.               § COLLIN COUNTY, TEXAS


THE STATE OF TEXAS,                § IN THE DISTRICT COURT
                                   §
                                   §
          Plaintiff,               §
                                   §
VS.                                §
                                   § 493RD JUDICIAL DISTRICT
                                   §
M. BRETT COOPER, M.D.,             §
                                   §
          Defendant.               § COLLIN COUNTY, TEXAS


                  -----------------------------

                         MOTION HEARING

                  -----------------------------


     On the 26th day of February, 2025, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Christine Nowak, Judge presiding, held in McKinney, Collin County, Texas;

     Proceedings reported by machine shorthand.

**M.R. 242**

A P P E A R A N C E S

FOR THE STATE OF TEXAS:

     MR. JOHNATHAN STONE
     SBOT: #24071779
     OFFICE OF THE ATTORNEY GENERAL
     PO Box 12548
     Austin, Texas 78711
     Phone: 512-936-2613
     Johnathan.Stone@oag.texas.gov

     MR. DAVID SHATTO
     SBOT: #24104114
     OFFICE OF THE ATTORNEY GENERAL
     PO Box 12548
     Austin, Texas 78711
     Phone: 512-936-2613
     David.shatto@oag.texas.gov

     MR. ROBERT FARQUHARSON
     SBOT: #24100550
     OFFICE OF THE ATTORNEY GENERAL
     PO Box 12548
     Austin, Texas 78711
     Phone: 512-936-2613
     David.shatto@oag.texas.gov


FOR THE DEFENDANT, M. BRETT COOPER, M.D.:

     MS. ANIKA HOLLAND
     CA Bar#336071
     WILLKIE FARR & GALLAGHER, LLP
     333 Bush Street
     Floor 34
     San Francisco, California 94104
     Phone: 415-858-7411
     Aholland@willkie.com

     MS. SIMONA AGNOLUCCI
     CA Bar#246943
     WILLKIE FARR & GALLAGHER, LLP
     333 Bush Street
     Floor 34
     San Francisco, California 94104
     Phone: 415-858-7411
     Sagnolucci@willkie.com

**M.R. 243**

FOR THE DEFENDANT, MAY C. LAU, M.D.:

    MS. EVELYN HUDSON
    SBOT: #2414582
    STEPTOE, LLP
    717 Texas Street
    Suite 2800
    Houston, Texas 77002
    Phone: 713-221-2372
    Ehudson@steptoe.com

    MR. CRAIG SMYSER
    SBOT: #18777575
    STEPTOE, LLP
    717 Texas Street
    Suite 2800
    Houston, Texas 77002
    Phone: 713-221-2372
    Csmyser@steptoe.com

    MR. W. HENRY LEGG
    SBOT: #24116661
    STEPTOE, LLP
    717 Texas Street
    Suite 2800
    Houston, Texas 77002
    Phone: 713-221-2372
    Wlegg@steptoe.com

    MS. NICOLE LEBOEUF
    SBOT: #
    LEBOEUF LAW, PLLC
    325 North Saint Paul Street
    Suite 3400
    Dallas, Texas 75201
    Phone: 214-626-9803
    Nicole@leboeuflaw.com


FOR THE NONPARTY PATIENTS:

    MR. WILLIAM LOGAN
    SBOT: #24106214
    WINSTON & STRAWN, LLP
    800 Capitol Street
    Suite 2400
    Houston, Texas 77002
    713-651-2766
    Wlogan@winston.com

**M.R. 244**

- AND -

MR. JERVONNE D. NEWSOME
SBOT: #24094869
WINSTON & STRAWN, LLP
2121 North Pearl Street
9th Floor
Dallas, Texas 75201
214-453-6500
Jnewsome@winston.com


FOR THE CHILDREN'S HEALTH NONPARTY PATIENTS:

MR. CORY M. SUTKER
SBOT: #24037569
COOPER & SCULLY, PC
900 Jackson Street
Suite 100
Dallas, Texas 75202
214-712-9500
Cory.sutker@cooperscully.com

INDEX

(MOTION HEARING)

2/26/25                                          Page   Vol

Appearances.....................................  2
Proceedings.....................................  6

Court's Ruling on Record Sealing..............  56

Dr. Lau's Motion to Transfer Venue...........  57
State's Response.............................  62
Dr. Lau's Response...........................  68
Nonparty Patients' Response..................  71
Court's Ruling...............................  72

Venue Discovery Agreements...................  79

Production of Patient Records discussions.....  87
Adjournment..................................  101

Reporter's Certificate.......................  102

P R O C E E D I N G S

THE COURT:  At this time we are going to be on the record.  We're going to be on the record in two related cases, Cause Number 493-08026-2024, the State of Texas versus Brett Cooper, and then as well, Cause Number 493-07676-2024, the State of Texas versus May Lau.

At this time if I could have an appearance on behalf of counsel for the State of Texas.

MR. FARQUHARSON:  This is Rob Farquharson for the State.

MR. SHATTO:  David Shatto for the State.

MR. STONE:  Johnathan Stone for the State.

THE COURT:  Thank you.  Appearance on behalf of counsel for Dr. Lau.

MR. SMYSER:  Craig Smyser for Dr. May Lau, and with me is Evelyn Hudson and Henry Legg.

THE COURT:  Thank you.  And appearance on behalf of counsel for Dr. Cooper.

MS. HOLLAND:  Anika Holland, and joining me shortly is Simona Agnolucci.

THE COURT:  Thank you.  And we also have counsel for our nonparty patients, if you could please state your appearance for the record as well, sir.

MR. LOGAN:  Yes, Your Honor.  William Logan

from Winston & Strawn on behalf of the nonparty patients.

THE COURT: Thank you. Please be seated.

Everyone, the acoustics in this courtroom, as we discussed at the last proceeding that we had, are tremendously poor, so I will ask for purposes of argument today if you will stay seated at counsel table throughout argument with the microphone pulled up. That's going to be most important for over here at this table because y'all are sharing a microphone. So if I can just ask counsel for Dr. Lau, when you are speaking if you will make sure you pull the microphone towards you. And then counsel for Dr. Cooper, same thing. When you're speaking, make sure you pull that microphone close to you. Okay?

MR. SMYSER: I want to make sure I understand because my life has been spent standing up when I talk to judges and I want to make sure that I'm not --

THE COURT: I'm expressly instructing you that today you should fight all urges to do that and remain seated. And, you know, we're all lawyers, so that is a hard habit to break. So I certainly expect all of you will do so at least once today. I fully understand that. I'm asking merely for purposes of your

**M.R. 248**

record. So that you can be certain that you get a good record, we really need you close to the microphone so the court reporter is able to take you down.

I'll also tell you, you know, if at any point in time I call you down today, again, my goal is to make sure you have an excellent record. And so if you get to talking too fast, which we all do, myself included, when we're on a roll, I will ask could you please slow down just a little bit so we can ensure the court reporter is able to take us down.

All right. We have a lot of things that are set today and that were scheduled to discuss. So I'm going to outline all of the things that the Court believes are set and that I have reviewed in preparation for today's hearing, and then after we've outlined that, I will tell you what the Court's plan is for proceeding and we can talk through things. Okay.

So starting with the State of Texas versus Cooper, today we have set for hearing the motion to transfer venue, which was filed on December 27th, 2024; the response thereto by the State, which was filed on January 27th, 2024, along with the declaration of Mr. Stone which was filed on that same date. We have the motion to strike Mr. Stone's declaration, which was filed on February 19th of 2024 and then a reply filed in

support of the motion to transfer, which was similarly filed on February 19th of 2024.

As discussed at the last hearing, there were certain items that were filed on the docket that contained the defendants' home addresses. Certainly, none of us desire that information to be public considering the privacy and safety concerns. And so pending before the Court in Cooper is the motion to permanently seal those court records that were inadvertently filed with the home address. That was filed on 1/13/2024. Public notice was properly provided on January 27th, 2025.

Just here at the outset, it's the Court's intention no matter where we are in the proceedings to make a hard stop at 9 o'clock, which is the time for those hearings. My bailiff will call the hall, and having confirmed that there are no other persons present from the public who are interested, we'll go ahead and turn to those motions to seal, which I understand are unopposed by all parties.

Okay. So that was everything I have set in connection with the Cooper case. I'm just going to ask for State to confirm, do you believe that those are the items that are set and that the Court has reviewed all items in connection therewith?

**M.R. 250**

MR. SHATTO: That sounds correct, Judge.

THE COURT: Counsel for Mr. Cooper -- or Dr. Cooper, I apologize.

MS. HOLLAND: I think that's correct, Your Honor. I just want to make sure that the Court received the State's amended petition, which I believe was filed on Monday of this week.

THE COURT: Let me double-check. I did not review an amended petition in connection with preparing for today.

There has not been one docketed in this case as of yet. Does the State have a copy?

MR. FARQUHARSON: I do not have a physical copy. I can e-mail one to the Court if that's okay.

THE COURT: If you can approach and grab Mr. Miller's card. If you will have it e-mailed to Mr. Miller, the Court would be happy to review. At present the clerk's office has not processed that. As we discussed in the e-mails you received from Ms. Patterson, it takes about 48 hours once something hits the clerk's office for it to be processed and be received by the Court. That's why we reached out and said, if there is anything that you want us to review, you need to make sure we had it by close of business on Monday because otherwise it wouldn't have been processed

**M.R. 251**

in enough time for today. All right. So we'll get that e-mailed.

Turning to Dr. Lau, we have the motion to transfer venue, which was filed December 6th of 2024; the response to that motion to transfer venue, which was filed January 27th of 2025. We have the declaration of Mr. Stone, which again was filed on that same date. There is the reply in support of the motion to transfer venue, which was filed on February 19th of 2025, and then as well, in discussion with Dr. Lau's motion to transfer venue, we have the State's motion to compel, which was filed on February 20th of 2025.

In connection with the State's motion to compel, the Court has received in opposition by Dr. Lau and as well the nonparty patients have filed a motion for protection in connection with that.

In connection with Dr. Lau's case, have I accurately stated everything that is set today, State?

MR. SHATTO: Your Honor, the State would just like to make a note that it is my understanding that the nonparty -- only some of the nonparties are represented by this counsel, not all of them.

THE COURT: We're going to go over that in just a second. He delineates his motion simply as nonparty. So all I'm doing at present is delineating

**M.R. 252**

the title of the document, not attributing his style to all persons.

MR. SHATTO: Okay.

THE COURT: Does Dr. Lau's counsel believe that I've accurately stated everything and what I needed to review to be prepared for today?

MR. SMYSER: Yes, Your Honor with one exception.

THE COURT: Okay.

MR. SMYSER: That exception relates to what the Court has been recently informed of, that the State filed an amended petition asserting a new cause of action. We have filed today, moments ago, given that we only had one business day notice before this hearing on motion to transfer venue, an analysis of the venue implications of that new cause of action, and with the Court's permission, I will bring a written out -- a hard copy to the Court and I have copies for counsel as well.

THE COURT: Yes. Let me also ask, since you have prepared that, do you happen to have an extra hard copy of the amended petition? Because certainly the Court is going to need to look at both to be able to evaluate.

MR. SMYSER: Alas --

THE COURT: You do not.

**M.R. 253**

MR. SMYSER: -- much to my chagrin, I do not.

THE COURT: Let me see. Did we send the e-mail?

MR. FARQUHARSON: I'm working on it right now. I just want to clarify, though, I'm not sure that the amended petition is going to impact the venue of this case. It's a new claim, yes, but I don't really see how it relates to the venue.

THE COURT: Okay. Counsel is asserting it is. So can you please provide a copy of your filing to the State, in the event that they have not received it yet, and if you will bring a copy forward to me as well at this time.

MR. SMYSER: Yes, Your Honor, although I will accept their representation on the record that it does not impact the venue analysis, but we did refer to the venue provision in that statute for the Court and Counsel's understanding.

THE COURT: If you'll bring that forward.

MR. SMYSER: May I approach the bench?

THE COURT: Yes, you may.

Everyone, the Court's proposal for addressing the motions that are set today is as follows: The Court proposes to outline each of the parties'

**M.R. 254**

respective positions from the motions to transfer venue as the Court understands those positions.

Following that, the State, as it relates to Dr. Lau, has alleged that outstanding discovery responses impact their ability to respond, and so the Court needs to have a discussion of the motion to compel as it relates to the allegation that it impacts the venue issues.  We are not going to have a full hearing on the motion to compel at present.  We're going to take up the motion to transfer venue.

But I just want everyone to be aware, we're going to discuss the compel in the context of how does it impact the venue allegations.  After we conclude argument on the venue issues, then we will turn and we will discuss the motion to compel in its totality and how we should proceed, if at all, as it relates to the discovery.

Is there anybody who has any objection to the Court approaching those motions in that manner?  Again, we're going to be -- we necessarily have to discuss the compel in the context of the State's assertion that it does impact their ability to respond, but other than that, the Court intends to defer it until we've concluded argument.

State, do you have any opposition?

**M.R. 255**

MR. SHATTO: No, Your Honor.

THE COURT: Defense counsel?

MR. SMYSER: No, Your Honor. We agree with the Court that the motion to transfer venue should be the first item on the agenda.

MS. HOLLAND: Same here.

THE COURT: And I assume, nonparties, you at the kids' table have no objection either?

MR. LOGAN: That's correct, Your Honor.

THE COURT: All right. So then we're going to go ahead and begin, and I'm just going to outline the Court's understanding. At present we're going to begin with outlining Dr. Cooper's position in the motion to transfer venue.

Dr. Cooper asserts venue is not proper here in Collin County and that, in fact, it's proper in Travis or Dallas County. In connection with that, both parties agree that the Court should look to Texas Health and Safety Code 161.702. Cooper alleges that he was employed by UT Southwestern based in Dallas, saw patients at that main facility in Dallas, and also a satellite facility in Plano.

Dr. Cooper asserts that he's unable to identify whether or not he saw patients at that Plano facility because the patients were pseudomized. He also

**M.R. 256**

asserts all other facts that matter occurred in Dallas; all prescriptions, physician charges, insurance claims issued in Dallas, and he bases that assertion on the fact that the hospital's medical records software and billing departments are located in Dallas.

Cooper asserts when he specifically denies the venue facts -- or that because he has specifically denied the venue facts by virtue of his declaration, the burden shifts to the plaintiff to show prima facie proof. Dr. Cooper asserts that Plaintiff has failed to do so, requests to strike the Stone declaration, and alleges it is insufficient to support the venue arguments. He further asserts that even if venue for his case is, in fact, proper in Collin, that his case should be transferred along with Dr. Lau's because of Local Rule 2.3.

The State's response is, in connection with Dr. Cooper's case, that Patients 1, 7, 9, 10, 14, and 15 filled their prescriptions in Collin County and as well live in Collin County, and that because testosterone is a self-administered drug, that they would have to have administered their prescriptions in Collin County. As prima facie support, the State provides a declaration that says that it has reviewed but it does not attach PMP records. PMP stands for prescription monitoring

program.

The State relies on the text of the statute and the words "dispense" and "administer" in connection with their venue arguments. I omitted to state and I will, Dr. Cooper's position is that 161.702, in connection therewith, 161.706, constitutes a mandatory venue provision. The State takes an alternative position and argues that that is a permissive venue provision and thus venue would be proper at their election under either 161.072 or the Texas Business and Commerce Code 17.47.

I think it's relevant here, so I'll go ahead and read it for the record. 161.706, which is entitled "Attorney General Enforcement," reads, subpart A, "If the Attorney General has reason to believe that a person is committing, has submitted, or is about to commit a violation of Section 161.702, the Attorney General may bring an action to enforce this subchapter to restrain or enjoin the person from continuing to commit or repeating the violation." Subpart B reads, "Venue for an action brought under this section is in a district court of Travis County or the county where the violation occurred or is about to occur."

161.702, in a relevant part, reads as follows: Subpart 3. "For the purpose of transitioning

a child's biological sex as determined by the sex organs, chromosomes and indigenous profiles of the child, or affirming the child's perception of the child's sex if that perception is inconsistent with the child's biological sex, a physician or healthcare provider may not knowingly provide, prescribe, administer, or dispense any of the following prescription drugs that induce transient or permanent infertility:  A, puberty suppression or blocking prescription drugs to stop or delay normal puberty; B, supraphysiologic doses of testosterone to females, or supraphysiologic doses of estrogen to males.  The Court believes those are the relevant provisions under the Texas Health and Safety Code.

State, do you believe I've accurately, at a 50,000-foot view, stated your position in connection with Dr. Cooper's motion to transfer venue?

MR. SHATTO:  Yes, Your Honor.

THE COURT:  All right.  And Counsel for Dr. Cooper, again at a 50,000-foot view, do you believe I have accurately stated Dr. Cooper's position?

MS. HOLLAND:  Yes, Your Honor.

THE COURT:  So if we turn to Dr. Lau's motion to transfer venue, Lau's position is virtually identical to Dr. Cooper's save and except Dr. Lau

**M.R. 259**

asserts that she has never ever seen a patient in Collin County, that she saw patients exclusively in Dallas; more specifically, that she practiced exclusively at Children's, which is located only in Dallas. The State's response is similar to that in connection with the Cooper case. They cite that patients of Dr. Lau 1, 2, 5, 6, and 19 both filled their prescriptions in Collin County and live in Collin County. They also cite that an additional patient, while not filling the prescription in Collin County, did live in Collin County, being Patient 18.

One of the items that the State addresses in connection with the various motions and that they have alleged to the Court is that at present they have been unable to sufficiently respond to the Lau motion to transfer venue because they have not been able to receive the discovery that has been requested.

So where I'd like to begin, again, is I'm going to ask the State to address a very narrow issue. If you can address the discovery and why you think that the motion to compel borders on or relates to that motion to transfer venue. I'm going to ask counsel for Dr. Lau and Dr. Cooper to both respond to their assertions. And then after the Court's heard argument on that, we will transition to the larger motions to

transfer venue.

So in connection with that, I'm going to hear from Dr. Cooper first, argument. State will be able to respond. Then I'll hear from Dr. Lau next. State will be able to respond.

So, State, at this time I would like to hear from you in relation to your assertion that your motion to compel relates to and is required to have relief before I can rule on the motion to transfer venue.

MR. FARQUHARSON: Thank you, Judge.

Yes, request for productions number 1 through 21 requested medical records. On the record on January 13th, the parties all stipulated that they had no objection to the production of redacted records to show the location of treatments and prescriptions that were provided. We submitted a request. We did not expect -- so that stipulation was made.

However, on the record, Dr. Lau said that she did not have medical records. The response that we got in response to discovery was inconsistent with that. It included HIPAA objections, and in order for there to be a good faith HIPAA objection, they necessarily must have the records. And given that they have stipulated that they would not object to the production of those

**M.R. 261**

records to show the location of the treatment and prescriptions, we believe that those records are highly relevant to the motion to transfer venue.

THE COURT: If I can hear a response at this time.

MR. SMYSER: Yes, Your Honor. I'm afraid counsel has overread our response when we make objections. We do not have the records. We clearly do not have the records and have stated that. The State of Texas has to know that because they're both employees of the State of Texas. Dr. Lau is an employee of the State of Texas, the hospital is a State institution. They know Dr. Lau does not have access to the records. She does not, she cannot. We have provided information to the Court indicating we requested the records from both UT Southwestern and from Children's, and in both cases that request was denied. We do not have the medical records.

I would also note for purposes of procedure that the State did not move for a continuance of this hearing on the basis that they had inadequate information. The facts are the facts. The facts are Dr. Lau practices in Dallas. Dr. Lau lives in Dallas. Dr. Lau has never practiced in Collin County, never treated a patient in Collin County. Those facts aren't

changing. And the fact that they have not moved for a continuance or asked before this hearing and before the latest pleading they filed, a complaint about this discovery issue indicates I don't think it is a serious objection. I think it is an objection intended to delay this hearing.

THE COURT: So, Counsel, let me ask just a few questions. Are you here on the record today representing that you're willing to stipulate and to provide a stipulation in writing that Dr. Lau does not have possession, access, control of any of the medical records, defers to Children's Health and the nonparty patients related to actual production, but notwithstanding that, is able to affirmatively represent that there will be no locations contained in those records that lists anywhere other than Dallas County based upon her own personal knowledge?

MR. SMYSER: I can -- I can enter a stipulation to part of that, Your Honor. I can enter a stipulation that, to her knowledge, none of the treatments ever occurred in Collin County. I can say that. I can say on the record and stipulate she does not have access to the hospital records. I cannot -- because we have not completed our ESI review, I cannot state that she might not have a random page here or

**M.R. 263**

there of someone's medical records. I can't state that, and I would not because I haven't looked at the material. We haven't had a chance to complete that review yet. Other than that, though, I can state as I stated a moment ago.

THE COURT: All right. Dr. Cooper, I know that the State's motion predominantly goes to Lau, but as it relates to Dr. Cooper, let me go ahead and ask, what is your response at this time?

MS. HOLLAND: Thank you, Your Honor. I think I would just -- I would add that I think the State overstates what was discussed here when we were all together in January about seeking limited jurisdictional discovery. I think the parties and the Court had contemplated a waiver of the patient notification requirement under Texas Rule of Civil Procedure 196.1(c). So that wouldn't be triggered if they sought limited discovery just as to the location of treatment and the prescriptions prescribed.

The discovery requests that Dr. Cooper has received, which I believe are the same or very similar to those that Dr. Lau has received from the State, don't seek discovery in such a limited manner. They're quite broad requests. So I think it would just be our position that the State has not sought the limited

**M.R. 264**

jurisdictional discovery that the parties contemplated in January.

THE COURT: Would you agree with me, though, that when the parties were together in January, it was contemplated in connection with each of your clients that likely it was necessary for the Court to have an understanding of where each of the patients received treatment? Dr. Lau has stated she's affirmatively able to swear before the Court that she saw no patients whatsoever in any facility within Collin County, and that all patient visits, any prescription she affixed her signature to would have been in Dallas County. Dr. Cooper relies upon his declaration and which in pertinent part states, "While UT Southwestern is based in Dallas County, it also operates several satellite campuses. During the time period at issue in the State's verified original petition, I saw a number of patients at one of these satellites, UT Southwestern Pediatric group in Plano in Collin County." He goes on to state that because the petition pseudomizes the patients, it's impossible for him to discern where he treated each of the patients that are listed.

I'll just note for purposes of the record the reply in support of the motion to transfer was filed on February 19th of 2024. At that time, though,

**M.R. 265**

however, Dr. Cooper had been provided the identities of the pseudomized. And so at present, the query that the Court has is, is the declaration of Dr. Cooper still accurate? Is it still appropriate? Can he truthfully still deny that he saw no patients in Collin County?

MS. HOLLAND: Yes, Your Honor. So the declaration is still valid. Dr. Cooper did receive the State's initial disclosures that included a list of the 15 patients' names and residences. But he was unable from just that list to identify the location where he saw those patients. Sometime -- we went over it with him. And sometimes he has seen patients at multiple locations, and without the underlying medical records, he was unable to determine where he saw those patients.

THE COURT: So is it your statement to the Court here today that if there were discovery as it relates to the location that Dr. Cooper saw patients, that it is quite likely and possible that the patients delineated in the petition were seen at one of the satellite locations or the satellite location in Plano? Is that your statement to the Court today?

MS. HOLLAND: Yes, Your Honor. We don't know.

THE COURT: All right. State, anything else as it relates to the motion to compel?

**M.R. 266**

MR. FARQUHARSON: Yes, I want to -- a couple points, one with respect to what Dr. Cooper's counsel just said, and it applies to both cases, is that we believe what would also be relevant to -- I think we're sort of skimming over the idea that doctors do telehealth visits, and so it would matter if telehealth visits happened here and a patient was in Collin County at the time of the telehealth visit. So I want to make sure that we're clear in terms of when we say there was no visits in Collin County, are we saying there was no telehealth visits with Collin County patients? That's my immediate response.

THE COURT: Okay.

MR. FARQUHARSON: With -- sorry.

THE COURT: Then can you address Dr. Lau and Dr. Cooper's assertion that you have not filed a separate request to continue today's hearing. You have alleged that there is outstanding discovery, but is there an obligation for you to formally and specifically move to continue the Court's determination on the motions to transfer venue?

MR. FARQUHARSON: I don't think so, Judge. And the reason is because, in light of the stipulation -- I think that in light of the fact that Dr. Lau stipulated to the production of these records, I

**M.R. 267**

think the Court can draw an inference against Dr. Lau based on that refusal to comply with the stipulation. And if I could respond to a couple other points that Dr. Lau made.

THE COURT: So long as, again, we're sticking with --

MR. FARQUHARSON: Yes.

THE COURT: You may proceed.

MR. FARQUHARSON: Number one, with respect to the idea that they have not had time to review the records that their client has given them, it has been 45 days since we served the discovery requests. So we are beyond 30 days, and it is insufficient for them to come to the Court today and say they have not -- they've not reviewed the records.

THE COURT: And to that end, can I go ahead and lay out some of the facts that I understand and just make sure. The protective order that currently exists in this case was entered on January 13th of 2025. The State actually served their discovery requests a few days prior to that, on January 9th of 2025. Is that correct?

MR. FARQUHARSON: That is correct, Judge.

THE COURT: And then the State provided patient identifying information to each of Dr. Cooper's

and Dr. Lau on January 17th.  Is that correct?

MR. FARQUHARSON:  That sounds correct.

THE COURT:  The deadline that you assert to respond to the discovery requests fell on February 10th?

MR. FARQUHARSON:  That is right.

THE COURT:  At present, no documents whatsoever have been provided, not even those that enable you to identify the location where any visits occurred?

MR. FARQUHARSON:  That is correct, Judge.

THE COURT:  And then this motion was filed on February 20th?

MR. FARQUHARSON:  Yes.

THE COURT:  Okay.  Can you tell me, as it relates to -- because one of the issues that we're going to be discussing later and I think it's wise that the Court ask the question now, what do you allege is the proper time frame for the request?  Obviously you've addressed the weaning provisions, and so are you alleging that the proper time frame is January 1, 2023?

MR. FARQUHARSON:  No, Judge.  I believe our requests go back to January 1, 2021.  But let me confirm.  I believe that the appropriate -- appropriate time period is what we have requested in the request for production.

THE COURT: Well, there's various different times that you've provided in connection with the request for production. There's some that are April, some that are January. I'm trying to find my specific notes on that. So at present, you don't have one set time frame contained within your request, and what I'm trying to ascertain, because I think that these other parties are going to be interested in your position on that is, what is the absolutely necessary time frame. I mean, obviously, I think what we're all interested in is how do we get information that you're entitled to discover but for the, you know, most narrow and appropriate time frame so that we can ensure that we are protecting the patients and their records.

MR. FARQUHARSON: I think as a broad statement and general rule, the most relevant would be January 1, 2021, to present.

THE COURT: Okay. And tell me what is your basis for alleging that it's January 1, 2021. Why is that the appropriate time? Why is it not --

MR. FARQUHARSON: So, as the Court knows, we have three claims. We have a DTPA claim.

THE COURT: Okay.

MR. FARQUHARSON: We have a SB 14 claim, and as was referenced earlier, we have a new claim that

**M.R. 270**

the treatment provided was not provided for a valid medical purpose. I'm going to speak to the SB 14 claim because that claim has the most clear timeline, but I think it is -- the timeline is applicable to all of the claims.

The SB 14 claim and the defenses thereto -- so first of all, with -- actually, I'm going to start with the DTPA claim.

With the DTPA claim, we need records from before and after the effectiveness of SB 14 because we need to show the consistencies between the -- we've alleged that there was false billing codes entered and we need to show inconsistencies between the medical records and the billing records. And we also need to see those practices before and after the passage of SB 14. With respect to SB 14 specifically, the exception that Dr. Lau has invoked in this case is that there was -- that medication was provided as part of a weaning process.

THE COURT: Correct.

MR. FARQUHARSON: That exception has three important qualifiers to it. Number one, the prescription drug has to be a part of a, quote, continuing course of treatment that the child began before June 1st, 2023.

**M.R. 271**

THE COURT: Correct.

MR. FARQUHARSON: Second, the child attended 12 or more sessions of mental health counseling or psychotherapy. And third, during a six-month period of at least six months before -- I want to emphasize before -- six months before the course of treatment began. So at an absolute bare minimum, that takes us to January 1, 2022. And we think it's appropriate for the Court to -- we don't think one year -- adding a year on to that takes us to where we're beyond being narrowly tailored. We think one year is an appropriate buffer zone.

THE COURT: So why is January 1, 2022, not the right place to start, and then after production occurs, if you determine or ascertain based upon your review of the records that you need to go back further, we shouldn't revisit it, then?

MR. FARQUHARSON: If they are going to say that they were weaning in January 1, 2022, we need to know what they were doing before January 1, 2022, to make sure that it was actually weaning.

THE COURT: But won't you not know that until you get that actual initial tranche of records? And so that's what I'm asking. Would it be more appropriate to take it in two bites? To effectively

say, hey, here you go, January 1, 2022, and then if after review of the records you identify that there are certain patients that additional documents to ascertain the weaning defense would be applicable to, that we could revisit the issue then?

MR. FARQUHARSON: That would not be our preference, but if that's what the Court decides to do, I think that sounds like an appropriate...

THE COURT: So we're going to revisit this issue, Counsel. Obviously one of the things I want you to talk about because we are obviously going to be discussing the time frame is whether or not you would be amenable to approaching it in that manner and agreeing to that time frame happening on all of the requests. So January 1, 2022, and then returning if the State identifies that there are additional records needed related to any weaning defense for documents for a specific patient prior to that time.

Okay. I think that answers the Court's questions that I had outstanding related to -- we're going to go ahead and hear argument on the motion to transfer venue. And so again, we're going to be beginning with Dr. Cooper. Dr. Cooper, I'll hear from your counsel first, and then, State, I'll have you respond. After we've concluded that, then we will turn

to Dr. Lau.

So, Dr. Cooper, Ms. Holland, at this time.

MS. HOLLAND: Thank you, Your Honor.

Dr. Cooper has specifically denied the State's venue allegations and has moved to transfer the case to Travis or Dallas County.

THE COURT: Okay. So go ahead and stop there on the specific denial, because I think that goes to the question I've already asked.

MS. HOLLAND: Yes.

THE COURT: So your specific denial is based expressly on Dr. Cooper's assertion that the patients are pseudomized and so he is unable to ascertain the locations. So you've now received the names and so the query I had is, okay, can he still truthfully make that statement? And your response is, well, Judge, we don't have access to all the records and so we can't remember if he saw this patient in Dallas, in Plano, or both. Am I -- is that a correct summary of your statements?

MS. HOLLAND: That's correct, Your Honor. And I would just add to that that, you know, I think the conduct that the State has alleged that is the violation of SB 14 is the act of prescribing. If you actually look at the allegations in the petition, which have been

unchanged in the amended petition, those are still the same allegations if you go through the patient-specific allegations. Dr. Cooper is alleged to have written these patients who reside in Collin County prescriptions for testosterone. That is the conduct in question, and this has been clarified through the State's position in its briefing. And so we think that that also bolsters Dr. Cooper's position that these prescriptions, regardless of where the patient was treated by him, all issued from Dallas by the nature of his employment at UT Southwestern.

THE COURT: Okay. So I'm going to stop you just right there. State, if you can respond to that particular assertion. I'm looking at the petition at present. They're asserting that your petition does not allege that Dr. Cooper improperly provided care, only that it is dispense and administer. So can you respond, please.

MR. SHATTO: Yes, Your Honor. I'll find that. One moment.

MS. HOLLAND: If I could just clarify, Your Honor. We don't think that the State even alleged in the petition that Dr. Cooper administered this medication. That is something that was introduced via their briefing. Similarly with the dispense argument,

**M.R. 275**

that came up in briefing. We think what they've alleged is the act of prescribing.

MR. SHATTO: The State believes that, you know, it's not just where they were seen. It's where the prescription was filed and where it was taken. But at paragraph 186, the State states that each and every prescription written by Cooper after September 1st, 2023 --

THE REPORTER: Counsel, I'm going to ask you to slow down. And can you move the microphone closer to you, please?

MR. SHATTO: Absolutely.

So the State's position is that it's not just where -- where the patient was seen but it's also where that prescription was filled and taken.

THE COURT: Understood. But we have -- we have information before the Court related to where the prescriptions were filled and where the patients live. At present what we don't have is the information of where Dr. Cooper saw patients; correct?

MR. SHATTO: Correct.

THE COURT: The issue that the Court is focused on is are you alleging, as well, that the location where the patient was seen would matter?

MR. SHATTO: That's certainly another

factor that goes to this. But paragraph 186 of our petition states that each and every prescription written by Cooper after September 1st, 2023, or filled or taken as directed after September 1st, 2023, is a violation of SB 14.

THE COURT: And so to clarify, because they're alleging, well, it doesn't matter where he's physically located when he says, hey, I'm prescribing this, because of the electronic database of the hospital that no matter where he was -- Montana, Dallas, Plano -- that always any prescriptions would be prescribed in Dallas County. I assume that your position is different and that prescribing is location where he is present at the time?

MR. SHATTO: It is the position of the State that he may be prescribing those in that position but he's directing them to Collin County and then they're subsequently filled in Collin County. And the ultimate responsibility of the dispensing of the medicine is the prescribing practitioners that occurs in Collin County.

THE COURT: Can you clarify when you say he's directing them to Collin County? What do you mean by that?

MR. SHATTO: If he's sitting in an office

in Dallas County and he puts in the electronic medical system he's sending that prescription to the pharmacy that is requested by the patients. That pharmacy is in Collin County. He has directed that prescription from Dallas to Collin County. It was then subsequently filled in Collin County and the patients took the medicine pursuant to his directions.

THE COURT: In Collin County?

MR. SHATTO: In Collin County.

THE COURT: All right. Counsel, I'll allow you to proceed at this time.

MS. HOLLAND: Thank you. I have a couple of points in response to that. I think it would be helpful for the Court to look at the statutory language --

THE COURT: I've got it right here.

MS. HOLLAND: Great.

-- defining prescribe. So this is the Texas Controlled Substances Act, Section 481.001(40), and that defines prescribe as the act of a practitioner to authorize a controlled substance to be dispensed to an ultimate user. I think this language is clear that prescribing and dispensing are separate actions, and the State is essentially conflating those two actions by saying it matters both where they were written and where

they were filled, whereas the statutory language focuses on where the act of authorization occurred.

I would also like to address for a moment this ultimate responsibility language which is not in the statute. The state is referencing Texas Occupations Code Section 562.056. I really think that this is -- this is kind of the same red herring because this deals with dispensing mediation, not prescribing it. And if you look at what the State is actually alleging for these patients it's that he wrote prescriptions. His -- for the reasons that we've stated, that must have occurred in Dallas. I'm also just not aware of any case law applying this provision of the Texas Occupations Code in the way --

THE COURT: Are you aware of any case law that states that the court is supposed to rely upon where an electronic database is present to find that's where a prescription was written?

MS. HOLLAND: No, Your Honor.

THE COURT: So that's just the assertion y'all are taking. You don't have any authority supporting that position?

MS. HOLLAND: That's correct.

THE COURT: All right. You may continue.

MS. HOLLAND: I would also like to back up

**M.R. 279**

a step. We have been talking exclusively about SB 14 and the act of prescribing. And I just want to explain why we think that that's proper and why we think that venue here should be determined solely by reference to SB 14. And that is because it's a mandatory venue provision, whereas the --

THE COURT: Let me stop you just for a second because one of the other questions I have for the State is you don't respond to their argument about what the language is, and so are you conceding that this provision in the Texas Health and Safety Code is a mandatory venue provision?

MR. SHATTO: I don't think the State is conceding to that. I think the State states that it doesn't matter. We have venue is proper under both statutes.

THE COURT: Well, I think Texas law is exceedingly clear that where a mandatory venue provision applies, the Court must apply the mandatory venue provision. I cannot look to the permissive venue provision, and that's why I'm making that inquiry. Are you continuing to contend or are you contending that these provisions, 161.702, and then the accompanying venue provision, 161.706, is a permissive or mandatory venue?

MR. SHATTO: To that point, Your Honor, I don't think we are agreeing that it is a mandatory provision, but we believe that the State has venue under that provision. So if the Court determines that to be the case, then we're okay in Collin County as well.

THE COURT: Okay. But I don't think that specifically answers my question. What is your exact position on is this statute -- and I'm looking at 161.706. Is it your assertion here today that subpart B constitutes a mandatory venue provision, or does it constitute a permissive venue?

MR. SHATTO: The State would argue that it is a mandatory.

THE COURT: So then if it's mandatory, then that provision is the one that governs the Court's analysis here today. And so we're only going to be talking about that provision. And so with that, Dr. Cooper, you may continue.

MS. HOLLAND: Thank you, Your Honor. I would just add one thing, which is that the new claim that was added under the Health and Safety Code also has a permissive venue provision for Attorney General enforcement actions. It provides that they should be brought -- sorry, not should -- but they may be brought in Travis County.

**M.R. 281**

THE COURT: And I believe that the State has already conceded and stated here today that they don't believe that their new claim has any impact whatsoever on the venue analysis, so I don't think there's any need to discuss that.

MS. HOLLAND: Thank you, Your Honor. I just wanted to make that clear.

THE COURT: Anything further?

MS. HOLLAND: Yes. Yes, Your Honor. I think what I would like to draw the Court's attention to here is a fundamental failure of the State to provide prima facie proof after Dr. Cooper specifically denied venue allegations. The State did not seek jurisdictional discovery in this case. They didn't come to us and ask for discovery on an expedited basis. They just kind of let the case continue and supplied a wholly conclusory and insufficient attorney declaration as their prima facie proof. We've moved to strike that that as improper and we would ask the Court to disregard.

And I think the other thing I'll just add is that even if the pharmacy records that underlie that declaration were supplied to the Court, that still wouldn't show the relevant facts, which is where the prescriptions were written.

**M.R. 282**

I think another thing I would like to say here is that --

THE COURT: But you've also admitted you don't know where they were actually written.

MS. HOLLAND: And let me -- let me get to my next point, Your Honor, which is that there is no need for further discovery here because Travis County is expressly provided for as a mandatory venue, one of the two options in the statute. Your Honor could transfer this case to Travis County today no matter what the facts show, no matter whether Dr. Cooper saw some patients --

THE COURT: But you agree with me that the venue provision equally says that "or the county where the violation occurred." And so if the violation occurred here in Collin County, then this is the county of proper venue and the Court should defer to the plaintiff's choice; would you not agree?

MS. HOLLAND: No, I would not agree, Your Honor, because --

THE COURT: So what in this venue provision says I have to send it to Travis County?

MS. HOLLAND: So, Your Honor, I think the point that I'm disagreeing with is that Plaintiff still gets first choice. I think that the way that --

**M.R. 283**

THE COURT: So play this out with me just for a second.

MS. HOLLAND: Yes.

THE COURT: Let's assume that a violation related to Dr. Cooper did, in fact, occur here in Collin County. I fully understand that you are strenuously disputing that. I'm just saying, let's say that this thread, "Venue for an action brought under this section is in the district court of Travis County or," and if we were to agree that a violation did occur here, it would be Travis County or Collin County. Why would it be proper for me to transfer this case to Travis County if, in fact, Collin is a place where a violation occurred or is about to occur?

MS. HOLLAND: I think, Your Honor, the answer is that we don't know that at this point when the Court needs to make the ruling. And because Dr. Cooper has specifically denied these allegations, the burden is on the State to provide prima facie proof that venue is proper here. It has failed to do that. And so on the record before the Court, that's just -- that's not the reality that we're dealing with at this point, and Travis County is expressly provided for as one of the options and so it would be proper.

One other small point on that, which is

that in the State's response, it discusses that the State does not consent to venue in Travis County, and I would just like to explain that consent is not part of the statute for SB 14. That's part of the DTPA, but we've all agreed at this point that the DTPA does not govern. So the State's consent to Travis County really just isn't relevant.

If I could make one final point, Your Honor. I think if we look at the example of Patient 7, it is a really good illustration of why the State's venue theories don't make sense. You know, they're trying to hang their hats on where the medication was administered and where it was -- the prescriptions were filled. Patient 7 is alleged to live in Collin County, and the State alleges that Dr. Cooper wrote them a prescription in September '23 -- 2023. Patient 7 filled one of those prescriptions at a pharmacy located in Illinois. So under the State's theory, would a court in Illinois be a proper form? It just -- it doesn't make sense. So I think that that --

THE COURT: Can I ask how you have or know that information?

MS. HOLLAND: It's in the petition, Your Honor.

THE COURT: Okay.

MS. HOLLAND: I think that the location of the pharmacies is contained within the underlying pharmacy records, the PMP records.

THE COURT: Have you received access to those?

MS. HOLLAND: No, Your Honor. No, Your Honor. That is just my guess.

THE COURT: Any additional points?

MS. HOLLAND: One moment.

No, Your Honor, that's all.

THE COURT: Thank you. State, I'll hear from you at this time.

MR. FARQUHARSON: Yes, Your Honor. Thank you. I have a couple of points here. One, just so you know, paragraph 45 of the petition states that Cooper has violated the law by providing, prescribing, administering, or dispensing testosterone to minor patients for these purposes. Beyond that, I think that defense is incorrect in that they have specifically denied all of our venue facts. The venue facts that are important here are that these patients live in Collin County and that they fill these prescriptions in Collin County. Those two points have not actually been in dispute.

The question, I think, that's been raised

is how important those two facts are. But every single one of our allegations rise and fall directly from those two venue facts that have not actually been disputed. And because of that these facts must be taken as true and our allegations at this point also need to be taken as true. We have yet to receive medical records. We would love to have medical records so that I can prove up these facts, but we don't have those -- we don't have access to those at this time.

Furthermore, Defendants' focus on the hyperlocality of what the physicians are doing is simply too narrow in this case. In addition to the facts above and to the facts we already have, Lau and Cooper, is their continuing course of care has extended to Collin County. They did this by, as previously discussed, directing these prescriptions to Collin County. They did this by having that pharmacist, who again, ultimate responsibility is the prescribing physician's ultimate responsibility to dispense this medicine in Collin County --

THE COURT: And so let me ask a couple questions in that regard. So is it your assertion here today that Dr. Lau or Dr. Cooper picked up a phone, called a pharmacy in Collin County and said, I want this prescription filled? Or is it your assertion whenever

they saw the patient, they signed a prescription slip, put it in their records, and they likely did not have any knowledge of where the prescription ultimately would be filled or where the pharmacy was that the prescription would be filled?

MR. SHATTO: So obviously I don't know what the physicians did themselves specifically. If I may speak frankly, I was a paramedic for five years; I worked in the ER for five years. In those instances, we would either hand out a prescription and the patient would take that prescription wherever they wanted. In that instance, there is no reason to think that a physician would know where that prescription went. There was other instances where the physician would call the pharmacy and direct it to them.

Here what's being stated is that this is a controlled substance that is being entered into some sort of electronic medical record and, if that's the case, is going to be directed to that pharmacy. It is appropriate to, not knowing all ins and outs, presume that the physician is putting in the system this is going to go to Collin County per that patient's wish at that time. Otherwise, every pharmacy in the state or the country may have access to those same prescriptions, and that just doesn't seem like an accurate way to do

**M.R. 288**

business or a clean way to do business.

THE COURT: So you're alleging that the doctor themselves typed in the pharmacy and thus had personal knowledge. You're saying from your own experience in the medical field, that's what you believe is the possibility?

MR. SHATTO: Yes, Your Honor, that the physician transmitted it -- typed it in while they were in Dallas County and transmitted it to these other pharmacies in Collin County.

THE COURT: Okay. Where are the PMP records?

MR. SHATTO: We have access to them in our -- in our system.

THE COURT: Okay. Can you tell the Court, in connection with Texas Rule of Civil Procedure 87, why the records -- the PMP records were not provided to the Court or opposing counsel in support of the declaration?

MR. SHATTO: Yes, I think Rob is going to take that toady.

MR. FARQUHARSON: I'm looking very quickly at Rule 87 to make sure.

THE COURT: Sounds great. I've got it right here too.

MR. FARQUHARSON: Judge, I would note we --

**M.R. 289**

we notified opposing counsel of the records in our disclosures. That's what the disclosure rule requires us to do. They did not make a follow-up request for it beyond Dr. Cooper did submit some discovery requests to us recently. Those responses are not yet due.

THE COURT: Okay. So I'm going read the applicable line. "Prima facie proof is made when the venue facts are properly pleaded in an affidavit and any duly proved attachments to the affidavit are filed fully and specifically setting forth the facts supporting such pleading." I think that's the relevant language.

So the query that the Court has is: Why were the attachments, the PMP records themselves, not provided to the Court so that I could evaluate it.

MR. FARQUHARSON: I don't think we -- I don't think that's required of us, simply, and we provided an affidavit as to those records. And in the event that the Court needs something beyond that, we believe we can prove it up otherwise.

THE COURT: Okay. And so when you say you believe you can prove it up otherwise, the declaration itself merely says, "The records pulled from the State's PMP database support the State's factual allegations." So when you say we can prove it otherwise, it's, Judge, we can provide you the PMP records, or what would this

**M.R. 290**

otherwise be?

MR. FARQUHARSON: We will present testimony or we would also be happy to provide redacted versions of the PMP records to the Court. At the time that this was happening, we believed that the privacy interests weighed in favor of not attaching those to those pleadings.

THE COURT: So similar to the questions I've been asking Dr. Cooper, things have changed, patients are no longer pseudomized. And so at present, in light of the fact that we have a protective order, is it appropriate for the State to provide those?

MR. FARQUHARSON: It would be.

THE COURT: Anything further, sir?

MR. SHATTO: I do not.

MR. FARQUHARSON: No, Your Honor.

THE COURT: All right. Then we'll go ahead and turn to Dr. Lau's 's motion.

MR. LOGAN: Your Honor, very briefly, you know, as we do represent some of the nonparty patients that are at issue in the Cooper litigation as well, nothing's become ripe there that we filed with the Court. We do just want to state for the record that we disagree very, very strongly with the characterization of that discovery as the new discovery. The first

request was for all records for one of our patients for the last four years.

THE COURT: And certainly, Counsel, we're going to discuss today the motion to compel and the requests and whether or not they should be reformed. I guess since you stood up, I'll go ahead and ask. You represent a certain number of the patients, and certainly for the Court to evaluate this motion, it may be that there is certainly discovery that is necessary. And so the query I've got is: Are the patients going to oppose providing the information so that the Court can actually evaluate the location of any telehealth visits, any actual physical patient visits, or where prescriptions were written?

MR. LOGAN: Your Honor, I'm very happy you asked that question. So the patients are only asking and only asking in a protective order, for instance, that the framework the State set forth in *R.K.-Ramirez* is followed, which, as Your Honor just alluded to, usually requires that records that are going to be produced are produced in camera for the Court to review first.

It also generally requires that the requests are actually targeted to a specific issue in the litigation, not simply all of our clients' records

**M.R. 292**

for the last four years. But more specifically to the Court's question just now, we've asked the State to confer on this. We reached out to the State before we filed for protective order and said we would like to confer on these requests. The State hasn't even given us the courtesy of a response, much less conferred with us.

THE COURT: Part of the reason we're all together for so much time today is we are going to confer on all of these issues and make sure that we are able to address everyone's concerns.

So I think what you're telling me is, because I think your specific requests were that you wanted the ability to redact the identity, to allow the patients to review and to confirm the redactions; is that correct?

MR. LOGAN: Yes, Your Honor. And also to make sure that the requests aren't improperly seeking materials beyond what's necessary for this case.

THE COURT: At least as an initial matter, what the Court is telling you based upon the allegations, I need to know the location of telehealth visits, the physical location of patient visits, and the location of the doctor when the prescriptions were written. I'm hearing you say, Judge, so as long as the

patients' identities are wholly redacted, we are comfortable ensuring that that information is provided to the parties. Am I hearing you correctly?

MR. LOGAN: Yes, Your Honor, you're hearing that correctly. As long as the appropriate redactions are made and protect our clients' identities, that's fine.

THE COURT: And you're permitted an opportunity to review all of the redactions?

MR. LOGAN: Yes, Your Honor, correct.

THE COURT: Thank you very much. I appreciate it.

MR. FARQUHARSON: I just want to add one thing. With respect to the -- we dispute a lot of that. But with respect to the PMP records, a potential solution here would be we would be willing to file those with the Court right now and make an oral motion to seal. If all parties are agreed to those being sealed, then I think that solves the problem.

THE COURT: Okay. So you here today are orally advising the Court you're willing to file the PMP records as redacted to request them to be temporarily sealed, to subsequently request a permanent sealing hearing on those records, and you're asking whether or not the parties are opposed to the Court receiving

**M.R. 294**

those.

MR. FARQUHARSON: Correct.

THE COURT: Defense counsel.

MR. SMYSER: Your Honor, we're not opposed to the Court receiving them. That still is inadequate under Rule 87. It doesn't prove up the records, it just proves we got these. It needs more than that. So we -- but we do not, of course, oppose the Court looking at them either.

THE COURT: Okay. Ms. Holland.

MS. HOLLAND: We're not opposed to the records being sealed or to the Court receiving them.

THE COURT: All right. Thank you.

Dr. Lau, I'll hear from you at this time.

MR. SMYSER: Your Honor, one point of order. The Court said earlier that they wanted to stop at 9 o'clock, hard stop, for the notice. So before --

THE COURT: I appreciate it. I have lost track of time.

So, everyone, before we move to Dr. Lau's motion to transfer venue, let's go ahead and have the hearing as it relates to sealing.

Mr. Miller.

MS. PATTERSON: Judge, he has called the hall.

**M.R. 295**

THE COURT: Okay. And do we have the parties on the other cause present?

MS. PATTERSON: Yes, ma'am.

THE COURT: Let me go ahead -- we're going to do two things really quickly. Mr. Miller, you have called the hall; correct?

THE BAILIFF: Yes, Judge.

THE COURT: Okay. So in connection with each of these causes, the Court will just note for purposes of the record we are set here today on the request to seal certain records in each of Dr. Lau and Dr. Cooper's case. The Court previously temporarily sealed them because they contained the home address. At this time I would like -- are there any persons of the public who are present who have any opposition to the Court sealing the records for the stated reason?

I see no persons present stating an opposition. I'll have our record reflect no opposition was voiced, notwithstanding the opportunity for the public to do so. If I can just have the counsel for each of the defendants confirm you request the sealing and do not oppose.

MS. HUDSON: Dr. Lau confirms.

MS. HOLLAND: Dr. Cooper confirms.

MR. SHATTO: The State confirms.

**M.R. 296**

THE COURT: And then nonparty counsel?

MR. LOGAN: We confirm as well, Your Honor.

THE COURT: All right. At this time the Court grants the sealing request, and I'll check to see whether or not I have orders already. If so, I will sign them; if not, I'll ask counsel for y'all to provide.

We've been going for about an hour. I have one additional matter that I need to take up that's going to take me about two minutes. If everybody wanted to make a bathroom break, you may do so very quickly and then we'll resume with where we're at. Okay?

(Recess taken)

THE COURT: At this time we are going to be back on the record. We've had some additional counsel join us, and so at this time I'm going to ask those persons who are additional counsel that have now joined us, if you'll stand and state your appearance for the record.

MS. NEWSOME: Jervonne Newsome with Winston & Strawn here on behalf of the nonparty patients.

THE COURT: Thank you.

MR. SUTKER: Your Honor, Cory Sutker for nonparty Children's.

THE COURT: And then we have one

**M.R. 297**

additional. Were you going to put your appearance on the record?

MR. SMYSER: Yes, Your Honor. Simona Agnolucci for Dr. Cooper.

THE COURT: Thank you.

All right. So with the additional counsel, thank y'all for joining us. We're going to go ahead and turn now to Dr. Lau's motion to transfer venue. Again, I think the Court previously outlined its understanding of the pleadings, and the parties haven confirmed that the Court has accurately summarized.

So with that, Counsel, I'll turn this over to you.

MS. HUDSON: Thank you, Your Honor. Evelyn Hudson for Dr. Lau.

Venue in Collin County is improper. As Dr. Cooper's counsel has discussed, and we won't repeat at length here, the only allegations of violations of this statute are for prescribing. A violation is what would take it out of Travis County, and the State has alleged only violations that can have obtained in Dallas County.

Dr. Lau --

THE COURT: Is your position on that related to the argument that it doesn't matter where a

doctor is when they prescribe something, it only matters where the electronic records system is, and it's been y'all's position that, okay, great, even if Dr. Lau was in Collin County -- and I'm not saying that you are saying that -- but even if she had been, it wouldn't matter because the records systems for the hospitals are in Dallas and so when these prescriptions are processed, it is always in Dallas no matter where the prescribing doctor is physically located?

MS. HUDSON: Your Honor, in our case, Dr. Lau is physically located in Dallas. However, we would not contest that argument made by Dr. Cooper's counsel that the electronic databases are also relevant for the purposes of where the prescription occurred. However, for our case specifically, it has been our contention and continues to be our contention that because Dr. Lau has physically prescribed these medications only from Dallas County, venue is proper in Dallas County under a plain reading of the venue statute. And a plain reading is exactly what's required. The same Texas Supreme Court case that confers mandatory -- this being a mandatory venue provision, also outlines that we are required to read venue statutes as their plain language.

THE COURT: Can I interrupt just for a

second. I would like to come back to the verification filed by Dr. Lau. Okay. So if I'm looking at the verification, which is found on page 6 of 7 of Defendant's motion to transfer venue, the specific assertion is, "I do not practice medicine in Collin County and have never traveled to Collin County for any purpose associated with my medical practice since July of 2016." There is not a specific assertion that she never saw patients in Collin County nor never prescribed any medications while in Collin County, and so I want to just -- want to specifically inquire about that.

Are you telling the Court on the record here today, well, Judge, when we made the verification and she said I don't practice medicine in Collin County, prescribing a medicine to a patient or treating a patient would be considered practice of medicine, and so with that statement, what we're saying is we have sworn to the Court under oath there were never any prescriptions that she wrote in Collin County, there were never any patients that she saw in Collin County?

MS. HUDSON: Yes, Your Honor. To my knowledge, that is correct.

THE COURT: So there -- the devil's in the details, "to my knowledge."

MS. HUDSON: Yes, Your Honor.

**M.R. 300**

THE COURT: Because the Court's got to make the decision based on the actual facts.

MS. HUDSON: Yes.

THE COURT: And so do you know the actual facts, or is the reality that, at present, no one really knows because the defendants haven't reviewed the medical records either?

MS. HUDSON: Dr. Lau has sworn in her affidavit, and we believe that your interpretation is correct, that she has never prescribed in Collin County nor treated patients in Collin County.

THE COURT: You may proceed.

MS. HUDSON: I would like to address one of the things the State said explicitly in its argument earlier, that to -- when a prescription is sent, it is sent, and I quote, per that patient's wish to a prescriber or to a pharmacist. And so it is not, as the State argues, the agency of Dr. Lau prescribing or providing through a pharmacy but rather a third-party act of both the pharmacist and the patient.

The patient is selecting where that prescription or treatment is filled. And this is important not only because, of course, third-party acts are insufficient here to accomplish a first-party violation, but also because it would lead to an absurd

result.

It would permit the State to simply allege or find venue in any of the counties in Texas or, as Dr. Cooper's counsel has argued, in any state in which the prescription has been filled. We have a patient as well, just as Dr. Cooper's counsel, who filled their prescription in Missouri. And so in any case, that result is absurd and we want to encourage doctors to continue to provide treatment where that treatment is appropriate and necessary, and we believe that here that result should not obtain.

We would also like to note on the record that we similarly object to the affidavit the State supplied in support of its response in opposition to our motion to transfer venue.

THE COURT: You haven't filed a joinder or a motion strike at present, though, have you?

MS. HUDSON: We have not. We noted the objection in our reply. And we noted it for the same reasons that Dr. Cooper's counsel has noted it, but would like to highlight the deficiency in addition under Rule 87 but also because affidavits cannot rest on inferences and implications under the law and the affidavit contains allegations that patients would have self-administered, and that cannot be the personal

**M.R. 302**

knowledge of the affiant, Attorney Stone.

THE COURT: Anything further, Counsel?

MS. HUDSON: We're comfortable with hearing the State's response and responding further.

THE COURT: All right. State, at this time.

MR. SHATTO: Yes, Your Honor. The State continues to state that the venue facts that are important here are that the patients live in Collin County or the patients filled their prescriptions there. We believe that all of the other allegations flow continuously from there and are appropriate to have venue here in Collin County.

But on another -- kind of to expand on this, there's a case that didn't make it into our arguments that discusses the continuing course of care of physicians. I have four copies here. We have ended up with more people than I might have expected, and I can certainly pass them out. This is a Supreme Court of Texas case called *Rowntree v. Hunsucker* and it discusses kind of a summary of the course of treatment type of ideas that the courts have dealt with. And there's two kind of excerpts that I think are illustrated here.

THE COURT: Counsel, can you read that cite into the record so that we'll all have it for later.

**M.R. 303**

MR. SHATTO: Yes, Your Honor. Rowntree v. Hunsucker, H-U-N-S-U-C-K-E-R, that is at 833 S.W.2d 103, and Texas 1992.

THE COURT: And if you wouldn't mind providing counsel for Dr. Cooper and Dr. Lau a copy at this time.

MR. SHATTO: So from these cases, they kind of review each of the cases and as the court says, Common to all cases here, the plaintiff who takes medication significantly beyond the period contemplated by the physician's prescription without further attention from the physician is not being treated by that physician but is self-treatment.

That's not the case here. These patients are filling the prescriptions soon after they've been written them and then they're taking it within the prescription period there.

The Court goes on to say that these cases stand for the proposition that a physician may establish a course of treatment by enlisting the aid of the patient to self-administer a medication but only if the physician controls the treatment and continues to render medical services. So here also, the testosterone is a Schedule III controlled service that can only be obtained by a physician who prescribes, dispenses, or

**M.R. 304**

otherwise allows that prescription to be filled. And these medications are being filled soon after they've been written, in Collin County, and it is our allegation that the physicians have enlisted the patient to self-administer that medication as a part of that continuing course of care.

Now, the one part of this is only if the physician controls treatment and continues to render medical services. This is one of the reasons why it's important for us to get medical records because we need to see those visits, the follow-ups, and so on and so forth. But to note -- and the same will apply to Cooper, but specifically here in Lau, Patient 5 had two additional prescriptions after this initial prescription after the SB 14 time period, which would indicate to the State at least some level of continuing course of treatment for those patients. And so for those reasons, you know, we think that the Court clearly -- or I'm sorry, the physician's course of care extends into Collin County.

And then in terms of kind of where the prescriptions are filled, I do have another case here that didn't make it in the record but -- but maybe the easier example is just kind of a criminal hypothetical. You know, the drug dealer of some sort sells fentanyl in

Dallas County, and then that individual drives to Collin County, takes that fentanyl and dies because of an overdose, but that individual is going to be liable in Collin County. It's a similar idea here.

THE COURT: And, Counsel, I'll ask you the same question that I asked your opposing counsel. You're advancing arguments here today. In connection with the interpretation of prescribe, which I think is where we're going, do you have any actual authority other than the reference to that each the pharmacist and the doctor are coequally responsible in connection with a prescription and then subsequent dispensation?

MR. SHATTO: Well, the Texas Occupations Code states that the ultimate responsibility is the prescribing practitioner's ultimate responsibility of the dispensing of that medication. But I would say that the statute itself also says where the prescribing -- administering, prescribing --

THE COURT: It says provide, prescribe, administer, or dispense.

MR. SHATTO: Yeah. And so beyond the prescribing issue, there's also providing, right. These medications could not be provided to these patients in Collin County if they were not able to -- if they were not sent there by the physicians, and these

**M.R. 306**

prescriptions can go nowhere without the doctor's signature.

THE COURT: Okay. So I just want to drill down on this because I think the language is obviously very important. In connection with administer, the State's argument is there was a prescription written for the patients, the patients filled their prescription and then went to their homes in Collin County and they self-administered. Obviously, the opposing party's allegation is you don't have personal knowledge as to whether or not any prescriptions that were filled were actually administered; correct?

MR. SHATTO: Correct.

THE COURT: Okay. And then as to dispense, you're arguing when the pharmacist filled the prescription, that that filling of the prescription, because it ultimately originated with the doctor, is still the responsibility of the doctor and so the doctors is encompassed within dispense?

MR. SHATTO: Yes, Your Honor, I guess argument that the pharmacist is an agent of the physician.

THE COURT: Okay. Why are there two different words? Why is there prescribe, and why is there dispense if that is the case? Isn't it often,

perhaps at urgent cares or others, that doctors themselves dispense drugs at the facility kind of in an immediate fashion? So isn't the -- is the intention with dispense to cover those situations where the doctors are actually handing over the medication and not sending it off to a pharmacist to fill? Wouldn't -- so is the dispense language only for the person who is actually handing over the medication?

MR. SHATTO: So that may be the case. I think the argument is that a pharmacist can't prescribe the medicine but they can also be held liable for the act of dispensing that medication if they knew what that purpose was if that purpose was illegal. So the -- so that would just kind of cover the nonprescribing pharmacist who is dispensing the medicine.

THE COURT: Counsel, if you will continue.

MR. SHATTO: Overall, you know, the State simply believes that venue is proper here in Collin County. We don't think that that's been properly challenged, our venue facts haven't been properly challenged, and that -- and that it is proper here. But I think this also does bring up the fact that we do -- that the medical records will ultimately provide the information of venue as to where these things actually occurred.

**M.R. 308**

THE COURT: Thank you. Response.

MS. HUDSON: Yes, Your Honor, I have several responses. First, as to this case which we have just been provided, it appears on initial review that this is not a case about location. It is not a case about a relationship establishing venue or jurisdiction. Instead, it is a case about a statute of limitations in summary judgment. So the course of continuing care is a timing issue in this case, it appears, not relevant to this case. And of course, with further review, we would be happy to supplement our analysis that supports our analysis of this course of care argument that has just been raised today.

Additionally, we would like to challenge the State's characterization initially in its -- in its rebuttal that the statute prohibits, quote, otherwise allowing the filling of prescription medications. That is not in SB 14. Otherwise allowing is not a violation of the statute and should not be the basis upon which this Court decides venue.

Additionally, I would like to drill into some of the definitions of these terms of violations because although we did look at the definition of prescribing, I think since we've brought up dispensing and providing those would be similarly helpful. So to

## M.R. 309

provide under the Occupations Code means to supply one or more unit doses of a nonprescription drug or a dangerous drug to a patient. Dispense means to prepare, package, compound, or label in the course of professional practice a prescription drug or a device for delivery to an ultimate user of the user's -- or the user's agent under a practitioner's lawful order.

Neither of these are encompassed by the facts as pled as to any of the patients that were alleged to be the sources of the violations that Dr. Lau incurred. Instead, the petition sets forth and the arguments have reaffirmed that even to the extent the State uses the terms "providing" or "dispensing," what it means is that Dr. Lau wrote a prescription. And so the State's justification for venue on those terms as violations is an entire -- it's a red herring, Your Honor. It is inapplicable here.

Additionally, I would like to turn to the Occupations Code where the State referenced that it is the doctor's responsibility to ensure that the prescription is properly dispensed. The State is referencing a statute, which I have printed here in full, that actually relates to the professional responsibility, duties of a pharmacist.

In fact, that section which they have

**M.R. 310**

quoted is part of the definition of a valid patient -- a valid -- to be a valid prescription, it must be issued for a legitimate medical purpose, blah, blah, blah. It's defining a valid prescription. It is not saying or conferring an affirmative duty upon a prescriber. In fact, this statute has never before been used to confer such a duty.

Instead, this scheme is purposed and the legislature's intent is to define a pharmacist's duties. And so we also object to the use of that statute to justify the State's argument that Dr. Lau is in any way responsible for where patients selected to have their prescriptions filled and where pharmacists elected to fill them.

Finally, Your Honor, as an additional point, we take issue with the comparison of these doctors to criminals. It is inappropriate for the State to have made such a comparison. These doctors have had no complaints against their behavior and, in fact --

THE COURT: And I'll just stop you. I don't think that the State intended any disrespect. I think that they were just looking for a location analysis or analogy. Certainly the Court did not infer from that. And I'll just state I don't think there's any need to go further. That's not how the

**M.R. 311**

Court is viewing the situation.

MS. HUDSON: On that note, we would -- we would continue to argue as we have, as Dr. Cooper's counsel has, that the very plain language of this statute and the violation alleged meet that where the prescription has happened is where the violation is and where venue is proper and otherwise would be proper in Travis County. So we -- we request transfer to either of those counties.

THE COURT: Thank you. I know you wanted to make a statement earlier. Are there any additional statements that you want to make at this time, or do you feel that you've appropriately stated your position, Counsel for the nonparty patients?

MR. LOGAN: Your Honor, the only thing I would add is that to the extent we ultimately do end up discussing limited jurisdictional discovery, obviously the nonparty patients are going to be limited to time commensurate with the allegations and limited in scope commensurate with what's necessary for venue. That's all, Your Honor.

THE COURT: Thank you. Counsel for the nonparty hospital, do you have any statements you want to make at this time?

MR. SUTKER: No, Your Honor.

**M.R. 312**

THE COURT: All right. Then having provided everybody an opportunity to speak, the Court finds as this time as follows: The Court denies Cooper's request to strike the declaration. However, I do take the motions to transfer under advisement at this time.

I order the State to produce the PMP records, and I order the parties as well to supplement the record with additional location information. I think we exhaustively discussed in January that that information would be relevant to the Court's decision here today. In particular, Cooper's specific denial relies upon the fact that the parties -- or the patients were pseudomized. But that is no longer the case and it has not been the case since January 17th.

The motions are not postured for the Court to properly assess and resolve here today. I do believe that we've all agreed on a few things, though. We've all agreed that 161.7106 is, in fact, a mandatory venue provision, and as a result of that, venue for this action is abundantly proper in Travis, as defense counsel has alluded to, and the parties have variously alleged that either Dallas or Collin County is also proper. The Court intends to get this right, and so I believe that the record at present does not properly

**M.R. 313**

permit me to evaluate or assess.

We're going to talk about the time frame.

State, you said you have the PMP records and that you intend to supplement the record today?

MR. FARQUHARSON: Yes, Judge, we can do -- sorry, I keep wanting to stand up.

We can that do that either through any of the methods that we've offered to the Court.

THE COURT: I think, because we need it to be provided to the opposing parties as well, that it's probably best for you to file a motion supplementing, affixing the records, and then you orally move to temporarily seal today, which, again, the Court's granted, so that you can as well set a public sealing hearing on that just so that we can ensure that we're hitting all of the requisites in connection with putting those documents in the record.

MR. FARQUHARSON: We will do that.

THE COURT: Okay. I think we need to talk, obviously, with the nonparty patients and then the hospital as it relates to the Court's further directive, which is that the parties are to supplement the record with additional location information. The Court's intention here is just to properly assess where the case should be, and I do think that there's additional data

**M.R. 314**

that the Court has to have to be able to do so.

At present, Dr. Cooper and Dr. Lau have alleged that they are not in possession, custody or control or have access to any of the patient medical records other than perhaps a stray record that inadvertently is kept in their files. And so the reality is, is the two folks that I'll be looking to to ascertain how can we get the information and in what time frame we can get it is going to be the two of you. I don't know if you're prepared to discuss that with me at present or if we need to take a brief recess so that in light of the Court's rulings you can assess how you would like to respond.

MR. LOGAN: Your Honor, for the nonparty patients, we think it would be a good idea to take a brief recess, but we would also note for the Court that, you know, the Dallas County district court has taken jurisdiction over subpoenas that have been issued to the hospital in this case. The nonparty patients challenged them there in accordance with the Texas Rules of Civil Procedure. So that Court has a hearing set in the Lau matter for March 13 --

THE COURT: And I just don't know that this Court --

MR. LOGAN: March 12th, sorry.

**M.R. 315**

THE COURT: -- can wait, and I think that there is discovery that's pending here that makes it proper for this Court to push the issue as well. And so I certainly understand and I'm not -- while I'm not trying to infringe upon the jurisdiction of Dallas County, if that's where the individuals live such that that makes it the appropriate location for them to challenge those specific subpoenas, there are other jurisdictional requests that I think are outstanding.

And while Dr. Lau and Dr. Cooper don't have access to the particular records, I think we could charge them with personal knowledge, and I guess then the query becomes how do we help them, you know, refresh their recollection of their personal knowledge. So I would encourage y'all to discuss that.

I feel that because of how long this motion has been pending already, I'm certainly not inclined to delay. And this is meant as no aspersion on Dallas County, but oftentimes proceedings there may take a slightly longer time than they might here in Collin County.

MR. LOGAN: Yes, Your Honor, understood. And just to correct the record, it was March 12th that they have the hearing.

THE COURT: Thank you.

**M.R. 316**

MR. SUTKER: Your Honor, from the hospital's perspective, we are kind of caught in the middle of two district courts, but I understand what the Court's trying to accomplish. I would just need more direction on what the parties believe is necessary to show location because --

THE COURT: Well, I think that's why I outlined those categories earlier. So I don't know if you took notes over those categories, but that's why I was doing it. Counsel is not wrong. I was very heavily forecasting. I think those are the categories and so I think there is no opposition.

We had discussed at the outset that, you know, there was no need for identity of any patients to get the location information, and I don't think -- and, Counsel, if I'm misrepresenting, please, you know, speak up. But I think we exhaustively discussed at our initial hearing that for the Court to evaluate the location information; no one was requesting identity information. The State was abundantly clear, we don't need that. We would be comfortable with designating them as patient, which is one of the reasons as well I asked for y'all to confer to make sure our patient designations are the same.

So I don't think anyone is intending to try

**M.R. 317**

and get any information regarding, you know, the actual treatment, the diagnosis, the patient identification. We just need the location information so that the Court can evaluate and make this decision.

MR. LOGAN: And, Your Honor, we will confer about that. This is, honestly, the first we've learned of the first hearing and what was said there. As mentioned before, the State hasn't conferred with us, but we're glad to learn that. That's definitely -- sounds like we're heading in the right direction.

THE COURT: Okay.

MR. FARQUHARSON: Judge, that's the second time it's been raised that we have not conferred with them --

THE COURT: The Court is abundantly clear on the course of conversation, and I don't think we have to delve into whether there was a proper meet and confer or there was not a meet and confer. The fact of the matter is, is we're all here today to muddle through all of these issues and the Court's intention is to provide an environment that is conducive to moving all disagreements forward.

All right. So with that, we're going to go ahead and stand down and be off the record. And what I am going to ask -- do you need us on the record? We're

**M.R. 318**

going to go back on the record just for a second and, Counsel, your remark.

MR. SMYSER: Yes. Right now, Friday we have scheduled our motion to dismiss under Rule 91a.

THE COURT: Correct.

MR. SMYSER: And I understand that it has been -- I think the Court's desire that that motion be decided after the motion to transfer venue.

THE COURT: Set for hearing after.

MR. SMYSER: Or set for a hearing after. And the Court is obviously aware that Rule 91a has a 45-day --

THE COURT: I'm not intending to move our hearings that are set for Friday. I just want to get the facts that I feel like I need so that I can properly rule on these motions.

MR. SMYSER: Okay. Thank you, Your Honor. My only suggestion adding on to that is, as far as Dr. Lau is concerned, we believe the facts are as Dr. Lau has stated them --

THE COURT: Understood.

MR. SMYSER: -- in terms of her location. Thank you.

THE COURT: Anybody else who wants to say something while we are on the record? No. Okay. Then

**M.R. 319**

we're going to be off.

(Recess taken)

THE COURT: All right, everybody. At this time we are going to be back on the record. We've had significant discussion off the record related to discovery and any possibility for agreements. At present, we have reached an agreement as it relates to the venue discovery.

So the Court's going to state the agreement it believes has been reached on the record. I'm going to ask counsel for the hospital, after I have stated what I believe is the agreement, for you to clarify any particular points. And then following that, I will ask State, defense counsel, nonparty counsel to make any additional clarifications.

Following that, I'm going to permit the State to make one additional point related to SB 14. Then we're going to adjourn again to allow the State and defense counsel to confer regarding the pending motion to compel so that they can advise the Court whether they're requesting to go forward with the motion today or to defer it to Friday when I similarly have hearings set in this case.

All right. The parties, first and foremost, the State is going to provide a master key by

close of business on the 27th. We have agreed as it relates to the nonparty counsel that the master key will only be provided as to those persons that the nonparty counsel represents.

As it relates to venue, the parties have agreed that we're going to do limited discovery related to approximately six to ten patients. What we're initially proposing is that we're going to do a test case. The State is going to provide the total list of either six to ten patients by close of business today, being February 26th. Today as well, they will identify the patient that they desire to be included in the test case. Counsel for the hospital that is present today will assemble and prepare to produce all records related to that test case by February 28th when we are all back together. How we are contemplating doing that is that the records will be redacted, and you will bring with you copies of both the redacted and the full records for the hospital and the Court to review in camera. Counsel for the other parties will only receive the redacted set after the Court has had an opportunity to conduct an in camera review. And that is just for purposes of ensuring all identity information has been caught. The Court is going to be your check on making sure we've gotten that done.

**M.R. 321**

The documents proposed to be produced related to those six patients are: Treatment that has occurred in Plano; telemedicine and office visits on the dates certain provided in the petition; prescriptions, specifically testosterone cypionate and testosterone enanthate. I can't pronounce it either. And that as well, the pharmacies where the prescriptions were filled and/or sent.

Hospital, at this time I will ask for you to confirm, has the Court correctly stated the agreement or clarifications?

MR. SUTKER: One clarification with respect to treatment that has occurred in Plano. My understanding is I'm producing information to show that that treatment was conducted in Plano.

THE COURT: Correct. No --

MR. SUTKER: And so the medical opinions and decision-making will be part of the redactions.

THE COURT: Correct. Diagnosis will not be provided, any treatment notes not provided. The Court is merely trying to ascertain the location of the visits in connection with this venue discovery.

MR. SUTKER: Then with that clarification, Your Honor, I believe that's all accurate.

THE COURT: One additional point. We all

**M.R. 322**

agree that after the discussion on Friday, if we are all fine that, yes, we've struck the appropriate balance here, what we're proposing is that the remaining patients and their records related to the venue issue would be produced by March the 7th, and we're going to further discuss whether there will be any subsequent review following that production on the 7th by nonparty counsel for the patients but we've not yet determined or made that determination.

Okay. Coming to the State next, because I have one lawyer back here who definitely wants to weigh in on a request for clarification.

MR. STONE: Yes, Your Honor.

THE COURT: All right. So, Counsel, at this time I'm turning to the State.

MR. STONE: Yes. With respect to the prescription, we would like it to include the prescription, the address where it was transmitted to, the pharmacy, and the instructions because we believe the instructions go to one of our claims about if there's an instruction to self-administer at home, we believe that would then be relevant. So I just want to clarify that we would like the instruction portion of that included for the prescriptions. That is all, Your Honor. Other than that, we agree.

**M.R. 323**

THE COURT: Thank you. And I believe you've made that clear, so I don't think that that's a new statement.

Okay. I'm going to come to defense counsel, so Lau and Cooper. Any request for clarification, or have I accurately stated the agreement?

MR. SMYSER: One clarification, minor clarification, Your Honor. The list we're talking about, the master key, is going to be a master key of the tying the identity of the patient to the number of that patient in the petition; is that correct?

THE COURT: Correct.

MR. SMYSER: Thank you.

THE COURT: All right. Any other clarifications?

MS. HOLLAND: Nothing further.

THE COURT: Okay. Counsel.

MR. LOGAN: Your Honor, one point of clarification from us. I believe the Court mentioned the production would be on March 7th.

THE COURT: Ultimately. Not for the test case. The test case is going to be the 28th. Thereafter, if we agree on the 28th that, yes, we have struck the right balance, we've addressed everyone's

**M.R. 324**

concerns and we can go forward, then thereafter, the hospital would be obligated to produce by the 7th. I have not yet determined whether or not then the documents would be produced to the parties or they would come to you for your clients. We're going to address that issue on Friday.

MR. LOGAN: Understood. That was the clarification I was seeking. Not necessarily produced to the parties on March 7th --

THE COURT: Prepared to produce. He is ready and could hand those over if the Court orders him to do so.

MR. LOGAN: Thank you.

THE COURT: Okay. Any additional clarifications?

MR. LOGAN: No. Subject to their clarifications, none, Your Honor. Thank you.

THE COURT: All right. The Court finds that that is the agreement. We've all clarified to the extent necessary. I find that all of you are bound by this agreement, and I'll obviously see you back here on Friday for us to discuss further.

As well, I can't recall whether I put this on the record or not. There have been changes to our existing protective order. And to be clear, the Court

**M.R. 325**

entered a protective order right off the bat in this case, but there are requests by counsel for the nonparty patients to make additions to that protective order. So I have directed and I hereby order you, sir, to provide your proposed changes to the protective order. So the specific language, by close of business today, being the 26th.

I direct the parties to meet and confer and see whether they can reach an agreement on that language by close of business tomorrow. And then when y'all are here on the 28th, if we all agree, then I want y'all to bring to me an agreed amended protective order. I will enter it before we start the remainder of the hearings. If we do not have agreement, the Court will take up on Friday when we are all together the disputes on the form of the protective order. Okay?

With that, unless anybody tells me they have anything additional -- oh, SB 14. You had one additional point you wanted to place upon the record. I apologize. I almost forgot you.

MR. SHATTO: No worries, Your Honor. We appreciate it.

The State's position on the language and the distinctions are as follows: A prescription is a violation even if it isn't filled. If a prescription is

**M.R. 326**

filled, then the drug is provided, which is a different violation. And then administered means the physician physically injects the patient. And then dispensed means the physician gives the medication to the patient at her office but not does inject them. And that's the States's position on kind of how those different distinctions work.

THE COURT: Thank you for that clarification. I appreciate it.

All right. So at this time we're going to stand in recess again. We have the motion to compel still left to address, and we need to decide whether we're going to do that today or defer to Friday. And so what I'm going to do is ask counsel for the State, and then for the defendants, Ms. Patterson will show y'all into the jury room so you have ample room to do that. She'll check on y'all in about 15 to 20 minutes just to see if you need additional time, and then we'll provide an opportunity, obviously, in connection with the patient records, which is not the totality of the discovery, to talk with the other counsel who is present. And with that, we'll be off the record again.

(Recess taken)

THE COURT: All right. We're going to be back on the record. We are back on the record having

**M.R. 327**

taken an opportunity to substantively meet and confer. The remaining motion that is set before the Court here today is the State's motion to compel. The parties have, after conferring, reached certain agreements to carry the bulk of the discovery discussions to Friday as it relates to ESI. However, we are going to specifically address two items here on the record at this time, being RFP No. 27 directed to Dr. Lau and as well, generally, RFPs 1 through 21, which relate to patient records.

We've had a really substantive discussion here in the courtroom related to the production of patient records, and I believe that we have all agreed that the parties are going to agree to rolling production in connection with this cause. So we have all agreed that rolling production number 1, that the Court will order the hospitals to make -- and we're going to discuss further any nonpatient requests as it relates to the protective order on Friday. So I'm not getting rid of that concern -- are going to relate to treatment records by Dr. Lau and Dr. Cooper for each of the patients identified in the lawsuit dating back to either the first date of treatment that Dr. Cooper or Dr. Lau had; or if the treatment predated, the initial date would be January 1, 2022.

**M.R. 328**

And so just to be clear, if Dr. Lau began treating a patient in 2010, we are not dragging the records all the way back. The oldest date and time that we're going to be looking for, at least in this initial roll, is January 1, 2022. If the initial or first date of treatment is not until 2023, then that's when the first date of record would be.

As well, in connection, separate and apart from roll one, the parties have agreed to a few additional items between Dr. Lau and the State. Dr. Lau is going to provide search terms by February 28th when we're back here together and as well at that time is going to provide us an estimated production date for Dr. Lau's records that are not the patient records, her other discovery, and the total number of documents, again, on February the 28th. In addition, they'll identify the source of the materials for Dr. Lau's production.

I think we've discussed exhaustively but I'll just memorialize for the record, Dr. Lau's counsel is representing they do not have medical records in her possession save and except for perhaps a stray medical record, which they would assert that they should not have in their possession and that having in it in her possession would be an error or an accident and they

**M.R. 329**

would maintain that those records, the patient or the hospital would have the right to assert privileges.

I'm going to go ahead and ask at this time, State, do you think that I've accurately stated the agreements that are reached with Dr. Lau's counsel and as well, the totality of what we're contemplating as roll one?

MR. FARQUHARSON: That sounds correct except that the records -- you referenced treatment records. We believe the agreement also includes billing records.

THE COURT: And I -- related to Lau and Cooper. We're just trying to make sure that we're not trying to encompass or reach any times that they would have been seen by other physicians, other medical providers. And so to the extent I didn't make that clear, thank you for that clarification.

Okay. Coming over to defense counsel. So, Counsel for Dr. Lau, did I correctly state the agreement?

MR. SMYSER: You did, Your Honor. One clarification, though.

THE COURT: Always.

MR. SMYSER: Because I'm not sure whether Dr. Lau has any health records, I don't know if she did

**M.R. 330**

it would be on accident or error, so just that clarity there.

THE COURT: Okay. But you have represented to the Court it's not y'all's legal possession that she should have possession, custody, or access of any of the medical records. I just want to make sure we're all clear on that point.

MR. SMYSER: That's precisely right, Your Honor.

THE COURT: All right. Good.

And then, Counsel for Dr. Cooper, as it relates to roll one, you're in agreement with the stated agreement regarding the contents of roll one?

MS. HOLLAND: Yes, Your Honor.

THE COURT: Okay. I'm coming over here. Counsel for the hospital, is there anything you want to have placed upon the record?

MR. SUTKER: With respect to, I guess, the medical records issue as it relates to my client, what doctors bill for and what hospitals bill for are different, and I don't know that the bill distinguishes -- I don't think what these two doctors bill for would necessarily --

THE COURT: You're saying --

MR. SUTKER: -- in a Children's bill --

**M.R. 331**

THE COURT: -- Judge, when we're trying to get just to Dr. Lau and Dr. Cooper, when I'm looking at billing records standing here today, I don't know if the records delineate. Is that what you're saying?

MR. SUTKER: Right. Dr. Lau and Dr. Cooper aren't Children's employees, and it would be billed through Children's.

Now, I'm not opposed to producing the bills. I mean, I don't think the bills give much information anyway. But I'm just saying just so that everybody's on the same page, if I provide Children's bills, they may not be what everybody is looking for.

THE COURT: Are you able to bring a sample with you on Friday so perhaps we might be able to better understand what it is that you're talking about? It's hard sometimes to obviously --

MR. SUTKER: Yeah, I can bring a sample for whatever the test patient ends up being.

THE COURT: Okay. Why don't you do that. And then we'll all be able to look and say, there is no problems here, let's get that out the door; or there is a concern, let's talk through it. Okay?

All right. Counsel, you go ahead and grab the microphone.

MR. SMYSER: Your Honor, the point of

**M.R. 332**

clarification that we would make is what we were asked to confer about, what we did confer about with the State were the RFPs to Dr. Lau, and the discovery propounded on Dr. Lau, which was the subject of our motion for protective order and their motion to compel.

So to the extent this is now carrying over into the subpoenas to the hospital, you know, I would just want to state once again for the record that the Dallas County courts have already asserted jurisdiction over those, and that's, you know, not what we understood that we reached an agreement with. It's about the request to Dr. Lau about the materials that were in his custody and control.

THE COURT: Okay. Counsel, you had a comment?

MR. LOGAN: Yes, Your Honor. I just want to make sure the Court knows that the billing records need to be physician-patient privileged as well because they're going to contain ICD codes that tell you everything that happened. It's tantamount to getting the medical records when you get the billing records. So I want to make sure that we all are on the same page about what the privileges that need to apply to the billing records, too.

THE COURT: It sounds like we're going to

**M.R. 333**

get a sample so we can make sure that we can all correctly identify.

MR. LOGAN: Yes, Your Honor.

THE COURT: Your -- I duly note what you have said. I don't know that the Court necessarily agrees because of the requests that are pending here, and obviously the goal in what I was trying to get is it doesn't behoove your clients not to try to see where you have commonality with the State. And so the Court believed that its direction was can you try and see where you've got commonality, because ultimately, whether here or in Dallas, there will be discovery; and certainly, whether it's here or in Dallas, narrowing the issues the judge has to decide is always very well appreciated.

And so I think you're correct, I have misunderstood. And I thought that you were saying on behalf of the patients as it relates to roll one, I wouldn't have an objection, and so we would be continuing to maintain the objections as it relates to any other documents and to continue, whether here or in Dallas County, talking through those issues and conferring since obviously one of the objections you've raised here and there is lack of conference.

So what you're saying is, Judge, there is,

**M.R. 334**

in fact, no agreement by my clients as it relates to any agreement to produce patient records on roll one, being very clear that the protective order would be amended, or am I misunder- -- or are you saying, Judge, once I get the appropriate protections, and I'm not saying I'm going to be opposing that, I just have to be very clear that I've got to get that protective order in place.

MR. LOGAN:  Yes, Your Honor.  So let me respond in two parts.

THE COURT:  Okay.

MR. LOGAN:  One is, we have conferred and certainly reached the agreement as far as whatever's in Dr. Lau's custody and control, and that's the discussion that we understood we had with opposing counsel and the agreements we came to.  As to the subpoenas to the hospital and the records that the hospital might have, the construct that Your Honor has in place seems like it might satisfy the concerns that have been expressed here or potentially in Dallas County.  The big underlying issue, the one that makes us very hesitant to just say on the record this sounds great --

THE COURT:  Is the protective order.

MR. LOGAN:  -- we do need to make sure that that mechanism that we have in the paperwork, which is the same mechanism we've requested in Dallas County, is

incorporated before we agree officially.

THE COURT: And so can I make sure I -- you are saying, Judge, we agree contingent upon entry of a protective order that we agree to. Is that what you're saying?

MR. LOGAN: Two points of clarification.

THE COURT: Absolutely.

MR. LOGAN: The answer is conditionally, yes, because we do have 20-something patients that we would need to confer with and make sure that they would agree, for instance, to, you know, withdraw in Dallas County if we got the correct protections here. But with that caveat, it does sound like if we're getting the same framework protection we're requesting there, that that's an agreement we can reach.

THE COURT: All right. Thank you so much for that clarification.

Okay. Anything else that anyone needs to place upon the record? No? Okay.

Then we are going to be off the record yet again.

(Recess taken)

THE COURT: At this time we're going to be back on the record. We took a further recess for the parties to begin discussing what might be tranches two

**M.R. 336**

and three. At present, the State has previewed to the other parties what they would be requesting. The parties are going to go back to their respective corners, talk with their teams about it, and see about alternatives they might be able to propose or how they might be able to structure going forward.

Beyond that, the Court does want to memorialize, I asked all parties who are present today to engage in a meet and confer related to discovery, and certainly the Court here today does not find that the engagement in that process waives or otherwise obviates anyone's arguments or defenses in connection with this cause.

As well, the Court would make a judicial statement here today that to the extent that was argued in a different court, this Court would find that with disfavor given that I have expressly stated no one is arguing -- no one is waiving any arguments by virtue of participating in a substantive meet-and-confer process.

I do believe that in addition to that, we have counsel for Dr. Lau that would like to make a statement. Previously you had indicated you would try to get estimated production date, your total number of docs by Friday. Your team has made you aware that they think that's not going to happen. You wanted the Court

to be aware. The Court has strongly encouraged your team to do its level best to give us some idea on Friday and to give us the date certain as to when they will have that information. And given when the requests were served, I don't think that it would be reasonable to say 14 days from today is when we get that base information, what's our page count, and kind of what -- when do we think we could process everything. I really need that before then.

Okay. Dr. Cooper's counsel, you had one additional item you wanted to place upon the record?

MS. HOLLAND: Yes, Your Honor. Thank you for the clarification that you made earlier. I just wanted to add that Dr. Cooper doesn't waive his motion to transfer venue by any agreements previously reached regarding discovery time frames.

THE COURT: Certainly, and absolutely not.

Okay. Over here, anything else that you would like to place upon the record?

MR. LOGAN: No, Your Honor. Subject to the Court's note that we're not waiving anything, including things in our Dallas County actions, there is nothing else for us to put on the record.

THE COURT: Okay.

MR. SUTKER: Just our agreement that we

**M.R. 338**

will move the hospital's motion for protection with regards to --

THE COURT: You did help me remember. Thank you. We're set to begin at 9:00 a.m. at present on Friday. We will set it on the docket formally so all members of the public are also aware that we are going to bump our hearings from 9:00 a.m. to 8:30, just so we have those additional 30 minutes available to us. At that time we're moving all remaining issues related to the motion to compel. We have each of the motions to dismiss and the motions for protection that are set. So we do have a lot of ground to cover -- your face is saying --

MR. STONE: Your Honor, there's also a gag order, I think, that is --

THE COURT: I'm not aware that that was set.

Ms. Patterson, was that set?

MS. PATTERSON: I believe so, Judge. I'm trying to get there.

Will you please remind me which cause number that was in.

MS. HOLLAND: That's 493-08026-2024. And I believe that's been set for 9:00 a.m.

MS. PATTERSON: I believe it was filed on

**M.R. 339**

2/20.

MS. HOLLAND: Let me just double-check that.

MS. PATTERSON: 2/21 -- no, that's the notice of hearing. It was filed on 2/19.

THE COURT: Did you tell them we would give them a hearing on that one, though, and add it to the docket?

MS. PATTERSON: I did.

THE COURT: Okay. Ms. Patterson's already told you that we'll hear it, then we will. That's a lot for us to get through. I will tell you, if we don't get through everything, that gag order one is the one that would fall off because I think that we are poised on the discovery issues. The motion to dismiss has been set for a really long time. So I just want to be abundantly clear with everyone. We will set it, but if we do not reach all of the motions, that is the one that I would say, I'm sorry, we'll just have to reset and do this one on another day. Okay? All right.

Anything else that we need to discuss?

MR. LOGAN: One other point, which is the Court has asked us and ordered us earlier today to, by the close of business, send --

THE COURT: That's going to be tight for

**M.R. 340**

you because it's 4 o'clock right now.

MR. LOGAN: Yes, Your Honor. This associate doesn't move quite that fast.

THE COURT: Okay. What time do you think is reasonable?

MR. LOGAN: I can get it to them by 6 o'clock.

THE COURT: Okay. Then let's go ahead and -- so when do you think you'll get it to the opposing parties?

MR. LOGAN: That's who I meant sending it to.

THE COURT: Oh, okay. Sorry. I thought you were saying you were going to talk to your associate by 6:00 so --

MR. LOGAN: Oh, no, no, no. I am the associate.

THE COURT: Oh, okay. I think that's imminently reasonably. I kept y'all here for a lot longer than probably anybody thought that they were going to be here today. So 6 o'clock is fine with everybody; right? I see lots of nods in agreement. Okay. You're golden, 6 o'clock.

I will tell you, not to put any pressure on you, but I think that's kind of the linchpin. So I'm

**M.R. 341**

really encouraging you to do a really good job on your language. And, folks, everybody please talk tomorrow about this, and what we're looking for is something that we can make work.

Here's the thing. Everybody knows this. Nobody's going to be perfectly happy, right? Nobody's going to love the language, but it's going to work. And so that's what we really need to focus on is how can we positively move the case forward knowing that there's not an absolute win for anyone. Okay. So with that, we'll be off the record.

(Proceedings concluded)

**M.R. 342**

REPORTER'S CERTIFICATE

THE STATE OF TEXAS   )
COUNTY OF COLLIN     )

I, Ashley Boyd, Official Court Reporter in and for the 493rd District Court of Collin County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Expedited Reporter's Record is $280 and was paid by WINSTON & STRAWN, LLP.

WITNESS MY OFFICIAL HAND this the 9th day of March, 2025.

                         /s/ Ashley Boyd
                         Ashley Boyd, Texas CSR 11998
                         Expiration Date: 09/30/2025
                         Official Court Reporter
                         493rd District Court
                         2100 Bloomdale Road
                         Collin County, Texas
                         McKinney, Texas

**M.R. 343**

Filed: 2/27/2025 10:46 PM
Michael Gould
District Clerk
Collin County, Texas
By Sarah Beasley Deputy
Envelope ID: 97901008

The State of Texas,

        Plaintiff,

vs.

May C. Lau, M.D.,

        Defendant.

IN THE DISTRICT COURT OF

COLLIN COUNTY, TEXAS

493RD JUDICIAL DISTRICT

## THE NONPARTY PATIENTS' VERIFIED EXPEDITED MOTION TO STAY PRODUCTIONS FROM THE HOSPITAL SYSTEMS

To the Honorable Judge of this Court:

The Nonparty Patients respectfully move for an order partially staying any productions from Children's Health System of Texas and UT Southwestern Medical Center (the "Hospital Systems") under the State's subpoenas in this case, and any orders compelling such productions, and would respectfully show as follows:

1. At the Court's direction, the Nonparty Patients have conferred over the last two days with the State and the other parties about discovery in this case, with the Court's assurance that doing so would not waive any of the party or nonparties' rights in any forum. Through those conferences, the Nonparty Patients have been shocked to learn that the scope of the discovery requests the State is making is extraordinary. The State has told the Nonparty Patients' counsel that it is entitled to essentially all their medical records, from every provider at the Hospital Systems—even facially unrelated providers, like orthopedists. It has told the Nonparty Patients' counsel that it is demanding the identity of their current providers. It has told the Nonparty Patients' counsel that it does not believe Nonparty Patients should be able to object to interrogatory responses from doctors that would otherwise disclose private health information. And it has

1

## M.R. 344

admitted to Nonparty Patients' counsel that it does not have accurate mailing addresses for all the patients (**including unrepresented patients in this case whom the State was obligated under Texas Law to serve with copies of subpoenas and requests**) such that the State cannot agree to provide fulsome notice in this case to patients for fear of inadvertent disclosure to the wrong address. With what the Nonparty Patients have learned about the State's positions, they do not believe the State is capable of finding middle ground and is instead going to persist in demanding the evisceration of their privileges over their medical records. But the broad disclosure of medical records desired by the State and the loss of legal rights of third-party patients in Dallas County cannot be the cost of expediency here. The Nonparty Patients therefore must seek a stay of production from the Hospital Systems here so that (as promised under Texas Law) their request for protection in Dallas County can be adjudicated before the Hospital Systems make any productions, beyond the limited venue discovery already ordered.[1]

2. The State served subpoenas on the Hospital Systems requesting the production of documents, including medical records for the Nonparty Patients. Ex. A; Ex. B.

3. Those subpoenas were served in Dallas County. Ex. A; Ex. B.

4. Consistent with Texas Rule of Civil Procedure 176.6(e), which provides that persons affected by subpoenas may seek protection in the county where the subpoenas were served, the Nonparty Patients sought protection from the State's subpoenas to the Hospital Systems in Dallas County District Court on February 2, 2025. Ex. C; Ex. D.

---

[1] Nonparty Patients are appearing here for the limited purpose of seeking protection from party discovery and in no way waive their rights to seek protection from third-party subpoenas in the districts where such third-party subpoenas are served, including Nonparty Patients' petition for protection from third-party subpoenas filed in *Nonparty Patients No. 1, et al, vs The State of Texas*, Cause No. DC-25-01823 in the 95th Judicial District, Dallas County District Court.

2

5.      The Dallas County District Court has set a hearing on the Nonparty Patients' request for protection for March 12, 2025. Ex. E.

6.      To the Nonparty Patients' knowledge, the State has not requested an expedited hearing in Dallas County. If the State desires an expedited hearing in Dallas County, the Nonparty Patients are agreeable, ready, and willing to appear at the earliest date possible. Ex. F. Counsel for the Nonparty Patients asked the State if it would be willing to join a request for an expedited hearing in the Dallas County District Court and the State was unable to commit. Ex. F. The Nonparty Patients conferred with the State on February 7 about its subpoena requests in the Lau litigation and the State committed to trying to propose narrower requests tailored to the Nonparty Patients represented by counsel. Three weeks later, it still has not proposed such narrowed requests or revisited the topic at all. *See* Ex. G at 3 ("With that said, and as I expressed during our meeting, now that we have the identity of your clients, we will review the requests to determine whether they can be narrowed with respect to any of your clients." (Farquharson, R.)). The State's demand here to proceed with the utmost expediency at the expense of the Nonparty Patients' privacy and legal rights is not consistent with its conduct in Dallas County, where it has resisted progress at every opportunity.

7.      The State has filed no motion to compel the Hospital Systems to produce materials in this Court. The only motion the State has filed to compel in this case, as far as Nonparty patients know, is a motion to compel party discovery from Dr. Lau (e.g., under Requests for Production, Interrogatories, and Requests for Admissions). The State filed that motion on February 20, 2025, long after the Nonparty Patients had sought protection in Dallas County. The Nonparty Patients have filed a motion for protection from this Court against Dr. Lau producing privileged material in response to that party litigation in this case. As far as the Nonparty Patients are aware, there is

3

**M.R. 346**

no pending motion before this Court seeking to compel production from the Hospital Systems under the State's subpoenas that have been challenged in the Dallas County District Court.

8.      Hearings were noticed in this case for February 26, 2025, regarding the State's motion to compel party discovery and the Nonparty Patients' motion for protection from that party discovery, among other disputes between the parties, including about proper venue. Ex. G; Ex. H. No representatives from the Hospital Systems initially appeared at the hearing. However, counsel Children's Health System of Texas was contacted and subsequently appeared. UT Southwestern Medical Center did not appear.

9.      Despite the discovery portion of the hearing having been set to discuss party discovery in the case, the Court asked the parties, including counsel for the Nonparty Patients, to confer on a framework for the potential production of material from the Hospital Systems. Counsel for the Nonparty Patients notified the Court about the pending requests for protection in Dallas County District Court and asserted that Dallas County District Court had jurisdiction over the subpoenas to the Hospital Systems to adjudicate those requests for protection. This Court explained to the parties and the Nonparty Patients that they would need to confer on these issues in either court and instructed them to begin doing so at the hearing. The Court further clarified on the record that it did not intend for any party to waive its arguments in any forum by participating in the conferences on discovery at the hearing.

10.     During the hearing, the Court *sua sponte* issued oral orders for the production of certain limited venue discovery from Children's Health System of Texas, in the form of copies of the visit records and prescriptions specifically identified in the State's petition for patients the State also identified in its petition as residing in Collin County, with the further provision that those materials would be redacted to exclude any personally identifiable information for the patient or

4

extraneous medical treatment information and would generally only expose information sufficient to show where the treatment occurred, whether it was a telehealth visit, and any instructions to the patient about how the prescription should be administered.

11.     Beyond this limited venue discovery, the Court further discussed with the parties the potential future production of materials from the Hospital Systems in tranches, including medical records of the Nonparty Patients.

12.     The Nonparty Patients genuinely appreciate the Court's guidance in facilitating a conference with the State on a framework for the Hospital Systems producing medical records. However, the Nonparty Patients have a clear legal right to seek protection from the subpoenas in Dallas County District Court, which is where the records are maintained and where the State served its subpoenas. Tex. R. Civ. P. 176.6(e). Once the Nonparty Patients sought protection from the Dallas County District Court from the subpoenas, the Hospital Systems ceased having an obligation to respond to the subpoenas until the Dallas County District Court issues an order. *Id.* ("A person need not comply with the part of a subpoena from which protection is sought under this paragraph unless ordered to do so by the court."); *In re Creuzot*, No. 05-24-00450-CV, 2024 WL 4784362, at *4 (Tex. App.—Dallas Nov. 14, 2024, no pet.) ("Pursuant to rule 176.6, a motion for protective order stays a request for testimony and production of records until such time as the trial court rules on the motion."). The Hospital Systems cannot produce the documents voluntarily because the Nonparty Patients own the privilege (Tex. R. Evid. 509; Tex. R. Evid. 510), and the Nonparty Patients have instructed them not to produce the privileged materials. Ex. I; Ex. J.

13.     During the hearing, counsel for the State enthusiastically exclaimed to the Court that it "will win" in Dallas County. Counsel for the Nonparty Patients disagree. But either way, the Nonparty Patients are due their day in court and the protections afforded them under the Texas

5

Rules of Civil Procedure, including the clear and indisputable right to challenge the subpoenas in the district where they were served. And the Dallas County District Court is due the opportunity to adjudicate the disputes fairly before it. Absent an order form this Court staying production by the Hospital Systems, the Nonparty Patients' clear legal right and the Dallas County District Court's plain jurisdiction will be effectively denied. The Nonparty Patients accordingly, and respectfully, request that the Court stay any further production by the Hospital Systems, beyond the limited venue discovery already ordered, until the Dallas County District Court rules on the Nonparty Patients' pending request for protection from the State's subpoenas.

**PRAYER FOR RELIEF**

14. For the foregoing reasons, the Nonparty Patients respectfully request that the Court set this Motion for hearing and, after the hearing, issue an order granting the relief requested herein.

**DATED:** February 27, 2025

Respectfully submitted,

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869
jnewsome@winston.com
Thanh D. Nguyen
Texas Bar No. 24126931
tdnguyen@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

6

**M.R. 349**

## CERTIFICATE OF CONFERENCE

Counsel for the Nonparty Patients has personally conferred with counsel for the parties by video conference on February 27, 2025. Counsel for the State indicated that it opposes the relief sought herein and objected to the Notice given. Counsel for Dr. Lau and Dr. Cooper have indicated that they do not oppose the relief sought herein.

Certified to the Day of February 27, 2025, by:

*/s/ William M. Logan*
William M. Logan
Texas Bar No. 24106214

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2025, an electronic copy of this motion was served to counsel of record.

*/s/ William M. Logan*

7

**M.R. 350**

# Exhibit A

CAUSE NO. 493-07676-2024

| | | |
|---|---|---|
| THE STATE OF TEXAS. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D. | § | |
| Defendant. | § | 493RD JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Mauricio Segovia** who, being by me duly sworn, deposed and said:

"The following came to hand on **Jan 16, 2025, 11:25 am,**

**STATE'S NOTICE OF SUBPOENA DUCES TECUM, SUBPOENA DUCES TECUM PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205, PROTECTIVE ORDER,**

and was executed at **1999 BRYAN ST SUITE 900, DALLAS, TX 75201** within the county of DALLAS at 12:35 PM on **Thu, Jan 16 2025,** by delivering a true copy to the within named

**CHILDREN'S HEALTH SYSTEM OF TEXAS C/O CT CORPORATION SYSTEM**
**accepted by Intake Specialist William Miller**
**Witness Fee $1.00**

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Mauricio Segovia
Certification Number: PSC-1689
Certification Expiration: 8/31/2026

BEFORE ME, a Notary Public, on this day personally appeared **Mauricio Segovia,** known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON ___1/16/2025___

MARIA M. SEGOVIA
My Notary ID # 129480220
Expires July 5, 2025

Notary Public, State of Texas

**M.R. 352**

Cause No. 493-07676-2024

| | | |
|---|---|---|
| THE STATE OF TEXAS., | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## STATE'S NOTICE OF SUBPOENA DUCES TECUM

To:   Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201

Please take notice that pursuant to Tex. R. Civ. P. 205 gives you 10 days' notice of its intent to serve the attached subpoena duces tecum. The State of Texas has complied with all the requirements in Tex. R. Civ. P. 205.

Please take notice that the Court has entered the attached Protective Order in this matter expressly finding that attestations are not required. *See* Prot. Ord. at 10.

January 16, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division

# M.R. 353

State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2025, a copy of the foregoing document was served to all counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ Johnathan Stone
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

# THE STATE OF TEXAS

## SUBPOENA DUCES TECUM
### PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

CAUSE NO. 493-07676-2024      IN THE 493rd JUDICIAL DISTRICT COURT OF COLLIN COUNTY, TEXAS

*State of Texas vs. Defendant May C. Lau, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN RULE 176 T.R.C.P.**

**YOU ARE HEREBY COMMANDED TO SUMMON** Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201, to provide documents to the

**Office of the Attorney General**
300 West 15th Street
Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN SEVEN DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street, 9th Floor, Austin, TX 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on January 16, 2025,** at the request the request of the State of Texas.

# M.R. 355

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
Deputy Chief, Consumer Protection Division
State Bar No. 15092619

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**M.R. 356**

# SUBPOENA DUCES TECUM—DOCUMENTS REQUESTED

1. Produce documents relating to the care and treatment of ███████████ (DOB: ███████ ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

2. Produce documents relating to the care and treatment of ████████ (DOB: ████████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

3. Produce documents relating to the care and treatment of ███████ (DOB: ████████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

4. Produce documents relating to the care and treatment of ██████████ (DOB: ████████, █████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

5. Produce documents relating to the care and treatment of ███████████ (DOB: █████████ ██████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

6. Produce documents relating to the care and treatment of █████████ (DOB: ████████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

7. Produce documents relating to the care and treatment of ████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

8. Produce documents relating to the care and treatment of ████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

9. Produce documents relating to the care and treatment of ████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

10. Produce documents relating to the care and treatment of ████████ (DOB: ████████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

11. Produce documents relating to the care and treatment of ████████ (DOB: ████████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

M.R. 357

12. Produce documents relating to the care and treatment of ███████████ (DOB: █████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

13. Produce documents relating to the care and treatment of ███████████ (DOB: █████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

14. Produce documents relating to the care and treatment of ███████████ (DOB: █████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

15. Produce documents relating to the care and treatment of ████████ (DOB: ██ █████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

16. Produce documents relating to the care and treatment of █████████ (DOB: ██████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

17. Produce documents relating to the care and treatment of ████████ (DOB: ██████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

18. Produce documents relating to the care and treatment of ████████ (DOB: ██████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

19. Produce documents relating to the care and treatment of █████████ (DOB: ███████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

20. Produce documents relating to the care and treatment of █████████ (DOB: ███████████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

21. Produce documents relating to the care and treatment of ███████████ (DOB: ██████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

# WITNESS SUBPOENA RETURN

Came to hand the _____ day of _____, 2025, at ____ o'clock, ___.M. and executed

the _____ day of _____, 2025, at ____ o'clock, ___.M. by delivering to the within named

_____ in person at _____ in _____

County, TX, a true copy of this Subpoena, and tendering said witness the sum of $_____.


By Deputy: _____, _____ County, TX.

Sheriff/Constable:_____, _____ County, TX.


**OR**


By:

    Person who is not a party to the suit and is not less than 18 years of age.


**ACCEPTANCE OF SERVICE OF SUBPOENA BY WITNESS PER RULE 176 T.R.C.P.**

I, the undersigned witness named in the Subpoena acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*


_____          _____
SIGNATURE                                    DATE


**M.R. 359**

# Exhibit B

CAUSE NO. 493-07676-2024

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D. | § | |
| Defendant. | § | 493RD JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Mauricio Segovia** who, being by me duly sworn, deposed and said:

"The following came to hand on Jan 16, 2025, 11:25 am,

**STATE'S NOTICE OF SUBPOENA DUCES TECUM, SUBPOENA DUCES TECUM PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205, PROTECTIVE ORDER,**

and was executed at 1999 BRYAN ST SUITE 900, DALLAS, TX 75201 within the county of DALLAS at 12:35 PM on **Thu, Jan 16 2025**, by delivering a true copy to the within named

**UT SOUTHWESTERN MEDICAL CENTER C/O CT CORPORATION SYSTEM**
accepted by Intake Specialist William Miller
Witness Fee $1.00

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Mauricio Segovia
Certification Number: PSC-1689
Certification Expiration: 8/31/2026

BEFORE ME, a Notary Public, on this day personally appeared **Mauricio Segovia**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON ___1/16/2025___

MARIA M. SEGOVIA
My Notary ID # 129460220
Expires July 5, 2025

Notary Public, State of Texas

**M.R. 361**

| THE STATE OF TEXAS., | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## STATE'S NOTICE OF SUBPOENA DUCES TECUM

To: UT Southwestern Medical Center c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201

Please take notice that pursuant to Tex. R. Civ. P. 205 gives you 10 days' notice of its intent to serve the attached subpoena duces tecum. The State of Texas has complied with all the requirements in Tex. R. Civ. P. 205.

Please take notice that the Court has entered the attached Protective Order in this matter expressly finding that attestations are not required. *See* Prot. Ord. at 10.

January 16, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division

# M.R. 362

State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2025, a copy of the foregoing document was served to all counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

# M.R. 363

# THE STATE OF TEXAS

## SUBPOENA DUCES TECUM
### PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

CAUSE NO. 493-07676-2024     IN THE 493rd JUDICIAL DISTRICT COURT OF
COLLIN COUNTY, TEXAS

*State of Texas vs. Defendant May C. Lau, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN RULE 176 T.R.C.P.**

**YOU ARE HEREBY COMMANDED TO SUMMON** Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201, to provide documents to the

**Office of the Attorney General**
300 West 15th Street
Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN SEVEN DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street, 9th Floor, Austin, TX 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on January 16, 2025,** at the request the request of the State of Texas.

# M.R. 364

/s/ Johnathan Stone
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
Deputy Chief, Consumer Protection Division
State Bar No. 15092619

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

## SUBPOENA DUCES TECUM—DOCUMENTS REQUESTED

1. Produce documents relating to the care and treatment of ███████████ (DOB: █████, ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

2. Produce documents relating to the care and treatment of ██████████ (DOB: ████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

3. Produce documents relating to the care and treatment of ██████████ (DOB: ████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

4. Produce documents relating to the care and treatment of ████████████ (DOB: ██████, ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

5. Produce documents relating to the care and treatment of ████████████ (DOB: ████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

6. Produce documents relating to the care and treatment of █████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

7. Produce documents relating to the care and treatment of █████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

8. Produce documents relating to the care and treatment of █████████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

9. Produce documents relating to the care and treatment of █████████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

10. Produce documents relating to the care and treatment of █████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

11. Produce documents relating to the care and treatment of █████████ (DOB: ███████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

12. Produce documents relating to the care and treatment of ███████████ (DOB: ███████ █), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

13. Produce documents relating to the care and treatment of ███████████ (DOB: ████ █), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

14. Produce documents relating to the care and treatment of ███████████ (DOB: ████ ███ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

15. Produce documents relating to the care and treatment of ████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

16. Produce documents relating to the care and treatment of ██████████ (DOB: ███████ ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

17. Produce documents relating to the care and treatment of ████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

18. Produce documents relating to the care and treatment of █████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

19. Produce documents relating to the care and treatment of ████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

20. Produce documents relating to the care and treatment of █████████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

21. Produce documents relating to the care and treatment of ███████████ (DOB: ███████, ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

# WITNESS SUBPOENA RETURN

Came to hand the _____ day of _____, 2025, at ____ o'clock, ___ .M. and executed

the _____ day of _____, 2025, at ____ o'clock, ___ .M. by delivering to the within named

_____ in person at _____ in _____

County, TX, a true copy of this Subpoena, and tendering said witness the sum of $_____.


By Deputy: _____, _____ County, TX.

Sheriff/Constable: _____, _____ County, TX.


**OR**


By:

    Person who is not a party to the suit and is not less than 18 years of age.


**ACCEPTANCE OF SERVICE OF SUBPOENA BY WITNESS PER RULE 176 T.R.C.P.**

I, the undersigned witness named in the Subpoena acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*


_____
SIGNATURE

_____
DATE


**M.R. 368**

# Exhibit C

M.R. 369

FILED PER ATTY

FILED
2/3/2025 12:00 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Belinda Hernandez DEPUTY

Cause No. ___DC-25-01823___

| | |
|---|---|
| Nonparty Patient No. 1, <br> Nonparty Patient No. 2, <br> Nonparty Patient No. 3, <br> Nonparty Patient No. 4, <br> Nonparty Patient No. 5, <br> Nonparty Patient No. 6, <br> Nonparty Patient No. 7, and <br> Nonparty Patient No. 8, <br><br>        Plaintiffs, <br><br>    vs. <br><br> The State of Texas, <br><br>        Defendant. | IN THE DISTRICT COURT OF <br><br> DALLAS COUNTY, TEXAS <br><br> __95th___ JUDICIAL DISTRICT |

**THE NONPARTY PATIENTS' PETITION FOR MOTION
FOR PROTECTION FROM DISCOVERY SUBPOENAS**

To the Honorable Judge of this Court:

Pursuant to Texas Rule of Civil Procedure 176.6(e), Plaintiffs ("Nonparty Patients")[1] move for protection from discovery subpoenas (Exhibits A and B) ("Subpoenas") that the State of Texas served on Children's Health System of Texas and UT Southwestern Medical Center ("Hospital Systems"). Ex. C ¶¶ 3–4. Nonparty Patients would respectfully show the Court as follows:

## I.      INTRODUCTION

1. The State has brought a lawsuit in the 493rd Judicial District in Collin County, Texas (the "Lau Litigation"), alleging in its Petition (attached as Exhibit D) that Dr. May C. Lau violated provisions in Senate Bill 14 ("SB14") and engaged in false, misleading, or deceptive acts

---

[1] Pursuant to the Collin County District Court's Protective Order § III(F) (attached as Exhibit E), the Nonparty Patients have filed this Motion using a generic reference to avoid disclosing their identities as patients related to that litigation. Ex. C ¶ 5. Consistent with the Protective Order, the Nonparty Patients may be identified *in camera* or as otherwise ordered by the Court. *Id.*

1

**M.R. 370**

by providing gender affirming care to teenage patients. Ex. D ¶¶ 23, 43. On Monday, January 27, the State served sweeping Subpoenas in Dallas County on the Hospital Systems, demanding private medical records of 21 individuals, including the Nonparty Patients. Ex. A at 7; Ex. B at 7. The State's requests broadly seek all "documents relating to the care and treatment [of the nonparty]," irrespective of any relevance to the underlying litigation. Ex. A at 7; Ex. B at 7. The non-limiting examples in the State's requests underscore that the Subpoenas are invasive and target sensitive medical records, including psychotherapy notes. Ex. A at 7; Ex. B at 7.

2. The Texas Rules of Evidence codify a longstanding physician-patient privilege that precludes such discovery. Tex. R. Evid. 509; Tex. R. Evid. 510. This privilege acknowledges that meaningful healthcare requires allowing patients to talk freely with their doctors on sensitive topics without fear of disclosure, or repercussions from the State. *See*, *e.g.*, *R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994) ("The basis for the privileges is twofold: (1) to encourage the full communication necessary for effective treatment, … and (2) to prevent unnecessary disclosure of highly personal information."). The State's requests in the Subpoenas—which are untethered to any issue of consequence in the Lau litigation—cannot plausibly satisfy the narrow exceptions to that privilege, and the requests are impermissibly broad, unduly burdensome, and unnecessarily target irrelevant information. The Nonparty Patients have thus filed this Petition in Dallas County, where the Subpoenas were served, seeking protection from the discovery sought.

## II.    JURISDICTION

3. The Court has jurisdiction over this matter under Texas Rules of Civil Procedure 176.6 and 192.6(a). A "[p]erson affected by the subpoena, may move for a protective order under Rule 192.6(b) … in a district court in the county where the subpoena was served." Tex. R. Civ. P. 176.6(e). The Nonparty Patients are not parties to the Lau Litigation but are each a nonparty patient about whom the State has sought medical records and other information from the Hospital Systems

2

in the Subpoenas. Ex. C ¶ 2. The Nonparty Patients thus have standing to seek "an order protecting [Movant] from the discovery sought" because each is "a person affected by the subpoena." Tex. Tex. R. Civ. P. 176.6(e); R. Civ. P. 192.6(a). The Hospital Systems were both served the Subpoenas in Dallas County, where this Court is situated, via their common registered agent, CT Corporation System, at 1999 Bryan St, Suite 900, Dallas, TX 75201. Ex. A at 2; Ex. B at 2.

### III.    BACKGROUND

4.      In the Lau Litigation, the State's allegations largely center on Dr. Lau purportedly prescribing medicines to teenage patients, including testosterone. Ex. D ¶ 56. The State alleges that such care became unlawful under SB14 on September 1, 2023. *Id*. ¶¶ 23, 222. The State also alleges that Dr. Lau engaged in false, misleading, or deceptive practices after or around the enactment of SB14, purportedly to mislead pharmacies, insurance providers, or patients into believing that the patients' testosterone treatments were for purposes other than gender-affirming care to circumvent the restrictions in SB14. *Id*. ¶¶ 226-27.

5.      On January 27, 2024, the State served the Subpoenas on the Hospital Systems. Ex. A; Ex. B. The Subpoenas are substantially identical. Ex. A; Ex. B. Each includes the same requests for production for 21 nonparty patients:

> Produce documents relating to the care and treatment of [a patient] …, including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

Ex. A at 7; Ex. B at 7. There are no accompanying instructions or definitions that would limit the requested production in a meaningful way, such as only to materials that would be of legal consequence in the Lau Litigation. The only limitation in time is ambiguous. It is unclear whether the requests are limited to "documents … from January 1, 2021, through present," or whether that timeframe applies only to "correspondence from January 1, 2021, through present." In either event, there is no apparent, meaningful relationship between the nonparty patients' medical records

3

(including highly sensitive materials, like psychotherapy notes) from 2021 or earlier and the State's allegations about Dr. Lau's actions in or around the enactment of SB14 in September 2023.

6. Despite the obvious gravity of the privacy rights threatened by the Subpoenas for 21 nonparty patients, the State has inexplicably demanded compliance from the Hospital Systems within seven days from when the Subpoenas were served on January 27, 2024 (Ex. A at 5; Ex. B at 5), effectively denying many of the 21 nonparty patients a reasonable opportunity to obtain counsel and seek advice on their legal rights before compliance is due.

## IV. ARGUMENT AND AUTHORITIES

7. The Court should enter an order preventing the Hospital Systems from producing the materials sought in the Subpoenas because the State's requests are overly broad, seek irrelevant materials, and demand materials that are protected from disclosure under the Physician-Patient Privilege (Tex. R. Evid. 509) and the Mental Health Information Privilege (Tex. R. Evid. 510). Courts may enter orders protecting individuals from discovery by subpoena to prevent an invasion of personal rights, including privacy and privileges. Tex. R. Civ. P. 192.6(b); Tex. R. Civ. P. 176.6(e), 176.7. Courts also have the authority to limit the scope of discovery based on the needs and circumstances of the case. Tex. R. Civ. P. 192 cmt. 7.

8. Under the Physician-Patient Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (1) a confidential communication between a physician and the patient that relates to or was made in connection with any professional services the physician rendered the patient; and (2) a record of the patient's identity, diagnosis, evaluation, or treatment created or maintained by a physician." Tex. R. Evid. 509(c). Similarly, under the Mental Health Information Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (A) a confidential communication between the patient and a

4

professional; and (B) a record of the patient's identity, diagnosis, evaluation, or treatment that is created or maintained by a professional." Tex. R. Evid. 510(b)(1).

9.      It is self-evident from the State's Subpoenas that the documents sought are subject to the Physician-Patient Privilege and the Mental Health Information Privilege. Each request asks for "document relating to the care and treatment" of the nonparties, such as "medical … records," "psychotherapy notes," and "correspondence" with the nonparty patients, including Movant. Ex. A at 7; Ex. B at 7; Ex. C ¶ 2. Documents relating to the care and treatment of the nonparties, medical records, psychotherapy notes, and correspondence between the Hospital Systems, the nonparty patients, and healthcare providers will necessarily include confidential communications between the nonparty patients and their physicians and/or professionals, along with records of the nonparty patients' identities, diagnoses, evaluations, and treatments that were created or maintained by physicians and/or mental health professionals. *See generally In re Irvin*, No. 05-98-01771-CV, 1998 WL 908955, at *4 (Tex. App.—Dallas Dec. 31, 1998, no pet.) (finding abuse of discretion and granting mandamus when district court ordered production of mental health records).

10.      There is no exception to the Physician-Patient Privilege or the Mental Health Information Privilege that would plausibly apply to the broad requests in the Subpoenas. If the State is suggesting that it is entitled to the nonparty patients' medical records because some information therein may be relevant to a party's claim or defense in the Lau Litigation it is wrong. The State's expansive requests cannot fit under such an exception. The exception to the Physician-Patient Privilege and Mental Health Information Privilege that applies when a party relies on a patient's medical condition (often referred to as the "patient-litigant exception") is narrow, particularly for nonparty patients. *See R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994). As the Texas Supreme Court has explained, it is not enough that there are allegations in the lawsuit for

5

which a condition of the nonparty patient may be relevant—rather, "[t]he scope of the exception should be tied in a meaningful way to the legal consequences of the claim or defense." *Id*. at 842.

11.    In other words, for the patient-litigant exception to apply, discovery must be directed to information about a patient's condition that is "a 'part' of a claim or defense," and "must itself be a fact to which the substantive law assigns significance." *Id*. Generally, this means the discovery must be directed to a condition about which "the jury must make a factual determination." *Id*. at 843. Even then, the exception applies "only to the extent necessary to satisfy the discovery needs of the requesting party" when balanced against the privacy interests of the patients and requires *in camera* review of each document so that "any information not meeting this standard remains privileged and must be redacted or otherwise protected." *Id.*

12.    The State's Subpoenas cannot remotely meet this standard. The Subpoenas' requests are not directed to *any* specific condition whatsoever. They are broad requests to entire Hospital Systems for all medical records and psychiatry notes about *any* condition or treatment, without any bounds or guidance based on the underlying lawsuit. Nor are the requests reasonably limited in time. At best, they seek all the Nonparty Patients' medical records, including psychiatry notes, for the past four years. Potentially, they seek all the Nonparty Patients' medical records, including psychiatry notes, since birth. Either way, they are untethered in time and scope from the Lau Litigation, which involves acts around or after SB14 was enacted in September 2023. These requests are thus too broad in scope and time to satisfy the patient-litigant exception. *See R.K.*, 887 S.W.2d at 843 (requiring "the request for records and the records disclosed are closely related in time and scope to the claims made … to avoid any unnecessary incursion into private affairs").

13.    The Court should therefore enter an order protecting the Nonparty Patients from disclosure under the Subpoenas, including because the requests are not restrictively tailored to

6

**M.R. 375**

maintain the privilege for records and communications that would not be subject to the patient-litigant exception, if it applied at all. *See id.*; *c.f. Groves v. Gabriel*, 874 S.W.2d 660, 661 (Tex. 1994) ("However, a trial court's order compelling release of medical records should be restrictively drawn so as to maintain the privilege with respect to records or communications not relevant to the underlying suit.").

14.     Alternatively, if the Court does not enter an order protecting the Nonparty Patients from the Subpoenas in whole, Movant respectfully requests an opportunity to review any proposed productions from the Hospital Systems to evaluate the documents produced for privilege before they are provided to the State. For claims of privilege, "the documents themselves may constitute the only evidence substantiating the claim of privilege." *Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986). The Nonparty Patients thus require a reasonable opportunity to review any documents that the Hospital Systems would produce to the State so that they may "segregate and produce the documents to the court" for *in camera* review to ensure that only relevant materials subject to the applicable privilege exception are produced, with appropriate redactions. *See id.* (providing for *in camera* review); *R.K.*, 887 S.W.2d at 843 ("Even when a document includes some information meeting this standard, any information not meeting this standard remains privileged and must be redacted or otherwise protected.") ("[W]hen requested, the trial court must perform an *in camera* inspection of the documents produced to assure that the proper balancing of interests, which we have described, occurs before production is ordered.").

15.     For example, the State has no apparent interest in receiving documents that contain personally identifiable information about the Nonparty Patients, and that information should be redacted in any production. Nor does the State have any apparent interest in the Nonparty Patients' medical records from before SB14 was enacted in September 2023. After all, the State's

allegations in the Lau Litigation turn on the actions *after* SB14 became law, and neither the identities of Dr. Lau's patients, nor their medical records and communications before September 2023, are facts of consequence that must be adjudicated.

16.     Apart from the Nonparty Patients' privilege assertions, the requests in the Subpoenas are overbroad, directed to irrelevant information, and not proportional to the needs of the case. For instance, there are no limitations to exclude from production materials unrelated to the allegations against Dr. Lau. The State's expansive requests instead presumably encompass all care the Nonparty Patients have received from any provider affiliated with the Hospital Systems, potentially without any meaningful limitation in time, no matter how attenuated or divorced that care is from the Lau Litigation. The State's requests would potentially encompass, for instance, all unrelated physical and mental healthcare (including communications with providers other than Dr. Lau, emergency room visits, vaccinations, and pharmacy records) at the Hospital Systems, without any apparent limitation whatsoever to restrict the requests to the subject matter of the Lau Litigation or a relevant timeframe.

17.     Given the extraordinary breadth of the requests and the attendant high likelihood that irrelevant materials would be produced, if the Court does not enter an order protecting the Nonparty Patients from production under the Subpoenas in whole, the Nonparty Patients request the opportunity to review any proposed production for relevance and, if appropriate, request that the Court conduct an *in camera* inspection of materials proposed for production that the Nonparty Patients identify as irrelevant to the Lau Litigation. *See, e.g.*, *Weisel Enterprises*, 718 S.W.2d at 58 (holding *in camera* review appropriate in situations when the documents' contents are the only evidence of discoverability).

## V.  CONCLUSION

18.     The State has overstepped the bounds of permissible nonparty discovery. Its Subpoenas to the Hospital Systems plainly seek materials about the Nonparty Patients that are protected from disclosure under the Physician-Patient Privilege and the Mental Health Information Privilege. The requests are also overbroad, seek irrelevant information, and are not proportional to the needs of the case, as they are not meaningfully restricted in time or subject matter to the allegations underpinning the Lau Litigation. The Court should therefore enter a protective order preventing the Hospital Systems from producing discovery in response to the Subpoenas or, alternatively, provide the Nonparty Patients an opportunity to review any proposed production and segregate documents for *in camera* review for relevance and privilege before they are produced.

## VI.  PRAYER FOR RELIEF

19.     For the foregoing reasons, the Nonparty Patients respectfully request that the Court set this Motion for hearing and, after the hearing, issue an order granting the relief requested herein.

DATED: February 2, 2025

Respectfully submitted,

/s/ *Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869
jnewsome@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

9

**M.R. 378**

## CERTIFICATE OF CONFERENCE

Counsel for movants has personally attempted to contact counsel for respondent as follows: by email on February 2, 2025, at 6:03 PM. Counsel has not yet received a response. An emergency exists of such a nature that further delay would cause irreparable harm to movants, as follows: Counsel has only just been retained, and given the State's expedited request for compliance with the subpoenas by tomorrow (Monday, February 3), there is no opportunity to wait for a response from the State before seeking relief as production of movants' privileged records may be imminent. Counsel for movants will continue attempting to confer with respondent in good faith.

Certified to the Day of February 2, 2025, by:

/s/ William M. Logan
William M. Logan
Texas Bar No. 24106214

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2025, an electronic copy of this Petition was served to counsel of record for the State of Texas that are listed on the relevant subpoenas, as follows:

Jonathan Stone — Jonathan.Stone@oag.texas.gov
Matthew Kennedy — Matt.Kennedy@oag.texas.gov
Rob Farquaharson — Rob.Farquharson@oag.texas.gov
David Shatto — David.Shatto@oag.texas.gov

I further certify that a copy of this Petition and citation are being served via registered or certified mail, return receipt requested, to the above-listed counsel at the following address listed for compliance on the relevant subpoenas:

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711

/s/ Jervonne D. Newsome
Jervonne D. Newsome
Texas Bar No. 24094869

# Exhibit D

FILED
2/20/2025 4:41 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Martin Reyes DEPUTY

Cause No. DC-25-01823

| | |
|---|---|
| Nonparty Patient No. 1,<br>Nonparty Patient No. 2,<br>Nonparty Patient No. 3,<br>Nonparty Patient No. 4,<br>Nonparty Patient No. 5,<br>Nonparty Patient No. 6,<br>Nonparty Patient No. 7,<br>Nonparty Patient No. 8,<br>Nonparty Patient No. 9,<br>Nonparty Patient No. 10, and<br>Nonparty Patient No. 11,<br><br>Plaintiffs,<br><br>vs.<br><br>The State of Texas,<br><br>Defendant. | IN THE DISTRICT COURT OF<br><br>DALLAS COUNTY, TEXAS<br><br>95TH JUDICIAL DISTRICT |

### THE NONPARTY PATIENTS' AMENDED PETITION FOR PROTECTION FROM DISCOVERY SUBPOENAS

To the Honorable Judge of this Court:

Pursuant to Texas Rule of Civil Procedure 176.6(e), Plaintiffs ("Nonparty Patients")[1] move for protection from discovery subpoenas (Exhibits A and B) ("Subpoenas") that the State of Texas served on Children's Health System of Texas and UT Southwestern Medical Center ("Hospital Systems"). Ex. C ¶¶ 3–4. Nonparty Patients would respectfully show the Court as follows:

### I.     INTRODUCTION

1.     The State has brought a lawsuit in the 493rd Judicial District in Collin County, Texas (the "Lau Litigation"), alleging in its Petition (attached as Exhibit D) that Dr. May C. Lau

---

[1] Pursuant to the Collin County District Court's Protective Order § III(F) (attached as Exhibit E), the Nonparty Patients have filed this Motion using a generic reference to avoid disclosing their identities as patients related to that litigation. Ex. C ¶ 5. Consistent with the Protective Order, the Nonparty Patients may be identified *in camera* or as otherwise ordered by the Court. *Id.*

1

# M.R. 381

violated provisions in Senate Bill 14 ("SB14") and engaged in false, misleading, or deceptive acts by providing gender affirming care to teenage patients. Ex. D ¶¶ 23, 43. On Monday, January 27, the State served sweeping Subpoenas in Dallas County on the Hospital Systems, demanding private medical records of 21 individuals, including the Nonparty Patients. Ex. A at 7; Ex. B at 7. The State's requests broadly seek all "documents relating to the care and treatment [of the nonparty]," irrespective of any relevance to the underlying litigation. Ex. A at 7; Ex. B at 7. The non-limiting examples in the State's requests underscore that the Subpoenas are invasive and target sensitive medical records, including psychotherapy notes. Ex. A at 7; Ex. B at 7.

2. The Texas Rules of Evidence codify a longstanding physician-patient privilege that precludes such discovery. Tex. R. Evid. 509; Tex. R. Evid. 510. This privilege acknowledges that meaningful healthcare requires allowing patients to talk freely with their doctors on sensitive topics without fear of disclosure, or repercussions from the State. *See*, *e.g.*, *R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994) ("The basis for the privileges is twofold: (1) to encourage the full communication necessary for effective treatment, … and (2) to prevent unnecessary disclosure of highly personal information."). The State's requests in the Subpoenas—which are untethered to any issue of consequence in the Lau litigation—cannot plausibly satisfy the narrow exceptions to that privilege, and the requests are impermissibly broad, unduly burdensome, and unnecessarily target irrelevant information. The Nonparty Patients have thus filed this Petition in Dallas County, where the Subpoenas were served, seeking protection from the discovery sought.

## II. JURISDICTION

3. The Court has jurisdiction over this matter under Texas Rules of Civil Procedure 176.6 and 192.6(a). A "[p]erson affected by the subpoena, may move for a protective order under Rule 192.6(b) … in a district court in the county where the subpoena was served." Tex. R. Civ. P. 176.6(e). The Nonparty Patients are not parties to the Lau Litigation but are each a nonparty patient

2

about whom the State has sought medical records and other information from the Hospital Systems in the Subpoenas. Ex. C ¶ 2. The Nonparty Patients thus have standing to seek "an order protecting [Movant] from the discovery sought" because each is "a person affected by the subpoena." Tex. Tex. R. Civ. P. 176.6(e); R. Civ. P. 192.6(a). The Hospital Systems were both served the Subpoenas in Dallas County, where this Court is situated, via their common registered agent, CT Corporation System, at 1999 Bryan St, Suite 900, Dallas, TX 75201. Ex. A at 2; Ex. B at 2.

## III.    BACKGROUND

4.    In the Lau Litigation, the State's allegations largely center on Dr. Lau purportedly prescribing medicines to teenage patients, including testosterone. Ex. D ¶ 56. The State alleges that such care became unlawful under SB14 on September 1, 2023. *Id.* ¶¶ 23, 222. The State also alleges that Dr. Lau engaged in false, misleading, or deceptive practices after or around the enactment of SB14, purportedly to mislead pharmacies, insurance providers, or patients into believing that the patients' testosterone treatments were for purposes other than gender-affirming care to circumvent the restrictions in SB14. *Id.* ¶¶ 226-27.

5.    On January 27, 2024, the State served the Subpoenas on the Hospital Systems. Ex. A; Ex. B. The Subpoenas are substantially identical. Ex. A; Ex. B. Each includes the same requests for production for 21 nonparty patients:

> Produce documents relating to the care and treatment of [a patient] …, including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

Ex. A at 7; Ex. B at 7. There are no accompanying instructions or definitions that would limit the requested production in a meaningful way, such as only to materials that would be of legal consequence in the Lau Litigation. The only limitation in time is ambiguous. It is unclear whether the requests are limited to "documents … from January 1, 2021, through present," or whether that timeframe applies only to "correspondence from January 1, 2021, through present." In either event,

3

there is no apparent, meaningful relationship between the nonparty patients' medical records (including highly sensitive materials, like psychotherapy notes) from 2021 or earlier and the State's allegations about Dr. Lau's actions in or around the enactment of SB14 in September 2023.

6. Despite the obvious gravity of the privacy rights threatened by the Subpoenas for 21 nonparty patients, the State has inexplicably demanded compliance from the Hospital Systems within seven days from when the Subpoenas were served on January 27, 2024 (Ex. A at 5; Ex. B at 5), effectively denying many of the 21 nonparty patients a reasonable opportunity to obtain counsel and seek advice on their legal rights before compliance is due.

## IV. ARGUMENT AND AUTHORITIES

7. The Court should enter an order preventing the Hospital Systems from producing the materials sought in the Subpoenas because the State's requests are overly broad, seek irrelevant materials, and demand materials that are protected from disclosure under the Physician-Patient Privilege (Tex. R. Evid. 509) and the Mental Health Information Privilege (Tex. R. Evid. 510). Courts may enter orders protecting individuals from discovery by subpoena to prevent an invasion of personal rights, including privacy and privileges. Tex. R. Civ. P. 192.6(b); Tex. R. Civ. P. 176.6(e), 176.7. Courts also have the authority to limit the scope of discovery based on the needs and circumstances of the case. Tex. R. Civ. P. 192 cmt. 7.

8. Under the Physician-Patient Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (1) a confidential communication between a physician and the patient that relates to or was made in connection with any professional services the physician rendered the patient; and (2) a record of the patient's identity, diagnosis, evaluation, or treatment created or maintained by a physician." Tex. R. Evid. 509(c). Similarly, under the Mental Health Information Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (A) a confidential communication between the patient and a

4

professional; and (B) a record of the patient's identity, diagnosis, evaluation, or treatment that is created or maintained by a professional." Tex. R. Evid. 510(b)(1).

9. It is self-evident from the State's Subpoenas that the documents sought are subject to the Physician-Patient Privilege and the Mental Health Information Privilege. Each request asks for "document relating to the care and treatment" of the nonparties, such as "medical … records," "psychotherapy notes," and "correspondence" with the nonparty patients, including Movant. Ex. A at 7; Ex. B at 7; Ex. C ¶ 2. Documents relating to the care and treatment of the nonparties, medical records, psychotherapy notes, and correspondence between the Hospital Systems, the nonparty patients, and healthcare providers will necessarily include confidential communications between the nonparty patients and their physicians and/or professionals, along with records of the nonparty patients' identities, diagnoses, evaluations, and treatments that were created or maintained by physicians and/or mental health professionals. *See generally In re Irvin*, No. 05-98-01771-CV, 1998 WL 908955, at *4 (Tex. App.—Dallas Dec. 31, 1998, no pet.) (finding abuse of discretion and granting mandamus when district court ordered production of mental health records).

10. There is no exception to the Physician-Patient Privilege or the Mental Health Information Privilege that would plausibly apply to the broad requests in the Subpoenas. If the State is suggesting that it is entitled to the nonparty patients' medical records because some information therein may be relevant to a party's claim or defense in the Lau Litigation it is wrong. The State's expansive requests cannot fit under such an exception. The exception to the Physician-Patient Privilege and Mental Health Information Privilege that applies when a party relies on a patient's medical condition (often referred to as the "patient-litigant exception") is narrow, particularly for nonparty patients. *See R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994). As the Texas Supreme Court has explained, it is not enough that there are allegations in the lawsuit for

5

which a condition of the nonparty patient may be relevant—rather, "[t]he scope of the exception should be tied in a meaningful way to the legal consequences of the claim or defense." *Id.* at 842.

11.     In other words, for the patient-litigant exception to apply, discovery must be directed to information about a patient's condition that is "a 'part' of a claim or defense," and "must itself be a fact to which the substantive law assigns significance." *Id.* Generally, this means the discovery must be directed to a condition about which "the jury must make a factual determination." *Id.* at 843. Even then, the exception applies "only to the extent necessary to satisfy the discovery needs of the requesting party" when balanced against the privacy interests of the patients and requires *in camera* review of each document so that "any information not meeting this standard remains privileged and must be redacted or otherwise protected." *Id.*

12.     The State's Subpoenas cannot remotely meet this standard. The Subpoenas' requests are not directed to *any* specific condition whatsoever. They are broad requests to entire Hospital Systems for all medical records and psychiatry notes about *any* condition or treatment, without any bounds or guidance based on the underlying lawsuit. Nor are the requests reasonably limited in time. At best, they seek all the Nonparty Patients' medical records, including psychiatry notes, for the past four years. Potentially, they seek all the Nonparty Patients' medical records, including psychiatry notes, since birth. Either way, they are untethered in time and scope from the Lau Litigation, which involves acts around or after SB14 was enacted in September 2023. These requests are thus too broad in scope and time to satisfy the patient-litigant exception. *See R.K.*, 887 S.W.2d at 843 (requiring "the request for records and the records disclosed are closely related in time and scope to the claims made … to avoid any unnecessary incursion into private affairs").

13.     The Court should therefore enter an order protecting the Nonparty Patients from disclosure under the Subpoenas, including because the requests are not restrictively tailored to

6

**M.R. 386**

maintain the privilege for records and communications that would not be subject to the patient-litigant exception, if it applied at all. *See id.*; *c.f. Groves v. Gabriel*, 874 S.W.2d 660, 661 (Tex. 1994) ("However, a trial court's order compelling release of medical records should be restrictively drawn so as to maintain the privilege with respect to records or communications not relevant to the underlying suit.").

14. Alternatively, if the Court does not enter an order protecting the Nonparty Patients from the Subpoenas in whole, Movant respectfully requests an opportunity to review any proposed productions from the Hospital Systems to evaluate the documents produced for privilege before they are provided to the State. For claims of privilege, "the documents themselves may constitute the only evidence substantiating the claim of privilege." *Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986). The Nonparty Patients thus require a reasonable opportunity to review any documents that the Hospital Systems would produce to the State so that they may "segregate and produce the documents to the court" for *in camera* review to ensure that only relevant materials subject to the applicable privilege exception are produced, with appropriate redactions. *See id.* (providing for *in camera* review); *R.K.*, 887 S.W.2d at 843 ("Even when a document includes some information meeting this standard, any information not meeting this standard remains privileged and must be redacted or otherwise protected.") ("[W]hen requested, the trial court must perform an *in camera* inspection of the documents produced to assure that the proper balancing of interests, which we have described, occurs before production is ordered.").

15. For example, the State has no apparent interest in receiving documents that contain personally identifiable information about the Nonparty Patients, and that information should be redacted in any production. Nor does the State have any apparent interest in the Nonparty Patients' medical records from before SB14 was enacted in September 2023. After all, the State's

7

allegations in the Lau Litigation turn on the actions *after* SB14 became law, and neither the identities of Dr. Lau's patients, nor their medical records and communications before September 2023, are facts of consequence that must be adjudicated.

16. Apart from the Nonparty Patients' privilege assertions, the requests in the Subpoenas are overbroad, directed to irrelevant information, and not proportional to the needs of the case. For instance, there are no limitations to exclude from production materials unrelated to the allegations against Dr. Lau. The State's expansive requests instead presumably encompass all care the Nonparty Patients have received from any provider affiliated with the Hospital Systems, potentially without any meaningful limitation in time, no matter how attenuated or divorced that care is from the Lau Litigation. The State's requests would potentially encompass, for instance, all unrelated physical and mental healthcare (including communications with providers other than Dr. Lau, emergency room visits, vaccinations, and pharmacy records) at the Hospital Systems, without any apparent limitation whatsoever to restrict the requests to the subject matter of the Lau Litigation or a relevant timeframe.

17. Given the extraordinary breadth of the requests and the attendant high likelihood that irrelevant materials would be produced, if the Court does not enter an order protecting the Nonparty Patients from production under the Subpoenas in whole, the Nonparty Patients request the opportunity to review any proposed production for relevance and, if appropriate, request that the Court conduct an *in camera* inspection of materials proposed for production that the Nonparty Patients identify as irrelevant to the Lau Litigation. *See, e.g.*, *Weisel Enterprises*, 718 S.W.2d at 58 (holding *in camera* review appropriate in situations when the documents' contents are the only evidence of discoverability).

## V. CONCLUSION

18.     The State has overstepped the bounds of permissible nonparty discovery. Its Subpoenas to the Hospital Systems plainly seek materials about the Nonparty Patients that are protected from disclosure under the Physician-Patient Privilege and the Mental Health Information Privilege. The requests are also overbroad, seek irrelevant information, and are not proportional to the needs of the case, as they are not meaningfully restricted in time or subject matter to the allegations underpinning the Lau Litigation. The Court should therefore enter a protective order preventing the Hospital Systems from producing discovery in response to the Subpoenas or, alternatively, provide the Nonparty Patients an opportunity to review any proposed production and segregate documents for *in camera* review for relevance and privilege before they are produced.

## VI. PRAYER FOR RELIEF

19.     For the foregoing reasons, the Nonparty Patients respectfully request that the Court set this Motion for hearing and, after the hearing, issue an order granting the relief requested herein.

**DATED:** February 20, 2025

Respectfully submitted,

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869
jnewsome@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

9

## CERTIFICATE OF CONFERENCE

Counsel for movant and counsel for respondent have personally conducted a conference at which there was a substantive discussion of every item presented to the Court herein and despite best efforts the counsel have not been able to resolve those matters presented.

Certified to the Day of February 20, 2025, by:

/s/ William M. Logan
William M. Logan
Texas Bar No. 24106214


## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2025, an electronic copy of this Amended Petition was served to counsel of record for the State of Texas on the relevant subpoenas, as follows:

Jonathan Stone — Jonathan.Stone@oag.texas.gov
Matthew Kennedy — Matt.Kennedy@oag.texas.gov
Rob Farquaharson — Rob.Farquharson@oag.texas.gov
David Shatto — David.Shatto@oag.texas.gov

I further certify that a copy of this Amended Petition is being served via registered or certified mail, return receipt requested, to the above-listed counsel at the following address listed for compliance on the relevant subpoenas:

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711

/s/ Jervonne D. Newsome
Jervonne D. Newsome
Texas Bar No. 24094869

M.R. 390

# Exhibit E

Cause No. DC-25-01823

| | |
|---|---|
| Nonparty Patient No. 1,<br>Nonparty Patient No. 2,<br>Nonparty Patient No. 3,<br>Nonparty Patient No. 4,<br>Nonparty Patient No. 5,<br>Nonparty Patient No. 6,<br>Nonparty Patient No. 7,<br>Nonparty Patient No. 8,<br>Nonparty Patient No. 9,<br>Nonparty Patient No. 10, and<br>Nonparty Patient No. 11,<br><br>    Plaintiffs,<br><br>  vs.<br><br>The State of Texas,<br><br>    Defendant. | IN THE DISTRICT COURT OF<br><br>DALLAS COUNTY, TEXAS<br><br>95TH JUDICIAL DISTRICT |

## <u>NOTICE OF HEARING</u>

TAKE NOTICE that Nonparty Patients' Amended Petition for Protective Order has been set for an in-person oral hearing on the 12th day of March, 2025, beginning at 3:00 p.m. before the 95th Judicial District Court of Dallas County, Texas, George L. Allen, Sr. Courts Building, 600 Commerce Street, 6th Floor New Tower, Dallas, TX 75202.

**DATED:** February 24, 2025

Respectfully submitted,

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869
jnewsome@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

1

M.R. 392

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2025, an electronic copy of this Amended Petition was served to counsel of record for the State of Texas as listed on the relevant subpoenas, as follows:

Jonathan Stone — Jonathan.Stone@oag.texas.gov
Matthew Kennedy — Matt.Kennedy@oag.texas.gov
Rob Farquaharson — Rob.Farquharson@oag.texas.gov
David Shatto — David.Shatto@oag.texas.gov

I further certify that a copy of this Notice is also being served via Texas E-File.

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869

2

# M.R. 393

# Exhibit F

M.R. 394

The State of Texas,

        Plaintiff,

vs.

May C. Lau, M.D.,

        Defendant.

IN THE DISTRICT COURT OF

COLLIN COUNTY, TEXAS

493RD JUDICIAL DISTRICT

### DECLARATION IN SUPPORT OF THE NONPARTY PATIENTS'<br>VERIFIED EXPEDITED MOTION<br>TO STAY PRODUCTIONS FROM THE HOSPITAL SYSTEMS

1. I am an attorney at the law firm of Winston & Strawn LLP. I represent 11 Nonparty Patients in responding to the State of Texas's First Requests for Production ("RFPs"), First Requests for Admissions ("RFAs") and First Set of Interrogatories served on Dr. May C. Lau. I am a member in good standing of the State Bar of Texas. I provide this declaration in support of the Nonparty Patients' Verified Expedited Motion to Stay Productions from Children's Health System of Texas and UT Southwestern Medical Center (the "Hospital Systems") under the State's subpoenas in this case. I have personal knowledge of the facts stated herein, and I could and would testify completely thereto if called as a witness in this matter.

2. Each of the Nonparty Patients is 1 of 22 individuals about whom the State has sought documents or information related to medical and mental health care and treatment received.

3. A true and correct copy of the State's Subpoena *Duces Tecum* served on the Children's Health System of Texas is attached as Exhibit A.

4. A true and correct copy of the State's Subpoena *Duces Tecum* served on the UT Southwestern Medical Center is attached as Exhibit B.

# M.R. 395

5. A true and correct copy of the Nonparty Patients' Petition for Motion for Protection from Discovery Subpoenas is attached as Exhibit C.

6. A true and correct copy of the Nonparty Patients' Amended Petition for Protection from Discovery Subpoenas is attached as Exhibit D.

7. A true and correct copy of the Notice of Hearing regarding Nonparty Patients' Amended Petition for Protective Order is attached as Exhibit E.

8. A true and correct copy of the Notice of Hearing regarding the State's Motion to Compel Defendant's Discovery Responses is attached as Exhibit G.

9. A true and correct copy of the Notice of Hearing regarding the Nonparty Patients' Motion for Protection is attached as Exhibit H.

10. A true and correct copy of correspondence with the counsel of Children's Health System of Texas is attached as Exhibit I.

11. A true and correct copy of correspondence with the General Counsel of UT Southwestern Medical Center is attached as Exhibit J.

12. I verify that the facts set forth in the Motion are true based on my personal knowledge, including from my personal attendance at the hearing in this Court on February 26, 2025, and my personal participation when meeting and conferring with counsel for the State.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Montgomery County, State of Texas, on February 27, 2025.

*/s/ William M. Logan*
William M. Logan

3

**M.R. 396**

# Exhibit G

| THE STATE OF TEXAS., | § | IN THE DISTRICT COURT OF |
|---|---|---|
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that the following has been set for an in-person hearing on Wednesday, February 26, 2025, at 1:30 p.m., in the 493rd District Court, located in the Russell A. Steindam Courts Building, 2100 Bloomdale Rd., McKinney, TX 75071:

1. Plaintiff the State of Texas' Motion to Compel Defendant's Discovery Responses.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

JOHNATHAN STONE
Chief, Consumer Protection Division

*/s/ Rob Farquharson*
ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

M.R. 398

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

CHRISTOPHER M. MOLAK
Assistant Attorney General
State Bar No. 24133132

Office of the Attorney General of Texas
Consumer Protection Division
300 W. 15th St.
Austin, Texas 78701
Phone: (214) 290-8811
Fax: (214) 969-7615
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.Shatto@oag.texas.gov
Christopher.Molak@oag.texas.gov
Telephone: (512) 936-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**Certificate of Service**

I hereby certify that on the 21st day of February 2025, a copy of the foregoing document was served to all counsel of record in accordance with the Texas Rules of Civil Procedure.

 */s/ Rob Farquharson*
ROB FARQUHARSON
Assistant Attorney General

**M.R₂ 399**

# Exhibit H

M.R. 400

| | |
|---|---|
| The State of Texas,<br><br>                  Plaintiff,<br><br>vs.<br><br>May C. Lau, M.D.,<br><br>                  Defendant. | IN THE DISTRICT COURT OF<br><br>COLLIN COUNTY, TEXAS<br><br>493RD JUDICIAL DISTRICT |

**NOTICE OF HEARING ON THE NONPARTY PATIENTS' MOTION FOR PROTECTION FROM THE STATE'S FIRST REQUESTS FOR PRODUCTION, FIRST SET OF INTERROGATORIES, AND FIRST REQUESTS FOR ADMISSIONS**

PLEASE TAKE NOTICE that the NonParty Patients' Motion for Protection will be heard on the 26th day of February at 8:30 a.m. before the 493rd Judicial District Court, Russell A. Steindam Courts Building, 2100 Bloomdale Road, McKinney, TX 75071

DATED: February 25, 2025

Respectfully submitted,

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869
jnewsome@winston.com
Thanh D. Nguyen
Texas Bar No. 24126931
tdnguyen@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

1

M.R. 401

**ATTORNEYS FOR NONPARTY PATIENTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2025, an electronic copy of this motion was served to counsel of record for Dr. Lau and the State via Texas E-file and in accordance with the Texas Rules of Civil Procedure.

*/s/ William M. Logan*

# Exhibit I

| | |
|---|---|
| **From:** | McConnell, Greg |
| **To:** | Jackie.Cooper@cooperscully.com |
| **Cc:** | Logan, William; Newsome, Jervonne D.; Phillips, David J.; Nguyen, Thanh Dinh |
| **Subject:** | FW: The State of Texas v. Lau, Cause No. 493-07676-2024 |
| **Date:** | Thursday, February 13, 2025 3:12:48 PM |
| **Attachments:** | Non Party Patient No. 1 v State of TX - Petition for Motion for Protective Order w-exhibits.pdf |

Jackie – Thanks for reaching out about the Dr. Lau subpoenas.

We sent this email and attachment to counsel at Norton Rose who we were told represents Children's Health in this matter. We'll forward any materials to you going forward. Our Petition was assigned to Judge Purdy.

Regards, Greg

**Gregory A. McConnell**

**Chief Pro Bono Officer**

Winston & Strawn LLP
2121 North Pearl Street, Suite 900
Dallas, TX 75201

M: +1 312-404-3645

Bio | VCard | Email | winston.com

*Pronouns: He, Him, His*



**From:** Logan, William <WLogan@winston.com>
**Sent:** Sunday, February 2, 2025 10:26 PM
**To:** yvonne.puig@nortonrosefulbright.com
**Cc:** McConnell, Greg <GMcConne@winston.com>; Newsome, Jervonne D. <JNewsome@winston.com>; Phillips, David J. <DPhillips@winston.com>
**Subject:** The State of Texas v. Lau, Cause No. 493-07676-2024

Hi Yvonne,

We hope all is well. We write regarding the subpoena for medical records issued to Children's Health Systems of Texas in the above-referenced case. We understand that you represent Children's Health Systems of Texas regarding that subpoena. If this is not the case, please let us know. We have recently been retained to represent eight of the individual patients whose medical information is subject to that subpoena. Consistent with the Collin County Court's Protective Order § III(F) protecting the identities of the patients in the underlying lawsuit, we are generally referring to our clients in generic terms as Nonparty Patient Nos. 1–8.

We wanted to make you aware that we have filed a timely petition in the Dallas County District Court seeking a protective order preventing the discovery sought in the subpoena, including

<strong>M.R. 404</strong>

based on asserting claims of privilege over the materials in Children's Health Systems of Texas's possession under Tex. R. Evid. 509 and Tex. R. Evid. 510. A service copy of that petition with its exhibits is attached, pursuant to Tex. R. Civ. P. 176.6(e). Please confirm that, consistent with Tex. R. Civ. P. 176.6(e), Children's Health Systems of Texas will not produce any materials in response to the subpoenas absent a court order otherwise.

Thanks,
William

**William Logan**

**Associate Attorney**

Winston & Strawn LLP
800 Capitol St., Suite 2400
Houston, TX 77002-2925

T: +1 713-651-2600

D: +1 713-651-2766

F: +1 713-651-2700

Email | winston.com

*Pronouns: He, Him, His*



| From: | Cooper, Jackie |
|---|---|
| To: | Logan, William |
| Cc: | nonparty-patient-counsel; Sutker, Cory |
| Subject: | RE: The State of Texas v M. Brett Cooper, M.D., Cause No. 493-08026-2024 |
| Date: | Monday, February 24, 2025 3:10:07 PM |



Hi William. We will not be producing any patient records absent a court order. If you are able to set emergency hearings in Dallas, please let me know.

Thank you.
Jackie

**From:** Logan, William <WLogan@winston.com>
**Sent:** Thursday, February 20, 2025 4:06 PM
**To:** Cooper, Jackie <Jackie.Cooper@cooperscully.com>
**Cc:** nonparty-patient-counsel <nonparty-patient-counsel@winston.com>; Sutker, Cory <Cory.Sutker@cooperscully.com>
**Subject:** Re: The State of Texas v M. Brett Cooper, M.D., Cause No. 493-08026-2024

Hi Jackie,

We're currently working to set hearings on our requests for protective orders regarding the Lau and Cooper litigation subpoenas. To determine whether we need to request emergency hearings, we wanted to confirm that Children's Health System of Texas won't be producing documents under those subpoenas while the objections are pending and that no production is imminent. Are you able to confirm that for us?

Thanks,
William

**From:** Logan, William <WLogan@winston.com>
**Sent:** Thursday, February 20, 2025 11:40:48 AM
**To:** Cooper, Jackie <Jackie.Cooper@cooperscully.com>
**Cc:** nonparty-patient-counsel <nonparty-patient-counsel@winston.com>; Sutker, Cory <Cory.Sutker@cooperscully.com>
**Subject:** Re: The State of Texas v M. Brett Cooper, M.D., Cause No. 493-08026-2024

Thank you for the update, Jackie. We'll let you know when/if ours are set.

**From:** Cooper, Jackie <Jackie.Cooper@cooperscully.com>
**Sent:** Thursday, February 20, 2025 11:37:26 AM
**To:** Logan, William <WLogan@winston.com>
**Cc:** nonparty-patient-counsel <nonparty-patient-counsel@winston.com>; Sutker, Cory <Cory.Sutker@cooperscully.com>
**Subject:** RE: The State of Texas v M. Brett Cooper, M.D., Cause No. 493-08026-2024

# M.R. 406

Hi William.  We have filed objections and motions for protection in connection with the subpoenas to Dr. Lau and Dr. Cooper in Collin County. They have not been set for hearing yet.

Thanks,
Jackie

---

**From:** Logan, William <WLogan@winston.com>
**Sent:** Wednesday, February 19, 2025 6:02 AM
**To:** Cooper, Jackie <Jackie.Cooper@cooperscully.com>
**Cc:** nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** The State of Texas v M. Brett Cooper, M.D., Cause No. 493-08026-2024

Hi Jackie,

We represent patients whose medical records we understand have been subpoenaed from Children's Health System of Texas in the above-referenced matter. We understand that you represent Children's Health System of Texas regarding the State's subpoena. If this is wrong, please let us know.

Our clients are invoking their privileges under Texas Rules of Evidence 509 and 510 and by this communication are instructing the system not to produce the requested records. We have asked to confer with the State regarding the subpoena and intend to seek a protective order if the requests are not withdrawn.

Please let us know if it would help to discuss.

Thanks,
William

**William Logan**
Associate Attorney

Winston & Strawn LLP
800 Capitol St., Suite 2400
Houston, TX 77002-2925

T: +1 713-651-2600
D: +1 713-651-2766
F: +1 713-651-2700

Email | winston.com

*Pronouns: He, Him, His*



---

## M.R. 407

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

**M.R. 408**

# Exhibit J

M.R. 409

| | |
|---|---|
| **From:** | Erin Sine |
| **To:** | Logan, William |
| **Cc:** | McConnell, Greg; Newsome, Jervonne D.; Phillips, David J. |
| **Subject:** | RE: The State of Texas v. Lau, Cause No. 493-07676-2024 |
| **Date:** | Monday, February 3, 2025 10:32:27 AM |



Hello,

I acknowledge receipt. UT Southwestern has not yet retained counsel in this matter, and I will provide that information when it is available.

The University of Texas Southwestern Medical Center has not been served with a subpoena. CT Corporation is the registered agent for UT Southwestern Health Systems, Inc., a separate non-profit corporation. CT Corporation is not authorized to accept service for the University and rejected the subpoena at issue. I have notified the Texas Attorney General's Office of the same.

Kind regards,

**Erin M. Sine, J.D.**
Vice President & General Counsel
Office of Legal Affairs
UT Southwestern Medical Center
5323 Harry Hines Blvd.
Dallas, TX 75390-9008
ph: (214) 648-2281
fax: (214) 648-8805
erin.sine@utsouthwestern.edu

This E-mail, and any files transmitted with it, is considered confidential and intended solely for the use of the individual or entity to which addressed. This communication may contain material protected by attorney-client and/or attorney work product privileges or other privileged, confidential, proprietary or trade secret information entitled to protection or exempt from disclosure under applicable law. If you are not the intended recipient or person responsible for delivering this communication to the intended recipient, be advised that you have received this communication in error and that any use, dissemination, forwarding, printing or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately.

**From:** Logan, William <WLogan@winston.com>
**Sent:** Sunday, February 2, 2025 10:33 PM
**To:** Erin Sine <Erin.Sine@UTSouthwestern.edu>

**M.R. 410**

Hi Erin,

We hope all is well. We write regarding the subpoena for medical records issued to UT Southwestern Medical Center in the above-referenced case. We understand that you are the correct legal contact regarding that subpoena. If this is not the case, please let us know. We have recently been retained to represent eight of the individual patients whose medical information is subject to that subpoena. Consistent with the Collin County Court's Protective Order § III(F) protecting the identities of the patients in the underlying lawsuit, we are generally referring to our clients in generic terms as Nonparty Patient Nos. 1–8.

We wanted to make you aware that we have filed a timely petition in the Dallas County District Court seeking a protective order preventing the discovery sought in the subpoena, including based on asserting claims of privilege over the materials in UT Southwestern Medical Center's possession under Tex. R. Evid. 509 and Tex. R. Evid. 510. A service copy of that petition with its exhibits is attached, pursuant to Tex. R. Civ. P. 176.6(e). Please confirm that, consistent with Tex. R. Civ. P. 176.6(e), UT Southwestern Medical Center will not produce any materials in response to the subpoenas absent a court order otherwise.

Thanks,
William

**William Logan**

**Associate Attorney**

Winston & Strawn LLP
800 Capitol St., Suite 2400
Houston, TX 77002-2925

T: +1 713-651-2600

D: +1 713-651-2766

F: +1 713-651-2700

Email | winston.com

*Pronouns: He, Him, His*



The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

**M.R. 411**

**M.R. 412**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jamie Vargo on behalf of Jervonne Newsome
Bar No. 24094869
JVargo@winston.com
Envelope ID: 97901008
Filing Code Description: Motion (No Fee)
Filing Description: Nonparty Patients' Verified Expedited Motion to Stay
Status as of 2/28/2025 1:35 PM CST

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Clayton Watkins | 24103982 | clayton.watkins@oag.texas.gov | 2/27/2025 10:46:58 PM | SENT |
| David G. Shatto | | david.shatto@oag.texas.gov | 2/27/2025 10:46:58 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 2/27/2025 10:46:58 PM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 2/27/2025 10:46:58 PM | SENT |
| Ian Bergstrom | | Ian.Bergstrom@oag.texas.gov | 2/27/2025 10:46:58 PM | SENT |
| Christopher Molak | | christopher.molak@oag.texas.gov | 2/27/2025 10:46:58 PM | SENT |
| Amy Pletscher | | amy.pletscher@oag.texas.gov | 2/27/2025 10:46:58 PM | SENT |

Associated Case Party: MayCLau

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Craig Smyser | | csmyser@steptoe.com | 2/27/2025 10:46:58 PM | SENT |
| Alexander Wolf | | awolf@steptoe.com | 2/27/2025 10:46:58 PM | SENT |
| Nicole LeBoeuf | 791091 | nicole@leboeuflaw.com | 2/27/2025 10:46:58 PM | SENT |
| W. Henry Legg | | wlegg@steptoe.com | 2/27/2025 10:46:58 PM | SENT |
| Amy S.Ooi | | amy@leboeuflaw.com | 2/27/2025 10:46:58 PM | SENT |
| Drew Padley | | dpadley@steptoe.com | 2/27/2025 10:46:58 PM | SENT |
| Evelyn M.Hudson | | ehudson@steptoe.com | 2/27/2025 10:46:58 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Logan | 24106214 | wlogan@winston.com | 2/27/2025 10:46:58 PM | SENT |

## M.R. 413

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jamie Vargo on behalf of Jervonne Newsome
Bar No. 24094869
JVargo@winston.com
Envelope ID: 97901008
Filing Code Description: Motion (No Fee)
Filing Description: Nonparty Patients' Verified Expedited Motion to Stay
Status as of 2/28/2025 1:35 PM CST

Case Contacts

| William Logan | 24106214 | wlogan@winston.com | 2/27/2025 10:46:58 PM | SENT |
|---|---|---|---|---|
| Jervonne Newsome | 24094869 | jnewsome@winston.com | 2/27/2025 10:46:58 PM | SENT |
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 2/27/2025 10:46:58 PM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 2/27/2025 10:46:58 PM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 2/27/2025 10:46:58 PM | SENT |
| Deb Hardy | | dhardy@steptoe.com | 2/27/2025 10:46:58 PM | SENT |
| Admin Leboeuflaw | | admin@leboeuflaw.com | 2/27/2025 10:46:58 PM | SENT |
| Tina White | | tiwhite@steptoe.com | 2/27/2025 10:46:58 PM | SENT |
| Steptoe Docketing | | docketing@steptoe.com | 2/27/2025 10:46:58 PM | SENT |
| Houston Docketing | | ecf_houston@winston.com | 2/27/2025 10:46:58 PM | SENT |
| Greg McConnell | | GMcConne@winston.com | 2/27/2025 10:46:58 PM | SENT |
| Jamie Vargo | | JVargo@winston.com | 2/27/2025 10:46:58 PM | SENT |
| Thanh Nguyen | | TDNguyen@winston.com | 2/27/2025 10:46:58 PM | SENT |
| Delvary Turnipseed | | delvary.turnipseed@cooperscully.com | 2/27/2025 10:46:58 PM | SENT |
| Cory Sutker | | Cory.Sutker@cooperscully.com | 2/27/2025 10:46:58 PM | SENT |
| Jackie Cooper | | Jackie.Cooper@cooperscully.com | 2/27/2025 10:46:58 PM | SENT |

**M.R. 414**

CAUSE NO. 493-07676-2024

CAUSE NO. 493-08026-2024

| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | 493RD JUDICIAL DISTRICT |
| | § | |
| MARY C. LAU, M.D., | § | |
| | § | |
| DEFENDANT. | § | COLLIN COUNTY, TEXAS |

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| M. BRETT COOPER, M.D., | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## ORDER

1.     The Court recognizes that the Parties and third parties have raised certain arguments, defenses, objections, or privileges to production of records containing protected health information in this matter. Without waiver of any such arguments, defenses, objections, or privileges in this or any other pending action, or for any future productions, the Court orders the following production:

   a. Children's Medical [University of Texas Southwestern Medical Center] shall prepare for production, with appropriate redactions to preserve protected health information, including patient identity, the medical, laboratory, billing, and prescription records for the care and treatment Dr. Cooper [Lau] provided or ordered for the patients relating to testosterone or puberty blockers from January 1, 2022, through the present.

   b. On or before March 11, 2025, Children's Medical [University of Texas Southwestern Medical Center] shall begin production of records of patients represented by counsel described in No. 1 hereinabove to counsel for Dr. Cooper [Lau] and to the Court. Children's shall continue production on a rolling basis and shall complete production by March 21, 2025. Children's will also produce unredacted records within the parameters described in No. 1 hereinabove to counsel for represented patients and the Court.

# M.R. 415

c.  On April 4, 2025, Children's Medical [University of Texas Southwestern Medical Center] shall produce records described in No. 1 hereinabove, with any additional redactions, and designated as having further redactions requested by counsel for Dr. Cooper [Lau], to the Court via encrypted, electronic transfer. The party requesting further redactions shall request *in camera* review of redacted and unredacted, corresponding records. Counsel for Dr. Cooper [Lau] and counsel for represented patients shall provide a privilege log for any records withheld and/or redactions made at their request.

d.  The Court will set a hearing on such *in camera* review within 14 days from date of receipt of request.

e.  On April 4, 2025, counsel for Dr. Cooper [Lau] and counsel for represented patients shall produce any records described in No. 1 hereinabove, to which no additional redactions have been made to counsel for the State.

2.  The Parties and Non-Parties may extend any deadlines herein by agreement or may move the Court for a reasonable extension for good cause.

SIGNED ON February 28, 2025.

_____
JUDGE PRESIDING

**M.R. 416**

| | | |
|---|---|---|
| THE STATE OF TEXAS, *Plaintiff*, | § § § | IN THE DISTRICT COURT OF |
| v. | § § § | COLLIN COUNTY, TEXAS |
| MAY C. LAU, *Defendant*. | § § § | 493RD JUDICIAL DISTRICT |

## ORDER

On this day the Court orders the following with respect to the question of venue and for the purpose of determining venue.

The Court orders Children's Health Center of Texas to produce the following by March 10, 2025, pursuant to the protocols agreed upon during the *State v. Lau* and *State v. Cooper* hearings on February 26, 2025 and February 28, 2025 and the Court's clarification:

- The redacted medical, laboratory, billing, and prescription records for the care and treatment by Dr. Cooper provided or ordered for Master Key Cooper Patients 1, 7, 9, 10, 14, 15 for certain visits identified at hearings in *State v. Lau* and *State v. Cooper*.
- The redacted medical, laboratory, billing, and prescription records for the care and treatment by Dr. Lau provided or ordered for Master Key Lau Patients 1, 2, 5, 6, 18, 19 for certain visits identified at hearings in *State v. Lau* and *State v. Cooper*.

Signed this 28th day of February / March 2025.

_____
**JUDGE PRESIDING**

**M.R. 417**

FILED
2/28/2025 2:34 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Nia Searl DEPUTY

Cause No. DC-25-01823

| | |
|---|---|
| Nonparty Patient No. 1,<br>Nonparty Patient No. 2,<br>Nonparty Patient No. 3,<br>Nonparty Patient No. 4,<br>Nonparty Patient No. 5,<br>Nonparty Patient No. 6,<br>Nonparty Patient No. 7,<br>Nonparty Patient No. 8,<br>Nonparty Patient No. 9,<br>Nonparty Patient No. 10, and<br>Nonparty Patient No. 11,<br><br>    Plaintiffs,<br><br> vs.<br><br>The State of Texas,<br><br>    Defendant. | IN THE DISTRICT COURT OF<br><br>DALLAS COUNTY, TEXAS<br><br>95TH JUDICIAL DISTRICT |

**FIRST AMENDED NOTICE OF HEARING**

TAKE NOTICE that Nonparty Patients' Motion for Protection has been set for oral hearing on the 6th day of March, 2025, beginning at 3:00 p.m. before the 95th Judicial District Court of Dallas County, Texas, George L. Allen, Sr. Courts Building, 600 Commerce Street, 6th Floor New Tower, Dallas, TX 75202.

You are invited to attend.

DATED: February 28, 2025      Respectfully submitted,

                   */s/ Jervonne D. Newsome*
                   Jervonne D. Newsome
                   Texas Bar No. 24094869
                   jnewsome@winston.com
                   **WINSTON & STRAWN LLP**
                   2121 N. Pearl St., 9th Floor
                   Dallas, TX 75201
                   Telephone: (214) 453-6500

M.R. 418

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**


**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2025, an electronic copy of this First Amended Notice of Hearing was served to counsel of record for the State of Texas as listed on the relevant subpoenas, as follows:

Johnathan Stone — Jonathan.Stone@oag.texas.gov
Matthew Kennedy — Matt.Kennedy@oag.texas.gov
Rob Farquaharson — Rob.Farquharson@oag.texas.gov
David Shatto — David.Shatto@oag.texas.gov

I further certify that a copy of this Notice is also being served via Texas E-File.


*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869

2
# M.R. 419

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jamie Vargo on behalf of Jervonne Newsome
Bar No. 24094869
JVargo@winston.com
Envelope ID: 97934948
Filing Code Description: Notice Of Hearing / Fiat
Filing Description: AMENDED - MOTION PROTECT
Status as of 3/3/2025 8:22 AM CST

Associated Case Party: NONPARTY PATIENT NO. 1

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jervonne Newsome | | JNewsome@winston.com | 2/28/2025 2:34:32 PM | SENT |
| William Logan | | WLogan@winston.com | 2/28/2025 2:34:32 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David Phillips | | DPhillips@winston.com | 2/28/2025 2:34:32 PM | SENT |
| Jamie Vargo | | JVargo@winston.com | 2/28/2025 2:34:32 PM | SENT |
| Houston Docket | | ecf_houston@winston.com | 2/28/2025 2:34:32 PM | SENT |

# M.R. 420

| | | |
|---|---|---|
| Nonparty Patient No. 1, | § | IN THE DISTRICT COURT OF |
| Nonparty Patient No. 2, | § | |
| Nonparty Patient No. 3, | § | |
| Nonparty Patient No. 4, | § | |
| Nonparty Patient No. 5, | § | |
| Nonparty Patient No. 6, | § | |
| Nonparty Patient No. 7, and | § | DALLAS COUNTY, TEXAS |
| Nonparty Patient No. 8, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| The State of Texas, | § | |
| *Defendant*. | § | 95TH JUDICIAL DISTRICT |

### THE STATE OF TEXAS'S VERIFIED EMERGENCY PLEA TO THE JURSIDICTION AND PLEA IN ABATEMENT

The State of Texas (the State) has not waived sovereign immunity from lawsuits brought under Tex. R. Civ. P. 176.6 and 192.6. And, even if it had, this Court must abate this proceeding because a related and first-filed matter with dominant jurisdiction is already pending before the 493rd District Court in Collin County, Texas. Plaintiff Nonparty Patients' (Represented Patients) Second Amended Petition for Protection from Discovery Subpoenas is a clumsy attempt to provoke conflict between the 95th District Court and the 493rd District Court. Represented Patients are trying to manipulate the Courts into rendering conflicting rulings by having them both independently rule on the *same* evidentiary objections and privilege assertions, regarding the *same* medical, prescribing, and billing records, impacting the *same* records custodians, in the *same* ongoing proceeding. This Court should decline to do so and either dismiss this proceeding for lack of jurisdiction or, alternatively, abate the proceeding where another court has dominant jurisdiction.

1

# BACKGROUND

On October 17, 2024, the State filed suit in the 493rd District Court in Collin County, Texas, against Defendant May C. Lau, M.D.

Lau evaded service for a month, necessitating an order for substituted services.

On January 13, 2025, the parties entered a protective order ensuring the privacy of the protected health information of all impacted patients.

On January 16, 2025, the State noticed it's intent to serve nonparty subpoenas on Children's Health System of Texas (Childrens) and the University of Texas Southwestern Medical Center (UT Southwestern Medical Center) seeking patient medical, prescribing, and billing records relating to the claims and defenses in the ongoing suit. Subpoenas were subsequently served on same.

On February 3, 2025, Represented Patients filed the instant suit in Dallas County seeking protection from the subpoenas issued to Childrens and UT Southwestern Medical Center.

On February 18, 2025, the State was served with the Dallas County suit.

On February 24, 2025, the Represented Patients filed a motion seeking protection from party discovery in the Collin County proceeding. Specifically, they demanded (without intervening) the opportunity to review and make objections to the discovery propounded by the State and to assert privileges over the discovery responses from the physician defendants.

The same day, Represented Patients noticed a hearing seeking a final judgment in the Dallas County suit for March 12, 2025. The hearing is scheduled to occur *before* the State's Answer deadline of March 17, 2025.

2

M.R. 422

On February 26, 2025, the Collin County District Court held an all-day hearing on numerous pending motions in the *Lau* and related *Cooper* matters. Counsel for the Represented Patients was present and participated the entire day, negotiating and working with the State and parties to narrow the scope of requested medical, prescribing, and billing records. The Court determined that records should be released in limited sequential tranches based on the needs of the case. It directed the parties and interested nonparties to confer on an agreeable method of production.

On February 27, 2025, the Represented Patients filed a motion to stay discovery in the Collin County proceedings pending a ruling in the Dallas County proceedings.

On February 28, 2025, the Collin County District Court held a half-day hearing on numerous pending motions in the *Lau* and related *Cooper* matters. Counsel for the Represented Patients was present and participated the entire time, negotiating a production schedule that ensured the rights and interests of the patients were properly protected.

Counsels for the State, Cooper, Lau, Childrens, and the Represented Patients reached an agreement on the process for production of the first tranche of records. The scope of the records is limited to the medical, prescribing, and billing records relating to testosterone and puberty blockers prescribed by Lau and Cooper from January 1, 2022, through the present. *See* Ex. A. To ensure the patients' privacy rights are protected, Childrens and UT Southwestern Medical Center will release records for the represented patients to their counsel to assert privileges and objections. For unrepresented patients, their records will be released to counsel for the physicians to assert the physician-patient privilege on the patients' behalf. *See* Tex. R. Evid. 509-510. Records will only be produced to the State after all patients—represented and unrepresented—have had the

3
**M.R. 423**

opportunity to mark for redaction privileged information and produce a privilege log. Ex. A. The Collin County District Court will then conduct an *in-camera* inspection of the privilege assertions and set a hearing within 14 days to consider any challenges to the privilege assertions. *Id.* The parties will reconvene thereafter to discuss the scope of a second tranche of records, if necessary.

Despite Collin County providing Represented Patients with the relief sought in Dallas County, and after actively participating in the negotiations narrowing the scope of the record requests and creating the process to ensure maximum protection of the patient's rights, counsel for Represented Patients refused to agree to the final terms—manufacturing the bad-faith and pretextual grounds that the State did not agree with them on the proper legal standard governing the physician-patient privilege in Tex. R. Evid. 509, and the mental-health information privilege in Tex. R. Evid. 510.

The Collin County Court ultimately entered a ruling directing the limited sequential production over the objections of Represented Patients. Ex. A. The State thereafter orally moved for protection in the Collin County suit from the Dallas County suits filed by the Represented Patients. The Court declined to consider the motion at that time but noted that it would consider taking it up at the previously scheduled hearing on March 4, 2025, if necessary.

*Three hours later*, after the hearing in Collin County where they received the very relief that they purportedly sought in their Dallas County suit, Represented Patients filed an Amended Notice of Hearing in the Dallas County suit for March 6, 2025. This hearing seeks a final judgment protecting them from production by Childrens and UT Southwestern Medical Center *before* the State's Answer is due on March 17, 2025. It also seeks a ruling from the Dallas County Court to

Childrens and UT Southwestern Medical Center that will directly contravene the existing production ruling in the first-filed Collin County suit.

Today, Monday, March 3, 2025, the State filed in Collin County a brief in support of its oral emergency request for protection from the Dallas County proceedings and requested that the matter be heard tomorrow.

In response, the Represented Patients emailed the Dallas County court seeking an "urgent" same-day hearing and final judgment before the Collin County District Court could consider the State's request for protection. The Dallas County Court declined to do so; instead, advising the parties that the March 6, 2025, hearing would proceed as scheduled.

At 7:30 p.m., Represented Patients filed a Second Amended Petition for Protection from Discovery Subpoenas falsely alleging that the State waived sovereign immunity from suit.

**EMERGENCY**

An emergency exists because on February 28, 2025, counsel for Represented Patients noticed a hearing seeking entry of a final judgment for March 6, 2025, *before* the State's deadline to Answer on March 17, 2025. Represented Patients scheduled their hearing without conferring with counsel for the State. Counsel for the Represented Patients had *orally* agreed to have the State's Plea to the Jurisdiction heard at the same time as their Request for Protection. But, on March 1, 2025, counsel for Represented Patients sent an email reneging on this agreement, insisting that only their Request for Protection be heard at the hearing on March 6, 2025. The State will be materially prejudiced if final relief is granted to the Represented Patients before the State has even had the opportunity to Answer.

The State will be materially prejudiced if this Court proceeds with this matter without considering its Plea to the Jurisdiction and Plea in Abatement. This Court lacks jurisdiction, Collin County has dominant jurisdiction, and proceeding in Dallas County will resulting in inconsistent obligations and conflicting rulings. The State must be afforded an opportunity to raise these concerns before the Court grants relief to the Represented Patients.

Finally, the relief sought by Represented Patients in Dallas County has already been granted by the Collin County District Court, *see* Ex. A, thereby obviating any need to continue the present action.

## PLEA TO THE JURISDICTION

A plea to the jurisdiction challenges the court's authority to determine the subject matter of the controversy. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). Subject matter jurisdiction is "never presumed and cannot be waived." *Tex. Ass'n of Bus. v. Tex. Air Ctr. Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). "When a plea to the jurisdiction challenges the pleadings, [the court] determine[s] if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id*. at 227.

"**A waiver of sovereign immunity requires clear and unambiguous statutory language**." *Texas Off. of Comptroller of Pub. Accts. v. Saito*, 372 S.W.3d 311, 313 (Tex. App. 2012) (emphasis added); Tex. Gov't Code § 311.034.

I.      **Represented Patients' Claims are Barred by Sovereign Immunity.**

Sovereign immunity deprives a court of subject-matter jurisdiction in suits against the State. *Miranda*, 133 S.W.3d at 224. It is the long-established principle that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006) (cleaned up). For a plaintiff to overcome a defendant's assertion of sovereign immunity, "the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).

Represented Patients have not and cannot point to "clear and unambiguous language" waiving sovereign immunity for suits brought under Tex. R. Civ. P. 176.6 and 192.6. Represented Patients confusingly argue that the Texas Rules of Civil Procedure waives sovereign immunity by citing to cases that *predate* the Texas Rules of Civil Procedures adoption in 1941. These cases, instead, merely stand for the proposition that the State waives sovereign immunity in suits that it initiates (and here that suit is in Collin County—not the present suit in Dallas County). Represented Patients also cite to the holding in *In re Google LLC*, 2025 WL 258715 (Tex. App.–15th Dist., Jan. 16, 2025, pet. imminent) allowing the defendant in a suit brought by the State to depose a representative for the State. It is unclear how Represented Patients think this case law supports their position. It instead demonstrates exactly what the State contends, that sovereign immunity is only waived in the proceeding brought by the State.

The State files *thousands* of lawsuits every year—yet Represented Patients can point to no statutes nor any case law showing that the State waives sovereign immunity from suits brought under Tex. R. Civ. P. 176.6 and 192.6. In the lone instance of waiver that undersigned counsel are aware of, *Allibone*, the Texas Medical Board *affirmatively chose to waive sovereign immunity* in a suit

brought under Tex. R. Civ. P. 176.6 and 192.6. *See Allibone v. Freshour*, 2017 WL 5663607, at *2 n.4 (Tex. App. Nov. 21, 2017).[1] *Allibone* is the exception that proves the rule—there is no general waiver of sovereign immunity for suit brought under Tex. R. Civ. P. 176.6 and 192.6. *Id*. The State is decidedly *not* waiving sovereign immunity in this suit; consequently, the Court must dismiss this suit for lack of jurisdiction.

## PLEA IN ABATEMENT

As a general rule, "the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts." *In re J.B. Hunt Transport, Inc.*, 492 S.W.3d 287, 299–300 (Tex. 2016) (orig. proceeding). (quoting *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974) (orig. proceeding)). When two suits are inherently interrelated, the court in which the second action was filed must grant a plea in abatement unless an exception to the general rule applies. *Id*. at 294.

---

[1] The merits holding in *Allibone* proves the State's need to review all medical records relating to the care and treatment of the patients in this action. *Allibone*, 2017 WL 5663607. In *Allibone*, the Third Court of Appeals affirmed the district court's ruling that the scope of the Texas Medical Board's subpoenas seeking the "entire" medical, billing, and prescribing records for two patients was reasonable because the complete medical records are needed to contextualize the care and treatment provided to the patients. *Id*. at *5. The Medical Director of the Texas Medical Board testified that when reviewing records "it becomes quite obvious that the full and complete medical record is required for review. There'd be no way to vindicate or dismiss an investigation or a complaint if [the Board was] not able to review the underlying records to determine whether the standard of care was met or violated." *Id*. He further testified that it was "quite obvious and apparent that the physician is exactly the wrong person to determine which portions of the medical record are relevant and which portions should be withheld from the investigation." *Id*. The Medical Director explained, "[A] physician who has a vested interest in the outcome should not be the gatekeeper of records that the Board can look at ... in the course of its investigation." *Id*. Finally, concerning billing records, the Medical Director testified that the Board "can rely quite heavily on billing records to determine the accuracy of the medical records that were submitted to the Board to make sure that we've got a full and complete set of medical records." The Third Court of Appeals agreed with the district court that the subpoenas seeking the "entire" record of the two patients was "in all respects reasonable in scope and valid." *Id*. The same is true in the instant action. Should this Court find, wrongly, that *Allibone* stands for the proposition there is a general waiver of sovereign immunity for actions brought under Tex. R. Civ. P. 176.6 and 192.6, then it should also find, correctly, that the "entire" medical, billing, and prescribing records for the patients are needed to contextualize their care and treatment in the State's suit alleging fraudulent billing, violation of state law prohibiting the prescribing of puberty blockers and cross-sex hormones to minors for the purposes of transitioning their biological sex or affirming their belief that their gender is different from their biological sex, and for prescribing testosterone and puberty blockers without a valid medical purposes.

8

# M.R. 428

"Filing a plea in abatement is the proper method for drawing a court's attention to another court's possible dominant jurisdiction." *In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011) (orig. proceeding).

A method to assert a claim of dominant jurisdiction is through a plea in abatement in the second-filed suit. *See In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011) (per curiam) (orig. proceeding). If the party asserting dominant jurisdiction establishes that the doctrine applies, the trial court in the second-filed suit has no discretion to deny the plea unless the party resisting abatement establishes an exception to the rule of dominant jurisdiction. *See In re J.B. Hunt*, 492 S.W.3d at 294 (concluding real parties' evidence "[fell] well below the legal standards" to establish exception to dominant jurisdiction); *see also In re Red Dot Bldg. Sys., Inc.*, 504 S.W.3d 320, 322–23 (Tex. 2016) (per curiam) (orig. proceeding); *In re Tex. Christian Univ.*, 571 S.W.3d 384, 389, 391 (Tex. App.—Dallas 2019, orig. proceeding). Because the dominant jurisdiction doctrine applies and Represented Patients have not demonstrated the existence of an exception, this Court should grant an abatement pending resolution of the first-filed suit in Collin County.

**I.      The Collin County and Dallas County suits are inherently interrelated.**

Generally, a plea in abatement must be granted when an inherent interrelation of the subject matter exists in two pending lawsuits. *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001). Abatement of a suit due to the pendency of a prior suit is based on the principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues. *Miles v. Ford Motor Co.*, 914 S.W.2d 135, 138 (Tex. 1995).

The first question to address in the dominant-jurisdiction analysis is whether there is an inherent interrelationship between the two cases—in this case, between the first-filed suit in the 493rd District Court in Collin County and the second-filed suit in the 95th District Court in Dallas

County. *See J.B. Hunt Transp.*, 492 S.W.3d at 292; *In re Happy State Bank*, No. 02-17-00453-CV, 2018 WL 1918217, at *4 (Tex. App.—Fort Worth Apr. 23, 2018, orig. proceeding) (mem. op.). If yes, then dominant jurisdiction applies and, absent an exception, the second-filed suit must be abated. *J.B. Hunt Transp.*, 492 S.W.3d at 292; *see Happy State Bank*, 2018 WL 1918217, at *7. If not, then both suits may proceed. *J.B. Hunt Transp.*, 492 S.W.3d at 292; *see generally Happy State Bank*, 2018 WL 1918217, at *4.

In determining whether the suits are inherently interrelated, courts are *guided* by the compulsory counterclaim rule, Tex. R. Civ. P. 97(a), and joinder of a party rule, Tex. R. Civ. P. 39. *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 247 (Tex. 1988); *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d at 292.

The Court should find that the Collin County and Dallas County proceedings are inherently interrelated. A counterclaim is compulsory if it meets the following six characteristics: (1) it is within the jurisdiction of the court; (2) it is not at the time of the filing of the answer the subject of a pending action; (3) the action is mature and owned by the defendant at the time of filing the answer; (4) it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. *See* Tex. R. Civ. P. 97(a); *see also Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999). There is no dispute, that undersigned are aware of, that these conditions exist in the proceedings at issue. The subpoenas issued to Childrens and UT Southwestern Medical Center arise from, and are related to, the claims and defenses in the first-filed suit pending in Collin County.

The Collin County and Dallas County suits are, moreover, inherently interrelated due to the substantial risk of conflicting rulings creating "inconsistent obligations" on the parties, Childrens, and UT Southwestern Medical Center. *Encore Enterprises, Inc. v. Borderplex Realty Tr.*, 583 S.W.3d 713, 724 (Tex. App. 2019) (applying Rule 39(a) in a dominant jurisdiction analyses). The Collin County District Court has already directed Childrens and UT Southwestern Medical Center to produce documents relating to the claims in the ongoing proceedings. *See* Ex. A. A ruling from the Dallas County District Court that Childrens and UT Southwestern Medical Center do not have to produce records, after being directed to do so by the Collin County District Court, will necessarily create "inconsistent obligations." These inconsistent obligations will only be compounded exponentially if judges in Dallas County and Collin County are both reviewing *the same* sets of medical, prescribing, and billing records in the *same* proceeding and making evidentiary rulings on privileges and objections.

Finally, abatement is in the interest of justice. The relief sought by the Represented Patients in the Dallas County suit is to have the opportunity to assert privileges before records are produced to the State. That is exactly the relief they were granted in the Collin County proceeding. *See* Ex. A. That counsel for the represented patients continues to pursue a suit in Dallas County after they already obtained the relief sought in Collin County demonstrates bad faith, wastes judicial resources, and unnecessarily drives up litigation costs.

This Court should abate this proceeding where Collin County has dominant jurisdiction.

## II. There is no exception to the "first-filed" rule.

Exceptions to this "first-filed" rule may apply when its justifications fail, such as when the first court does not have the full matter before it, when conferring dominant jurisdiction on the first

court will delay or even prevent a prompt and full adjudication, or "when the race to the courthouse was unfairly run." *Perry*, 66 S.W.3d at 252. A plaintiff who filed the first suit may be estopped from asserting the dominant jurisdiction of the first court if it is found that he is guilty of inequitable conduct. *Hiles v. Arnie & Co.*, 402 S.W.3d 820, 825–26 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

A race to the courthouse by itself is not inequitable conduct. *In re Texas Christian Univ.*, 571 S.W.3d 384, 392 (Tex. App. 2019). In fact, one of the justifications for the first-filed rule is "simple fairness: in a race to the courthouse, the winner's suit should have dominant jurisdiction." *In re J.B. Hunt Transport, Inc.*, 492 S.W.3d at 296 (citing *Perry*, 66 S.W.3d at 252); *Lee v. GST Transp. Sys., LP*, 334 S.W.3d 16, 18 (Tex. App.—Dallas 2008, pet. denied).

No exception in the present case exists, nor have Represented Patients alleged that one does. Accordingly, the Collin County case is first filed, the dominant jurisdiction doctrine applies, and this Court should abate the present matter pending resolution of the Collin County matter.

## PRAYER

For the reasons stated above, the State prays that the Court dismiss the Represented Patients' lawsuit and all claims and causes of action stated therein with prejudice and render judgment that Represented Patients take nothing, that the Attorney General recover its reasonable and necessary attorneys' fees and costs of court, and for all other relief, at law and in equity, to which it may show itself to be justly entitled. Alternatively, the State asks the Court to abate this proceeding pending resolution of the first-filed Collin County suit and for all other relief, at law and in equity, to which it may show itself to be justly entitled, including attorneys' fees.

Dated: March 3, 2025

Respectfully submitted,

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
Telephone: (512) 463-2185
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

# M.R. 433

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of March 2025, a copy of the foregoing document was served to all counsel of record in accordance with the Texas Rules of Civil Procedure.

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

## DECLARATION

Pursuant to Tex. Civ. Rem. & Prac. Code § 132.001(f), JOHNATHAN STONE submit this unsworn declaration in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by Texas Rule of Civil Procedure 682. I am an employee of the following governmental agency: Texas Office of the Attorney General. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the factual statements in the foregoing are true and correct.

Executed in Travis County, State of Texas, on the 3rd day of March 2025.

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

14

# M.R. 434

| | | |
|---|---|---|
| Nonparty Patient No. 1, | § | IN THE DISTRICT COURT OF |
| Nonparty Patient No. 2, | § | |
| Nonparty Patient No. 3, | § | |
| Nonparty Patient No. 4, | § | |
| Nonparty Patient No. 5, | § | |
| Nonparty Patient No. 6, | § | |
| Nonparty Patient No. 7, and | § | DALLAS COUNTY, TEXAS |
| Nonparty Patient No. 8, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| The State of Texas, | § | |
| *Defendant*. | § | 95TH JUDICIAL DISTRICT |

**THE STATE OF TEXAS'S VERIFIED EMERGENCY PLEA TO THE
<u>JURSIDICTION AND PLEA IN ABATEMENT</u>**

# EXHIBIT A

**M.R. 435**

Filed: 2/28/2025 1:24 PM
Michael Gould
District Clerk
Collin County, Texas
By Sarah Beasley Deputy
Envelope ID: 97928698

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | 493RD JUDICIAL DISTRICT |
| | § | |
| MARY C. LAU, M.D., | § | |
| | § | |
| DEFENDANT. | § | COLLIN COUNTY, TEXAS |

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| M. BRETT COOPER, M.D., | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## ORDER

1. The Court recognizes that the Parties and third parties have raised certain arguments, defenses, objections, or privileges to production of records containing protected health information in this matter. Without waiver of any such arguments, defenses, objections, or privileges in this or any other pending action, or for any future productions, the Court orders the following production:

   a. Children's Medical [University of Texas Southwestern Medical Center] shall prepare for production, with appropriate redactions to preserve protected health information, including patient identity, the medical, laboratory, billing, and prescription records for the care and treatment Dr. Cooper [Lau] provided or ordered for the patients relating to testosterone or puberty blockers from January 1, 2022, through the present.

   b. On or before March 11, 2025, Children's Medical [University of Texas Southwestern Medical Center] shall begin production of records of patients represented by counsel described in No. 1 hereinabove to counsel for Dr. Cooper [Lau] and to the Court. Children's shall continue production on a rolling basis and shall complete production by March 21, 2025. Children's will also produce unredacted records within the parameters described in No. 1 hereinabove to counsel for represented patients and the Court.

## M.R. 436

c. On April 4, 2025, Children's Medical [University of Texas Southwestern Medical Center] shall produce records described in No. 1 hereinabove, with any additional redactions, and designated as having further redactions requested by counsel for Dr. Cooper [Lau], to the Court via encrypted, electronic transfer. The party requesting further redactions shall request *in camera* review of redacted and unredacted, corresponding records. Counsel for Dr. Cooper [Lau] and counsel for represented patients shall provide a privilege log for any records withheld and/or redactions made at their request.

d. The Court will set a hearing on such *in camera* review within 14 days from date of receipt of request.

e. On April 4, 2025, counsel for Dr. Cooper [Lau] and counsel for represented patients shall produce any records described in No. 1 hereinabove, to which no additional redactions have been made to counsel for the State.

2. The Parties and Non-Parties may extend any deadlines herein by agreement or may move the Court for a reasonable extension for good cause.

SIGNED ON February 28, 2025.

_____
JUDGE PRESIDING

M.R. 437

FILED
3/7/2025 11:10 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Martin Reyes DEPUTY

Cause No. DC-25-01823

| | |
|---|---|
| Nonparty Patient No. 1,<br>Nonparty Patient No. 2,<br>Nonparty Patient No. 3,<br>Nonparty Patient No. 4,<br>Nonparty Patient No. 5,<br>Nonparty Patient No. 6,<br>Nonparty Patient No. 7,<br>Nonparty Patient No. 8,<br>Nonparty Patient No. 9,<br>Nonparty Patient No. 10, and<br>Nonparty Patient No. 11,<br><br>          Plaintiffs,<br><br>   vs.<br><br>The State of Texas,<br><br>          Defendant. | IN THE DISTRICT COURT OF<br><br>DALLAS COUNTY, TEXAS<br><br>95TH JUDICIAL DISTRICT |

### THE NONPARTY PATIENTS' BRIEF REGARDING INTERLOCUTORY APPEAL AND STAY OF PROCEEDINGS

On March 6, 2025, the Court heard oral argument on the State's Verified Plea to the Jurisdiction and Plea in Abatement and the Nonparty Patients' Second Amended Petition for a Motion for Protective Order. After the Court orally found it had subject matter jurisdiction over these proceedings and denied the State's pleas, it began hearing argument on the Nonparty Patients' motion for a protective order.

While oral argument on the protective order unfolded, the State filed an interlocutory appeal challenging the Court's jurisdictional ruling. The State claimed its appeal triggered an automatic stay over the entire proceeding and that the Court could not proceed with the Nonparty Patients' motion. The Court requested a response from the Nonparty Patients' counsel and the Nonparty Patients asked for time to research the matter. Having done so, the Nonparty Patients'

1

## M.R. 438

position is as follows.

Under Texas Government Code § 51.014(a)(8), an interlocutory appeal may be taken from a denial of a plea to the Court's jurisdiction. In turn, such an appeal automatically "stays all other proceedings in the trial court pending resolution of that appeal." *Id.* § 51.014(b). That automatic stay does not prohibit the trial court from "mak[ing] further orders," however, so long as those orders do not "interfere[] with or impair[] the jurisdiction of the appellate court or effectiveness of any relief sought or that may be granted on appeal." Tex. R. App. P. 29.5(b). In other words, the Court may issue orders on ancillary matters.

Here, aside from the State's jurisdictional challenge, the only matter before the Court is the Nonparty Patients' request for relief under Texas Rule of Civil Procedure 176.6(e). That issue is the heart of this case. Thus, the Nonparty Patients take the position that the entire proceeding before this Court is in fact stayed pending the resolution of the State's interlocutory appeal. As such, Nonparty Patients contend that the stay entered by the Court on March 6, 2025—which suspended all production obligations the Hospital Systems may have had under the State's subpoenas—fully complies with the law. That is true for two reasons.

***First***, once the Nonparty Patients sought protection in this Court, the Hospital Systems had no obligation to respond to the subpoenas until the Court ruled on the Nonparty Patients' motion. That's in the Rules: "A person need not comply with the part of the subpoena from which protection is sought under this paragraph unless ordered to do so by the court." Tex. R. Civ. P. 176.6(e). And when the Dallas Court of Appeals applied this straightforward dictate, it said nothing to the contrary: "Pursuant to rule 176.6, a motion to for protective order ***stays a request for testimony and production of records until such time as the trial court rules on the motion***." *In*

*re Creuzot*, 2024 WL 4784362, at \*4 (Tex. App.—Dallas Nov. 14, 2024, no pet.).[1] The Waco Court of Appeals has reached a similar holding. *See In re Reed*, 2007 WL 4440901, at \*2 (Tex. App.—Waco Dec. 19, 2007) (finding an abuse of discretion where a court ordered compliance with a subpoena, even though a motion to protect was pending in another court).

Accordingly, where a motion for protective order remains unresolved, courts cannot order production for the challenged subpoena. Filing a notice of appeal that challenges *subject matter jurisdiction*, but *not* a ruling on a motion for a protective order, does not require a different result, and the State has offered no principled reason to insist on the production of medical records when those records have been deemed subject to this Court's jurisdiction and the Court has yet to rule on the motion for protective order given the State's request for an appeal on jurisdiction. It is apparent that the State seeks to have its cake and eat it too. As the Court stated yesterday, the State cannot stop the Court from ruling on motion for protection through seeking an appeal but yet continue insisting that the medical records must be produced notwithstanding.

**Second,** *the Court's Order only maintains the status quo.* And as the Texas Supreme Court has explained, the status quo "is the 'last, actual, peaceable, non-contested status which preceded the pending controversy.'" *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 555 (Tex. 2016) (quoting *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). Here, the controversy concerns the breadth of the subpoenas served on the Hospital Systems, and whether the Hospital Systems must disclose the Nonparty Patients' health records in their entirety. Looking backwards, the last peaceable state of affairs preceding the subpoenas was the *retention* of the Nonparty Patients'

---

[1] Even though the Dallas Court of Appeals did not designate *Creuzot* for publication, it is still precedential and binding on the Court. *See* Tex. R. App. P. 47.2(c) (explaining that, after January 1, 2003, the courts of appeals can no longer designate civil opinions as unpublished); Tex. R. App. P. 47.7, 2008 cmt. (explaining that all civil opinions after 2003 will have precedential value).

documents by the Hospital Systems, when they were *unthreatened* by a subpoena. That is the proper framing, and *that* state of affairs that must be preserved through a stay. Such a stay fully comports with the automatic stay pending interlocutory appeal because it does not interfere with or impair the jurisdiction of the appellate court or effectiveness of any relief sought or that may be granted on appeal given that the appeal is directed to a jurisdictional question.

To find support for the Nonparty Patients' petition, look no further than the Dallas Court of Appeals' decision in *Creuzot*. There, a trial court ordered the disclosure of certain records, and the Dallas Court of Appeals *issued a stay* on any disclosure obligations. *Creuzot*, 2024 WL 4784362, at *3; *see also* Tex. R. App. P. 29.3 (authorizing appellate courts to issue temporary orders that "preserve the parties' rights").

In sum, the Nonparty Patients agree that the State's interlocutory appeal to the Court's jurisdiction triggered an automatic stay. The stay the Court entered in response complies with the law, and it should remain in place until the appeal is resolved.

**DATED:** March 7, 2025

Respectfully submitted,

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869
Thanh D. Nguyen
Texas Bar No. 24126931
jnewsome@winston.com
tdnguyen@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
Evan D. Lewis
Texas Bar No. 24116670
Olivia A. Wogon

4

Texas Bar No. 24137299
wlogan@winston.com
edlewis@winston.com
owogon@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2025, an electronic copy of this brief was electronically served on all counsel of record through the Court's e-filing system.

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869

5

**M.R. 442**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lucy Fowler on behalf of Jervonne Newsome
Bar No. 24094869
LFowler@winston.com
Envelope ID: 98192868
Filing Code Description: Brief Filed
Filing Description: REGARDING INTERLOCUTORY APPEAL
Status as of 3/7/2025 1:57 PM CST

Associated Case Party: NONPARTY PATIENT NO. 1

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jervonne Newsome | | JNewsome@winston.com | 3/7/2025 11:10:20 AM | SENT |
| William Logan | | WLogan@winston.com | 3/7/2025 11:10:20 AM | SENT |
| Thanh D.Nguyen | | tdnguyen@winston.com | 3/7/2025 11:10:20 AM | SENT |
| Evan D.Lewis | | edlewis@winston.com | 3/7/2025 11:10:20 AM | SENT |
| Olivia A.Wogon | | owogon@winston.com | 3/7/2025 11:10:20 AM | SENT |

Associated Case Party: THE STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 3/7/2025 11:10:20 AM | SENT |
| David G. Shatto | | david.shatto@oag.texas.gov | 3/7/2025 11:10:20 AM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 3/7/2025 11:10:20 AM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 3/7/2025 11:10:20 AM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 3/7/2025 11:10:20 AM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 3/7/2025 11:10:20 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David Walsh | | dwalsh@katxlaw.com | 3/7/2025 11:10:20 AM | SENT |
| Kimberly Gdula | | Kimberly.Gdula@oag.texas.gov | 3/7/2025 11:10:20 AM | SENT |
| David Phillips | | DPhillips@winston.com | 3/7/2025 11:10:20 AM | SENT |
| Jamie Vargo | | JVargo@winston.com | 3/7/2025 11:10:20 AM | SENT |

**M.R. 443**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lucy Fowler on behalf of Jervonne Newsome
Bar No. 24094869
LFowler@winston.com
Envelope ID: 98192868
Filing Code Description: Brief Filed
Filing Description: REGARDING INTERLOCUTORY APPEAL
Status as of 3/7/2025 1:57 PM CST

Case Contacts

| Jamie Vargo | | JVargo@winston.com | 3/7/2025 11:10:20 AM | SENT |
| Houston Docket | | ecf_houston@winston.com | 3/7/2025 11:10:20 AM | SENT |
| Brianna Krominga | | brianna.krominga@oag.texas.gov | 3/7/2025 11:10:20 AM | SENT |

**M.R. 444**

FILED
3/6/2025 3:52 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Shelia Bradley DEPUTY

Cause No. DC-25-01823

| | | |
|---|---|---|
| Nonparty Patient No. 1, | § | IN THE DISTRICT COURT OF |
| Nonparty Patient No. 2, | § | |
| Nonparty Patient No. 3, | § | |
| Nonparty Patient No. 4, | § | |
| Nonparty Patient No. 5, | § | |
| Nonparty Patient No. 6, | § | |
| Nonparty Patient No. 7, and | § | DALLAS COUNTY, TEXAS |
| Nonparty Patient No. 8, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| The State of Texas, | § | |
| *Defendant*. | § | 95ᵀᴴ JUDICIAL DISTRICT |

## THE STATE OF TEXAS'S NOTICE OF APPEAL

Pursuant to Texas Rules of Appellate Procedure 25.1(a) and 26.1(b), Defendant the State of Texas gives notice of an appeal of the trial court's oral denial of Defendants' Plea to the Jurisdiction and Plea in Abatement on March 6, 2025.

The State is entitled to an interlocutory appeal pursuant to Civil Practice and Remedies Code § 51.014(a)(8), which allows for an immediate appeal from an order that denies a plea to the jurisdiction.

The State appeals to the Fifteenth Court of Appeals. This is an accelerated appeal as provided by Texas Rule of Appellate Procedure 28.1. This is not a parental termination or child protection case, as defined in Rule 28.4.

**Pursuant to Texas Civil Practice and Remedies Code § 51.014(b), all further proceedings in this court are stayed pending resolution of the State's appeal.** This interlocutory appeal meets all the prerequisites for the automatic stay to apply. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8), (b), (c)(1). Pursuant to Tex. Civ. Prac. & Rem. Code § 6.001, as

**M.R. 445**

governmental officers, Defendants are not required to file a supersedeas bond for court costs. The State's appeal is therefore perfected upon the filing of the notice of appeal.

Dated: March 6, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
Telephone: (512) 463-2185
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

2

**M.R. 446**

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of March 2025, a copy of the foregoing document was served to all counsel of record in accordance with the Texas Rules of Civil Procedure.

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Johnathan Stone on behalf of Johnathan Stone
Bar No. 24071779
johnathan.stone@oag.texas.gov
Envelope ID: 98165074
Filing Code Description: Notice Of Appeal - CT. Of Appeals
Filing Description: DEFENDANT-DESIGNATION REQUESTED AT TIME OF ACCEPTANCE BY 4PM 3/7/2025
Status as of 3/7/2025 9:20 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David Walsh | | dwalsh@katxlaw.com | 3/6/2025 3:52:36 PM | SENT |
| David Phillips | | DPhillips@winston.com | 3/6/2025 3:52:36 PM | SENT |
| Jamie Vargo | | JVargo@winston.com | 3/6/2025 3:52:36 PM | SENT |
| Houston Docket | | ecf_houston@winston.com | 3/6/2025 3:52:36 PM | SENT |

Associated Case Party: THE STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 3/6/2025 3:52:36 PM | SENT |
| David G. Shatto | | david.shatto@oag.texas.gov | 3/6/2025 3:52:36 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 3/6/2025 3:52:36 PM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 3/6/2025 3:52:36 PM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 3/6/2025 3:52:36 PM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 3/6/2025 3:52:36 PM | SENT |

Associated Case Party: NONPARTY PATIENT NO. 1

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jervonne Newsome | | JNewsome@winston.com | 3/6/2025 3:52:36 PM | SENT |
| William Logan | | WLogan@winston.com | 3/6/2025 3:52:36 PM | SENT |
| Thanh D.Nguyen | | tdnguyen@winston.com | 3/6/2025 3:52:36 PM | SENT |
| Evan D.Lewis | | edlewis@winston.com | 3/6/2025 3:52:36 PM | SENT |
| Olivia A.Wogon | | owogon@winston.com | 3/6/2025 3:52:36 PM | SENT |

**M.R. 448**

| | |
|---|---|
| Nonparty Patient No. 1,<br>Nonparty Patient No. 2,<br>Nonparty Patient No. 3,<br>Nonparty Patient No. 4,<br>Nonparty Patient No. 5,<br>Nonparty Patient No. 6,<br>Nonparty Patient No. 7,<br>Nonparty Patient No. 8,<br>Nonparty Patient No. 9,<br>Nonparty Patient No. 10, and<br>Nonparty Patient No. 11,<br><br>     Plaintiffs,<br><br>vs.<br><br>The State of Texas,<br><br>     Defendant. | IN THE DISTRICT COURT OF<br><br>DALLAS COUNTY, TEXAS<br><br>95TH JUDICIAL DISTRICT |



## [~~PROPOSED~~] ORDER

After the Court denied the State of Texas's Verified Emergency Plea to the Jurisdiction and Plea in Abatement, the Court heard argument on the Nonparty Patients' Petition for a Motion for a Protective Order during the same hearing.

While that argument unfolded, the State represented that it had filed an interlocutory appeal challenging the Court's ruling on jurisdiction and abatement. In light of this development, the Court hereby **ORDERS** that any and all production obligations with respect to the State's subpoenas served on Children's Medical Center and UT Southwestern Medical Center (the "Hospital Systems") are hereby **STAYED** in their entirety. The Hospital Systems shall not produce *any* documents to the State until the interlocutory appeal reaches a final resolution.

1

**M.R. 449**

March 6, 2025.

Hon. Monica McCoy Purdy
95th Judicial District Court
Dallas County, Texas

2

**M.R. 450**

| | |
|---|---|
| **From:** | Logan, William |
| **To:** | Holland, Anika; Sutker, Cory; "David Walsh"; David Shatto; Priyanka Thomas |
| **Cc:** | Rob Farquharson; Johnathan Stone; Newsome, Jervonne D.; Abby Smith; Emily Samuels; Pauline Sisson; "Smyser, Craig"; "Wolf, Alex"; "Nicole LeBoeuf"; "Legg, W. Henry"; WFG_DrCooper; Packman, Zoe; "Avi Moshenberg"; "Padley, Drew"; "Amy Ooi"; Agnolucci, Simona; Dyer, Barrington; Cooper, Jackie; nonparty-patient-counsel |
| **Subject:** | RE: Nonparty The University of Texas Southwestern Medical Center"s Motion for Protective Order (State v. Cooper) |
| **Date:** | Thursday, March 6, 2025 10:02:21 AM |
| **Attachments:** | image007.png<br>image003.png |

Hi all,

Our responses are as follows:

- Motions to be set:
    - The Nonparty Patients' Expedited Motion for Partial Stay of Productions
    - The Nonparty Patients' Motion for Protection (re Party Discovery)
- Lawyers for correspondence
    - Jervonne Newsome - JNewsome@winston.com
    - William Logan – WLogan@winston.com
    - We would respectfully request that, if possible, the Court include our distribution list (nonparty-patient-counsel@winston.com) so that our entire team will receive any messages.
- Availability for March 7 at 11:30 (publicity motion)
    - Yes
- Availability for March 6 conference call (what motions need to be set)
    - Yes, depending on the length of today's hearing in Dallas County

Thanks,
William

**William Logan**

**Associate Attorney**

Winston & Strawn LLP

T: +1 713-651-2600

D: +1 713-651-2766

F: +1 713-651-2700

Email | winston.com

*Pronouns: He, Him, His*

**WINSTON & STRAWN** LLP

**From:** Holland, Anika <AHolland@willkie.com>

M.R. 451

**Sent:** Thursday, March 6, 2025 11:49 AM
**To:** Sutker, Cory <Cory.Sutker@cooperscully.com>; 'David Walsh' <dwalsh@kaktxlaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Priyanka Thomas <pthomas@kaktxlaw.com>
**Cc:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Newsome, Jervonne D. <JNewsome@winston.com>; Abby Smith <Abby.Smith@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Logan, William <WLogan@winston.com>; 'Smyser, Craig' <csmyser@steptoe.com>; 'Wolf, Alex' <awolf@steptoe.com>; 'Nicole LeBoeuf' <nicole@leboeuflaw.com>; 'Legg, W. Henry' <wlegg@steptoe.com>; WFG_DrCooper <WFG_DrCooper@willkie.com>; Packman, Zoe <ZPackman@willkie.com>; 'Avi Moshenberg' <avi.moshenberg@lmbusinesslaw.com>; 'Padley, Drew' <dpadley@steptoe.com>; 'Amy Ooi' <amy@leboeuflaw.com>; Agnolucci, Simona <SAgnolucci@willkie.com>; Dyer, Barrington <BDyer@willkie.com>; Cooper, Jackie <Jackie.Cooper@cooperscully.com>
**Subject:** RE: Nonparty The University of Texas Southwestern Medical Center's Motion for Protective Order (State v. Cooper)


I have heard from everyone except the nonparty patients' counsel.  William, Jervonne, can you let me know any additional motions and your availability for a 4:30pm conference call today?


**Anika Holland**
**Willkie Farr & Gallagher LLP**
333 Bush St | San Francisco, CA 94104
Direct: +1 415 858 7411 | Fax: +1 415 858 7599
aholland@willkie.com | vCard | www.willkie.com bio
Pronouns: she, her, hers

---

**From:** Sutker, Cory <Cory.Sutker@cooperscully.com>
**Sent:** Thursday, March 6, 2025 9:09 AM
**To:** 'David Walsh' <dwalsh@kaktxlaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Holland, Anika <AHolland@willkie.com>; Priyanka Thomas <pthomas@kaktxlaw.com>
**Cc:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Johnathan Stone <Johnathan.Stone@oag.texas.gov>; JNewsome@winston.com; Abby Smith <Abby.Smith@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; 'Logan, William' <WLogan@winston.com>; 'Smyser, Craig' <csmyser@steptoe.com>; 'Wolf, Alex' <awolf@steptoe.com>; 'Nicole LeBoeuf' <nicole@leboeuflaw.com>; 'Legg, W. Henry' <wlegg@steptoe.com>; WFG_DrCooper <WFG_DrCooper@willkie.com>; Packman, Zoe <ZPackman@willkie.com>; 'Avi Moshenberg' <avi.moshenberg@lmbusinesslaw.com>; 'Padley, Drew' <dpadley@steptoe.com>; 'Amy Ooi' <amy@leboeuflaw.com>; Agnolucci, Simona <SAgnolucci@willkie.com>; Dyer, Barrington <BDyer@willkie.com>; Cooper, Jackie <Jackie.Cooper@cooperscully.com>
**Subject:** RE: Nonparty The University of Texas Southwestern Medical Center's Motion for Protective Order (State v. Cooper)

**\*\*\* EXTERNAL EMAIL \*\*\***

# M.R. 452

On behalf of Children's –

Motions to be Set – We still need to address portions of Children's MPO in Lau and Cooper unrelated to medical records, though we have had on-going discussions with the State.  We also will need to have the Motion for Seal heard related to the more recent medical records issue.

Lawyers for correspondence:  Cory Sutker (cory.sutker@cooperscully.com) and Jackie Cooper (Jackie.cooper@cooperscully.com)

Availability for 3/7:  I am not available, Jackie can participate

Availability for 3/6 @ 4:30:  I am available

Sealed records:  The info that is the subject our Motion to Seal has been appropriately sealed.

Again, I want to thank everyone for their assistance in helping us navigate this issue.  I know everyone's time is valuable and regret having to divert attention temporarily.



**Cory M. Sutker**

900 Jackson St. #100, Dallas, TX 75202
Direct: 214.712.9558 | Main: 214.712.9500 | Fax: 214.712.9540
Email: Cory.Sutker@cooperscully.com  |  www.cooperscully.com
| |

This correspondence is for the named persons' use only, and it contains confidential or legally privileged information or both. No confidentiality or privilege is waived or lost by any mis-transmission. If you receive this correspondence in error, please immediately notify the sender and delete it from your system. You must not disclose, copy or rely on any part of this correspondence if you are not the intended recipient.

**From:** David Walsh <dwalsh@kaktxlaw.com>
**Sent:** Thursday, March 6, 2025 10:00 AM
**To:** David Shatto <David.Shatto@oag.texas.gov>; Holland, Anika <AHolland@willkie.com>; Priyanka Thomas <pthomas@kaktxlaw.com>
**Cc:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Johnathan Stone <Johnathan.Stone@oag.texas.gov>; JNewsome@winston.com; Abby Smith <Abby.Smith@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; 'Logan, William' <WLogan@winston.com>; 'Smyser, Craig' <csmyser@steptoe.com>; 'Wolf, Alex' <awolf@steptoe.com>; 'Nicole LeBoeuf' <nicole@leboeuflaw.com>; Sutker, Cory <Cory.Sutker@cooperscully.com>; 'Legg, W. Henry' <wlegg@steptoe.com>; WFG_DrCooper <WFG_DrCooper@willkie.com>; Packman, Zoe <ZPackman@willkie.com>; 'Avi Moshenberg' <avi.moshenberg@lmbusinesslaw.com>; 'Padley, Drew' <dpadley@steptoe.com>; 'Amy Ooi' <amy@leboeuflaw.com>; Agnolucci, Simona <SAgnolucci@willkie.com>; Dyer, Barrington <BDyer@willkie.com>
**Subject:** RE: Nonparty The University of Texas Southwestern Medical Center's Motion for Protective Order (State v. Cooper)

All – on behalf of UT Southwestern, I respond as follows:

- Motions to be set:
    - Not sure of any at this time, but I may need yesterday's Motions for Protection set for hearing if, or at, the same time as the Rule 12 Motion
- Lawyers for correspondence
    - David Walsh [dwlash@kaktxlaw.com](dwlash@kaktxlaw.com)
- Availability for March 7 at 11:30 (publicity motion)
    - Yes
- Availability for March 6 conference call (what motions need to be set)
    - Yes (but since it is just me, it likely depends on whether we are still in Court for today's hearing in Dallas County)
- Sealing
    - I'm not sure what should be sealed

dmw

David M. Walsh IV | Partner
Board Certified Civil Appellate Law
Texas Board of Legal Specialization
**KERSHAW ANDERSON KING, PLLC**
12400 Coit Rd., Ste. 800, Dallas, Texas 75251
Main: 214.347.4993
Email: [dwalsh@kaktxlaw.com](dwalsh@kaktxlaw.com)
[www.kershawandersonking.com](www.kershawandersonking.com)

---

**From:** David Shatto <[David.Shatto@oag.texas.gov](David.Shatto@oag.texas.gov)>
**Sent:** Thursday, March 6, 2025 9:47 AM
**To:** Holland, Anika <[AHolland@willkie.com](AHolland@willkie.com)>; David Walsh <[dwalsh@kaktxlaw.com](dwalsh@kaktxlaw.com)>; Priyanka Thomas <[pthomas@kaktxlaw.com](pthomas@kaktxlaw.com)>
**Cc:** Rob Farquharson <[Rob.Farquharson@oag.texas.gov](Rob.Farquharson@oag.texas.gov)>; Johnathan Stone <[Johnathan.Stone@oag.texas.gov](Johnathan.Stone@oag.texas.gov)>; [JNewsome@winston.com](JNewsome@winston.com); Abby Smith <[Abby.Smith@oag.texas.gov](Abby.Smith@oag.texas.gov)>; Emily Samuels <[Emily.Samuels@oag.texas.gov](Emily.Samuels@oag.texas.gov)>; Pauline Sisson <[Pauline.Sisson@oag.texas.gov](Pauline.Sisson@oag.texas.gov)>; 'Logan, William' <[WLogan@winston.com](WLogan@winston.com)>; 'Smyser, Craig' <[csmyser@steptoe.com](csmyser@steptoe.com)>; 'Wolf, Alex' <[awolf@steptoe.com](awolf@steptoe.com)>; 'Nicole LeBoeuf' <[nicole@leboeuflaw.com](nicole@leboeuflaw.com)>; Sutker, Cory <[Cory.Sutker@cooperscully.com](Cory.Sutker@cooperscully.com)>; 'Legg, W. Henry' <[wlegg@steptoe.com](wlegg@steptoe.com)>; WFG_DrCooper <[WFG_DrCooper@willkie.com](WFG_DrCooper@willkie.com)>; Packman, Zoe <[ZPackman@willkie.com](ZPackman@willkie.com)>; 'Avi Moshenberg' <[avi.moshenberg@lmbusinesslaw.com](avi.moshenberg@lmbusinesslaw.com)>; 'Padley, Drew' <[dpadley@steptoe.com](dpadley@steptoe.com)>; 'Amy Ooi' <[amy@leboeuflaw.com](amy@leboeuflaw.com)>; Agnolucci, Simona <[SAgnolucci@willkie.com](SAgnolucci@willkie.com)>; Dyer, Barrington <[BDyer@willkie.com](BDyer@willkie.com)>
**Subject:** RE: Nonparty The University of Texas Southwestern Medical Center's Motion for Protective Order (State v. Cooper)

All,

The State's (Plaintiff) responses are as follows:

**M.R. 454**

- Motions asked to be set:
    - Dallas County court is scheduled to hear non-party motion for protection at 3pm. Depending on what the Court does there, the State may still need our Motion for Protection to be heard.
- Lawyers for correspondence
    - Rob Farquharson [Rob.Farquharson@oag.texas.gov](mailto:Rob.Farquharson@oag.texas.gov)
    - David Shatto [David.Shatto@oag.texas.gov](mailto:David.Shatto@oag.texas.gov)
- Availability for zoom hearing March 7 @ 11:30 am
    - Yes
- Availability for conference call today at 4:30 pm
    - Yes
- E-filing / all filings now sealed
    - It is my understanding that the cases are available for e-filing, and our office was not able to locate the PMP records, indicating that they are under seal.

**David G. Shatto**
Assistant Attorney General . Consumer Protection . Office of the Attorney General
Phone: 512.475.4656 Email: [David.Shatto@oag.texas.gov](mailto:David.Shatto@oag.texas.gov)

PRIVILEGED AND CONFIDENTIAL: This communication and any attachments are intended solely for the use of the individual or entity to which it is addressed, may be confidential and/or privileged pursuant to Government Code sections 552.101, 552.103, 552.107 and 552.111, and should not be disclosed, copied, or distributed without the express authorization of the Attorney General. If you have received this e-mail in error, immediately delete same and contact the sender.

---

**From:** Holland, Anika <[AHolland@willkie.com](mailto:AHolland@willkie.com)>
**Sent:** Thursday, March 6, 2025 9:38 AM
**To:** David Walsh <[dwalsh@kaktxlaw.com](mailto:dwalsh@kaktxlaw.com)>; Priyanka Thomas <[pthomas@kaktxlaw.com](mailto:pthomas@kaktxlaw.com)>
**Cc:** David Shatto <[David.Shatto@oag.texas.gov](mailto:David.Shatto@oag.texas.gov)>; Rob Farquharson <[Rob.Farquharson@oag.texas.gov](mailto:Rob.Farquharson@oag.texas.gov)>; Johnathan Stone <[Johnathan.Stone@oag.texas.gov](mailto:Johnathan.Stone@oag.texas.gov)>; [JNewsome@winston.com](mailto:JNewsome@winston.com); Abby Smith <[Abby.Smith@oag.texas.gov](mailto:Abby.Smith@oag.texas.gov)>; Emily Samuels <[Emily.Samuels@oag.texas.gov](mailto:Emily.Samuels@oag.texas.gov)>; Pauline Sisson <[Pauline.Sisson@oag.texas.gov](mailto:Pauline.Sisson@oag.texas.gov)>; 'Logan, William' <[WLogan@winston.com](mailto:WLogan@winston.com)>; 'Smyser, Craig' <[csmyser@steptoe.com](mailto:csmyser@steptoe.com)>; 'Wolf, Alex' <[awolf@steptoe.com](mailto:awolf@steptoe.com)>; 'Nicole LeBoeuf' <[nicole@leboeuflaw.com](mailto:nicole@leboeuflaw.com)>; Sutker, Cory <[Cory.Sutker@cooperscully.com](mailto:Cory.Sutker@cooperscully.com)>; 'Legg, W. Henry' <[wlegg@steptoe.com](mailto:wlegg@steptoe.com)>; WFG_DrCooper <[WFG_DrCooper@willkie.com](mailto:WFG_DrCooper@willkie.com)>; Packman, Zoe <[ZPackman@willkie.com](mailto:ZPackman@willkie.com)>; 'Avi Moshenberg' <[avi.moshenberg@lmbusinesslaw.com](mailto:avi.moshenberg@lmbusinesslaw.com)>; 'Padley, Drew' <[dpadley@steptoe.com](mailto:dpadley@steptoe.com)>; 'Amy Ooi' <[amy@leboeuflaw.com](mailto:amy@leboeuflaw.com)>; Agnolucci, Simona <[SAgnolucci@willkie.com](mailto:SAgnolucci@willkie.com)>; Dyer, Barrington <[BDyer@willkie.com](mailto:BDyer@willkie.com)>
**Subject:** RE: Nonparty The University of Texas Southwestern Medical Center's Motion for Protective Order (State v. Cooper)

All (minus the Court):

Dr. Cooper's counsel is available for a 4:30pm conference call today and we can supply the dial-in. We are also available for a Zoom hearing tomorrow at 11:30 on the publicity order motion—counsel

for the State please let us know if that works for you.  If everyone could confirm availability for the conference call and provide 1-2 attorney emails, I can respond with the full list to the Court.  Going forward, please CC our alias, WFG_DrCooper@willkie.com, and avi.moshenberg@lmbusinesslaw.com.

Thank you!
Anika

**Anika Holland**
**Willkie Farr & Gallagher LLP**
333 Bush St | San Francisco, CA 94104
Direct: +1 415 858 7411 | Fax: +1 415 858 7599
aholland@willkie.com | vCard | www.willkie.com bio
Pronouns: she, her, hers

**From:** District Court 493rd . <493@co.collin.tx.us>
**Sent:** Thursday, March 6, 2025 7:10 AM
**To:** David Walsh <dwalsh@kaktxlaw.com>; Priyanka Thomas <pthomas@kaktxlaw.com>; Amy Patterson <apatterson@co.collin.tx.us>; District Court 493rd . <493@co.collin.tx.us>
**Cc:** David.Shatto@oag.texas.gov; Rob.Farquharson@oag.texas.gov; Johnathan.Stone@oag.texas.gov; JNewsome@winston.com; 'Abby Smith' <Abby.Smith@oag.texas.gov>; 'Emily Samuels' <Emily.Samuels@oag.texas.gov>; 'Pauline Sisson' <Pauline.Sisson@oag.texas.gov>; 'Logan, William' <WLogan@winston.com>; 'Smyser, Craig' <csmyser@steptoe.com>; 'Wolf, Alex' <awolf@steptoe.com>; 'Nicole LeBoeuf' <nicole@leboeuflaw.com>; Sutker, Cory <Cory.Sutker@cooperscully.com>; 'Legg, W. Henry' <wlegg@steptoe.com>; WFG_DrCooper <WFG_DrCooper@willkie.com>; Packman, Zoe <ZPackman@willkie.com>; 'Avi Moshenberg' <avi.moshenberg@lmbusinesslaw.com>; 'Padley, Drew' <dpadley@steptoe.com>; 'Amy Ooi' <amy@leboeuflaw.com>; Agnolucci, Simona <SAgnolucci@willkie.com>; Dyer, Barrington <BDyer@willkie.com>
**Subject:** RE: Nonparty The University of Texas Southwestern Medical Center's Motion for Protective Order (State v. Cooper)
**Importance:** High

*** EXTERNAL EMAIL ***

All – Ms. Patterson is out of office; I am reaching out only regarding settings and scheduling information as we cannot delay further in setting matters in this cause.  The Court has a need to speak with all counsel today to ascertain after our power outage and inability to access the network on Tuesday when we can reschedule the publicity motion and also any other filings the Parties are asking to be set.  Please coordinate and send one email responding to the following:

What motions are currently asked to be set in each case?

Can you please identify one (and no more than two) lawyers for each party/non-party the Court should include in any correspondence related to these cases?

M.R. 456

Are all counsel available for a Zoom hearing tomorrow on March 7 @ 11:30AM on the publicity motion only?

Are all available for a conference call today at 4:30PM to discuss the current list of motions that need to be set? Can one of the firms volunteer to set up a conference line?

Finally, the clerk's office was provided the copy we received of the Motion for Protective Order; however, the case should be available for e-filing. Please advise ASAP if it is not available for e-filing and all please review and confirm that all filings that should be sealed now are.

We look forward to receiving your combined responses. Many thanks.

Christine Nowak

Judge – 493rd District Court in Collin County, Texas
Russell A. Steindam Courts Building
2100 Bloomdale Road
McKinney, Texas 75071
Court: (214) 491-4870

---

**From:** David Walsh <dwalsh@kaktxlaw.com>
**Sent:** Wednesday, March 5, 2025 7:56 PM
**To:** Priyanka Thomas <pthomas@kaktxlaw.com>; Amy Patterson <apatterson@co.collin.tx.us>; District Court 493rd . <493@co.collin.tx.us>
**Cc:** David.Shatto@oag.texas.gov; Rob.Farquharson@oag.texas.gov; Johnathan.Stone@oag.texas.gov; JNewsome@winston.com; 'Abby Smith' <Abby.Smith@oag.texas.gov>; 'Emily Samuels' <Emily.Samuels@oag.texas.gov>; 'Pauline Sisson' <Pauline.Sisson@oag.texas.gov>; 'Logan, William' <WLogan@winston.com>; 'Smyser, Craig' <csmyser@steptoe.com>; 'Wolf, Alex' <awolf@steptoe.com>; 'Nicole LeBoeuf' <nicole@leboeuflaw.com>; Sutker, Cory <Cory.Sutker@cooperscully.com>; 'Legg, W. Henry' <wlegg@steptoe.com>; 'WFG_DrCooper' <WFG_DrCooper@willkie.com>; 'Packman, Zoe' <ZPackman@willkie.com>; 'Avi Moshenberg' <avi.moshenberg@lmbusinesslaw.com>; 'Padley, Drew' <dpadley@steptoe.com>; 'Amy Ooi' <amy@leboeuflaw.com>; 'Agnolucci, Simona' <SAgnolucci@willkie.com>; BDyer@willkie.com
**Subject:** RE: Nonparty The University of Texas Southwestern Medical Center's Motion for Protective Order (State v. Cooper)

***** **WARNING:** External Email. Do not click links or open attachments that are unsafe. *****

Ms. Patterson – to be clear, we want to file this Motion in the State v. Cooper case.

dmw

David M. Walsh IV | Partner

Board Certified Civil Appellate Law
Texas Board of Legal Specialization
**KERSHAW ANDERSON KING, PLLC**
12400 Coit Rd., Ste. 800, Dallas, Texas 75251
Main: 214.347.4993
Email: dwalsh@kaktxlaw.com
www.kershawandersonking.com

---

**From:** Priyanka Thomas <pthomas@kaktxlaw.com>
**Sent:** Wednesday, March 5, 2025 7:52 PM
**To:** apatterson@co.collin.tx.us; 493@co.collin.tx.us
**Cc:** David.Shatto@oag.texas.gov; Rob.Farquharson@oag.texas.gov; Johnathan.Stone@oag.texas.gov; JNewsome@winston.com; 'Abby Smith' <Abby.Smith@oag.texas.gov>; 'Emily Samuels' <Emily.Samuels@oag.texas.gov>; 'Pauline Sisson' <Pauline.Sisson@oag.texas.gov>; 'Logan, William' <WLogan@winston.com>; 'Smyser, Craig' <csmyser@steptoe.com>; 'Wolf, Alex' <awolf@steptoe.com>; 'Nicole LeBoeuf' <nicole@leboeuflaw.com>; Sutker, Cory <Cory.Sutker@cooperscully.com>; 'Legg, W. Henry' <wlegg@steptoe.com>; 'WFG_DrCooper' <WFG_DrCooper@willkie.com>; 'Packman, Zoe' <ZPackman@willkie.com>; 'Avi Moshenberg' <avi.moshenberg@lmbusinesslaw.com>; David Walsh <dwalsh@kaktxlaw.com>; 'Padley, Drew' <dpadley@steptoe.com>; 'Amy Ooi' <amy@leboeuflaw.com>; 'Agnolucci, Simona' <SAgnolucci@willkie.com>; BDyer@willkie.com
**Subject:** Nonparty The University of Texas Southwestern Medical Center's Motion for Protective Order (State v. Cooper)

Good evening, Ms. Patterson,

Nonparty The University of Texas Southwestern Medical Center attempted to file "Nonparty The University of Texas Southwestern Medical Center's Motion for Protective Order" via the e-filing system into Cause No. 493-08026-2024 (State v. Cooper). Upon contacting e-file Texas, we were advised that the District Court removed that cause number from e-file. Despite the case having been removed from e-file, we attempted to refile the case from the filing history but were unable to do so. Thus, please find attached "Nonparty The University of Texas Southwestern Medical Center's Motion for Protective Order" for the State v. Cooper case.

Nonparty The University of Texas Southwestern Medical Center was able to file a Motion for Protective order in the companion case, State v. Lau, Cause No. 493-07676-2024.

Thank you,

Priyanka

**Privanka Thomas | Associate**
**KERSHAW ANDERSON KING. PLLC**
**12400 Coit Rd.. Ste. 800. Dallas. Texas 75251**
**Main: 214.347.4993 | Direct: 972.996.7889**

M.R. 458



**Email:** pthomas@kaktxlaw.com
www.kershawandersonking.com

**Confidentiality Notice**

THIS INFORMATION IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.  IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THE COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY AT 214-347-4993 OR pthomas@kaktxlaw.com THANK YOU.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.



## *493-07676-2024, The State of Texas vs. May C Lau, M.D.*

TX District & County - Collin District

493rd District Court

This case was retrieved on 03/09/2025

## Header

**Case Number:** 493-07676-2024
**Date Filed:** 10/18/2024
**Date Full Case Retrieved:** 03/09/2025
**Status:** Pending
**Misc:** (78) All Other Civil Cases; Civil

## Summary

**Case Type**: Civil

## Proceedings

| Date | # | Proceeding Text | Details |
|---|---|---|---|
| 03/05/2025 | | Supplemental | Second Supplement to the Nonparty Patients' Response to the State's Emergency Brief in Support of Oral Motion for Protection |
| 03/05/2025 | | Motion | Nonparty The University of Texas Southwestern Medical Center's Motion for Protective Order |
| 03/07/2025 | | Judge's Docket Entry | Case called for hearing on 3/7 in related case 493-08026-2024 on Cooper Request for Judicial Notice and Motion for Order Restraining Parties from Making Extrajudicial Statements. Appearances stated. Prior to taking up Motion, Court orders Childrens/UTSW to comply with Court's Feb 28 Order re: MTV discovery in this cause; and Court amends Feb 28 Order re: Roll 1 in this cause- orders Childrens/UTSW to continue collection of documents for production and to be prepared to produce on March 21 - no rolling production to occur prior to that date. Court sets remaining outstanding motions in Lau/Cooper for hearing on March 20. |
| 03/20/2025 | | Motion Hearing (1:15 PM) (Judicial Officer Nowak, Christine) | State's Motion for Protection |
| 03/20/2025 | | Motion Hearing (1:15 PM) (Judicial Officer Nowak, Christine) | State's Rule 12 Motion |
| 03/20/2025 | | Motion Hearing (1:15 PM) | |

## M.R. 460

The State of Texas vs. May C Lau, M.D.

| Date | # | Proceeding Text | Details |
|---|---|---|---|
| | | (Judicial Officer Nowak, Christine) | UTSW Motion for Protection |
| 03/20/2025 | | Motion Hearing          (1:15 PM)<br>(Judicial Officer Nowak, Christine) | Nonparty Patients Expedited Motion for Partial Stay of Production |
| 03/20/2025 | | Motion Hearing          (1:15 PM)<br>(Judicial Officer Nowak, Christine) | Nonparty Patients Motion for Protection re Party Discovery |
| 03/20/2025 | | Motion Hearing          (1:15 PM)<br>(Judicial Officer Nowak, Christine) | Children's Motion for a Protective Order re Requests other than Medical Records |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

End of Document

M.R. 461

ACCEPTED
15-25-00023-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/11/2025 4:08 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00023-CV

# IN THE FIFTEENTH COURT OF APPEALS
## AUSTIN, TEXAS

*State of Texas*,

**Appellant,**

**v.**

*Nonparty Patient No. 1, Nonparty Patient No. 2, Nonparty Patient No. 3, Nonparty Patient No. 4, Nonparty Patient No. 5, Nonparty Patient No. 6, Nonparty Patient No. 7, Nonparty Patient No. 8, Nonparty Patient No. 9, Nonparty Patient No. 10, and Nonparty Patient No. 11*,

**Appellees.**

On Appeal from the 95th Judicial District Court, Dallas County, Texas
Cause No. DC-25-01823, The Honorable Monica McCoy Purdy presiding

## NONPARTY PATIENTS' EMERGENCY MOTION TO STAY DISCOVERY PENDING INTERLOCUTORY APPEAL

Jervonne D. Newsome (Lead Counsel)
Texas Bar No. 24094869
jnewsome@winston.com
Thanh D. Nguyen
Texas Bar No. 24126931
tdnguyen@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
Evan D. Lewis
Texas Bar No. 24116670
edlewis@winston.com
Olivia A. Wogon
Texas Bar No. 24137299
oawogon@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

1

**M.R. 462**

## I. SUMMARY OF THE MOTION

The Appellees ("Nonparty Patients") respectfully move the Court to maintain the status quo during the pendency this appeal. Specifically, the Nonparty Patients ask that the Court stay any discovery obligations under the subpoenas served by State of Texas on Children's Health System of Texas ("Children's") and the University of Texas Southwestern Medical Center ("UT Southwestern") (collectively, the "Subpoenas").[1]

In the proceedings below, the State served the Subpoenas in Dallas County. The Subpoenas improperly demand that Children's and UT Southwestern produce all the Nonparty Patients' private medical records. In turn, the Nonparty Patients invoked Tex. R. Civ. P. 176.6(e); cited their privileges under Tex. R. Evid. 509 and Tex. R. Evid. 510; and sought a protective order in Dallas County.

During a hearing, before the Dallas County Court could rule on the Nonparty Patients' requests for protection, it first determined that it had jurisdiction over the Nonparty Patients' action. The State then filed notice of this interlocutory appeal mid hearing—before the Dallas County Court could reach the merits of the Nonparty Patients' request for protection, including their assertions of privileges against disclosing private medical records sought in the Subpoenas.

---

[1] Pursuant to the Collin County District Court's Protective Order § III(F), the Nonparty Patients have filed this Motion using a generic reference to avoid disclosing their identities as patients related to that litigation. Consistent with the Protective Order, the Nonparty Patients may be identified in camera or as otherwise ordered by the Court.

2

Since filing its notice interlocutory appeal, the State has insisted that Children's and UT Southwestern must begin producing materials responsive to the Subpoenas. That insistence is improper. The State's position eviscerates both the Nonparty Patients' procedural rights under Tex. R. Civ. P. 176(e) to be heard where the subpoenas were served and their substantive rights under Tex. R. Evid. 509 and 510 to withhold, or limit access to, their private health information.

The Nonparty Patients accordingly request an order from this Court that maintains the status quo and ensures that the automatic stay triggered by the State's interlocutory appeal does not have the unintended effect of substantively denying the Nonparty Patients' relief sought below.

## II. BASES FOR RELIEF

Pursuant to Tex. R. App. P. Rule 29.3, "[w]hen an appeal from an interlocutory order is perfected, the appellate court may make any temporary orders necessary to preserve the parties' rights until disposition of the appeal." Likewise, Tex. R. App. P. Rule 52.10 provides for "a motion to stay any underlying proceedings or for any other temporary relief." These rules offer "a way to 'preserve the status quo' while the appeal proceeds." *In re State*, 2024 WL 2983176, at *2 (Tex. June 14, 2024). These rules, and their purposes, support the Nonparty Patients' Motion.

### III. THE PROCEEDINGS BELOW

The only substantive issues pending below are the Nonparty Patients' requests for protection from the State's Subpoenas to Children's and UT Southwestern. App. A (2d Am. Pet.). The Subpoenas arise from the State's civil lawsuit against Dr. May C. Lau in Collin County's 493rd Judicial District, Cause No. 493-07677-2024, alleging, *inter alia*, violations of SB14 and deceptive billing practices. The Nonparty Patients are not parties to that lawsuit. The State's Subpoenas target the Nonparty Patients' medical records under color of that lawsuit, but the Subpoenas' requests are not tailored to the underlying dispute in any meaningful way. Instead, the Subpoenas request *all* the Nonparty Patients' medical records for at least the past four years, for *all* providers (not just Dr. Lau) at two of the largest hospital systems in Texas. App. B (Children's Subpoena); App. C (UT Southwestern Subpoena).

The Subpoenas are thus overly broad and facially demand the production of materials privileged under Tex. R. Evid. 509 and Tex. R. Evid 510—without focusing on any condition that is a fact of consequence in the Collin County lawsuit, as required under the litigation exceptions to those privileges. *See, e.g.*, App. B at 6 ("1. Produce documents relating to the care and treatment of [redacted] (DOB: [redacted]), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the

4

present."); App. C at 6; *see also R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994) ("To summarize, the exceptions to the medical and mental health privileges apply when (1) the records sought to be discovered are relevant to the condition at issue, and (2) the condition is relied upon as a part of a party's claim or defense, meaning that the condition itself is a fact that carries some legal significance. Both parts of the test must be met before the exception will apply.").

The State served both Subpoenas in Dallas County. *See, e.g.*, App. A ¶ 3. Consistent with Tex. R. Civ. P. 176.6(e), the Nonparty Patients—many of whom live in Dallas County, and whose responsive medical records are maintained in Dallas County—filed a petition moving for protection "in the county where the subpoena[s] [were] served" (i.e., in Dallas County). App. A ¶ 3. The State subsequently filed pleas to the jurisdiction and in abatement, contending (1) that in the State's role as a voluntary civil plaintiff, sovereign immunity precludes using Texas Rule of Civil Procedure 176.6(e) to challenge its subpoenas, and (2) that petitions seeking protection under Tex. R. Civ. P. 176.6(e) must be abated in favor of the originating trial court, effectively rendering the choice of challenging a subpoena in the county where it was served meaningless.

The Dallas County District Court set a hearing on the Nonparty Patients' request for protection for March 6, 2025. During that hearing, the Dallas County Court heard the State's pleas to the jurisdiction and in abatement, and, after

5

**M.R. 466**

extensive argument, rejected them. The Dallas County District Court then began hearing the Nonparty Patients' motion for protection from the Subpoenas. During argument, the State interrupted the proceedings by announcing that it had filed a notice of interlocutory appeal challenging the Court's jurisdictional rulings and the matter was automatically stayed. *See* App. F at 1 (email from Stone, J.); App. G at 1 (notice of interlocutory appeal). The State thereafter refused to participate in the Dallas County hearing and the Nonparty Patients were unable to have their motion for protection from the Subpoenas adjudicated.

Immediately after ending the Dallas County Court's hearing by filing the notice of interlocutory appeal, counsel for the State, Nonparty Patients, Children's, UT Southwestern, and Dr. Lau participated in a conference call with the trial court in Collin County. On that call, the State insisted that Collin County could move forward and order the hospitals to produce documents under the Subpoenas. The Nonparty Patients vigorously objected. (The State has filed no motion to compel in Collin County, and the Nonparty Patients' request for protection remains pending in Dallas County due to the instant appeal.)

Shortly thereafter, with the Dallas County Court unable to rule on the Nonparty Patients' motion for protection due to the instant interlocutory appeal, the Collin County orally ordered Children's and UT Southwestern to begin preparing for production a subset of the medical records sought in the Subpoenas.

App. D at 1 ("Court amends Feb 28 Order re Roll 1 – orders Childrens/UTSW to continue collection of documents and to be prepared to produce on March 21"). Children's and UT Southwestern are to begin producing the Nonparty Patients' medical records and private health information on March 21. *Id.*

Because such orders would disturb the status quo, violate the automatic stay, and irreparably harm the Nonparty Patients by disclosing their privileged and private medical records, the Nonparty Patients have filed this emergency motion.

## IV. ARGUMENT

The State is wrong that its interlocutory appeal from the Dallas County District Court's jurisdictional order effectively denies the Nonparty Patients the right to the substantive relief they have sought below. Instead, the automatic stay of the proceedings below prevents *any* court from ordering productions under the challenged subpoenas because those subpoenas remain stayed until an order is issued on the Nonparty Patients' motion for protection. *See, e.g.*, *In re Creuzot*, 2024 WL 4784362, at *4 (Tex. App.—Dallas Nov. 14, 2024, no pet.) ("Pursuant to rule 176.6, a motion for protective order stays a request for testimony and production of records until such time as the trial court rules on the motion."); *In re Reed*, 2007 WL 4440901, at *2 (Tex. App—Waco Dec. 19, 2007) (finding trial court's order for production of documents while motion for protection was pending in another district court to be an abuse of discretion). That order must

come from the Dallas County Court as that is the only court where the Nonparty Patients' motion for protection from the Subpoenas is pending. But the Dallas County Court cannot issue such an order until this appeal concludes.[2]

Nonetheless, the State has informed the Collin County trial court by email that it expects this appeal to take at least 6 to 9 months (App. H), and it is insisting that Children's and UT Southwestern must begin producing under the Subpoenas because the State cannot wait that long. Yet *the State* brought this appeal and prioritized it over having an appropriate protective order entered in Dallas County that would allow productions to begin while protecting the Nonparty Patients' privacy and privileges as appropriate under the law. The State cannot use this appeal as a shield to prevent the Nonparty Patients' from having their objections and privileges heard in Dallas County while also using its attendant delay as a sword to justify productions in Collin County during the automatic stay.

---

[2] The State has also insisted that Collin County may decide which portions of the Subpoenas Dallas County may adjudicate, including for patients who have not appeared or are otherwise unrepresented. However, as the first court seized with a controversy over the subpoenas, the Dallas County Court must decide how to adjudicate the subpoenas, including (1) which protections should be put into place for documents (such as visit logs) that may identify both represented and unrepresented patients and (2) how to handle the State's admissions that it did not give proper notice of the subpoenas to some patients, including unrepresented patients. App. E. Those issues were squarely before the Dallas County Court before the State filed this interlocutory appeal and accordingly remain automatically stayed in Dallas County until the interlocutory appeal is resolved. *See In re Geomet Recycling LLC*, 578 S.W.3d 82, 91 (Tex. 2019) (holding automatic stay cannot be selectively lifted to adjudicate discrete issues).

Given the imminent loss of the Nonparty Patients' procedural rights (to proceed in Dallas County) and substantive rights (to withhold privileged materials) below, this Court should stay any productions by Children's or UT Southwestern under the Subpoenas during the pendency of the appeal. Such orders are appropriate "to preserve the [Nonparty Patients'] rights until disposition of the appeal" (Tex. R. App. P. Rule 29.3) and to "'preserve the status quo' while the appeal proceeds" (*In re State*, 2024 WL 2983176, at *2).

## V.  CONCLUSION

This Court should enter an order maintaining the status quo by staying any productions from Children's and UT Southwestern in response to the Subpoenas while this interlocutory appeal is pending. The State filed this interlocutory appeal and caused any attendant delay. The cost of that delay cannot be the Nonparty Patients' procedural and substantive rights asserted below. The Nonparty Patients thus respectfully ask this Court for an order that will maintain the status quo and prevent the imminent and irreparable loss of their medical privacy and privileges.

Dated: March 11, 2025

Respectfully submitted,

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869
jnewsome@winston.com
Thanh D. Nguyen
Texas Bar No. 24126931

9

**M.R. 470**

tdnguyen@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
Evan D. Lewis
Texas Bar No. 24116670
edlewis@winston.com
Olivia A. Wogon
Texas Bar No. 24137299
oawogon@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR
APPELLEES**

## CERTIFICATE OF CONFERENCE

I hereby certify that consistent with FRAP 10.1(a)(5), counsel for Appellees have made a reasonable to attempt to confer with counsel of Appellants about the merits of this Motion and whether the Appellants oppose this Motion. Counsel for Appellees emailed counsel for Appellants on March 11, 2025, and March 12, 2025, regarding the substance of this Motion. As of this filing, counsel for the Appellants have not responded to either email requesting a position on the relief requested herein. Given the imminent danger to the Nonparty Patients' rights described in this Motion, they can wait no longer for a response from the Appellants and accordingly submit this Motion to the Court for resolution.

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 2409489

**M.R. 472**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2025, an electronic copy of this Emergency Motion to Stay Pending Interlocutory Appeal was served to counsel of record for Appellants via electronic service in accordance with Rule 9.5 of the Texas Rules of Appellant Procedure and by email to Appellant's counsel of record as follows:

Johnathan Stone — Johnathan.Stone@oag.texas.gov
Rob Farquaharson — Rob.Farquharson@oag.texas.gov
David Shatto — David.Shatto@oag.texas.gov
Abby Smith — Abby.Smith@oag.texas.gov
Ian Bergstrom — Ian.Bergstrom@oag.texas.gov
Christopher Molak — Christopher.Molak@oag.texas.gov
Amy Pletscher — Amy.Pletscher@oag.texas.gov

/s/ *Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 2409489

**M.R. 473**

# Appendix A

FILED
3/3/2025 6:36 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Sabrina Applewhite DEPUTY

Cause No. DC-25-01823

| | |
|---|---|
| Nonparty Patient No. 1, Nonparty Patient No. 2, Nonparty Patient No. 3, Nonparty Patient No. 4, Nonparty Patient No. 5, Nonparty Patient No. 6, Nonparty Patient No. 7, Nonparty Patient No. 8, Nonparty Patient No. 9, Nonparty Patient No. 10, and Nonparty Patient No. 11,<br><br>                    Plaintiffs,<br><br>      vs.<br><br>The State of Texas,<br><br>                    Defendant. | IN THE DISTRICT COURT OF<br><br>DALLAS COUNTY, TEXAS<br><br>95TH JUDICIAL DISTRICT |

**THE NONPARTY PATIENTS' SECOND AMENDED PETITION FOR MOTION FOR PROTECTION FROM DISCOVERY SUBPOENAS**

To the Honorable Judge of this Court:

Pursuant to Texas Rule of Civil Procedure 176.6(e), Plaintiffs ("Nonparty Patients")[1] move for protection from discovery subpoenas (Exhibits A and B) ("Subpoenas") that the State of Texas served on Children's Health System of Texas and UT Southwestern Medical Center ("Hospital Systems"). Ex. C ¶¶ 3–4. Nonparty Patients would respectfully show the Court as follows:

## I.    INTRODUCTION

1.    The State has brought a lawsuit in the 493rd Judicial District in Collin County, Texas (the "Lau Litigation"), alleging in its Original Petition (attached as Exhibit D) that Dr. May

---

[1] Pursuant to the Collin County District Court's Protective Order § III(F) (attached as Exhibit E), the Nonparty Patients have filed this Motion using a generic reference to avoid disclosing their identities as patients related to that litigation. Ex. C ¶ 5. Consistent with the Protective Order, the Nonparty Patients may be identified *in camera* or as otherwise ordered by the Court. *Id.*

1

**M.R. 475**

C. Lau violated provisions in Senate Bill 14 ("SB14") and engaged in false, misleading, or deceptive acts by providing gender affirming care to teenage patients. Ex. D ¶¶ 23, 43. On Monday, January 27, the State served sweeping Subpoenas in Dallas County on the Hospital Systems, demanding private medical records of 21 individuals, including the Nonparty Patients. Ex. A at 7; Ex. B at 7. The State's requests broadly seek all "documents relating to the care and treatment [of the nonparty]," irrespective of any relevance to the underlying litigation. Ex. A at 7; Ex. B at 7. The non-limiting examples in the State's requests underscore that the Subpoenas are invasive and target sensitive medical records, including psychotherapy notes. Ex. A at 7; Ex. B at 7. Nonparty Patients filed its Petition for Protection from Discovery Subpoenas on February 3, 2025, (Ex. G) and its Amended Petition for Protection from Discovery Subpoenas on February 20, 2025 (Ex. F).

2.      The Texas Rules of Evidence codify a longstanding physician-patient privilege that precludes such discovery. Tex. R. Evid. 509; Tex. R. Evid. 510. This privilege acknowledges that meaningful healthcare requires allowing patients to talk freely with their doctors on sensitive topics without fear of disclosure, or repercussions from the State. *See*, *e.g.*, *R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994) ("The basis for the privileges is twofold: (1) to encourage the full communication necessary for effective treatment, . . . and (2) to prevent unnecessary disclosure of highly personal information."). The State's requests in the Subpoenas—which are untethered to any issue of consequence in the Lau litigation—cannot plausibly satisfy the narrow exceptions to that privilege, and the requests are impermissibly broad, unduly burdensome, and unnecessarily target irrelevant information. The Nonparty Patients have thus filed this Petition in Dallas County, where the Subpoenas were served, seeking protection from the discovery sought.

2

M.R. 476

## II.    JURISDICTION

3.    The Court has jurisdiction over this matter under Texas Rules of Civil Procedure 176.6 and 192.6(a). A "[p]erson affected by the subpoena, may move for a protective order under Rule 192.6(b) . . . in a district court in the county where the subpoena was served." Tex. R. Civ. P. 176.6(e). The Nonparty Patients are not parties to the Lau Litigation but are each a nonparty patient about whom the State has sought medical records and other information from the Hospital Systems in the Subpoenas. Ex. C ¶ 2. The Nonparty Patients thus have standing to seek "an order protecting [Movant] from the discovery sought" because each is "a person affected by the subpoena." Tex. Tex. R. Civ. P. 176.6(e); R. Civ. P. 192.6(a). The Hospital Systems were both served the Subpoenas in Dallas County, where this Court is situated, via their common registered agent, CT Corporation System, at 1999 Bryan St, Suite 900, Dallas, TX 75201. Ex. A at 2; Ex. B at 2.

4.    To the extent the State may assert it enjoys sovereign immunity from the Nonparty Patients' petition for protection, it is wrong. "[W]here a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defendants will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense . . . germane to the matter in controversy." *Anderson, Clayton & Co. v. State ex rel. Allred*, 62 S.W.2d 107, 110 (Comm'n App. 1933); *see also Sec. Tr. Co. of Austin v. Lipscomb Cnty.*, 180 S.W.2d 151, 159 (Tex. 1945) ("When the state becomes a party to a suit it is subject to the same rules that govern other parties and a judgment for or against it must be given the same effect as would be given if it were an individual litigant.") (emphasis added); *State v. Zanco's Heirs*, 44 S.W. 527, 529 (Tex. Civ. App. 1898) ("When the state of Texas enters its courts as a litigant, it must be held subject to the same rules that govern other litigants"); *accord In re Google LLC¸* 2025 WL 258715 (Tex. App.−15th Dist., Jan. 16, 2025, no pet.) (granting mandamus against Attorney General's Office after finding the Office is not protected by sovereign immunity under Rule 199 and noting

3

# M.R. 477

that "[w]hen interpreting a procedural rule, we first look to the plain language of the rule"). The State has made no showing that it is exempt from the Rules of Procedure. This is unsurprising, because it has no such exemption. Courts in the State of Texas have routinely emphasized this point: "[T]he State is not exempt from these rules of procedure but is subject to them as any other litigant." *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 301 (Tex. 1976); *see also State v. Naylor*, 466 S.W.3d 783, 792 (Tex. 2015) ("where the Legislature has given no indication to the contrary the State must abide by the same rules to which private litigants are beholden"); *see also id.* (Boyd, J., concurring) ("Although the State enjoys unique immunities, it 'is subject to [procedural rules] as any other litigant.'" (citing *Lowe*, 540 S.W.2d at 301).

5. Furthermore, sovereign immunity is an inapplicable framework because its primary justification is to "protect[] the public fisc by shielding tax resources from being diverted to pay litigation costs and money judgments[.]" *Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation District No. 1*, 669 S.W.3d 178, 183 (Tex. 2023). Here, the Nonparty Patients do not seek an entry of a money judgment against the State. They simply seek the protection of their health records.

### III. BACKGROUND

6. In the Lau Litigation, the State's allegations largely center on Dr. Lau purportedly prescribing medicines to teenage patients, including testosterone. Ex. D ¶ 56. The State alleges that such care became unlawful under SB14 on September 1, 2023. *Id.* ¶¶ 23, 222. The State also alleges that Dr. Lau engaged in false, misleading, or deceptive practices after or around the enactment of SB14, purportedly to mislead pharmacies, insurance providers, or patients into believing that the patients' testosterone treatments were for purposes other than gender-affirming care to circumvent the restrictions in SB14. *Id.* ¶¶ 226–27.

7.     On January 27, 2024, the State served the Subpoenas on the Hospital Systems. Ex. A; Ex. B. The Subpoenas are substantially identical. Ex. A; Ex. B. Each includes the same requests for production for 21 nonparty patients:

> Produce documents relating to the care and treatment of [a patient] …, including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

Ex. A at 7; Ex. B at 7. There are no accompanying instructions or definitions that would limit the requested production in a meaningful way, such as only to materials that would be of legal consequence in the Lau Litigation. The only limitation in time is ambiguous. It is unclear whether the requests are limited to "documents … from January 1, 2021, through present," or whether that timeframe applies only to "correspondence from January 1, 2021, through present." In either event, there is no apparent, meaningful relationship between the nonparty patients' medical records (including highly sensitive materials, like psychotherapy notes) from 2021 or earlier and the State's allegations about Dr. Lau's actions in or around the enactment of SB14 in September 2023.

8.     Despite the obvious gravity of the privacy rights threatened by the Subpoenas for 21 nonparty patients, the State has inexplicably demanded compliance from the Hospital Systems within seven days from when the Subpoenas were served on January 27, 2024 (Ex. A at 5; Ex. B at 5), effectively denying many of the 21 nonparty patients a reasonable opportunity to obtain counsel and seek advice on their legal rights before compliance is due.

## IV.     ARGUMENT AND AUTHORITIES

9.     The Court should enter an order preventing the Hospital Systems from producing the materials sought in the Subpoenas because the State's requests are overly broad, seek irrelevant materials, and demand materials that are protected from disclosure under the Physician-Patient Privilege (Tex. R. Evid. 509) and the Mental Health Information Privilege (Tex. R. Evid. 510). Courts may enter orders protecting individuals from discovery by subpoena to prevent an invasion

5

**M.R. 479**

of personal rights, including privacy and privileges. Tex. R. Civ. P. 192.6(b); Tex. R. Civ. P. 176.6(e), 176.7. Courts also have the authority to limit the scope of discovery based on the needs and circumstances of the case. Tex. R. Civ. P. 192 cmt. 7.

10.     Under the Physician-Patient Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (1) a confidential communication between a physician and the patient that relates to or was made in connection with any professional services the physician rendered the patient; and (2) a record of the patient's identity, diagnosis, evaluation, or treatment created or maintained by a physician." Tex. R. Evid. 509(c). Similarly, under the Mental Health Information Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (A) a confidential communication between the patient and a professional; and (B) a record of the patient's identity, diagnosis, evaluation, or treatment that is created or maintained by a professional." Tex. R. Evid. 510(b)(1).

11.     It is self-evident from the State's Subpoenas that the documents sought are subject to the Physician-Patient Privilege and the Mental Health Information Privilege. Each request asks for "document relating to the care and treatment" of the nonparties, such as "medical … records," "psychotherapy notes," and "correspondence" with the nonparty patients, including Movant. Ex. A at 7; Ex. B at 7; Ex. C ¶ 2. Documents relating to the care and treatment of the nonparties, medical records, psychotherapy notes, and correspondence between the Hospital Systems, the nonparty patients, and healthcare providers will necessarily include confidential communications between the nonparty patients and their physicians and/or professionals, along with records of the nonparty patients' identities, diagnoses, evaluations, and treatments that were created or maintained by physicians and/or mental health professionals. *See generally In re Irvin*, No. 05-98-01771-CV,

6

**M.R. 480**

1998 WL 908955, at *4 (Tex. App.—Dallas Dec. 31, 1998, no pet.) (finding abuse of discretion and granting mandamus when district court ordered production of mental health records).

12.     There is no exception to the Physician-Patient Privilege or the Mental Health Information Privilege that would plausibly apply to the broad requests in the Subpoenas. If the State is suggesting that it is entitled to the nonparty patients' medical records because some information therein may be relevant to a party's claim or defense in the Lau Litigation it is wrong. The State's expansive requests cannot fit under such an exception. The exception to the Physician-Patient Privilege and Mental Health Information Privilege that applies when a party relies on a patient's medical condition (often referred to as the "patient-litigant exception") is narrow, particularly for nonparty patients. *See R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994). As the Texas Supreme Court has explained, it is not enough that there are allegations in the lawsuit for which a condition of the nonparty patient may be relevant—rather, "[t]he scope of the exception should be tied in a meaningful way to the legal consequences of the claim or defense." *Id.* at 842.

13.     In other words, for the patient-litigant exception to apply, discovery must be directed to information about a patient's condition that is "a 'part' of a claim or defense," and "must itself be a fact to which the substantive law assigns significance." *Id.* Generally, this means the discovery must be directed to a condition about which "the jury must make a factual determination." *Id.* at 843. Even then, the exception applies "only to the extent necessary to satisfy the discovery needs of the requesting party" when balanced against the privacy interests of the patients and requires *in camera* review of each document so that "any information not meeting this standard remains privileged and must be redacted or otherwise protected." *Id.*

14.     The State's Subpoenas cannot remotely meet this standard. The Subpoenas' requests are not directed to *any* specific condition whatsoever. They are broad requests to entire

Hospital Systems for all medical records and psychiatry notes about *any* condition or treatment, without any bounds or guidance based on the underlying lawsuit. Nor are the requests reasonably limited in time. At best, they seek all the Nonparty Patients' medical records, including psychiatry notes, for the past four years. Potentially, they seek all the Nonparty Patients' medical records, including psychiatry notes, since birth. Either way, they are untethered in time and scope from the Lau Litigation, which involves acts around or after SB14 was enacted in September 2023. These requests are thus too broad in scope and time to satisfy the patient-litigant exception. *See R.K.*, 887 S.W.2d at 843 (requiring "the request for records and the records disclosed are closely related in time and scope to the claims made … to avoid any unnecessary incursion into private affairs").

15.　　The Court should therefore enter an order protecting the Nonparty Patients from disclosure under the Subpoenas, including because the requests are not restrictively tailored to maintain the privilege for records and communications that would not be subject to the patient-litigant exception, if it applied at all. *See id.*; *c.f. Groves v. Gabriel*, 874 S.W.2d 660, 661 (Tex. 1994) ("However, a trial court's order compelling release of medical records should be restrictively drawn so as to maintain the privilege with respect to records or communications not relevant to the underlying suit.").

16.　　Alternatively, if the Court does not enter an order protecting the Nonparty Patients from the Subpoenas in whole, Movant respectfully requests an opportunity to review any proposed productions from the Hospital Systems to evaluate the documents produced for privilege before they are provided to the State. For claims of privilege, "the documents themselves may constitute the only evidence substantiating the claim of privilege." *Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986). The Nonparty Patients thus require a reasonable opportunity to review any documents that the Hospital Systems would produce to the State so that they may "segregate

8

**M.R. 482**

and produce the documents to the court" for *in camera* review to ensure that only relevant materials subject to the applicable privilege exception are produced, with appropriate redactions. *See id.* (providing for *in camera* review); *R.K.*, 887 S.W.2d at 843 ("Even when a document includes some information meeting this standard, any information not meeting this standard remains privileged and must be redacted or otherwise protected.") ("[W]hen requested, the trial court must perform an *in camera* inspection of the documents produced to assure that the proper balancing of interests, which we have described, occurs before production is ordered.").

17. For example, the State has no apparent interest in receiving documents that contain personally identifiable information about the Nonparty Patients, and that information should be redacted in any production. Nor does the State have any apparent interest in the Nonparty Patients' medical records from before SB14 was enacted in September 2023. After all, the State's allegations in the Lau Litigation turn on the actions *after* SB14 became law, and neither the identities of Dr. Lau's patients, nor their medical records and communications before September 2023, are facts of consequence that must be adjudicated.

18. Apart from the Nonparty Patients' privilege assertions, the requests in the Subpoenas are overbroad, directed to irrelevant information, and not proportional to the needs of the case. For instance, there are no limitations to exclude from production materials unrelated to the allegations against Dr. Lau. The State's expansive requests instead presumably encompass all care the Nonparty Patients have received from any provider affiliated with the Hospital Systems, potentially without any meaningful limitation in time, no matter how attenuated or divorced that care is from the Lau Litigation. The State's requests would potentially encompass, for instance, all unrelated physical and mental healthcare (including communications with providers other than Dr. Lau, emergency room visits, vaccinations, and pharmacy records) at the Hospital Systems,

without any apparent limitation whatsoever to restrict the requests to the subject matter of the Lau Litigation or a relevant timeframe.

19.     Given the extraordinary breadth of the requests and the attendant high likelihood that irrelevant materials would be produced, if the Court does not enter an order protecting the Nonparty Patients from production under the Subpoenas in whole, the Nonparty Patients request the opportunity to review any proposed production for relevance and, if appropriate, request that the Court conduct an *in camera* inspection of materials proposed for production that the Nonparty Patients identify as irrelevant to the Lau Litigation. *See, e.g.*, *Weisel Enterprises*, 718 S.W.2d at 58 (holding *in camera* review appropriate in situations when the documents' contents are the only evidence of discoverability).

## V.     CONCLUSION

20.     The State has overstepped the bounds of permissible nonparty discovery. Its Subpoenas to the Hospital Systems plainly seek materials about the Nonparty Patients that are protected from disclosure under the Physician-Patient Privilege and the Mental Health Information Privilege. The requests are also overbroad, seek irrelevant information, and are not proportional to the needs of the case, as they are not meaningfully restricted in time or subject matter to the allegations underpinning the Lau Litigation. The Court should therefore enter a protective order preventing the Hospital Systems from producing discovery in response to the Subpoenas or, alternatively, provide the Nonparty Patients an opportunity to review any proposed production and segregate documents for *in camera* review for relevance and privilege before they are produced.

## VI.     PRAYER FOR RELIEF

21.     For the foregoing reasons, the Nonparty Patients respectfully request that the Court set this Motion for hearing and, after the hearing, issue an order granting the relief requested herein.

10

**M.R. 484**

**DATED:** March 3, 2025

Respectfully submitted,

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869
Thanh D. Nguyen
Texas Bar No. 24126931
jnewsome@winston.com
tdnguyen@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
Evan D. Lewis
Texas Bar No. 24116670
Olivia A. Wogon
Texas Bar No. 24137299wlogan@winston.com
edlewis@winston.com
owogon@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

**CERTIFICATE OF CONFERENCE**

Counsel for the Nonparty Patients have personally conferred with the State during two in-person hearings held in Collin County, numerous emails, and several phone calls from February 26, 2025 until today. The Nonparty Patients and the State have substantively discussed every time presented to the Court in this petition for a motion, and despite best efforts, the Nonparty Patients and the State have not been able to resolve the matters presented.

Certified to the Day of March 3, 2025, by:

*/s/ William M. Logan*
William M. Logan
Texas Bar No. 24106214

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2025, an electronic copy of this Second Amended Petition was served on counsel of record via e-service. I also certify that on March 3, 2025, an electronic copy of this notice was served via email to counsel for the State of Texas at the following addresses:

Johnathan Stone — Johnathan.Stone@oag.texas.gov
Matthew Kennedy — Matt.Kennedy@oag.texas.gov
Rob Farquaharson — Rob.Farquharson@oag.texas.gov
David Shatto — David.Shatto@oag.texas.gov

*/s/ Thanh D. Nguyen*
Thanh D. Nguyen
Texas Bar No. 24126931

**M.R. 486**

# Appendix B

CAUSE NO. 493-07676-2024

| | | |
|---|---|---|
| THE STATE OF TEXAS. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D. | § | |
| Defendant. | § | 493RD JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Mauricio Segovia** who, being by me duly sworn, deposed and said:

"The following came to hand on **Jan 16, 2025, 11:25 am,**

**STATE'S NOTICE OF SUBPOENA DUCES TECUM, SUBPOENA DUCES TECUM PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205, PROTECTIVE ORDER,**

and was executed at **1999 BRYAN ST SUITE 900, DALLAS, TX 75201** within the county of DALLAS at 12:35 PM on **Thu, Jan 16 2025,** by delivering a true copy to the within named

**CHILDREN'S HEALTH SYSTEM OF TEXAS C/O CT CORPORATION SYSTEM**
**accepted by Intake Specialist William Miller**
Witness Fee $1.00

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Mauricio Segovia
Certification Number: PSC-1689
Certification Expiration: 8/31/2026

**BEFORE ME,** a Notary Public, on this day personally appeared **Mauricio Segovia,** known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON ___1/16/2025___

Notary Public, State of Texas

MARIA M. SEGOVIA
My Notary ID # 129480220
Expires July 5, 2025

**M.R. 488**

| | | |
|---|---|---|
| THE STATE OF TEXAS., | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## STATE'S NOTICE OF SUBPOENA DUCES TECUM

To:   Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201

Please take notice that pursuant to Tex. R. Civ. P. 205 gives you 10 days' notice of its intent to serve the attached subpoena duces tecum. The State of Texas has complied with all the requirements in Tex. R. Civ. P. 205.

Please take notice that the Court has entered the attached Protective Order in this matter expressly finding that attestations are not required. *See* Prot. Ord. at 10.

January 16, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division

# M.R. 489

State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2025, a copy of the foregoing document was served to all counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ Johnathan Stone
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

**M.R. 490**

# THE STATE OF TEXAS

## SUBPOENA DUCES TECUM
### PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

CAUSE NO. 493-07676-2024     IN THE 493rd JUDICIAL DISTRICT COURT OF
COLLIN COUNTY, TEXAS

*State of Texas vs. Defendant May C. Lau, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN RULE 176 T.R.C.P.**

**YOU ARE HEREBY COMMANDED TO SUMMON** Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201, to provide documents to the

**Office of the Attorney General**
300 West 15th Street
Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN SEVEN DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street, 9th Floor, Austin, TX 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on January 16, 2025,** at the request the request of the State of Texas.

# M.R. 491

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
Deputy Chief, Consumer Protection Division
State Bar No. 15092619

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**M.R. 492**

**SUBPOENA DUCES TECUM—DOCUMENTS REQUESTED**

1. Produce documents relating to the care and treatment of ███████████ (DOB: ████████ ███ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

2. Produce documents relating to the care and treatment of ███████ (DOB: ████████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

3. Produce documents relating to the care and treatment of ██████████ (DOB: ████████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

4. Produce documents relating to the care and treatment of ████████████ (DOB: ██████ , ██████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

5. Produce documents relating to the care and treatment of ██████████ (DOB: ██████████ ██████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

6. Produce documents relating to the care and treatment of █████████ (DOB: ████████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

7. Produce documents relating to the care and treatment of ████████████ (DOB: ████████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

8. Produce documents relating to the care and treatment of ████████████ (DOB: ████████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

9. Produce documents relating to the care and treatment of ████████████ (DOB: ████████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

10. Produce documents relating to the care and treatment of ████████████ (DOB: ████████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

11. Produce documents relating to the care and treatment of ████████████ (DOB: ████████████ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

**M.R. 493**

12. Produce documents relating to the care and treatment of ████████████ (DOB: ████ ██████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

13. Produce documents relating to the care and treatment of ████████████ (DOB: ██████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

14. Produce documents relating to the care and treatment of ██████████ (DOB: ██████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

15. Produce documents relating to the care and treatment of ████████ (DOB: ██ █ ██████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

16. Produce documents relating to the care and treatment of ██████████ (DOB: ██████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

17. Produce documents relating to the care and treatment of ██████████ (DOB: ████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

18. Produce documents relating to the care and treatment of ████████ (DOB: ████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

19. Produce documents relating to the care and treatment of ██████████ (DOB: ████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

20. Produce documents relating to the care and treatment of ██████████ (DOB: ████████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

21. Produce documents relating to the care and treatment of ████████████ (DOB: ██████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

# WITNESS SUBPOENA RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock, ___ .M. and executed

the _____ day of _____, 2025, at _____ o'clock, ___ .M. by delivering to the within named

_____ in person at _____ in _____

County, TX, a true copy of this Subpoena, and tendering said witness the sum of $_____.

By Deputy: _____, _____ County, TX.

Sheriff/Constable:_____, _____ County, TX.

**OR**

By:
Person who is not a party to the suit and is not less than 18 years of age.

**ACCEPTANCE OF SERVICE OF SUBPOENA BY WITNESS PER RULE 176 T.R.C.P.**

I, the undersigned witness named in the Subpoena acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

_____              _____
SIGNATURE                        DATE

# M.R. 495

# Appendix C

CAUSE NO. 493-07676-2024

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D. | § | |
| Defendant. | § | 493RD JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Mauricio Segovia** who, being by me duly sworn, deposed and said:

"The following came to hand on Jan 16, 2025, 11:25 am,

**STATE'S NOTICE OF SUBPOENA DUCES TECUM, SUBPOENA DUCES TECUM PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205, PROTECTIVE ORDER,**

and was executed at 1999 BRYAN ST SUITE 900, DALLAS, TX 75201 within the county of DALLAS at 12:35 PM on **Thu, Jan 16 2025**, by delivering a true copy to the within named

**UT SOUTHWESTERN MEDICAL CENTER C/O CT CORPORATION SYSTEM**
accepted by Intake Specialist William Miller
Witness Fee $1.00

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Mauricio Segovia
Certification Number: PSC-1689
Certification Expiration: 8/31/2026

BEFORE ME, a Notary Public, on this day personally appeared **Mauricio Segovia**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON ___1/16/2025___

MARIA M. SEGOVIA
My Notary ID # 129480220
Expires July 5, 2025

Notary Public, State of Texas

**M.R. 497**

| | | |
|---|---|---|
| THE STATE OF TEXAS., | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## STATE'S NOTICE OF SUBPOENA DUCES TECUM

To: UT Southwestern Medical Center c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201

Please take notice that pursuant to Tex. R. Civ. P. 205 gives you 10 days' notice of its intent to serve the attached subpoena duces tecum. The State of Texas has complied with all the requirements in Tex. R. Civ. P. 205.

Please take notice that the Court has entered the attached Protective Order in this matter expressly finding that attestations are not required. *See* Prot. Ord. at 10.

January 16, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division

# M.R. 498

State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2025, a copy of the foregoing document was served to all counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

**M.R. 499**

## THE STATE OF TEXAS

## SUBPOENA DUCES TECUM
## PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

CAUSE NO. 493-07676-2024  IN THE 493rd JUDICIAL DISTRICT COURT OF
COLLIN COUNTY, TEXAS

*State of Texas vs. Defendant May C. Lau, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN RULE 176 T.R.C.P.**

**YOU ARE HEREBY COMMANDED TO SUMMON** Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201, to provide documents to the

**Office of the Attorney General**
300 West 15th Street
Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN SEVEN DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street, 9th Floor, Austin, TX 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on January 16, 2025,** at the request the request of the State of Texas.

# M.R. 500

*/s/ Johnathan Stone*

JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
Deputy Chief, Consumer Protection Division
State Bar No. 15092619

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

**M.R. 501**

# SUBPOENA DUCES TECUM—DOCUMENTS REQUESTED

1. Produce documents relating to the care and treatment of ███████ (DOB: ████, ███ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

2. Produce documents relating to the care and treatment of ███████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

3. Produce documents relating to the care and treatment of ███████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

4. Produce documents relating to the care and treatment of ███████ (DOB: █████, ███ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

5. Produce documents relating to the care and treatment of ███████ (DOB: ███████ ███ ), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

6. Produce documents relating to the care and treatment of ██████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

7. Produce documents relating to the care and treatment of ██████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

8. Produce documents relating to the care and treatment of ██████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

9. Produce documents relating to the care and treatment of ██████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

10. Produce documents relating to the care and treatment of ██████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

11. Produce documents relating to the care and treatment of ██████ (DOB: █████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

## M.R. 502

12. Produce documents relating to the care and treatment of ████████ (DOB: ████ ████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

13. Produce documents relating to the care and treatment of ████████ (DOB: ████ ████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

14. Produce documents relating to the care and treatment of ████████ (DOB: ████ ████ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

15. Produce documents relating to the care and treatment of ████████ (DOB: ████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

16. Produce documents relating to the care and treatment of ████████ (DOB: ████ ████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

17. Produce documents relating to the care and treatment of ████████ (DOB: ████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

18. Produce documents relating to the care and treatment of ████████ (DOB: ████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

19. Produce documents relating to the care and treatment of ████████ (DOB: ████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

20. Produce documents relating to the care and treatment of ████████ (DOB: ████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

21. Produce documents relating to the care and treatment of ████████ (DOB: ████, ████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

## WITNESS SUBPOENA RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock, ___ .M. and executed

the _____ day of _____, 2025, at _____ o'clock, ___ .M. by delivering to the within named

_____ in person at _____ in _____

County, TX, a true copy of this Subpoena, and tendering said witness the sum of $_____.

By Deputy: _____, _____ County, TX.

Sheriff/Constable:_____, _____ County, TX.

**OR**

By:

Person who is not a party to the suit and is not less than 18 years of age.

**ACCEPTANCE OF SERVICE OF SUBPOENA BY WITNESS PER RULE 176 T.R.C.P.**

I, the undersigned witness named in the Subpoena acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

_____          _____
SIGNATURE                                DATE

# M.R. 504

# Appendix D



## *493-07676-2024, The State of Texas vs. May C Lau, M.D.*

TX District & County - Collin District

493rd District Court

This case was retrieved on 03/09/2025

## Header

**Case Number:** 493-07676-2024
**Date Filed:** 10/18/2024
**Date Full Case Retrieved:** 03/09/2025
**Status:** Pending
**Misc:** (78) All Other Civil Cases; Civil

## Summary

**Case Type**: Civil

## Proceedings

| Date | # | Proceeding Text | Details |
|---|---|---|---|
| 03/05/2025 | | Supplemental | Second Supplement to the Nonparty Patients' Response to the State's Emergency Brief in Support of Oral Motion for Protection |
| 03/05/2025 | | Motion | Nonparty The University of Texas Southwestern Medical Center's Motion for Protective Order |
| 03/07/2025 | | Judge's Docket Entry | Case called for hearing on 3/7 in related case 493-08026-2024 on Cooper Request for Judicial Notice and Motion for Order Restraining Parties from Making Extrajudicial Statements. Appearances stated. Prior to taking up Motion, Court orders Childrens/UTSW to comply with Court's Feb 28 Order re: MTV discovery in this cause; and Court amends Feb 28 Order re: Roll 1 in this cause- orders Childrens/UTSW to continue collection of documents for production and to be prepared to produce on March 21 - no rolling production to occur prior to that date. Court sets remaining outstanding motions in Lau/Cooper for hearing on March 20. |
| 03/20/2025 | | Motion Hearing (1:15 PM) (Judicial Officer Nowak, Christine) | State's Motion for Protection |
| 03/20/2025 | | Motion Hearing (1:15 PM) (Judicial Officer Nowak, Christine) | State's Rule 12 Motion |
| 03/20/2025 | | Motion Hearing (1:15 PM) | |

## M.R. 506

The State of Texas vs. May C Lau, M.D.

| Date | # | Proceeding Text | Details |
|---|---|---|---|
| | | (Judicial Officer Nowak, Christine) | UTSW Motion for Protection |
| 03/20/2025 | | Motion Hearing            (1:15 PM)<br>(Judicial Officer Nowak, Christine) | Nonparty Patients Expedited Motion for Partial Stay of Production |
| 03/20/2025 | | Motion Hearing            (1:15 PM)<br>(Judicial Officer Nowak, Christine) | Nonparty Patients Motion for Protection re Party Discovery |
| 03/20/2025 | | Motion Hearing            (1:15 PM)<br>(Judicial Officer Nowak, Christine) | Children's Motion for a Protective Order re Requests other than Medical Records |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**End of Document**

# M.R. 507

# Appendix E



NORTH AMERICA   SOUTH AMERICA   EUROPE   ASIA

**JERVONNE NEWSOME**
2121 N. Pearl St., 9th Floor
Dallas, Texas 75201
+1 214-453-6500
JNewsome@winston.com

**WILLIAM M. LOGAN**
800 Capitol St., Suite 2400
Houston, Texas 77002
+1 713-651-2600
WLogan@winston.com

March 3, 2025

<u>**VIA E-FILE TEXAS**</u>

Hon. Monica Purdy
95th Judicial District Court
George L. Allen, Sr. Courts Building
600 Commerce Street
6th Floor New Tower
Dallas, TX 75202

Re:     *Nonparty Patients No. 1, et al, vs The State of Texas*, Cause No. DC-25-01823

Dear Judge Purdy:

We write in our personal capacity as members of the bar to express a grave concern for the unrepresented patients affected by the State of Texas's subpoenas and requests for production in this matter. Over the course of conferring with the State on behalf of our clients, two of the State's counsel have acknowledged that the State does not have valid addresses for some of the patients whose records have been subpoenaed in this case. To the State's credit, it has acknowledged the notice concern and suggested that it might be able work with the hospital systems toward providing notice now, if the hospital has updated address information.

Texas law requires that patients whose medical records are sought through subpoenas are *served* with notice as required under the relevant rule. Tex. R. Civ. P. 205.3(c) ("If a party requests a nonparty to produce medical or mental health records of another nonparty, the requesting party must serve the nonparty whose records are sought with the notice required under this rule.").

As the State does not have current address information for at least some of the patients about whom it is seeking the discovery of medical records, there appears to be an alarming likelihood that at least some of the unrepresented patients who have not appeared in this case may not have received service of the subpoenas and thus may not have had an opportunity to preserve their rights or be heard.

**M.R. 509**



We bring this to the Court's attention as officers of the Court so that it may take any steps it deems appropriate to protect those unrepresented patients who have not appeared and ensure that they have been afforded the notice and due process required under the law.

Sincerely,


*/s/William M. Logan*                          */s/Jervonne Newsome*
William M. Logan                               Jervonne Newsome


cc:     Counsel of Record via E-File Texas
        Johnathan Stone via email to Johnathan.Stone@oag.texas.gov
        David Shatto via email to David.Shatto@oag.texas.gov
        Matt Kennedy via email to Matt.Kennedy@oag.texas.gov
        Rob Farquharson via email to Rob.Farquharson@oag.texas.gov

# Appendix F

| From: | Johnathan Stone <Johnathan.Stone@oag.texas.gov> |
|---|---|
| Sent: | Thursday, March 6, 2025 5:49 PM |
| To: | Nguyen, Thanh D.; kalonzo@dallascourts.org; Logan, William; Holland, Anika; Sutker, Cory; 'David Walsh'; David Shatto; Priyanka Thomas |
| Cc: | Rob Farquharson; Newsome, Jervonne D.; Abby Smith; Emily Samuels; Pauline Sisson; 'Smyser, Craig'; 'Wolf, Alex'; 'Nicole LeBoeuf'; 'Legg, W. Henry'; WFG_DrCooper; Packman, Zoe; 'Avi Moshenberg'; 'Padley, Drew'; 'Amy Ooi'; Agnolucci, Simona; Dyer, Barrington; Cooper, Jackie; nonparty-patient-counsel |
| Subject: | RE: Nonparty Patient No. 1 v. State - Proposed Order |
| Attachments: | 20250306_OAG's Notice of Appeal_Final.pdf |

Attached is the Notice of Appeal that was filed mid-hearing that immediately and automatically stayed proceedings pursuant to Tex. Civ. Prac. & Rem. Code § 51.014(a)(8), (b). Thanks.

Kind regards,

**Johnathan Stone**
Chief
Consumer Protection Division
Office of the Attorney General of Texas
Telephone: (512) 936-2613
Johnathan.Stone@oag.texas.gov

This is a confidential communication and intended for the addressee(s) only. Any unauthorized interception or disclosure of this transmission is prohibited pursuant to Tex. Gov't Code Ch. 552. If you are not the intended recipient of this message, please notify the sender and destroy this and all copies of this communication. Thank you.

**From:** Nguyen, Thanh D. <TDNguyen@winston.com>
**Sent:** Thursday, March 6, 2025 4:43 PM
**To:** kalonzo@dallascourts.org; Logan, William <WLogan@winston.com>; Holland, Anika <AHolland@willkie.com>; Sutker, Cory <Cory.Sutker@cooperscully.com>; 'David Walsh' <dwalsh@kaktxlaw.com>; David Shatto <David.Shatto@oag.texas.gov>; Priyanka Thomas <pthomas@kaktxlaw.com>
**Cc:** Rob Farquharson <Rob.Farquharson@oag.texas.gov>; Johnathan Stone <Johnathan.Stone@oag.texas.gov>; Newsome, Jervonne D. <JNewsome@winston.com>; Abby Smith <Abby.Smith@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>; Pauline Sisson <Pauline.Sisson@oag.texas.gov>; 'Smyser, Craig' <csmyser@steptoe.com>; 'Wolf, Alex' <awolf@steptoe.com>; 'Nicole LeBoeuf' <nicole@leboeuflaw.com>; 'Legg, W. Henry' <wlegg@steptoe.com>; WFG_DrCooper <WFG_DrCooper@willkie.com>; Packman, Zoe <ZPackman@willkie.com>; 'Avi Moshenberg' <avi.moshenberg@lmbusinesslaw.com>; 'Padley, Drew' <dpadley@steptoe.com>; 'Amy Ooi' <amy@leboeuflaw.com>; Agnolucci, Simona <SAgnolucci@willkie.com>; Dyer, Barrington <BDyer@willkie.com>; Cooper, Jackie <Jackie.Cooper@cooperscully.com>; nonparty-patient-counsel <nonparty-patient-counsel@winston.com>
**Subject:** Nonparty Patient No. 1 v. State - Proposed Order

Good afternoon, Ms. Alonzo,

We have just filed the attached proposed order. As Judge Purdy instructed, I am sending a copy to you, with counsel for the State and other interested entities cc'd. If I have inadvertently missed anybody, please let me know.

**M.R.**[1] **512**

Thank you,
Thanh


**Thanh D. Nguyen**
**Associate Attorney**
Winston & Strawn LLP
2121 North Pearl Street, Suite 900
Dallas, TX 75201
D: +1 214-296-9845
Email | winston.com
*Pronouns: He, Him, His*



The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

M.R.$^2$ 513

# Appendix G

Cause No. DC-25-01823

| | | |
|---|---|---|
| Nonparty Patient No. 1, | § | IN THE DISTRICT COURT OF |
| Nonparty Patient No. 2, | § | |
| Nonparty Patient No. 3, | § | |
| Nonparty Patient No. 4, | § | |
| Nonparty Patient No. 5, | § | |
| Nonparty Patient No. 6, | § | |
| Nonparty Patient No. 7, and | § | DALLAS COUNTY, TEXAS |
| Nonparty Patient No. 8, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| The State of Texas, | § | |
| *Defendant*. | § | 95TH JUDICIAL DISTRICT |

### THE STATE OF TEXAS'S NOTICE OF APPEAL

Pursuant to Texas Rules of Appellate Procedure 25.1(a) and 26.1(b), Defendant the State of Texas gives notice of an appeal of the trial court's oral denial of Defendants' Plea to the Jurisdiction and Plea in Abatement on March 6, 2025.

The State is entitled to an interlocutory appeal pursuant to Civil Practice and Remedies Code § 51.014(a)(8), which allows for an immediate appeal from an order that denies a plea to the jurisdiction.

The State appeals to the Fifteenth Court of Appeals. This is an accelerated appeal as provided by Texas Rule of Appellate Procedure 28.1. This is not a parental termination or child protection case, as defined in Rule 28.4.

**Pursuant to Texas Civil Practice and Remedies Code § 51.014(b), all further proceedings in this court are stayed pending resolution of the State's appeal.** This interlocutory appeal meets all the prerequisites for the automatic stay to apply. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8), (b), (c)(1). Pursuant to Tex. Civ. Prac. & Rem. Code § 6.001, as

## M.R. 515

governmental officers, Defendants are not required to file a supersedeas bond for court costs. The State's appeal is therefore perfected upon the filing of the notice of appeal.

Dated: March 6, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
Telephone: (512) 463-2185
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

2

**M.R. 516**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 6th day of March 2025, a copy of the foregoing document was served to all counsel of record in accordance with the Texas Rules of Civil Procedure.

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

# Appendix H

| **From:** | Rob Farquharson <Rob.Farquharson@oag.texas.gov> |
|---|---|
| **Sent:** | Friday, March 7, 2025 9:54 AM |
| **To:** | District Court 493rd .; Amy Patterson |
| **Cc:** | WFG_DrCooper; Avi Moshenberg; David Shatto; Johnathan Stone; Abby Smith; Kimberly Gdula; Brianna Krominga; David Walsh; Sutker, Cory; Cooper, Jackie; Wolf, Alex; Lascano, Julie; Newsome, Jervonne D.; Logan, William |
| **Subject:** | Lau/Cooper 15 COA Timeline |

Ms. Patterson:

I spoke to the Clerk of the 15th Court of Appeals this morning.

It sounds like the quickest potential for a written opinion on Dallas County's ruling is 6 months. This assumes that the parties agree to expedited briefing and no oral argument is needed. If the parties cannot agree to an expedited schedule (or the Court does not otherwise enter one), and oral argument is needed, we will be looking at something more like 6-9 months.

All the best,

Rob



Rob Farquharson
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lucy Fowler on behalf of Jervonne Newsome
Bar No. 24094869
LFowler@winston.com
Envelope ID: 98334651
Filing Code Description: Motion for Emergency Relief
Filing Description: NONPARTY PATIENTS' EMERGENCY MOTION TO STAY DISCOVERY PENDING INTERLOCUTORY APPEAL
Status as of 3/11/2025 4:22 PM CST

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| David G. Shatto | | david.shatto@oag.texas.gov | 3/11/2025 4:08:43 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 3/11/2025 4:08:43 PM | SENT |
| Abby Smith | | abby.smith@oag.texas.gov | 3/11/2025 4:08:43 PM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 3/11/2025 4:08:43 PM | SENT |
| Ian Bergstrom | | Ian.Bergstrom@oag.texas.gov | 3/11/2025 4:08:43 PM | SENT |
| Christopher Molak | | christopher.molak@oag.texas.gov | 3/11/2025 4:08:43 PM | SENT |
| Amy Pletscher | | amy.pletscher@oag.texas.gov | 3/11/2025 4:08:43 PM | SENT |

Associated Case Party: Nonparty Patient No. 1

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| William Logan | 24106214 | wlogan@winston.com | 3/11/2025 4:08:43 PM | SENT |
| Evan Lewis | 24116670 | edlewis@winston.com | 3/11/2025 4:08:43 PM | SENT |
| Jervonne Newsome | 24094869 | jnewsome@winston.com | 3/11/2025 4:08:43 PM | SENT |
| Thanh Nguyen | | tdnguyen@winston.com | 3/11/2025 4:08:43 PM | SENT |
| Olivia Wogon | | owogon@winston.com | 3/11/2025 4:08:43 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| David Walsh | 791874 | dwalsh@katxlaw.com | 3/11/2025 4:08:43 PM | SENT |
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 3/11/2025 4:08:43 PM | SENT |
| David Phillips | | DPhillips@winston.com | 3/11/2025 4:08:43 PM | SENT |

**M.R. 520**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lucy Fowler on behalf of Jervonne Newsome
Bar No. 24094869
LFowler@winston.com
Envelope ID: 98334651
Filing Code Description: Motion for Emergency Relief
Filing Description: NONPARTY PATIENTS' EMERGENCY MOTION TO STAY DISCOVERY PENDING INTERLOCUTORY APPEAL
Status as of 3/11/2025 4:22 PM CST

Case Contacts

| David Phillips | | DPhillips@winston.com | 3/11/2025 4:08:43 PM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 3/11/2025 4:08:43 PM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 3/11/2025 4:08:43 PM | SENT |
| Jamie Vargo | | JVargo@winston.com | 3/11/2025 4:08:43 PM | SENT |
| Houston Docket | | ecf_houston@winston.com | 3/11/2025 4:08:43 PM | SENT |

**M.R. 521**



In The

# Fourteenth Court of Appeals

_____

## NO. 15-25-00023-CV
_____

### THE STATE OF TEXAS, Appellant

V.

### NONPARTY PATIENT NO. 1, NONPARTY PATIENT NO. 2, NONPARTY PATIENT NO. 3, NONPARTY PATIENT NO. 4, NONPARTY PATIENT NO. 5, NONPARTY PATIENT NO. 6, NONPARTY PATIENT NO. 7, AND NONPARTY PATIENT NO. 8, NONPARTY PATIENT NO. 9, NONPARTY PATIENT NO. 10, AND NONPARTY PATIENT NO. 11, Appellees

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-25-01823**

## ORDER

Appellees have filed an "emergency motion to stay discovery pending interlocutory appeal." *See* Tex. R. App. P. 29.3; *see also* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (authorizing interlocutory appeal from grant or denial of plea to the jurisdiction by governmental unit). In the action underlying this interlocutory appeal, the appellees sought protection in Dallas County from subpoenas requiring the production of their medical records in a suit filed by the

**M.R. 522**

State of Texas in Collin County. *See* Tex. R. Civ. P. 176.6(e) (authorizing "any other person affected by the subpoena" to move for protective order "either in the court in which the action is pending or in a district court in the county where the subpoena was served"). Neither the appellees nor the hospitals from whom production is sought are parties to the suit in Collin County.

In their emergency motion, the appellees request that we "stay any discovery obligations under the subpoenas." To the extent appellees request that we stay any attempted enforcement of the subpoenas by the Dallas County district court, we conclude that the automatic stay already prevents that action. *See* Tex. Civ. Prac. & Rem. Code § 51.014(b) (providing for stay of all proceedings pending resolution of certain interlocutory appeals, including appeal under section 51.014(a)(8)); Tex. R. Civ. P. 176.6(e) ("A person need not comply with the part of a subpoena from which protection is sought under this paragraph unless ordered to do so by the court."). To the extent appellees request that we enjoin the Collin County district court from compelling the production of, or the hospitals from producing, some or all of the records that are the subject of the subpoenas, the appellees have failed to show how this Court, in an interlocutory appeal from Dallas County, has the authority to grant such relief. *See CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011) (statutes permitting interlocutory appeals are strictly applied). Accordingly, the Court denies the emergency motion.

PER CURIAM

Panel Consists of Chief Justice Brister and Justices Field and Farris.

**M.R. 523**